IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

KEY WEST DIVISION

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

PETER HALMOS, et al.,

    Plaintiffs,

vs.

INSURANCE COMPANY OF NORTH
AMERICA, et al.,

    Defendants.
_____/

## PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE

On April 1, 2010, this Court entered its Order to Show Cause in response to Plaintiffs' Motion for Enlargement of Time to Submit Final Reports (D.E. 620) and INA's Motion to Strike, which the Court entertained as a response to Plaintiffs' Motion for Enlargement of Time.[1] The Court has ordered a hearing on April 8, 2010 "at which time plaintiffs may show good cause why this case should not be dismissed." In addition to the arguments that will be heard during the hearing, Plaintiffs state the following in response to this Court's Order to Show Cause:

The dismissal of a case for failure to comply with a deadline is an extreme sanction[2]. In fact, the Eleventh Circuit has held that dismissal as a sanction under Rule 37 is justified "only in

---

[1] The Court didn't give Plaintiffs any time to respond to Plaintiffs' motion to strike, which only requested (1) striking of some of the experts and (2) limiting of one of the experts to his 2006 report. To be clear, INA's motion does not even request the extreme sanction of "dismissal" as apparently this Court is entertaining.

[2] This issue of the inappropriate severity of even striking experts as opposed to dismissing a case has been addressed by a number of federal judges in Florida. See, e.g., *Poe v. Carnival Corp.*, 2007 WL 129007 (S.D. Fla.[Mag. Judge Torres]); *Acosta v. Electrolux North America*, 2008 WL 52461690 (S.D. Fla.[Mag. Judge Rosenbaum]); *Lake v. Tenneco, Inc.*, 2007 WL 5339379 (M.D. Fla.[Mag. Judge McCoun]); *Hamatie v. Louisville Ladder*, 2007 WL 4365429 (M.D. Fla.[Mag. Judge ).

extreme circumstances and as a last resort." *See Wouters v. Martin County, Florida*, 9 F.3d 924, 933-34 (11th Cir. 1993). Indeed, "dismissal is warranted only where non-compliance with discovery orders is due to willful or bad faith disregard for those orders." *Id.* at 934. Further, "if less drastic sanctions would suffice . . . ," reversal is warranted even to meet the very high standard of "abuse of discretion." *Id.*

Rule 37 of the Federal Rules of Civil Procedure also indicates that sanctions can only be imposed if the failure to comply was "substantial justification" or "harmless." As interpreted by the courts, "harmless" under Rule 37 is "when no prejudice results to the opposing party." *See Weaver v. Lexington Insurance Co.*, 2007 WL 1288759 (M.D. Fla. 2007).

With the greatest respect to the Court, an order of dismissal would be an abuse of discretion and not warranted due to any prejudice to Defendants:

First, this case is not at issue. There has been no answer filed, and Plaintiffs have been at work responding to six motions to dismiss, motions for more definite statement, and motions to abate. Indeed, the defendants have taken the position before the Special Master that certain discovery responses are not capable of being made until a determination is made as to the vitality of the Third Amended Complaint and the assertion of defenses.

Second, Strickland has represented to this Court that it may join additional parties. Clearly, that issue should be decided before discovery is closed and before experts are decided upon.[3] For certain, the addition of new parties will drop a hand-grenade into the scheduling process.

---

[3] Yes, this Court has made it a point to indicate that the Scheduling Order was agreed to and submitted to by the parties. Plaintiffs, however, were operating under the trial date mandated by this Court. All deadlines flowed and had to "fit in" with the trial date in mind. And, we should not forget that the July 19, 2010, trial date was one of many that the Court had indicated were available for trial in Key West, some of which went into early 2011.

2

Third, there are very peculiar circumstances involved in this case, including the fact that this 155 foot sailing vessel was left in the middle of a marine sanctuary. To remove it took three years and a new technology to get the vessel off of the flats and into deeper water without damaging the marine sanctuary.[4] Moreover, once free of the reef, it then has to be brought to a shipyard for estimates, which has not yet occurred because no boatyard will take it without insurance, and plaintiffs have not been able to date to secure insurance. It may well be that the vessel will have to be shipped to its manufacturing yard in Italy for repairs. All of these reasons help explain why the Court ought not be concerned that the claims "are all from acts that occurred prior to 2006 . . . ." Thus, although the claim is from 2005, this is not a 2005 case nor have Plaintiffs had since 2005 to obtain experts.

Fourth, any report prior to the S/Y Legacy having been moved out of where it was beached would have been preliminary. One of main issues is whether or not there is any tortional damage to the vessel (twisting of the structure). That cannot be determined until the vessel was afloat, and that alone would be preliminary, as the accurate measures could only be determined once the vessel is dry-docked.

Lastly, although it was this Court's intention to "reign this case in" – it hasn't been. Plaintiffs spend the majority of their time responding to over 69 motions in this case[5] since its inception (not including motions for extension of time) and over 300 emails since mid-September of 2009 (only including Defendants four main attorneys – Scott Bassman,[6] Robert

---

[4] It took one year to get the 26 foot long, 40 ton keel, raised out of the sea bottom, and an additional two years to get the vessel out of the marine sanctuary. That amount of time avoided millions of dollars of damage to the underwater sea grass that would otherwise also have had to be paid by the defendants.

[5] Totaling 934 pages of motions, with 985 pages of attached exhibits

[6] 93 e-mails

Browning,[7] Pete DeMahy[8] and Kenneth Engerrand[9].[10] The fact is, this case has been, simply put, a paper war by defendants.[11] Respectfully, this Court should limit the amount of depositions to be taken by either side[12], and direct the Defendants to answer the Third Amended Complaint – the portions which survive the respective motions to dismiss.

This Court has threatened Plaintiffs with an *extreme sanction* when no order has been intentionally violated, and where, respectfully, there are more drastic issues than whether expert reports are delayed which will result in *no prejudice to defendants*[13] (i.e. deposing Peter Halmos in five different capacities, or inquiring whether third parties are going to be joined that would nullify any and all scheduling deadlines, let alone consent to this Court's Chief Magistrate Judge presiding over this case). To be clear, Plaintiffs have not willfully disobeyed any of this Court's order nor would that ever cross our minds. The failure to file the expert reports, or to have them

---

[7] 157 e-mails

[8] 31 e-mails

[9] 38 e-mails

[10] All of this while Plaintiffs' client and a party himself was absent from the case since December of 2009 for over 32 days as a result of his illness, a sickness which is of little concern to the defendants who insisted on three days being set aside, so that they could have their experts, for the first time, inspect the Mongoose and the Legacy, and then spent two hours on the Mongoose, and then a few hours on the Legacy, saying they would be back by the next day, only not to return, and not inform Mr. Halmos that they would not being showing up on the third day, all of which required Mr. Halmos to be available in Key West for three days for a mission that could have been done in one.

[11] During the same period, Plaintiffs filed 30 motions totaling 299 pages, with 213 pages of exhibits.

[12] For instance, Defendants apparently did not have enough of Peter Halmos as Corporate Representative of IYC, HPC and individually. They now want to take the deposition of Peter Halmos as Corporate Representative of Peter Halmos & Sons, Inc., and Peter Halmos as Corporate Representative of Intelligence Services Inc. While "technically proper," taking the depositions of one man in five difference capacities where Defendants questions all purposefully overlap is the type of game playing Plaintiffs have been dealing with and the type of actions that need to be "reigned in." In fact, Plaintiffs took an appeal of Judge Klein's ruling regarding this issue.

[13] In fact, just yesterday Plaintiffs agreed to extend discovery response deadlines to Strickland. The fact is, discovery is still, unfortunately, at its inception – only a handful of depositions have been taken by ANY OF THE PARTIES, including Peter Halmos in three different capacities.

updated, has not prejudiced Defendants in any way—the case is yet at issue and Strickland intends on joining third parties.

Finally, when the Court set the date for the reports, counsel advised the Court that it could not complete the full assignment by that date. So, the Court extended the deadline by three days. Counsel again told the Court that it could not meet that deadline, all of which should serve at least to temper the Court's incredulity.

The undersigned firm has been on this case since last September, the same time that the process of stipulating to the trial of this case by the magistrate judge began. Since that time, it has diligently represented the interests of these clients and strongly suggest that if the Court believes that one or more of the parties just wants to litigate for the sake of litigating, it ought to look to the ones who have piled on the motions, the e-mails, and the correspondence. The glove for sure does not fit on this side.[14] In fact, this firm was brought aboard to asset when Mr. Easton's' firm and Judge Morgan's firm were unable to keep up with the deluge of pleadings and correspondence from the defendants.

The Court has stated that in its 35 years of practicing law and sitting on the bench, it has never seen a case like this. Undersigned counsel has never been a judge, but has practiced for an equivalent number of years, and agrees with the Court. Counsel has never seen so many motions and correspondence filed in a case in as short a period of time and wants to make it clear that it appreciates the fact that this Court promptly rules on every motion filed.

But, these Plaintiffs are suing their insurance agents and their carriers to recover monies owed to them. It is not outside the realm of credulity to suggest that insurance carriers take to heart Ernest and Julio Gallo's famed line: "No wine before its time." These plaintiffs want to get

---

[14] Counsel does not believe that one day, with the exception of perhaps Christmas and Thanksgiving, has passed without at least one communication being received from defendants' counsel.

to trial. These plaintiffs have produced hundreds of thousands of documents and have spent millions of dollars in counsel fees attempting to do so. They take this litigation seriously -- deadly seriously.

Plaintiffs urge the Court to adjust the deadlines of expert reports as requested and believe that this extension will in no way affect the trial date in this cause.

Respectfully submitted,

Joseph P. Klock, Jr. FBN 155678
Juan Carlos Antorcha FBN 0523305
RASCO KLOCK REININGER PEREZ
ESQUENAZI VIGIL & NIETO
283 Catalonia Avenue
Coral Gables, Florida 33134
Telephone: 305.476.7105
Facsimile: 305.476.7102

By: /s/ Joseph P. Klock, Jr.


THE LAW OFFICE OF HUGH J. MORGAN
Hugh J. Morgan
P.O. Box 1117
Key West, Florida 33041
Telephone: (305) 296-5676
Facsimile: (305)296-4331
hugh@hjmorganlaw.com

SPOTTSWOOD, SPOTTSWOOD &
SPOTTSWOOD
Jack Spottswood
500 Fleming Street
Key West, Florida 33040
Telephone: (305) 294-9556
Facsimile: (305) 292-1982
jack@spottswood.com

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

## **CERTIFICATE OF SERVICE**

I hereby certify that on 8th day of April 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Juan Carlos Antorcha

## Service List

Frank J. Sioli
Zascha B. Abbott
BROWN SIMS P.C.
Datran One - Suite 908
9100 South Dadeland Boulevard
Miami, Florida 33156
Telephone: (305) 274-5507
Facsimile: (305) 274-551
fsioli@brownsims.com

Scott Bassman
Dara Jebrock
Counsel for Defendant, Strickland
Cole, Scott & Kissane, P.A.
Dadeland Centre II
9150 S. Dadeland Blvd, Suite 1400
Miami, FL 33156
Facsimile: 305.373.2294
dara.jebrock@csklegal.com
scott.bassman@csklegal.com

Clinton Sawyer Payne
DeMahy Labrador Drake Payne &
Cabeza
Alhambra Center – Penthouse
150 Alhambra Circle
Coral Gables, FL 33134
Telephone: (305) 443-4850
Facsimile: (305) 443-5960

Kenneth G. Engerrand
Michael A. Varner
P. Michael Bowdoin
Brown Sims p.c.
1177 West Loop South
Tenth Floor
Houston, Texas 77027-9007
Telephone: (713) 629-1580
Facsimile: (713) 629-5027
kengerrand@brownsims.com
mvarner@brownsims.com

David P. Horan
HORAN, WALLACE &
HIGGINS, LLP
608 Whitehead Street
Key West, FL 33040
Telephone: (305) 294-4585
Facsimile: (305) 294-7822
dph@horan-wallace.com

4824-0741-2229, v. 2