## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

### KEY WEST DIVISION

### Civil Action No. 08-10084-CIV MARTINEZ-BROWN

| | | |
|---|---|---|
| PETER HALMOS, INTERNATIONAL YACHTING CHARTERS, INC. AND HIGH PLAINS CAPITAL, | § § § § | |
| **Plaintiffs,** | § § | |
| v. | § § | **THE HONORABLE STEPHEN BROWN** |
| INSURANCE COMPANY OF NORTH AMERICA AND STRICKLAND MARINE INSURANCE, INC. (F/K/A STRICKLAND MARINE AGENCY, Inc.), | § § § § | |
| **Defendants.** | | |

---

## FOURTH AMENDED COMPLAINT[1]

---

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, Plaintiffs, Peter Halmos ("Halmos"), International Yachting Charters, Inc. ("IYC") and High Plains Capital ("High Plains"), (jointly "Plaintiffs"), file this Fourth Amended Complaint and allege:

### I.    PARTIES

1.    Halmos, a U.S. citizen and Florida domiciliary, is a resident of Key West, Florida.

---

[1] The Court has abated Plaintiffs' bad faith claims and as a result, those allegations and claims are not included herein.  *See* [D.E. 364]

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

2.     IYC is a Cayman Islands corporation, with its principal place of business in Florida.  Halmos is the President of IYC and its sole shareholder, and has been at all times material to this complaint.

3.     High Plains is a Wyoming corporation, with its principal place of business in Florida.  Halmos is the President of High Plains and its sole shareholder, and has been at all times material to this complaint.

4.     Defendant, Insurance Company of North America ("INA"), is a Pennsylvania corporation licensed to do and doing business in the State of Florida, which throughout the pertinent time frame in this complaint acted through its agents, subsidiaries or affiliates which include ACE USA Group. Any actions of Ace are actions of INA, and INA is responsible for any actions taken by ACE. This complaint therefore includes actions taken by INA's agents, subsidiaries and affiliates including ACE on behalf of INA.

5.     Defendant, Strickland Marine Insurance, Inc., formerly Strickland Marine Agency Inc. ("Strickland"), is a South Carolina corporation having its principal place of business in Charleston, South Carolina.

## II.     JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this civil action under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states and in which a citizen or subject of a foreign state is a party in interest.

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

7.      Further, this Court has subject matter jurisdiction over some of the causes of action presented herein under 28 U.S.C. § 1333 in that certain claims invoke this Court's original maritime jurisdiction.

8.      This Court has personal jurisdiction over INA because it is licensed to do business in the State of Florida and it does, in fact, do business in the State of Florida.

9.      This Court has personal jurisdiction over Strickland pursuant to Fla. Stat. § 48.193(d) and (g) because Strickland has sufficient minimum contacts with the State of Florida to require it to defend a suit here because it has contracted to insure a person, property or risk located within the State of Florida, and at the time of contracting, committed a breach of contract, tortious acts and other breaches of duty, in whole or in part, within the State of Florida.

10.     Venue is proper to bring this action in the Southern District of Florida and in the Key West Division because a substantial part of the events or omissions giving rise to the claims occurred here and because a substantial part of property that is the subject of the action is situated there.

## III.        GENERAL ALLEGATIONS

### IYC RETAINS STRICKLAND

11.     In 1995, IYC launched its flagship 158-foot Italian built sailing vessel, S/Y *Legacy* ("Legacy"), which was designed and built for circumnavigation—IYC purchased the Legacy and is the registered owner of the Legacy.

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

12.     Commencing in August 2001, IYC[2], HPC and Halmos (IYC et.al) retained
Strickland as Plaintiffs' agent and fiduciary and wherein the Plaintiffs trusted Strickland
to (1) procure insurance coverage up to full insurable value for the Legacy (as well as all
tenders and dinghies of the Legacy) given its replacement value and intended use;(2) to
procure insurance that names all the Plaintiffs as "named insureds" under such
insurance coverage; and (3) to process and adjust all Plaintiffs with claims that may
arise in connection with all policies—a duty that continued until a claims were paid.
Strickland secured coverage through INA. At all relevant times Strickland was agent of
record of INA on such policies. *See Exhibit 2-6.*

13.     Strickland was timely paid all premiums for each policy year which
Strickland billed.

14.     Between 2001 and 2004, Strickland procured insurance coverage
pursuant to its agreement with the Plaintiffs.  However, during this time frame, the
amount of insurance coverage for the Legacy was insufficient.  Accordingly, in 2004,
IYC instructed Strickland to procure insurance coverage for the Legacy in an amount
sufficient to cover the Legacy's actual cash value.  As more fully set forth below,
Strickland breached its agreement with IYC to procure adequate and coverage for the
full insurable value of Legacy.

---

[2] IYC designated Mr. Halmos as the Operator of the vessel, as that term is used within the insurance
policies that are the subject of this action and are attached as exhibits to this complaint. Mr. Halmos, as
Operator, is responsible for everything regarding all of IYC's vessels, except for safety determinations
and navigational decisions as delegated by Halmos to the captain. Mr. Halmos has had thousands of
hours at the helm of IYC's vessels personally operating the *Legacy.* Since 1986 HPC designated Halmos
as Operator of the Mongoose, which has never had an employed captain – but on occasion has had
Legacy's captain navigate it when Halmos is unable, or chose not to.    Simply put, Mr. Halmos has
individually operated the majority of the vessels covered by the policies and specifically, each of the
vessels for which claims are being asserted in this complaint.

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

15.     Furthermore, and as more fully set forth herein, during 2001, Strickland bound coverage with INA, but contrary to its agreement with the Plaintiffs, Strickland failed to procure a policy which identified Halmos as a named insured under the policy without informing Halmos, and without Halmos' knowledge or consent.

16.     Without disclosure to Plaintiffs during the years of the various insurance policies attached as Exhibits 2-6, Strickland entered into undisclosed "contingent commissions" agreements with INA, which agreements are based on INA's profits, generated by the subject insurance policies, under which Strickland would profit depending on actions that it took for its own financial benefit but which would not benefit the Plaintiffs for which it owed a fiduciary duty.  As a result of such agreements, it was in Strickland's and INA's *best financial interest* to obstruct and/or delay claims by IYC, because INA's payment of fewer claims in a lesser dollar amount over a longer period of time resulted in greater revenue to INA and higher commission fees for Strickland.  *See Composite Exhibit* "1."  INA offered such agreements to brokers so that the producing broker would be motivated to place a greater number of policies with INA instead of shopping for more complete coverage at a lesser rate.

17.     At all times and as a result of the side deal between the two, Strickland's acts in derogation of the rights and responsibilities it owed the Plaintiffs became the acts of INA and vice versa.

### S/Y *Legacy* And the *Sol* Damage

18.     After her 1995 launch, between 1995 and 1999, *Legacy* spent about two and one-half years in various shipyards for warranty work, including an entire year back at the builder's yard in Italy. Then, in 1999-2000, *Legacy* spent another nine months in

West Palm Beach's Rybovich Spencer yard for a $4 million final completion including all new paint, varnishes, and other cosmetics. At that point, *Legacy's* cost was $17 million.

19.     On or about August of 2001, INA, through Strickland issued an insurance policy to insure the Legacy – Policy # YWR Y06973504.  *See Exhibit 2.*

20.     On September 15, 2001, while Legacy was anchored in a harbor in West Palm Beach, Florida, the Legacy was hit broadside by a vessel called the Sol.

21.     IYC immediately notified Strickland of the collision which, upon information and belief, notified INA

22.     The damage to Legacy were severe, but easily determinable.  Among other damages, the collision damaged much of the $4 million work to the Legacy just competed at Rybovich Spencer.

23.     IYC promptly provided to *Sol's* insurer, with a copy to Strickland, the readily determinable safety and other repair estimates, based upon the just-completed Rybovich Spencer work and demanded that Sol's insurer pay for such damages.

24.     Instead, *Sol's* owner sued IYC in this District, improperly seeking to apply a liability limitation from an 1850's law pertaining to collisions at sea.

25.     Both Strickland and INA manifestly ignored IYC's claims arising from and relating to the *Sol* collision and *Legacy's* damaged condition. Nor did either INA defend and/or pay the cost of defending against *Sol's* lawsuit against IYC.

26.     To mitigate damages, IYC and Halmos, individually, sued *Sol's* owner in Palm Beach County circuit court, a case that continues to this day.

27.     No substantive repairs could be made to the Legacy until INA determined the scope and costs of the repairs because the INA Policy required the costs of repair to

be determined by yacht repair yards, equipment repairers, or surveyors "agreeable" to INA.   Absent INA's agreement, the Legacy could not be repaired.

28.    IYC repeatedly requested Strickland, verbally and in writing, to have INA complete its scope and repairs – a process that continued right through the Wilma incident in 2005, which INA did not do. As a result, Legacy continues to wear the scars of that damage to this date.

29.    INA breached the applicable insurance policy by failing to timely perform its obligations under the policy (Exhibit 2), by failing to pay for the damages to the Legacy arising out of the collision by the Sol and by failing to defend the action brought by Sol's owner.

30.    It was not until October 27, 2008, that it became crystal clear to IYC and Halmos that INA was attempting to evade its obligations.

31.    At the time this action was filed, INA has not offered to pay, nor has INA paid, nor has Strickland obtained one cent of IYC's 2001 claims for (a) *Sol* collision damages; (b) reimbursement of costs to protect *Legacy* against further damage; (c) reimbursement of litigation defense and subrogation costs; and (d) reimbursement of essential safety repairs mandated by ABS for class certification purposes.

32.    Despite having contracted orally and in writing, through all of its communications with Halmos to provide claims settlement assistance to IYC et al., Strickland did nothing to assist IYC with claims settlement, thereby breaching its agreement with the Plaintiffs to assist in the timely resolution of claims.

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

### 2003 POLICY YEAR

33.     On or about August of 2002, INA, through Strickland, issued an insurance policy to insure the S/Y Legacy and its tenders.  (Policy # YWR 6973504).  *See Exhibit 3.*

34.     On July 28, 2003, one of *Legacy's* custom-built tenders with a $250,000 replacement cost and minimum 18-month build time, *Island Runner*, was lost in heavy Bahamian weather

35.     Despite timely notice of this loss to Strickland, IYC's claim was rejected by INA.

36.     IYC disputed INA's denial, and for another year continued to provide INA with information in response to its redundant and duplicative information requests.

37.      Finally, on June 20, 2005, Strickland's Barker had to admit that INA's purported 30-day contractual claims payment process "[h]as been drug out way too long."

38.     After Strickland's long-delayed intervention, INA made a bad faith $50,000 settlement offer rather than Island Runner's $200,000 actual cash value (replacement cost minus depreciation). This caused additional, frustrating communications by IYC such that INA increased its settlement offer in September 2005 to $70,000. This required more communications from Halmos continuing into 2006.

39.     On July 3, 2006, *three years after* the *Island Runner* loss occurred, ACE offered what it represented to be the policy limit on this claim of $88,940 plus $5,400 reimbursement for protection against loss expenses.

40.     Eventually, INA paid $88,940 to IYC in 2006 and $5,400 reimbursement in 2009.

### 2004 Hit-And-Run Claim

41.     On or about August of 2003, IYC contracted with INA, through Strickland, to insure the S/Y Legacy. (Policy # YWR Y06973504).  *See Exhibit 4*.

42.     On July 31, 2004, *Legacy* was anchored off Key Biscayne when around noon-time, two teenagers in a 20-foot sailboat collided into *Legacy's* hull broadside.

43.     IYC promptly notified Strickland of the incident. After the police investigated, calling the incident a criminal Hit-and-Run collision, Halmos, for IYC, located the owner of the teenager's boat.

44.     On August 6, 2004, INA acknowledged receiving the Hit-and-Run Collision claim. Halmos forwarded to INA all information available.

45.     INA failed to pay for all damages arising out of the claim.

### 2005-2006 POLICY YEAR

### Hurricane Katrina – Mongoose

46.     On or about December of 2004, HPC contracted with INA, through Strickland, to insure the Mongoose.  (Policy # YKR Y05031205).  *See Exhibit 5*.

47.     On or about August of 2005, to protect *Mongoose* from Hurricane Katrina, a commercially-available mooring was rented in Man-of-War Harbor adjacent to Key West, Florida. During the onslaught of Katrina, this and many other commercial moorings failed. *Mongoose* was pushed aground, upright on the sand flats about 200 yards from where she had been moored.

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

48.     Strickland was notified of the *Mongoose* Hurricane Katrina incident on August 27, 2005.

49.     As of September 13, 2005 *Mongoose* remained aground, with Halmos and the crew of *Legacy* protecting *Mongoose* and the environment from further damage.

50.     Then, the State of Florida sued HPC and the captain of *Legacy* for remediation damage to the environment.  The *Mongoose* Policy provided $25 million protection for environmental damage and unlimited defense costs.

51.     On September 14, 2005, INA, directed HPC to communicate with its claims adjuster/litigation lawyer Michael Pennekamp, and only Pennekamp, as to all *Mongoose* matters.  The next day, September 15, Pennekamp denied HPC's claim for the appointment of defense counsel for the State of Florida's lawsuit and/or reimbursement of defense cost, falsely representing there was no coverage under the *Mongoose* Policy.

52.     On September 25, 2005, INA's purportedly "independent" marine surveyor Hutcheson, inspected the damage to *Mongoose* as she lay aground.  Halmos, on behalf of HPC, wanted *Mongoose* to be towed to the Merritt Boat Yard in Pompano Beach where she had been built.  Hutcheson refused, insisting that *Mongoose* be taken to a repair facility in Key West of his choosing because only costs of repair determinations made by facilities and experts agreeable to INA would be considered for Policy purposes. Pennekamp and Hutcheson ordered Halmos to "cooperate," anticipating Hutcheson to have *Mongoose* hauled under INA's care, custody and control.  Once hauled, *Mongoose* sat baking in the sun at Hutcheson's hand-selected repair facility when, on October 24, *Mongoose* was further severely damaged by Hurricane Wilma.

-10-

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

### HURRICANE WILMA – DEVASTATING LOSS OF S/Y *LEGACY*

53.     On or about August of 2005, IYC contracted with INA, through Strickland, to insure the S/Y Legacy.  (Policy # YWR Y06973504).  See Exhibit 6.

54.     On or about October 23, 2005, while Halmos was aboard Legacy, Hurricane Wilma hit Key West, Florida.

55.     The wind from Hurricane Wilma pulled Legacy from her pre-selected Hurricane Hole and into the Gulf. Legacy came to rest hard aground about four miles north of Key West in the Great White Heron National Marine Sanctuary. Legacy was severely damaged.

56.     The first non-family-related telephone call Halmos made that morning was to Strickland. He spoke to Vance Barker. Halmos told Barker to notify all applicable carriers.

57.     Halmos's son, Nick Halmos ("Nick"), directly communicated with INA.  At 12:11 p.m. the same day, INA faxed a letter to Peter Halmos, in care of Nick, requiring Peter  Halmos, individually, as vessel owner, to take all steps necessary to mitigate damages to the Legacy.

58.     As a result of those demands, Halmos undertook to take all steps necessary to mitigate damages, yet payments were not forthcoming from INA.

### IYC Seeks Coverage Increases

59.     In 2004, IYC contracted with Strickland to increase the coverage of the Legacy from $14 million to $27 million.

60.     Strickland advised Halmos that INA/ACE required a valuation survey by its own surveyor prior to increasing coverage.

**Civil Action No. 08-10084-CIV MARTINEZ-BROWN**

61.     In October 2004, INA/ACE's marine surveyor did an in-water valuation of *Legacy* at anchor in Miami.  As a <u>result</u> of INA/ACE's valuation survey, INA increased *Legacy*'s loss or damage coverage from $14 million to $16 million, $11 million less than Legacy's minimum $27 million actual cash value.

62.     Strickland concealed from IYC and Halmos that ACE's October 2004 survey assumed 2001 *Sol* collision damages would not be repaired.

63.     Strickland also fraudulently led Halmos to believe the increase hull coverage to $16 million was <u>prior</u> to ACE's survey, just a stop-gap measure, when this was not the case.

64.     In or about November 2004, Halmos asked Strickland for a copy of INA's October 2004 valuation survey.  Strickland replied that INA refused to divulge the survey.

65.     This Catch-22 led Strickland to send a letter to Halmos in December 2004, in which Barker unequivocally (a) concealed the reason for INA's $16 million loss and damage determination; (b) suggested additional delay until 2005 for another ACE valuation survey; (c) advocated the benefits to IYC of renewing the INA Policy rather than procuring coverage from other sources; (d) attempted to satisfy Halmos' and IYC's hull loss or damage coverage concerns by selling IYC a worthless "agreed value" excess damage Policy from another carrier for $40,000 premium. Halmos and IYC rejected the worthless excess coverage. *See Exhibit 7.*

66.     Had INA then and there paid IYC $5 million for repairs to *Legacy* for the 2001 *Sol* collision damages, IYC could have (a) repaired all *Sol* collision damages; (b) procured either from INA or other sources actual cash value hull coverage of at least

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

$27 million; and, (c) procured Increased Value coverage for the difference between actual cash value ($27 million) and fair market value ($35 million). Instead, ACE and INA refused to disclose the October 2004 valuation survey report and, through Strickland, lied to Halmos and IYC about the scheme to indefinitely delay the Sol claims.

67.     On February 10, 2005, more than three months later, Barker emailed IYC's Florida insurance agent Cindy Franzino informing her that Strickland had rates up to $27,000,000.00.  *See Exhibit 8.*

68.     That continued through 2005, including in May of 2005 where Halmos requested an update with respect to the increase of coverage.  Yet, despite having those rates and Halmos' instruction to bind $27 million hull coverage, no increase in loss or damage coverage was bound.

69.     On September 6, 2005, INA/ACE arranged for yet another surveyor (Hutcheson) "agreeable" to it, to inspect Legacy for the purpose of identifying and confirming the 2001 *Sol* collision damages.

70.     After over a year of insisting on increased coverage, and Strickland leading IYC to believe that such a result was forthcoming, on October 25, 2005, the contracted-for coverage had still not been obtained, Hurricane Wilma struck, and the Legacy was severely damaged.

71.     At the time, the policy limit for Hull Coverage was $16 million when it should have been $27 million as Strickland was retained to procure and yet failed, causing huge financial losses to IYC.

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

### INA's $25 Million Policy Liability Evasion

72.     In addition to the severe damage done to Legacy, its "repositioning" by Hurricane Wilma resulted in it coming to rest in environmentally sensitive areas in the waters off of Key West after having been lifted up and dropped a number of times by the seas on its way to the final place of repose. In the process much damage was done to the bottom of the seabed.

73.     One of INA's biggest financial exposure was to NOAA's natural resource damages assessment of $22 million covered by IYC's $25 million Policy liability protection. That is where INA's claims adjuster/litigation lawyer Pennekamp and his political influence were to come into play.

74.     Pennekamp, allegedly had access to and influence with NOAA officials which required a "Permit" to remove Legacy from the Marine Sanctuary.

75.     On or about November 15, 2005 Mike Pennekamp stated in person and confirmed in email to Peter and cc'ing Janet Thomas, Pamela Forkey and Ron Milardo, that INA and Halmos had a "commonality of interest" in resolving the NOAA ordeal. Further, Mike Pennekamp represented to Halmos that INA had no conflict of interest in dealing with NOAA and that INA and IYC's interest "were aligned". And finally, that the INA policy "excludes fines from NOAA." Only later, would Halmos find out that such representation, which he relied on, were false, and Pennekamp knew of their falsehood when they were made.

76.     Without disclosure to Halmos and IYC, Pennekamp and INA negotiated with NOAA's Lisa Symons ("Symons") in Washington, D.C., NOAA's prosecuting lawyers in California, and others for NOAA to change its $22 million natural resource

damage claim against IYC (covered by $25 million liability protection in the INA Policy) to a $22 million *fine* to be levied upon Halmos *individually*.

77.     Simply put, INA's solution, when presented with this claim was to try and stick it to its policyholder by fraudulently negotiating an evasion of its $22 million natural resource damages liability by secretly causing NOAA to instead fine Halmos, personally, for the same $22 million, when the $22 million was covered and should have been paid under the policy.

78.     When Peter Halmos discovered this, he personally, and on behalf of IYC, negotiated with NOAA for over five months, incurring substantial attorney's fees, obtained the necessary permits and mutual releases from NOAA, without paying any costs or fines.

79.     Through Peter Halmos's efforts, INA became the primary beneficiary of those NOAA contracts, which resulted in all parties being released one from the other, saving INA at least $22 million.

80.     Halmos was required to place $750,000 into escrow to assure that salvage efforts for *Legacy* would continue under his direct control. Halmos, personally, was committed to do whatever was needed to remove *Legacy* from the Marine Sanctuary.  The practical effect was that Halmos became personally responsible for funding and performing all salvage operations.[3] As yet another precondition, NOAA

---

[3] In order to continue with the salvage operation, Halmos personally had to enter into an agreement with NOAA in which Halmos had to release NOAA of any claims Halmos had against NOAA—this was a predicate to NOAA releasing IYC of all liabilities including releasing IYC of any liabilities which would implicate claims against the policy limits.  Neither execution nor funding are within the course and scope of Halmos' employment by IYC.  Furthermore, NOAA entered into an agreement with IYC in which the agreement held Halmos responsible in a corporate capacity to the terms and conditions to which IYC agreed to, including as to salvage and remediation operation.

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

required IYC to enter into a new contract with the salvor.  INA's consent included a waiver of subrogation rights. INA has reimbursed Halmos for none of these expenses.

81.    The Plaintiffs have been required to and have retained counsel to defend them and to prosecute those actions as described above.  Plaintiffs have also retained attorneys to represent them in this matter. The Plaintiffs have obligated themselves to pay a fee for these services and are entitled to have those fess and all attendant costs paid by INA.

82.    None of the claims, as described herein, were directly or indirectly the fault of Plaintiffs'.  The Plaintiffs have performed all conditions precedent and subsequent regarding these contracts or have been waived by INA or Strickland.

Plaintiffs' insurance Policies require payment "for any covered loss under this Policy within 30 days." The table below summarizes the protection for which Plaintiffs contracted only for those years in which claims under the Policies were made, yet payment was never received within 30 days when claims were properly submitted under the following "covered losses".

| CONTRACTED FINANCIAL PROTECTION | | |
|---|---|---|
| Policy Coverages | Policy YWRY06973504(2005)<br>Policy YWRY06973504(2004)<br>Policy YWRY06973504 (2001) | Policy YKRY05031205 (2005) |
| Payment Method | Amount of Policy Limits | Amount of Policy Limits |
| Property Damage<br><br>(Direct payment) | 2005: $16 million<br><br>2004: $14 million | 2005: $660,000<br>$660,000 |

|  | 2003: $14 million<br><br>2001: $14 million |  |
| --- | --- | --- |
| Salvage Charges<br><br>(Direct payment) | 2005: $16 million<br><br>2004: $14 million<br><br>2003: $14 million<br><br>2001: $14 million | 2005: $660,000<br>$660,000 |
| Protection Against Loss<br><br>(Reimbursement) | 2005:  $16 million<br><br>2004: $14 million<br><br>2003: $14 million<br><br>2001: $14 million | 2005: $660,000<br>$660,000 |
| Commercial Towing and Assistance<br><br>(Direct payment) | 2005: $50,000<br><br>2004: $50,000<br><br>2003: $50,000<br><br>2001: $50,000 | 2005: $1,500<br>$1,500 |
| Jones Act/ Maritime Liability<br><br>(Direct payment) | 2005:  $25 million<br><br>2004:  $25 million<br><br>2003:  $25 million<br><br>2001:  $25 million | 2005: $25 million<br>2005: $25 million |
| Medical Payments (per person occurrence) | 2005:  $100,000<br><br>2004:  $50,000 | 2005: $25,000<br>$25,000 |

**Civil Action No. 08-10084-CIV MARTINEZ-BROWN**

| | | |
|---|---|---|
| (Direct payment) | 2003:  $50,000<br><br>2001:  $50,000 | |
| Uninsured Boater<br><br>(Direct payment) | 2005:  $2 million<br><br>2004:  $2 million<br><br>2003:  $2 million<br><br>2001:  $2 million | 2005: $2 million<br>$2 million |
| Federal Longshoremen's and Harbor Workers' Compensation<br><br>(Direct payment) | 2005:  Statutory limits<br><br>2004:  Statutory limits<br><br>2003:  Statutory limits<br><br>2001:  Statutory limits | 2005:  Statutory limits<br>Statutory limits |
| Personal Property (each covered loss family members and unlimited guests)<br><br>(Direct payment) | 2005:  $100,000<br><br>2004:  $100,000<br><br>2003:  $100,000<br><br>2001:  $100,000 | 2005: $2,500<br>$2,500 |
| Operating Other Vessels<br><br>(Direct payment) | 2005:  $25 million liability<br>$16 million property damage<br><br>2004:  $25 million liability<br>$16 million property damage<br><br>2003:  $25 million liability<br>$16 million property damage<br><br>2001:  $25 million liability<br>$16 million property damage | 2005:  $25 million liability<br>$660,000 property damage<br><br>$25 million liability<br>$660,000 property damage |
| | | |

| | | |
|---|---|---|
| Defense Costs and Related Expenses<br><br>(Reimbursement or direct payment) | 2005:  unlimited<br><br>2004:  unlimited<br><br>2003:  unlimited<br><br>2001:  unlimited | 2005:  unlimited<br>       unlimited |
| Rental Reimbursement<br><br>(Reimbursement ) | 2005:  $50,000<br><br>2004:  $50,000<br><br>2003:  $50,000<br><br>2001:  $50,000 | |
| Crew Personal Property<br><br>(Direct payment) | 2005: $20,000 per crew member, or $140,000 for 7 person crew<br><br>2004: $10,000 per crew member, or $70,000 for 7 person crew<br><br>2003: $10,000 per crew member, or $70,000 for 7 person crew<br><br>2001: $10,000 per crew member, or $70,000 for 7 person crew) | |
| Loss of Charter Income<br><br>(Direct payment) | 2005:  $100,000<br><br>2004:  $100,000<br><br>2003:  $100,000<br><br>2001:  $100,000 | |
| Terrorism | 2005:  Statutory<br><br>2004:  Statutory | 2005:  Statutory |
| Total available | $663,693,000 | |

| Coverages at issue | Unlimited defense costs and expenses<br><br>Statutory FLHWC<br><br>Statutory terrorism | |
|---|---|---|

### IYC AND HPC CAUSES OF ACTION

### Count 1.     Breach of Contract – *Sol Damage*

83.      Plaintiff, IYC re-alleges paragraphs 18-32 and 80-83 as if fully set forth herein.

84.      Plaintiff, IYC obtained insurance for the S/Y Legacy and paid all applicable premiums.  See Exhibit 2.

85.      IYC timely and properly submitted claims under the INA Policy for the Sol collision incident.

86.      INA, breached the contract by: (1) unreasonably delaying claims processing; (2) promulgating bogus estimates and surveys; (3) making artificially low offers; (4) refusing to pay or settle legitimate and valid claims; (5) failing to make timely payment of legitimate claims; and (6) failing to properly increase Policy limits when requested, or by concealment, failing to disclose the basis for the failure to properly increase Policy limits.

87.      As a result of these breaches, IYC suffered harm and was deprived of benefits under the INA Policy.

88.      All conditions precedent and subsequent to IYC's right to recover have occurred, been performed, or been waived by INA.  As a result IYC is entitled to

**Civil Action No. 08-10084-CIV MARTINEZ-BROWN**

recovery for their damages which plaintiffs have incurred including reasonable attorney's fees and loss of use of monies.

WHEREFORE, IYC demands judgment for damages against INA, together with attorneys fees, prejudgment interest, costs, and such further relief as the Court deems just and proper.

### Count 2.    Breach of Contract – *Island Runner*

89.     Plaintiff, IYC re-alleges paragraphs 33-40 and 80-83 as if fully set forth herein.

90.     Plaintiff, IYC obtained insurance for the S/Y Legacy and paid all applicable premiums.  See Exhibit 3.

91.     IYC timely and properly submitted claims under the INA Policy for the Island Runner incident in July 2003.

92.     INA, breached the contract by: (1) unreasonably delaying claims processing; (2) promulgating bogus estimates and surveys; (3) making artificially low offers; (4) refusing to pay or settle legitimate and valid claims; (5) failing to make timely payment of legitimate claims; and (6) failing to properly increase Policy limits when requested, or by concealment, failing to disclose the basis for the failure to properly increase Policy limits.

93.     As a result of these breaches, IYC suffered harm and was deprived of benefits under the INA Policy.

94.     All conditions precedent and subsequent to IYC's right to recover have occurred, been performed, or been waived by INA.  As a result IYC is entitled to

recovery for their damages which plaintiffs have incurred including reasonable attorney's fees and loss of use of monies.

WHEREFORE, IYC demands judgment for damages against INA, together with attorney fees, prejudgment interest, costs, and such further relief as the Court deems just and proper.

### Count 3.    Breach of Contract – *Hit And Run*

95.    Plaintiff, IYC re-alleges paragraphs 41-45 and 80-83 as if fully set forth herein.

96.    Plaintiff, IYC obtained insurance for the S/Y Legacy and paid all applicable premiums.  See Exhibit 4.

97.    IYC timely and properly submitted claims under the INA Policy for the July 2004 Hit and Run incident.

98.    INA breached the contract by: (1) unreasonably delaying claims processing; (2) promulgating bogus estimates and surveys; (3) making artificially low offers; (4) refusing to pay or settle legitimate and valid claims; (5) failing to make timely payment of legitimate claims; and (6) failing to properly increase Policy limits when requested, or by concealment, failing to disclose the basis for the failure to properly increase Policy limits.

99.    As a result of these breaches, IYC suffered harm and was deprived of benefits under the INA Policy.

100.    All conditions precedent and subsequent to IYC's right to recover have occurred, been performed, or been waived by INA.  As a result IYC is entitled to

recovery for their damages which plaintiffs have incurred including reasonable attorney's fees and loss of use of monies.

WHEREFORE, IYC demands judgment against INA/ACE, together with attorney fees, prejudgment interest, costs, and such further relief as the Court deems just and proper.

### Count 4.   Breach of Contract – *Mongoose*

101.   Plaintiff, HPC re-alleges paragraphs 46-52 and 80-83 as if fully set forth herein.

102.   Plaintiff, HPC obtained insurance for the Mongoose and paid all applicable premiums.  See Exhibit 5.

103.   HPC timely and properly submitted claims under the INA Policy for the damages caused to the Mongoose in each of the two hurricane losses in 2005.

104.   INA, breached the contract by: (1) unreasonably delaying claims processing; (2) promulgating bogus estimates and surveys; (3) making artificially low offers; (4) refusing to pay or settle legitimate and valid claims; (5) failing to make timely payment of legitimate claims; and (6) failing to properly increase Policy limits when requested, or by concealment, failing to disclose the basis for the failure to properly increase Policy limits.

105.   As a result of these breaches, HPC suffered harm and was deprived of benefits under the INA Policy.

106.   All conditions precedent and subsequent to HPC's right to recover have occurred, been performed, or been waived by INA.  As a result HPC is entitled to

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

recovery for its damages which plaintiffs have incurred including reasonable attorney's fees and loss of use of monies.

WHEREFORE, HPC demands judgment for damages against INA, together with attorney fees, prejudgment interest, costs, and such further relief as the Court deems just and proper.

### Count 5.     Breach of Contract – *S/Y Legacy Wilma*

107.    Plaintiff, IYC re-alleges paragraphs 53-58 and 72-83 as if fully set forth herein.

108.    Plaintiff, IYC obtained insurance for the S/Y Legacy and paid all applicable premiums.  See Exhibit 6.

109.    IYC timely and properly submitted claims under the INA Policy for the October 2005 Legacy loss.

110.    INA, breached the contract by: (1) unreasonably delaying claims processing; (2) promulgating bogus estimates and surveys; (3) making artificially low offers; (4) refusing to pay or settle legitimate and valid claims; (5) failing to make timely payment of legitimate claims; (6) failing to properly increase Policy limits when requested, or by concealment, failing to disclose the basis for the failure to properly increase Policy limits; and (7) failing to pay claims arising out of NOAA's requirements/agreements as detailed in paragraphs72-82.

111.    As a result of these breaches, IYC suffered harm and was deprived of benefits under the INA Policy.

112.    All conditions precedent and subsequent to IYC's right to recover have occurred, been performed, or been waived by INA.  As a result IYC is entitled to

recovery for their damages which plaintiffs have incurred including reasonable attorney's fees and loss of use of monies.

WHEREFORE, IYC demands judgment for damages against INA, together with attorney fees, prejudgment interest, costs, and such further relief as the Court deems just and proper.

**Count 6.     Strickland – Breach of Contract For Failure To Procure Full Coverage**

113.   Plaintiff IYC re-alleges paragraphs 11-17 and 59-71.

114.   Plaintiffs retained the services of Strickland both orally and in writing to obtain the full coverage insurance policies for the S/Y Legacy.

115.    In early 2004, Halmos requested in writing that Strickland procure full coverage for the S/Y Legacy as the replacement value of the Legacy was $27 million after deducting depreciation.  Strickland undertook that duty.

116.   The process to procure adequate insurance continued throughout 2004 and well into 2005 when Hurricane Wilma hit.

117.   Strickland agreed to procure sull insurance coverage for the S/Y Legacy but failed to do so.

118.   On or about October of 2005 Hurricane Wilma destroyed the S/Y Legacy. At that time, the S/Y Legacy was still underinsured as a result of Strickland's failure to procure adequate insurance.

119.   IYC was damaged as a result of Strickland's breach in failing to procure adequate insurance by the time Hurricane Wilma hit and incurred loss of use of monies.

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

WHEREFORE, IYC demands judgment for damages against Strickland, together with prejudgment interest, costs, and such further relief as the Court deems just and proper.

**Count 7.     Strickland – Breach of Contract For Failure To Process Claims**

120.   Plaintiffs IYC and HPC re-allege 11-82.

121.   Plaintiffs retained the services of Strickland both orally and in writing from 2001 to the date of the filing of this action in 2008 to not only obtain the full coverage in the insurance policies for all covered vessels, but to also assist in processing and adjusting any and all claims that may be made.  Each given year, and each policy for that year was a new contract and imposed a new duty on Strickland to process and adjust on any claims arising out of the policy for that given year.

122.   Strickland accepted such responsibility but failed to carry out its responsibility.

123.    Strickland was the agent of INA and broker of record for Plaintiffs on all of the policies attached as Exhibits 2-6.

124.   Strickland breached its contract with Plaintiffs by failing to (a) give notice to all applicable insurers (and/or to advise Plaintiffs to give such notice), (b) advise Plaintiffs of all potentially applicable coverages through the various policies procured by Strickland for Plaintiffs; and (c) assist Plaintiffs in pursuing claims submitted to INA for losses incurred as a result of Sol, Island Runner, Mongoose and Legacy damages.

125.   Strickland had a ongoing duty from the date it procured the first insurance policy for Plaintiffs and breached its duty as of the filing of this action in October of 2008

when it failed to obtain payments for all claims made by IYC and HPC against INA, and forced Plaintiffs to file this action.

126.   Plaintiffs were harmed by these failures, and IYC in particular was harmed by having experienced a significant loss while underinsured incurred a loss of use of monies.

WHEREFORE, IYC and HPC demand judgment for damages against Strickland, together with prejudgment interest, costs, and such further relief as the Court deems just and proper.

### Count 8.     Breach of Fiduciary Duty—Strickland

127.   Plaintiff IYC re-alleges paragraphs 11-82 as if fully set forth herein.

128.   Strickland agreed to obtain insurance for IYC and the Legacy and to assist and adjust any claims which may arise.

129.   IYC trusted that Strickland would obtain the full coverage for the Legacy in 2005 and assist in any claims arising from damage to Legacy for that policy year.

130.   As a result, Strickland became IYC's agent and fiduciary for that purpose.

131.   As agent and/or broker and fiduciary, Strickland owed IYC a duty of care and a duty to exercise the skill of broker.

132.   Strickland was required to obtain the coverage up to full insurable value for the Legacy when it undertook the duty to do so, and was required to assist in the claims adjusting process.

133.   Strickland failed to attain full coverage and failed to assist in the claims adjusting process, a process that continues to this date, and as a result breached its fiduciary duty which caused damages to IYC including loss of use of monies.

134.    Strickland also breached its fiduciary duty by entering into "contingent commission" agreements for its own benefit and not disclosing the fact to IYC or HPC. As a result, Strickland put its own financial well being ahead of IYC and HPC's.

WHEREFORE, IYC demands judgment for damages against Strickland, together with prejudgment interest, costs, and such further relief as the Court deems just and proper.

### Count 9.     Declaratory Judgment –INA Policies

135.    Plaintiffs re-allege paragraphs 18-81 as if fully set forth herein.

136.    There is a present controversy between Plaintiffs and INA regarding coverage under each of the applicable INA Policies attached as Exhibits 2-6.  This Court may entertain that claim pursuant to 28 U.S.C. § 2201.

137.    There now exists an actual, real and substantial controversy between Plaintiffs and INA.

138.    The applicable INA Policies were in effect at all relevant times.

139.    Plaintiffs have, at all relevant times, complied with all conditions for coverage under the applicable INA Policies to the extent required by law.

140.    Plaintiffs are entitled to coverage as insureds under the applicable INA Policies.

141.    Those policies provide coverage for the losses submitted as claims to INA for the SOL, Island Runner, Hit and Run, Mongoose and Legacy/Wilma incidents, except as to the policy limits expressed for hull damage coverage for the Legacy/Wilma incident.

142.   Furthermore, the hull damage policy limit for the Legacy/Wilma incident was for replacement cost, not agreed value.

143.   The value of the Legacy immediately prior to being grounded by Hurricane Wilma should have been calculated and insured for $27 million.

144.   That ACE knew or should have known that policy limits with regard to the hull damage had been reached shortly after the grounding, and in any event no later than 30 days from the date of loss, and should have paid full policy limits at that time.

145.   That Peter Halmos was and is a "Covered Person" under the Policies in question, among other things, he is and was an "operator" of IYC and HPC vessels. Attorney fees have been incurred as well as a loss of use of monies.

WHEREFORE, IYC and HPC seek a decree of this Court declaring the entitlement to recovery under the policies as described above, together with attorneys' fees, costs, interest, and such other relief as this Court deems just and proper just and proper.

### Count 10.   Negligence-Strickland

146.   IYC and HPC re-allege paragraphs 11-81 as if fully set forth herein.

147.   Strickland owed a duty to IYC to obtain an increase in the insurance coverages applicable to the Legacy/Wilma loss described above and to inform IYC regarding the precise basis for the wrongful valuation of Legacy before the 2005 Policy was bound.

148.   Strickland also owed a duty to obtain payments on all claims submitted to INA for damages resulting from Sol, Island Runner, Mongoose and Legacy damages.

These were obligations and duties that Strickland undertook and continued to profess to be performing well into 2008 when this action was filed.

149.    Strickland failed to perform these duties as shown above by failing to obtain payments for the claims submitted and for failing to obtain increase in coverage.

150.    IYC and HPC suffered damages arising out Strickland's negligence including attorney fees and loss of use of monies.

WHEREFORE, IYC and HPC demand judgment for damages against Strickland, together with attorney fees, prejudgment interest, costs, and such further relief as the Court deems just and proper.

### Count 11.    Negligent Misrepresentation-Strickland

151.    Plaintiff, IYC, re-alleges paragraphs 59-71 as if fully set forth herein.

152.    Strickland undertook to obtain for IYC an increase in the hull damage liability limits for Legacy.  Such increase was to be effective immediately after the surveys were completed.

153.    Strickland owed a duty of care to see that it communicated truthful information to IYC.

154.    Strickland breached that duty by failing to exercise due care and negligently making the statements and representations enumerated in 59-71 supra, because it knew or should have known that the statements and representations were false.

155.    Strickland intended for IYC to rely on its representations.

156.    IYC justifiably relied on the statements and representations.

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

157.   IYC suffered a pecuniary loss, injury or damage as the proximate result of its reliance on the statements and representations in connection with the incidents described above including loss of use of monies.

WHEREFORE, IYC demands judgment for damages against STRICKLAND, together with attorneys' fees, prejudgment interest, costs, and such further relief as the Court deems just and proper.

### Count 12.   Fraudulent Inducement – INA

158.   Plaintiffs re-allege paragraphs 18-58 as if fully set forth herein.

159.   On the date that each of the policies were entered into (attached as Exhibits 2-6) INA made representations via the policy to Plaintiffs IYC and HPC that the policy terms provide for payment within 30 days of the loss.

160.   At the time that INA issued the policies with that language, it knew that it had no intention of paying a claim within 30 days and that the representations were false. Indeed, it knew that it had financial inducements to delay the payment of claims for years.

161.   INA intended that the representations induce each of the Plaintiffs to act on the representations by purchasing insurance policies from it, paying it the premiums assessed on such policies, incurring costs and executing contracts knowing at the time the Plaintiffs signed the policies that it did not intend to pay any claims within the 30 day time period.

162.   Plaintiffs were subsequently injured, when they relied on INA's material statements and beyond, above the policy limits when payments were not forthcoming within the 30 day time period and incurred attorney fees and loss of use of monies.

-31-

WHEREFORE, IYC and HPC demand judgment against INA, together with attorneys fees, prejudgment interest, costs, and such further relief as the Court deems just and proper.

### Count 13.   Fraud-INA

163.    Plaintiffs re-allege paragraphs 18-58 and 72-82 as if fully set forth herein.

164.    INA made representations on the date of entering into each insurance policy (attached as Exhibits 2-6) that in exchange for the premiums paid, it would make payments of claims within 30 days pursuant to the Policy terms.

165.    INA knew at the time of making the representations that such representations were false and failed to disclose that payments of claims would not be made within 30 days, causing injury to Plaintiffs above and beyond the policy limits.

166.    INA also committed the following specific acts of fraud:

a.    Wrongfully representing that the 2005 *Legacy* Policy did not cover additional property damage that might occur during salvage.  This representation was made directly to Peter Halmos by INA through its agents Pennekamp and/or Hutcheson on or about November 2005;

b.    Wrongfully represented, through its agents Pennekamp and Hutcheson, that the salvage damages portion of the 2005 Legacy Policy was an indemnity-type coverage: meaning that IYC and/or Peter Halmos had to contract and pay for the salvage operation and INA's only responsibility was to "reimburse," as it deemed appropriate within its own unilateral discretion.  INA stood to gain from this fraud, and did in fact gain, significant financial advantage at the expense of Plaintiffs, by having

Plaintiffs "front" the funding of INA's liability for salvage damages thus delaying payment of a claim for its own financial benefit.

c.      Conveying to HPC on September 15, 2005, through its attorney Pennekamp, that litigation costs were not covered under the policy causing Plaintiffs to pay attorney fees and costs;

d.      Wrongfully representing to Halmos that he must take all steps necessary to protect the Legacy;

e.      INA regularly engaged in a pattern of fraudulent conduct in connection with its "normal" claims handling as described in the allegations above pertaining to each event of loss.   The fraudulent pattern involved (1) beginning the claims adjustment process with a repugnantly low proposed estimate, coupled with an unrealistically limited "scope of work," for repair of the damaged vessel; (2) circulating the scope of work and these repair estimates to repair facilities potentially capable of repairing the damaged vessels, which thereby limited and interfered with Plaintiffs' ability to obtain a realistic scope of work and estimate:

For the **Island Runner** – Initial offer on May 20, 2005 of $50,565.00, on September 6, 2005 a new settlement offer of $78,000.00, then on January 11, 2006 yet another offer of $88,940.

For the **Mongoose –** On or about January 26, 2006, INA emails Mr. Halmos that the offer to settle the claim for Hurricane Katrina would be $23, 463.38.   On April 27,2006 INA sends a check for Hurricane Wilma damage for $16,497.38.  After Halmos would not agree, in February of 2008, INA agrees to pay $572,712.01 with reservation. Soon thereafter, INA issues payments of $393,034.34 without reservation of right.  Each

**Civil Action No. 08-10084-CIV MARTINEZ-BROWN**

"offer" was presumably based on a survey, yet the amounts increased exponentially from the first offer to the final offer.

167.   The material representations described above were made with the intent that each of the Plaintiffs would rely on them.

168.   These representations were false at the time they were made, and INA knew at the time the representations were made that they were false, or made such representations in reckless disregard of their truth or falsity.

169.   Each such representation was material.  Each of the Plaintiffs had the right to rely on such representations, and in fact did rely on such representations.  None of the Plaintiffs knew of the falsity of the representations.

170.   As a result, each of the Plaintiffs suffered damages in connection with the incidents described above including attorney fees and loss of use of monies.

WHEREFORE, IYC and HPC demand judgment  for damages against INA, together with attorneys fees, prejudgment interest, costs, and such further relief as the Court deems just and proper.

### Count 14.   Fraud-Strickland

171.   Plaintiff IYC re-alleges paragraphs 59-71 as if fully set forth herein.

172.   Strickland made representations to IYC that it would obtain an increase in the hull damage policy limits for Legacy.  In fact, on or about February 10, 2005, Vance represents that he has quotes all the way to 27 million.

173.   These representations were false at the time they were made, and Strickland knew at the time of making these representations that they were false, or made such representations in reckless disregard of their truth or falsity.

**Civil Action No. 08-10084-CIV MARTINEZ-BROWN**

174.   Each such representation was material.  IYC had the right to rely on such representations, and in fact did rely on such representations.

175.   IYC did not know of the falsity of the representations.

176.   Further, on or about 5/1/2003 Vance Barker represents that he informed INA of the Sol incident.  That statement was either false and material and was made with the intent that Plaintiffs would rely on it or INA's representation that notice was not received was false.  See Exhibit 9.  IYC did not know of the falsity and was damaged.  At all times, Strickland acted or INA's agent.

177.   As a result, IYC suffered damages in connection with the incidents described above including loss of use of monies.

WHEREFORE, IYC demands judgment for damages against STRICKLAND, together with attorney fees, prejudgment interest, costs, and such further relief as the Court deems just and proper

## IV.   PETER HALMOS'S CAUSES OF ACTION

### Count 15.   Breach Of Contract - INA

178.   Halmos re-alleges paragraphs 53-58 as if fully set forth herein.

179.   INA demanded that Peter Halmos personally "take all steps necessary" to protect the Legacy and mitigate damages to it and the environment.

180.   INA's demand constituted a demand which committed Halmos to perform, particularly by handling and supervising all matters dealing with the salvage, safety, and protection of the Legacy and the environment following the loss by Hurricane Wilma.

181.   INA was aware of all of the services being rendered by Halmos, encouraged him to do so, and received the benefit of those services.

182.   Halmos dedicated full time to the tasks assigned by INA from the date of the hurricane through to and including the resent. He also retained the services of Peter Halmos & Sons to assist him in carrying out his duties.

183.   As a result of his efforts, substantial value was received by INA for which Peter Halmos is entitled to be compensated.

184.   Peter Halmos is obligated to and has agreed to pay Peter Halmos & Sons for the services rendered by them, in assisting him in carrying out the duties assigned to him by INA

185.   Peter Halmos is indebted to Peter Halmos & Sons for service rendered by it and for which INA benefitted.

186.   Peter Halmos is entitled to be reimbursed for the reasonable value of his services rendered for INA's benefit including attorney fees and loss of use of monies.

187.   Peter Halmos has performed all conditions precedent and subsequent regarding the contract with INA.

188.   As a result of the services rendered by Peter Halmos, INA was benefitted and received millions of dollars of value.

WHEREFORE, Peter Halmos demands judgment for damages against INA, together with attorney fees, prejudgment interest, costs, and such further relief as the Court deems just and proper.

### Count 16.   QUANTUM MERUIT – NOAA Benefits

189.   Halmos re-alleges paragraphs 72-82 as if fully set forth herein.

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

190.    Halmos conferred a benefit on INA by negotiating and personally entering into contracts with NOAA which benefitted INA by allowing INA to avoid having to pay monies to NOAA that would have been due pursuant to the policy provisions.

191.    INA knew about and accepted the work done by Halmos and the benefit incurred by his negotiations with NOAA which saved INA $22 Million in fines covered under the subject policy.

192.    The circumstances are such that it would be inequitable for INA to retain the benefit without paying fair value for it and not paying for loss of use and monies.

WHEREFORE, Peter Halmos demands judgment for damages against INA, together with prejudgment interest, costs, and such further relief as the Court deems just and proper.

## Count 17.   Fraud – INA.

193.    Halmos re-alleges paragraphs 72-82 as if fully set forth herein.

194.    On or about November 2005, Halmos met with Pennekamp on the Legacy.

195.    At that time, Pennekamp made a material representation to Halmos that INA would take care of the NOAA issue and for him not to worry as it would be covered by the policy, as he would be the "manager of operations".

196.    At that time Pennekamp knew that the representation was false, material and that Halmos would rely on such a representation.

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

197.   Halmos in fact relied on that representation, only to later find out that Pennekamp had secretly agreed with NOAA to shift liability onto Halmos and thus Halmos was now on the hook for a personal fine by NOAA.

198.   Halmos expended countless hours in attorney fees, and personal time to negotiate with NOAA so as to undue the harm caused by INA and Pennekamp as well as loss of use of monies.

WHEREFORE, Peter Halmos demands judgment for damages against INA, together with prejudgment interest, costs, and such further relief as the Court deems just and proper.

### Count 18.    Fraud –Strickland

199.   Halmos re-alleges paragraphs 11-17 and 59-71 as if fully set forth herein.

200.   Strickland made representations to Halmos individually that Halmos would be an insured under the policy as he had previously been insured with Independent.

201.   These representations were false at the time they were made, and Strickland knew at the time of making these representations that they were false, or made such representations in reckless disregard of their truth or falsity and that Halmos would rely on them.

202.   Each such representation was material and made with the intention that Halmos would rely on them.

203.   Halmos did not know of the falsity of the representations, and as a result relied on them—in fact, only during the course of discovery in this action found out that he was not a named insured.

204.   As a result, Halmos suffered damages in connection with the incidents described above and loss of use of monies.

WHEREFORE, Halmos demands judgment for damages against STRICKLAND, together with prejudgment interest, costs, and such further relief as the Court deems just and proper.

### Count 19.   Fraud –Strickland

205.   Halmos re-alleges paragraphs 11-17, 59-71 as if fully set forth herein.

206.   Strickland undertook to obtain coverage for Halmos individually and for IYC an increase in the hull damage liability limits for *Legacy*.  Such increase was to be effective immediately after the surveys were completed.

207.   Strickland owed a duty of care to see that it communicated truthful information to IYC and Halmos.

208.   In turn, Strickland intended for Halmos individually to rely on the representations made to IYC and to Halmos individually.

209.   Strickland breached that duty by failing to exercise due care and negligently making the material statements and representations enumerated in paragraphs 11-25 and 60-74 supra, because it should have known that the statements and representations were false.

210.    Halmos justifiably relied on the statements and representations from Vance Barker that the hull damage liability for the Legacy would be increased to $27 million. Further, Halmos justifiably relied that the INA policy would have him as a named insured, as the previous policy obtained through Strickland with Independent had Halmos as a named insured.

211.    Halmos suffered a pecuniary loss, injury or damage as the proximate result of its reliance on the statements and representations in connection with the incidents described above.

WHEREFORE, Halmos demands judgment against STRICKLAND, together with interest, costs, and such further relief as the Court deems just and proper.

### V.    Jury Demand

212.    PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY FOR ALL ISSUES SO TRIABLE.

WHEREFORE, Plaintiffs respectfully pray that upon trial of this cause the Court enter judgment for damages awarding them:

a.    All actual damages suffered by Plaintiffs as a result of INA's acts and omissions, and those of its agents;

b.    All actual damages as a result of Strickland's acts and omissions;

c.    The declaratory relief sought by Plaintiffs as set forth above;

d.    Prejudgment interest at the rate allowed by law;

e.    Attorneys fees and costs; and

f.    Such other and further relief to which Plaintiffs may be justly entitled.


Respectfully submitted,

Joseph P Klock, Jr., Esq. FBN 156678
Jack C. Shawde FBN 0449874
JuanCarlos Antorcha, Esq., FBN 0523305
RASCO KLOCK REININGER PEREZ
ESQUENAZI VIGIL & NIETO
283 Catalonia Ave
Coral Gables, Florida 33134
jklock@rascolock.com

**Civil Action No. 08-10084-CIV MARTINEZ-BROWN**

jshawde@rascokloc.com
jantorcha@rascoklock.com
305.476.7105
305.476.7102 (Fax)

- and –

Hugh J. Morgan, Esq.
THE LAW OFFICE OF HUGH J. MORGAN
P.O. Box 1117
Key West, Florida 33041
Telephone:  (305) 296-5676
Facsimile:  (305)296-4331
hugh@hjmorganlaw.com

*Attorneys for Plaintiffs IYC and High Plains*

- and –
-

PETER HALMOS, *pro se*
c/o Meyers & Associates, CPA
5725 Corporate Way, #101
West Palm Beach, FL  33407
Telephone:  (561) 684-6604
Facsimile:  (561) 684-3381
gail@meyerscpa.com

_____
PETER HALMOS

OF COUNSEL:

SPOTTSWOOD, SPOTTSWOOD & SPOTTSWOOD
Jack Spottswood
500 Fleming Street
Key West, Florida 33040
Telephone:  (305) 294-9556
Fax:   (305) 292-1982
jack@spottswood.com

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

**Certificate of Service**

    I hereby certify that a true and correct copy of the foregoing document was served by CM/ECF and/or facsimile on counsel of record in this action on this 5th day of May, 2010:

Frank J. Sioli
Zascha B. Abbott
Brown Sims P.C.
Datran One – Suite 908
9100 South Dadeland Boulevard
Miami, Florida
Telephone:  (305) 274-5507
Facsimile: (305) 274-5517
fsioli@brownsims.com

Kenneth G. Engerrand
Michael A. Varner
P. Michael Bowdoin
Brown Sims p.c.
1177 West Loop South
Tenth Floor
Houston, Texas 77027-9007
Telephone: (713) 629-1580
Facsimile:  (713) 629-5027
kengerrand@brownsims.com
mvarner@brownsims.com

Scott Bassman
Dara Jebrock
Counsel for Defendant, Strickland
Cole, Scott & Kissane, P.A.
Dadeland Centre II
9150 S. Dadeland Blvd, Suite 1400
Miami, FL 33156
Facsimile: 305.373.2294
dara.jebrock@csklegal.com
scott.bassman@csklegal.com

David P. Horan
HORAN, WALLACE & HIGGINS, LLP
608 Whitehead Street
Key West, FL  33040
Telephone:  (305) 294-4585
Facsimile:  (305) 294-7822

**Civil Action No. 08-10084-CIV MARTINEZ-BROWN**

Clinton Sawyer Payne
DeMahy Labrador Drake Payne & Cabeza
Alhambra Center – Penthouse
150 Alhambra Circle
Coral Gables, FL  33134
Telephone:  (305) 443-4850
Facsimile:  (305) 443-5960
cpayne@dldlawyers.com


/s/ JuanCarlos Antorcha


4825-6346-8550, v.  1