IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

PETER HALMOS, et al.,

    Plaintiffs,

vs.

INSURANCE COMPANY OF NORTH
AMERICA, et al.,

    Defendants.
_____/

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER RELATED TO RESUMPTION OF CONNIE DENNIS'S DEPOSITION, MOTION FOR SANCTIONS, AND MOTION FOR TERMINATION OF *PRO HAC VICE* STATUS OF KENNETH ENGERRAND**

Before accusing a lawyer of acting in an unethical and unprofessional fashion, a fellow lawyer must think long and hard. Was the breach intentional? What were the circumstances? Was there any sense of contrition? Could the offending lawyer believe that his conduct had been appropriate?

In reaching a conclusion to seek sanctions and to ask for the termination of Attorney Kenneth Engerrand's *pro hac vice* status in this case, the fact is that not only is there no sense of wrongdoing, to the contrary, counsel has come out of the box, swinging, spraying charges against the Plaintiffs instead of accepting responsibility for what he had done.

On Friday, July 9, 2010, Steve Marino and Joe Klock traveled to Wilmington to take the deposition of INA's corporate representative. They brought with them a young paralegal, Johnathan A. Burke. The deposition proceeded without incident, with Judge



Klein presiding from Miami, and with Marino, Klock, and Johnathan, along with INA's counsel, Kenneth Engerrand, and its senior in-house counsel, John Roth, in Wilmington.

The preceding Friday, plaintiffs' counsel had made a decision to leave Johnathan to attend the deposition of INA witness Connie Dennis on Monday, as the questioning could take place from Miami, where counsel, JuanCarlos Antorcha, was remaining close to home as his wife was about to give birth. Klock and Antorcha reasoned that Johnathan could attend the deposition, hand exhibits over to Witness Dennis, and receive any exhibits in return. Messrs Engerrand and Roth were in Wilmington along with the witness.

Johnathan started out by sitting at the same end of the table as he had when Marino and Klock had been present, which put him several feet to one side of the court reporter, and diagonally opposite the witness and Mr. Engerrand, who sat opposite the court reporter. After walking up and down several times to deliver exhibits, Johnathan decided it made more sense to sit next to the court reporter as it would be closer to pass and receive exhibits. After settling in, he heard a clicking sound, looked around, and noted that Mr. Engerrand was tapping the foot of Witness Dennis at different points after questions were asked. Surprised, he texted a message to Antorcha in Miami with what he had just seen.  By way of example Jonathan texted Antorcha and stated: "Are you using exhibit 11? And, counsel taps the ladies foot whenever she isn't supposed to answer (I think)." Antorcha responded that Jonathan should make sure that what he saw was indeed fact: "Make sure about the foot tapping.  No to ex[hibit] 11." Jonathan



responded several minutes later: "Unless they are playing footsies." Soon thereafter, Jonathan responded "is that good enough" with the attached picture of the foot tapping between Engerrand and the witness. (Exhibit "A.")

An amazed Antorcha asked the witness and Mr. Engerrand if foot-tapping was going-on. Mr. Engerrand denied it; the witness admitted it. Antorcha then terminated the deposition.

Apparently, faced with the issue of how to handle what had to be a humiliating disgrace of one of its lawyers, INA decided to come out of its corner swinging and belching forth clouds of smoke to cover the "indiscretion." INA filed its 88 page (with exhibits) "MOTION FOR PROTECTIVE ORDER RELATED TO THE RESUMPTION OF CONNIE DENNIS' DEPOSITION" and accompanying exhibits. Was there an apology? Was there an explanation? No way! Instead, tons of dust was spread around – in an attempt to cover-up what had happened. That is bad enough, but think about it, they had to pow-wow together to decide how to respond, and after doing so, decided on the dishonorable path, which might have worked, but for the photo and for Jonathan's awareness.

It is INA's response which tells it all. This Court has been harsh at times with plaintiffs. Plaintiffs have taken it, but the hardest part has been the concern that this Court thought that plaintiffs were acting badly and litigating in bad faith. But isn't the proof in what one does?



How can INA justify this petty, irresponsible, unethical, and dishonest behavior and just launch a barrage of detritus unbecoming of anyone who has taken an oath as a lawyer. Look at the materials contained on the second page of INA's response as INA talks of the "foot *brushing*" caused by the close quarters under the table. Compare that to the photo, about which INA was unaware, that speaks volumes about INA's candor and truthfulness with the Court. What one sees is not close quarters, ones sees a Rosemary Wood-like stretch of Mr. Engerrand's foot, as he apparently repeatedly taps the foot of the witness while questions are being asked.

INA's answer to this really bad acting is to assault the plaintiffs for "once again manufactur[ing] a controversy." There is nothing to discuss. What needs to be done is that the deposition needs to be re-taken with a bundling board installed between whoever INA sends this time to take the deposition of Ms. Dennis as well as this Court's determination of how INA is to be punished.

What is ironic is that had INA chosen to simply apologize, perhaps this appalling behavior might have been capable of solution. But, INA has chosen to display its full colors like a male peacock on a mating dance. And, what one sees is a client and its lawyers bent on obfuscation, displaying an appalling lack of candor with the Court, and the immediate, carefully-planned strategy to cover-up.

One can only guess that Mr. Engerrand and his witness thought that with no special master present, no lawyers present for the plaintiffs, that the young paralegal



from Miami would either not notice or not know what to do. Unfortunately for INA, Johnathan did know what to do and did document it.

As the Court reviews INA's ridiculous reconstruction of what took place, look at the picture. Does the Court see a post? Does the Court see cramped quarters? Does the Court see any reason for Mr. Engerrand's tasteful shoe to be touching the witness's foot in its tortured Arthur Murray posture?

While it was improper for INA to take the first step, it is appalling that it decided to lie and attempt to cover-up, which might have worked if Johnathan had been sleeping at the switch or if he had not snapped the photo. INA's "motion for protective order" is a disgrace. It is the plaintiffs that need to be protected from INA, who at the very least should be required to pay the full cost of any future monitoring of depositions to avoid inadvertent "tapping" and to guarantee that some modicum of ethical behavior can be maintained.

As to Mr. Engerrand, perhaps the Eastern District of Texas countenances such behavior, but this District surely does not. Mr. Engerrand's practice privileges in this case ought be revoked, the full costs of the Dennis deposition levied against INA, Ms. Dennis's deposition be retaken in Key West or Miami at plaintiffs' discretion, with the Court retaining the discretion to strike her testimony if it becomes apparent that the coaching cannot be neutralized in the taking of a second deposition, and the Court disqualifying Brown Sims P.C. from proceeding as counsel for INA in this action.



CASE NO. 08-10084-CIV-MARTINEZ/BROWN

## ARGUMENT

INA wants to paint a picture that this episode is somehow Plaintiffs' fault. But, let's be clear, this issue has nothing to do with Judge Klein, who was not at the deposition and thus could not resolve the problem, was not privy to the picture attached to this motion, and since this isn't a discovery dispute but a question of witness coaching/tampering. It is quite telling that INA's motion is filled with red herrings:

a. It speaks of previous cancelled depositions.

b. It claims that there was a request that Chief Magistrate Judge Brown be brought on the phone to resolve the matter.

c. It cites to another "discovery crisis" manufactured by Plaintiffs.

d. It refers to a "CNA" of an expert witness who is yet to be designated as an expert by Plaintiffs.

What does this have anything to do with what INA's counsel did and is trying to cover-up? INA decided to man-it-up and try to bluff its way out of this ethical cul-de-sac by throwing everything else into its explanation to this Court of what occurred, but the foot tapping. This issue deserves the Court's full attention. The red-herrings in INA's motion should be left for another day.

On July 12, 2010 the deposition of Connie Dennis commenced. Ms. Dennis is a key witness as she was involved with the initial claims of the Sol incident and the Hit and Run incident. Mr. Antorcha took the deposition of Connie Dennis. While taking the



deposition of Ms. Dennis, Mr. Antorcha noticed that the witness would take approximately five seconds before responding to the questions, at times longer. On some key questions, the five seconds would elapse and followed by a: "I don't remember" response. At the conclusion of Antorcha's questions, Mr. Halmos began questioning Ms. Dennis.

Soon into Mr. Halmos' questions, Johnathan texted Mr. Antorcha that the attorney sitting next to the witness was tapping her foot on various occasions. Antorcha responded to Johnathan to make sure that what he saw was in fact what it appeared to be. Johnathan texted Exhibit A to Antorcha. (Though the feet in question do not have labels on them, the pink foot belongs to Ms. Dennis, the attacking black shoe to Mr. Engerrand.)

As anyone can clearly see, Ms. Dennis' foot and Mr. Engerrand's foot are clearly touching one another. Further, this doesn't seem to be a comfortable position for either individual, clearly indicating that the intent of having the foot next to each other was for the purpose of tapping her foot. Upon receiving the picture and seeing how awkward the stance of each individual was, Antorcha inquired as to each individual:

> **Mr. Antorcha**: Mr. Engerrand, are you tapping Ms. Dennis' foot during any of these questions . . .
>
> **Mr. Engerrand**: I don't know that I've been tapping her foot. I assumed there was a pillar next to me, so I'll move down. . . .
>
> **Mr. Antorcha**: Ms. Dennis.
>
> **The Witness**: Yes



>**Mr. Antorcha**: Has he been tapping your foot" And you're under oath here.
>
>**The Witness**: Yes.[1]

Prior to concluding the deposition, Antorcha asked Johnathan what he had seen and to put what he saw on the record.

>**Mr. Antorcha**: Can you please put on the record what you saw.
>
>**Mr. Burke**: I heard a tap . . . and I looked down, and I saw her lawyer's foot almost on top of hers. And what made it odd was she didn't move away. And as I continued to watch, it happened twice, so I let you know.[2]

Thankfully, isn't a picture worth a thousand words? There is no question that Mr. Engerrand's foot was tapping the witnesses. Mr. Engerrand would like for this Court to believe that Ms. Dennis' foot was the pillar to the table. Plaintiffs request that the Court take a look at the attached picture and conclude for itself where the nearest pillar on that table is. Enough games, enough blaming Plaintiffs for "smoke screens" and "delay," that is not what this is about. Enough pandering to the Court in an attempt to massage what clearly should be sanctioned. *See DE 898 at 6.*

To be clear, Plaintiffs are not asking for a postponement of the proceedings or anything that would delay this matter. The issue here is Mr. Engerrand coaching the witness by tapping her foot. That is it.

---

[1] *See Exhibit B, Tr. 74/15 – 75/25.*
[2] *Id. at Tr. 78/3-23.*



As this Court has held, "[u]nder Local Rule 30.1(A)(1), 'objections or statements which have the effect of coaching the witness, instructing the witness concerning the way in which he or she should frame a response, or suggesting an answer to the witness,' abusive deposition conduct, which is prohibited and sanctionable." See *Developers Surety And Indemnity Company v. Harding Village, Ltd.,* 2007 WL 2021939, *5 (S.D. Fla. 2007)(Brown. J). Plaintiffs believe that this Court should order Ms. Dennis to appear before it so that the Court can inquire as to what was said to her by her counsel, and whether she was coached in any way.

What occurred is just wrong. INA's response shows not only its true colors, but also how it views its duties to the Court. There was no mistake here. This was out and out witness tampering, followed by good ole misrepresentations of what had occurred. For sure, the old adage of a picture being worth a thousand words applies here.

CONCLUSION

Plaintiffs request that the following actions be taken by the Court:

1.  INA's motion should be stricken as impertinent and scandalous.

2.  This Court should conduct a hearing with Connie Dennis present for examination by the Court to determine what occurred unless INA will belatedly step up to the bench and admit what it did. If, the Court is convinced, at a minimum[3], the following should occur:

---

[3] Undersigned counsel is at serious odds with what should be the actual remedy. Who knows which of the previous depositions Mr. Engerrand performed the same "foot tapping." Who knows what affidavit or sworn document submitted by this individual suffers from the same



3. The deposition should be retaken.

4. The Court should retain power to strike both depositions if the evil effects of the coaching cannot be cleaned-up.

5. All further monitoring of discovery should be borne at the expense of INA.

6. Mr. Engerrand should have his privileges of practice in this case revoked because he has abused them and dishonored this Court and because his client, INA, with its in-house attorney present and observing, chose to take the low road intentionally.

7. The law firm of Brown Sims P.C. should be disqualified from representing INA in this action.

8. The Court should award counsel fees, deposition transcript fees, travel fees, and all other fees in connection with the original taking and subsequent taking of Ms. Dennis's deposition, any other court hearings on the topic, and the cost of defending this motion.

---

disrespect and unethical behavior. And, whether his law firm, partners and co-counsel are aware of Mr. Engerrand's technique. The problem we are faced with is that we do not know, and the gambit for sanctions can run from re-taking of the deposition to striking of INA's pleadings. Thus, undersigned counsel suggests the minimum that should be done, however, that by no means is meant to suggest to the Court that the full authority and power of this Court should not be used to sanction INA from any remedy this Court deems fit. *See Vargas v. Peltz,* 901 F. Supp. 1572, 1581 (S.D. Fla. 1995).



CASE NO. 08-10084-CIV-MARTINEZ/BROWN

Respectfully submitted,
Joseph P. Klock, Jr.  FBN 156678
Juan Carlos Antorcha FBN 0523305
RASCO KLOCK REININGER PEREZ
EASQUENAZI VIGIL & NIETO
283 Catalonia Avenue
Coral Gables, Florida  33134
Telephone: 305.476.7105
Facsimile: 305.476.7102

By:  /s/ Joseph P. Klock, Jr.

THE LAW OFFICE OF HUGH J. MORGAN
Hugh J. Morgan
P.O. Box 1117
Key West, Florida 33041
Telephone:  (305) 296-5676
Facsimile:  (305)296-4331
hugh@hjmorganlaw.com

SPOTTSWOOD, SPOTTSWOOD &
SPOTTSWOOD
Jack Spottswood
500 Fleming Street
Key West, Florida 33040
Telephone:  (305) 294-9556
Facsimile:  (305) 292-1982
jack@spottswood.com



11

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Joseph P. Klock, Jr.

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

### Service List

Frank J. Sioli
Zascha B. Abbott
BROWN SIMS P.C.
Datran One - Suite 908
9100 South Dadeland Boulevard
Miami, Florida 33156
Telephone: (305) 274-5507
Facsimile: (305) 274-551
fsioli@brownsims.com

Kenneth G. Engerrand
Michael A. Varner
P. Michael Bowdoin
Brown Sims p.c.
1177 West Loop South
Tenth Floor
Houston, Texas 77027-9007
Telephone: (713) 629-1580
Facsimile: (713) 629-5027
kengerrand@brownsims.com
mvarner@brownsims.com

Scott Bassman
Dara Jebrock
Counsel for Defendant,
Strickland
Cole, Scott & Kissane, P.A.
Dadeland Centre II
9150 S. Dadeland Blvd, Suite 1400
Miami, FL 33156
Facsimile: 305.373.2294
dara.jebrock@csklegal.com
scott.bassman@csklegal.com

David P. Horan
HORAN, WALLACE &
HIGGINS, LLP
608 Whitehead Street
Key West, FL 33040
Telephone: (305) 294-4585
Facsimile: (305) 294-7822
dph@horan-wallace.com

Clinton Sawyer Payne
DeMahy Labrador Drake Payne & Cabeza
Alhambra Center – Penthouse
150 Alhambra Circle
Coral Gables, FL 33134
Telephone: (305) 443-4850
Facsimile: (305) 443-5960

Peter Halmos, Pro Se
c/o Meyers & Associates, C.P.A.
5725 Corporate Way, #101
West Palm Beach, FL 33407

4814-9503-0023, v. 1

