IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

KEY WEST DIVISION

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

PETER HALMOS, et al.,

    Plaintiffs,

vs.

INSURANCE COMPANY OF NORTH
AMERICA, et al.,

    Defendants.

_____/

**PLAINTIFFS' REPLY TO INA'S RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF INA'S EXPERT MARK HOUCK AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, Peter Halmos ("Halmos"), International Yachting Charters, Inc. "(IYC") and High Plains Capital ("HPC")(collectively referred to as "the Plaintiffs") hereby file their reply to "Defendant Insurance Company of North America's Response to Plaintiffs' Motion to Exclude Testimony of INA's Expert Mark Houck" (D.E. 961)[1]. In support thereof, the Plaintiffs state the following.

In *Montgomery v. Aetna Casualty & Surety Company*, 898 F.2d 1537 (11th Circuit 1990), the Eleventh Circuit Court of Appeals held that the lower court erred in allowing the attorney to testify as to his legal opinion and stated:

> "An expert may not, however, merely tell the jury what result to reach. A witness may not testify to the legal implications of conduct; the court must be the jury's only source of the law. Donaldson testified that in his opinion Aetna had a duty to hire tax counsel in this case. This was a legal conclusion, and therefore should not have been admitted. The district court abused its discretion by allowing Donaldson to testify

---

[1] "Plaintiff's Motion to Exclude Testimony of IBA's Expert Mark Houck" is D.E. 838.

about the scope of Aetna's duty under the policy." (*Id.,* at 1541).

Consistent with the Eleventh Circuit's recitation of the law in *Montgomery*, the court in *United States v. Cross*, 113 F.Supp.2d 1282 (S.D. Illinois 2000) stated:

> [I]t must be posited as an *a priori* assumption [that] there is one, but only one, legal answer for every cognizable dispute. There being only one applicable rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge....As another court put it: 'Each courtroom comes equipped with a 'legal expert' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards. *Burkhart v. Washington Metropolitan Area Trans. Auth.,* 112 F.3d 1207, 1213 (D.C. Cir. 1997)". (*Cross,* 113 F.Supp. 2d at 1284).[2]

Mr. Houck is a lawyer. In the Plaintiffs' motion to exclude the testimony of INA's expert Mark Houck, the Plaintiffs argue that in violation of the clear law established by the Eleventh Circuit, Mr. Houck's export report improperly contains legal opinions as to several of the ultimate issues in the case, including whether the Plaintiffs claims are covered by the applicable insurance policies. In response to this argument, INA is forced to acknowledge the following:

> "It is recognized that some of Mr. Houck's opinions <u>may be interpreted</u> as legal opinions relating to the types of coverage provided by the insurance contracts at issue". (INA's Response, p. 3)(emphasis added).

> "While, admittedly, it is agreed that some of Mr. Houck's opinions <u>may be characterized as legal opinions</u> – to the extent that Mr. Houck opines on what is covered or not under the Policy...." (INA's Response, p. 9)(emphasis added).

Despite the clear law in the Eleventh Circuit set forth in Montgomery, INA simply cannot bring itself to come right out and admit that Mr. Houck's report and testimony in

---

[2] See also, *Konikov v. Orange County, Fl,* 290 F.Supp. 2d 1315 (M.D. Fla. 2003)(barring testimony of attorney as to the legal implications of conduct).

fact contain "legal opinions". Disingenuously, INA attempts to dance on the head of a pin by claiming that Mr. Houck's opinions "may" be interpreted as legal opinions – implying that Mr. Houck's "opinions" might not be "legal opinions". Instead, INA claims that "such opinions are merely a necessary predicate to Mr. Houck's explanation as to why INA did not unreasonably delay making payments or commit bad faith during the claims process." (INA's Response, p. 4). INA's attempt to dodge the obvious is belied by Mr. Houck's own words stating the purpose for which INA retained him:

> "I was retained on June 16, 2009 by Insurance Company of North America ("INA")...to review and render opinions regarding the claims submissions made by the insured, International Yacht Company ("IYC" or the "Insured") and its principal shareholder, Peter Halmos, to INA or its representatives under its marine insurance Policy No. YWR YO6973 (the "Policy") for reimbursement of losses, expenses and liabilities allegedly incurred by *S/Y Legacy* and/or her owner IYC as a result of Hurricane Wilma." (Initial Report, page 1.)[3]

Mr. Houck doesn't say, as INA posits, that his opinions are "mere predicates" to any further "explanations". Instead, Mr. Houck states: "The opinions rendered reflect my objective assessment of the coverages provided under the Policy as they apply to the claims as submitted by IYC...." (Initial Report, page 1).

Mr. Houck further admits that "to arrive at the opinions...I have reviewed and considered the Policy, applicable law....." (Initial Report, page 6). Mr. Houck ultimately sets forth 36 "opinions" – including his legal opinion that applying "applicable law" to what he perceives are the facts, certain claims are not covered under the applicable policy.

To emphasize the obvious – that Mr. Houck is indeed rendering "legal opinions" -

---

[3] Page references shall be to the pages as numbered in Mr. Houck's Initial Report and Addendum Report, and not to the court document page numbers.

- Mr. Houck's analysis contains citations to case law and his own view of that law. For example, Mr. Houck cites the Restatement (Second) of Contracts and Florida state law as support for his assertion that "the requirement upon each party for good faith and fair dealing in its performance and its enforcement is inherent in any contractual relationship". (Initial Report, page 17). Given the clear law set forth by the Eleventh Circuit, Mr. Houck's report and testimony should be stricken as outside the boundaries of acceptable expert testimony.

Furthermore, the law is established that it is improper for a purported "expert" to testify as an advocate for a party to the case since the expert's advocacy invades the province of the jury. See, e.g., *In re: Trasylol Products Litigation – MDl-1928*, Case No. 08-MD-01928-Middlebrooks/Johnson, unpublished "Order on Bayer's Motion to Exclude Testimony of Plaintiff's Expert Suzanne Parisian" [Doc 5606] at page 21)[4](citing *In re Rezulin Prods. Liab. Litig.*,309 F. Supp.2d 531,546 (S.D. N.Y.2004)[5] and *In re: Diet Drugs*, 2000 WL 876900, at *9 (E.D. Pa. 2000)). In the *In re: Trasylol Products Litigation* case, United States District Judge Donald Middlebrooks' order excluding the entire testimony of the plaintiff's expert was based, in part, because the expert:

> "[A]ssumes the role of Plaintiff's advocate in her presentation of the facts and invades the province of the jury....Dr. Parisian's major role in this litigation appears to be that of Plaintiff's advocate rather than expert. Her expertise is not required to present the factual narrative to the jury, and she has no expertise that allows her to infer Bayer's and FDA's knowledge and intent and present those inferences to the jury." (Order, pages 33 and 35).

In the instant case, the Plaintiffs motion to exclude sets forth the numerous

---

[4] A copy of the Order is attached as Exhibit A to the Plaintiffs' motion to exclude.
[5] In which the court held that "expert" testimony on motive or intent of corporations and regulatory agencies is inadmissible because it has not basis in any relevant body of knowledge or expertise and describes lay matters which the jury is capable of understanding without the expert's help).

examples of Mr. Houck's non-objective *ad hominem* attacks on Plaintiff Peter Halmos' character; the Plaintiffs argue that these attacks are clear evidence that Mr. Houck is nothing more than an advocate for INA – which personal attacks fly directly in the face of Mr. Houck's patently false assertion that "the opinions rendered reflect my **objective** assessment of the coverages provided under the Policy as they apply to the claims as submitted by IYC...." (Initial Report, page 1).

It is crystal clear that there is nothing "objective" about Mr. Houck's views. Being faced yet again with the problem of how to avoid the obvious, INA admits in its response that Mr. Houck's attacks upon Mr. Halmos' character as being "outlandish", "overreaching" and engaging in a "tournament or sweepstakes" is "strong language". (INA's Response, p. 9)[6]. INA then makes the totally false statement that "Plaintiffs have provided no authority to support their claim that this type of testimony should be excluded". INA apparently missed the Plaintiffs' citations to *In re: Trasylol Products Litigation – MDI-1928*, Case No. 08-MD-01928-Middlebrooks/Johnson, unpublished "Order on Bayer's Motion to Exclude Testimony of Plaintiff's Expert Suzanne Parisian" [Doc 5606] at page 21) (citing *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp.2d 531,546 (S.D. N.Y.2004) and *In re: Diet Drugs*, 2000 WL 876900, at *9 (E.D. Pa. 2000)).

In fact, it is INA that has cited no legal authority for to support its claim that Mr. Houck's advocacy is proper expert testimony. INA's position – that it is appropriate for Mr. Houck to testify to the tier of fact as to his highly negative "opinions" as to Mr. Halmos' character -- is abhorrent to the legal principles underlying proper expert

---

[6] Not surprisingly, INA fails to mention Mr. Houck's countless other attacks on Mr. Halmos cited in the Plaintiffs' motion to exclude, including but not limited to his characterization of Mr. Halmos' language as "laced with victimhood, vendetta, and vindication...."(Initial Report, p. 47), and his conduct being "designed to see if the insurer can 'catch me if you can'." (Initial Report, p. 34). This type of personal maligning has absolutely no place in expert testimony.

testimony for the following reason: even assuming *without conceding* that Mr. Halmos viewed these insurance claims as a "tournament sweepstakes", that bears <u>absolutely no legally relevance to the issue to be decided</u>: either the claims are covered under the terms of the Policy, or the claims are not covered, regardless of whether Mr. Halmos' views the claims to be "tournament sweepstakes". Mr. Houck's *ad hominem* attacks – and the reason that INA so desperately wants Mr. Houck to be able to spew his vitriol to the jury – are clearly intended to bias the jury against Mr. Halmos and in favor of INA so as to unduly influence the jury's decision on the ultimate legal and factual issues in the case. This cannot be condoned. As Bob Dylan once sang, "It does not take a weatherman to know which way the wind is blowing."

Finally, INA's pretzel logic as to how Mr. Houck's "opinions" can assist the trier of fact unravel under close scrutiny. INA argues that Mr. Houck should be allowed to render his "expert" opinion as to:

> "Assertions concerning the types of policies <u>generally issued to similarly situated yacht owners</u>....Those assertions....will be helpful when ascertaining the <u>intent of the parties in entering into the insurance contract at issue</u>." (INA Response, p. 6)(emphasis added).

It is patently absurd to suggest that from insurance policies "generally issued to similarly situated yacht owners" – whatever that means -- the trier of fact in this case could divine the intent of INA and the Plaintiffs in entering into the insurance policies at issue in this case under the particular facts of this case. First, INA assumes (with no citation to any legal authority) that in determining whether a claim is covered under the policies at issue in this case, the policies are so ambiguous such that testimony as to the intent of the parties would even be allowed. Second, even if INA could overcome

this legal hurdle and prove that it was necessary to resort to testimony as to the intent of INA and the Plaintiffs as to those policies, there is simply no logical (or other) connection between the intent of INA and the Plaintiffs and the nebulous concept of the "the types of policies generally issued to similarly situated yacht owners". Not only is Mr. Houck's concept of policies "generally issued to similarly situated yacht owners" so vague as to defy specific identification, but even if such a class and its members could be identified, it is incomprehensible for INA to assert that somehow Mr. Houck knows the intent of all the parties to those "generally issued" policies, and that intent of those parties is somehow legally relevant to the intent of INA and the Plaintiffs in this case. Assuming without conceding that such evidence was even legally necessary, the best evidence of the intent of the parties in this case is the testimony of INA and the Plaintiffs themselves – not Mr. Houck's pure conjecture and speculation as to that intent based upon "generally issued policies for similarly situated yacht owners."

INA cites a single case, *American General Life Insurance Company v. Schoenthal Family, LLC*, 555 F.3d 1331 (11th Cir. 2009) to support its argument that the entirety of Mr. Houck's testimony and report should be admitted as proper expert testimony. However, the *Schoenthal* case is easily distinguishable from the instant case. In *Schoenthal,* the insurance company brought an action to rescind a life insurance policy and deny a claim based upon alleged material misrepresentations by the insured in the application process as to the insured's net worth. The court ruled that the determination as to whether rescission was warranted depended in part upon the legal issue of whether the misrepresentations as to the insured's net worth were "objectively material." Under the Georgia state law statutes applicable in that case, a

misrepresentation is material if it is "one that would influence a *prudent insurer* in determining whether or not to accept the risk...." Because the applicable Georgia law required an analysis of whether a hypothetical "prudent insurer" would accept the risk if all of the true facts had been disclosed, the Eleventh Circuit held that it was proper to have an insurance expert testify as to what a hypothetical "prudent" insurance company would do under such circumstances.

First, unlike Mr. Houck who is a lawyer offering legal opinions as to the ultimate legal issues in the case in violation of the law set forth in *Montgomery v. Aetna Casualty & Surety Company*, 898 F.2d 1537 (11th Circuit 1990), the "expert" in *Schoenthal* was not a lawyer offering a legal opinion. Second, the expert in *Schoenthal* was allowed to testify as to what a hypothetical "prudent" insurer would do <u>because applicable Georgia law required that a legal determination be made on that issue</u>. As a matter of Georgia law, expert testimony on general insurance industry practices in the underwriting process were relevant to whether a hypothetical insurer would have issued the life insurance policy if all the facts as to the insured's net worth had been disclosed. This is materially different from the legal issues before this Court and the legal opinions of Mr. Houck. In the instant case, there is no legal standard mandated by statute requiring a determination of what a "hypothetical prudent" insurance company would or would not do in handling and paying the claims asserted by the Plaintiffs in this case. The ultimate issue in this case is: what did the policies at issue require, and what did INA do (or not do) to satisfy its obligations under the policies? Lastly, in *Schoenthal* unlike the instant case, there were no allegations that the "expert" was a biased advocate making numerous personal attacks on the opposing party thereby invading the province of the

jury. For the foregoing reasons, *Montgomery v. Aetna Casualty & Surety Company*, 898 F.2d 1537 (11th Circuit 1990) should control the outcome of this issue, and not *Schoenthal*.

Finally, INA suggests that many of Mr. Houck's opinions are not really "legal opinions" at all, but are instead something other than "legal opinions" -- presumably, non-legal opinions "based upon Mr. Houck's extensive experience with marine insurance matters..." (INA Response, p. 6). One is left to wonder if Mr. Houck's "extensive experience with marine industry insurance matters" is something different from his experience as a lawyer/advocate for clients and his practice of law. Mr. Houck's description of his "Qualifications" in pages 1 through 3 of his Initial Report focus almost exclusively on his practice of law in the marine insurance area, his publication of legal articles on that same area, and his teaching of the law in that area. Mr. Houck does not list any "extensive experience with marine industry matters" other than activity he undertook as a member of the bar representing clients, and teaching the law in this area – the latter of which is well within this Court's the province . Accordingly, it is evident that INA is yet again trying to shade the truth: that Mr. Houck is doing nothing other than providing "expert testimony" in the form of a series of legal conclusions, thereby invading the province of the Court, in order to "tell the jury what result to reach", while at the same time blatantly launching a barrage of *ad hominem* attacks on Mr. Halmos in an effort to prejudice the jury against Mr. Halmos and the other Plaintiffs by association.

## CONCLUSION

For the forgoing reasons, Mr. Houck's testimony and reports should be excluded in their entirety since the testimony and reports fail to pass the gatekeeper test set forth

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

in *Daubert v. Merrell Dow Pharmas., Inc.,* 509 U.S. 579, 592 (1993) and Rules 702 and 704 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Joseph P. Klock, Jr.  FBN 156678
Juan Carlos Antorcha FBN 0523305
RASCO KLOCK REININGER PEREZ
EASQUENAZI VIGIL & NIETO
283 Catalonia Avenue
Coral Gables, Florida  33134
Telephone: 305.476.7105
Facsimile: 305.476.7102

By:  /s/ Joseph P. Klock, Jr.

THE LAW OFFICE OF HUGH J. MORGAN
Hugh J. Morgan
P.O. Box 1117
Key West, Florida 33041
Telephone:  (305) 296-5676
Facsimile:  (305)296-4331
hugh@hjmorganlaw.com

SPOTTSWOOD, SPOTTSWOOD & SPOTTSWOOD
Jack Spottswood
500 Fleming Street
Key West, Florida 33040
Telephone:  (305) 294-9556
Facsimile:  (305) 292-1982
jack@spottswood.com

PETER HALMOS, pro se
c/o Meyers & Associates, CPA
5725 Corporate Way, #101
West Palm Beach, FL  33407
Telephone:  (561) 684-6604
Facsimile:  (561) 684-3381
gail@meyerscpa.com

By: _____

Page 10

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

RASCO KLOCK REININGER PEREZ
EASQUENAZI VIGIL & NIETO
Joseph Klock FBN 156678
Juan Carlos Antorcha FBN 0523305
283 Catalonia Avenue
Coral Gables, Florida 33134
Telephone: 305.476.7105
Facsimile: 305.476.7102

By: /s/ Joseph P. Klock, Jr.

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

## Service List

Frank J. Sioli
Zascha B. Abbott
BROWN SIMS P.C.
Datran One - Suite 908
9100 South Dadeland Boulevard
Miami, Florida 33156
Telephone: (305) 274-5507
Facsimile: (305) 274-551
fsioli@brownsims.com

Scott Bassman
Dara Jebrock
Counsel for Defendant,
Strickland
Cole, Scott & Kissane, P.A.
Dadeland Centre II
9150 S. Dadeland Blvd, Suite 1400
Miami, FL 33156
Facsimile: 305.373.2294
dara.jebrock@csklegal.com
scott.bassman@csklegal.com

Clinton Sawyer Payne
DeMahy Labrador Drake Payne & Cabeza
Alhambra Center – Penthouse
150 Alhambra Circle
Coral Gables, FL 33134
Telephone: (305) 443-4850
Facsimile: (305) 443-5960

Kenneth G. Engerrand
Michael A. Varner
P. Michael Bowdoin
Brown Sims p.c.
1177 West Loop South
Tenth Floor
Houston, Texas 77027-9007
Telephone: (713) 629-1580
Facsimile: (713) 629-5027
kengerrand@brownsims.com
mvarner@brownsims.com

David P. Horan
HORAN, WALLACE & HIGGINS, LLP
608 Whitehead Street
Key West, FL 33040
Telephone: (305) 294-4585
Facsimile: (305) 294-7822
dph@horan-wallace.com

4810-6356-2247, v. 1