THOMAS CAMPBELL
July 9, 2010

Page 1

1                    UNITED STATES DISTRICT COURT FOR THE
2                        SOUTHERN DISTRICT OF FLORIDA
                           KEY WEST DIVISION
3                    Case Number: 08-10084-CIV-BROWN

4      PETER HALMOS, INTERNATIONAL
       YACHTING CHARTERS, INC. AND
5      HIGH PLAINS CAPITAL,
              Plaintiffs,
6
       VS.
7
       INSURANCE COMPANY OF NORTH AMERICA
8      AND STRICKLAND MARINE INSURANCE, INC.
       (F/K/A STRICKLAND MARINE AGENCY, INC.),
9             Defendants.

10     *********************************************************

11
                       ORAL & VIDEOTAPED DEPOSITION OF
12                         THOMAS A. CAMPBELL
                             JULY 9, 2010
13
       *********************************************************

14

15

16          ORAL & VIDEOTAPED DEPOSITION of THOMAS A. CAMPBELL,

17     produced as a witness at the instance of the DEFENDANT,

18     and duly sworn, was taken in the above-styled and

19     numbered cause on the 9th of July, 2010, from 1:04 p.m.

20     to 5:37 p.m., before Trista Jamail, CSR in and for the

21     State of Texas, reported by stenographic means, at the

22     offices of BROWN SIMS, P.C., 1177 West Loop South, Tenth

23     Floor, Houston, Texas  77027, pursuant to the Federal

24     Rules of Civil Procedure and the provisions stated on the

25     record or attached hereto.

EXHIBIT
A

Republic Services, Inc.
(713) 957-0094

THOMAS CAMPBELL
July 9, 2010

Page 134

1    Sanctuary Act for NAFTA, turn to Page 61, and it will be

2    the second entry down, and the sixth entry down.

3            A.   Yeah.   Are there any other references to NAFTA?

4            Q.   I would assume there are, but these are the ones

5    I pulled for example purposes.

6            A.   I would imagine that it was a -- something that

7    was looked at and probably -- it would be part of what we

8    were -- at the time, what our intention was is to put

9    together the strongest claim we could against the federal

10   government in order to get them to release the vessel.

11   And that's -- that's -- that research, I assume, was

12   related to exploring whether or not we had a viable claim

13   under NAFTA.

14           Q.   And affirmative claim?

15           A.   Correct.

16           Q.   And I've seen research related to the court's

17   jurisdiction on this page as well.   Two from the bottom,

18   and the very bottom entry.

19                     Was that related to jurisdiction to make an

20   affirmative claim as well?

21           A.   As part of the overall strategy to get her -- to

22   get the vessel released, yes.

23           Q.   I've seen a number of entries throughout these

24   pre-January 5th, 2007 entries related to media work.

25           A.   Uh-huh.

Electronically signed by Trista Jamail (601-056-100-7893)                    51ccf324-2c06-4471-a55c-986779df356f

THOMAS CAMPBELL
July 9, 2010

Page 135

1          Q.   Is that a "yes"?

2          A.   It is.

3          Q.   And you were working with Peter Halmos'

4     publicity agent, for lack of a better term?

5          A.   Correct.

6          Q.   And you are requesting -- or plaintiffs are

7     requesting reimbursement for dealing with the PR

8     consultant?

9          A.   Absolutely.

10          Q.   Can you tell me why INA should pay for work with

11     the PR consultant?

12          A.   Yes.

13                    JUDGE HUBBART:   Speak up, please.

14          A.   Can we repeat the question so everyone can hear?

15          Q.   (BY MR. BROWNING)   Can you tell us why INA

16     should pay for Pillsbury's work with a PR consultant?

17                    JUDGE HUBBART:   It's still not loud enough.

18     I don't know if you're close enough to the speaker.

19                    MR. BROWNING:   We're real close to you.

20     Sorry.

21          Q.   (BY MR. BROWNING)   Can you answer the question?

22          A.   Yeah.   The question was whether -- why it is

23     that INA should pay for a media consultant and reimburse

24     Peter's cost for a media consultant.

25                    In cases like this, I -- I will bring in a

Electronically signed by Trista Jamail (601-056-100-7893)

51ccf324-2c06-4471-a55c-986779df356f

THOMAS CAMPBELL
July 9, 2010

Page 136

1   media consultant.  When you are dealing with a case where

2   the government is off base and doing something that they

3   shouldn't be doing, sometimes the best way to back them

4   off is to put some pressure in the press.

5        Q.  In fact, I think I saw an e-mail from you

6   talking about how it was important for you to create a

7   media firestorm or something to that effect to --

8   regarding the issue involving the Legacy.

9             Do you remember --

10       A.  I don't remember that, but oftentimes when I'm

11  involved in cases like this and -- and trying to achieve

12  a settlement, there is nothing more effective than

13  getting the government exposed for some of the

14  unreasonable practices that it's engaging in.

15       Q.  So not having to do with the merits, just having

16  to do with --

17       A.  Absolutely the merits.  Absolutely the merits.

18  The merits are sometimes the government gets off track,

19  and when you shine the light of public scrutiny on their

20  bad acts, it's the best disinfectant in the world.

21       Q.  Your intention was to create media pressure; is

22  that correct?

23       A.  Correct.  Media pressure in order to effect a

24  settlement.

25       Q.  As we sit here today, you have no evidence that

Electronically signed by Trista Jamail (601-056-100-7893)

51ccf324-2c06-4471-a55c-986779df356f

THOMAS CAMPBELL
July 9, 2010

Page 137

1    it actually did so; is that correct?

2        A.   There were articles and there was a -- I have a

3    lifetime of evidence in cases of exactly this kind.  In

4    fact, I'm in the middle of one right now where we're

5    employing very similar strategies.

6        Q.   Did anybody from NOAA tell you that because

7    there was a media strategy, they fell to their knees and

8    settled the case, or anything to that effect?

9        A.   I have ten years --

10              MR. BROWNING:  Objection, nonresponsive.

11       Q.   (BY MR. BROWNING)  My question, sir, is did

12   anybody with NOAA tell you something to -- that or

13   something to that effect?

14              JUDGE HUBBART:  Let him answer the

15   question.  He's trying his best.  Go ahead.

16       A.   I've been working on these cases for 25 years

17   now, and I know that media makes a difference.  And I do

18   believe that in this case, it was effective.

19       Q.   (BY MR. BROWNING)  I understand that you believe

20   that, sir, but that's not my question.

21              My question is, did anybody from NOAA tell

22   you that?

23       A.   They wouldn't.

24       Q.   That's not my question.

25       A.   So they didn't.

Electronically signed by Trista Jamail (601-056-100-7893)          51ccf324-2c06-4471-a55c-986779df356f