IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

```
FILED by _LAH_ D.C.

OCT 19 2010

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI
```

PETER HALMOS, et al.,

    Plaintiffs,

vs.

INSURANCE COMPANY OF NORTH AMERICA, et al.,

    Defendants.

_____/

## PRO SE PLAINTIFF'S OBJECTION TO BIASED
## AND PREJUDICED COURT ORDERS

    Throughout this litigation, Your Honor has consistently disparaged Plaintiffs and frequently ruled inconsistent with the competent evidence. Your Honor's Orders are clothed in hostility and express unfounded opinions as to my conduct, when the need for the hostile language was never present. As a result, Peter Halmos, pro se, hereby objects to this Court's biased, antagonistic and prejudiced Orders.

## I.    UNSUBTANTIATED VILIFICATIONS

    Your Honor has consistently issued Orders using language that are superfluous, ad hominem aspersions in connection with decisions that manifestly disregard the accurate and true facts. It is one thing for a judge to issue orders that determine issues of law and fact. Such an order would be proper. I can always disagree with them and take the issue up on appeal if I want to. It is a completely separate issue, as is the case before this Court, when Your Honor's Orders are filled with attacks on my character, conduct and integrity when, to

date, Your Honor has yet to have me in Court and under oath in order to determine whether such personal attacks are founded.  A few examples follow:

| _DATE_[1] | _D.E. #_ | _ORDER TITLE_ | _MANIFEST BIAS AND PREJUDICE_ |
|---|---|---|---|
| 08-19-09 | 211 | Order Re: Motion for Protective Order | ... arguably unprofessional –compounded by any lack of courtesy.... |
| 09-11-09 | 247 | Order Re: Motion to Compel Production | ...This is a "scatter gun approach" ... never ending quest to litigate and re-litigate in this case, plaintiff would like at least one or perhaps two more "bites at the apple" ... another round of litigating ... shot-gun fishing expedition.... |
| 10-29-09 | 364 | Order Re: Extra-Contractual Claims | And the beat goes on ... Fantastic!! ... Plaintiffs – forget about filing a reply.... |
| 11-13-09 | 405 | Order Granting Motion to Lift Stay | ...They audaciously suggest.... |
| 11-19-09 | 417 | Order Re: Motion for Extension of Time | ...litigate this case ad infinitum.... |
| 02-17-10 | 510 | Order Re: Motion for Reconsideration (472) | ..."gotcha" practice.... |
| 02-17-10 | 511 | Order Denying Motion for Reconsideration (466) | ...Disingenuous ... This–quite simply is gall! ... Plaintiffs gall increases ... It should surprise no one.... |
| 03-02-10 | 541 | Order Re: Motion for Contempt | ...audacious at best ... ignoring their own commitments and agreements! ... flirt with unprofessional conduct.... |
| 04-01-10 | 629 | Order to Show Cause | ...plaintiffs and the unimaginable audacity with which they proceed ... incredible story ... unconscionable ... This is absurd! ... Court is unaware of any viable excuse for plaintiffs' actions in this case ... Plaintiffs' latest disregard of orders of the Court ... |

[1] Orders as of September 10, 2010.

|  |  |  | egregious and warrants consideration of dismissal of the case.... |
|---|---|---|---|
| 04-16-10 | 651 | Order Re: Pending Matters | ...plaintiffs' actions in this case to be subject to very close scrutiny ... It was made "crystal clear" to plaintiffs what was expected.... |
| 04-21-10 | 667 | Order Re: Ex-Parte Emergency Motion for Protective Order | ...vexatiously and unreasonably multiplying the proceedings herein.... |
| 06-14-10 | 751 | Order Re: Motion for Extension of Time | ...audacity of plaintiffs continues to amaze.... |
| 06-28-10 | 798 | Order Denying Expedited Motion to Continue Discovery Cutoff | Plaintiffs never cease to amaze! ... It is unconscionable ... this is not the first time this has happened ... but, perhaps, it will be the last ... more egregious ...want the "clock" to start all over ... ... plaintiffs need to get the message (which they clearly haven't , yet).... |
| 07-20-10 | 877 | Order Re: Motion for Protective Order | The beat goes on – but rises to new heights. This attempt at "discovery" ... lengthy string of actions by plaintiff IYC which, among other things, "multiplies the proceedings ... unreasonably and vexatiously" ... proceeding down a path of obfuscation, delay, and improper and inappropriate activity ... plaintiff's smokescreens ... heightened, if that were possible, by seeking sanctions against INA ... constitutes bad faith ... **FURTHER TRANSGRESSIONS ... DISMISSAL WILL BE THE ONLY REMEDY LEFT**. (Emphasis original) |
| 07-22-10 | 882 | Order Granting Non-Parties' Motion to Quash and Motion for Protective Order | The Court finds it quite remarkable ... rhetoric to new heights! ... absurdity of the depositions noticed ... plaintiffs, incredibly, refer to ... last minute ploy ... intended to harass the potential deponents, run up the bills, and delay the proceedings even more ... "unreasonably and vexatiously" |

| | | | multiplying the proceedings.... |
|---|---|---|---|
| 07-28-10 | 900 | Order Re: Amended Motion for Sanctions (795) | ...plaintiff is "playing games".... |
| 08-24-10 | 1004 | Order Re: Motion for Enlargement of Time | Plaintiffs' gall continues to rise to new heights ... a complete mystery ... Counsel brazenly suggests ... The height of audaciousness ... They dare argue ... Apparently with all the years of experience and expertise in the plaintiffs' legal camp, no one has figured out that affidavits can be used in support of summary judgment! ... the motion is absurd on all fronts.... |
| 08-25-10 | 1007 | Order Re: Plaintiffs' Motion ... To Strike Knowles Expert Report | ...flaws in plaintiffs' motion ... uncontradicted evidence ... That they were not produced in a pretty package with a bow on it is not a basis for striking same ... plaintiffs completely avoid the issue ... The purported reason for same, to be kind, leaves much to be desired ... this helped supply ammunition for plaintiffs to attempt to "snooker" defendant and have the expert stricken.... |
| 09-02-10 | 1020 | Order and Notice of Hearing – D.E. 887 and 918 | ...odious squabble.... |
| 09-03-10 | 1022 | Order Overruling Objections to Special Master's Ruling | ...plaintiffs confuse a records custodian deposition with that of a corporate representative ... plaintiff's attempt to hide behind Fed.R.Civ.P. 34 would turn a deposition that should last hours into days or even weeks ... was unable to answer questions and provide information with a reasonable degree of promptness ... abuse of discretion ... plaintiffs' unappreciated gratuitous comments.... |

| 9-10-10 | 1029 | Order Enforcing Settlement Agreement | ...The Court has no recollection, one way or the other, as to whether this was said in chambers ... Plaintiffs take extreme literary licence ... Mr. Halmos was an active participant in the Courtroom when the agreement was memorialized ... simply wasn't there. Did Mr. Halmos change his mind at the time about insisting on same? (Assuming for the sake of argument he raised it the first time, as he claims) ... Has Mr. Halmos changed his mind back again, thus the issue? ... plaintiffs' objective here is to try to reform the release ... absolutely nothing to support that claim ... This is yet another chapter in plaintiffs' apparent "litigation for the sake of litigation" ... clearly never discussed.... |
|---|---|---|---|

Your Honor habitually castigates me by, among others, speculating about my motives as to which Your Honor has no valid information. In fact, some of Your Honor's Orders, when more closely analyzed, arguably reveal pervasive bias and prejudice.

## II.   ANALYSIS OF SEPTEMBER 10, 2010 ORDER ENFORCING (STRICKLAND) SETTLEMENT (D.E. 1029)

**A.   "...Plaintiff ("Halmos") insisting on reciprocal releases ... nothing to indicate that this matter was ever discussed with defendant ("Strickland") much less that there was agreement to same ... Halmos insists ... he stated to the Court in chambers, that he would only agree if there were mutual releases ... The Court has no recollection, one way or the other, as to whether this was said in chambers...."** (Emphasis original) (Order, p. 2)

This Order omits known and essential facts including: (1) Your Honor, as mediator, volunteered the Strickland settlement to Plaintiffs in chambers.  (2) Your Honor, as mediator, was the exclusive Strickland settlement negotiator.  (3) Reciprocal releases "from the other agents" is the only precondition to settlement that I raised for Your Honor to negotiate with Strickland.  (4) Mr. Klock raised for Your Honor to negotiate the provision that Strickland only cooperates with Plaintiffs.  (5) Six witnesses were present in Your Honor's chambers.

5

Plaintiffs rightfully relied on Your Honor to accurately and truthfully convey settlement terms to Strickland and trusted Your Honor to accurately and truthfully tell Plaintiffs if Strickland does not agree. Your Honor did not tell Plaintiffs Strickland refused reciprocal releases or exclusive cooperation. Consequently, Plaintiffs had every reason to trust Your Honor that these issues had been discussed with Strickland and agreed.

**B.      "...There is no dispute (reciprocal releases) were never mentioned in Court ... (1) The Court admonished the parties to speak up if there was 'anything that we need to add' ... (2) plaintiffs were specifically asked if there was anything they wished to add... (3) the Court had forgotten about releasing the agents and was reminded of same by defendant – which Mr. Klock specifically agreed to; (4) Mr. Halmos was an active participant in the Courtroom when the agreement was memorialized ... ; and (5) Mr. Halmos made very clear .. on behalf of all plaintiffs, that he wanted this settlement to take place...."** (Order, p. 2)

1.      Reciprocal releases were, in fact, "mentioned in Court":

(a)      "Announcing" the "settlement agreement" in Court, rather than having a duly executed writing, was Your Honor's decision. Yet Your Honor prohibited Plaintiffs' participating counsel from attending.  Only Mr. Klock, Mr. Morgan and I were allowed to attend whereas four other participating counsel were required to remain in chambers.

(b)      In Court, Your Honor stated: **"...the plaintiffs and Strickland will execute mutual releases. INA and Strickland are exchanging mutual releases. Anything further the Plaintiffs wish to add?"** (May 6, 2010 Hrg. Tr., p. 10) As to the foregoing, there is nothing to add. Plaintiffs had agreed to mutual releases with Strickland.

(c)      Strickland counsel Bassman then   interjected: **"It was also agreed upon, I believe by the Plaintiffs, to release all of the other agents....":**

The Court:      **Thank you. Thank you. Thank you. You are**

6

> **correct sir ... Plaintiffs have further agreed, as a
> condition of this settlement, to release ... I wish I
> had the names here ... that is an additional part
> of the release correct, Mr. Klock?**

<u>Mr. Klock</u>:    Yes sir.

(Tr., p. 12)

Clearly, Your Honor – as mediator and sole negotiator – had discussed releases "of the other agents" with Strickland. Your Honor, however, never once disclosed that "the other agents" will not be reciprocally releasing Plaintiffs. Mr. Bassman did not say "the other agents" are not releasing Plaintiffs. Therefore, Plaintiffs had every reason to trust that Plaintiffs' settlement precondition for reciprocal releases had been secured by Your Honor. Mr. Klock answered correctly to the question Your Honor posed, *i.e.,* an **"additional part"** of the settlement terms is that **"Plaintiffs further agreed ... to release...."** Nothing was stated or implied in Court that releases are not reciprocal, which Your Honor, as both mediator and judge, knew is a non-negotiable precondition.

    2.    Then, for the first time, Your Honor revealed that Strickland will also "cooperate" with INA in direct contravention of Mr. Klock's settlement precondition entrusted to Your Honor to negotiate:

> <u>The Court</u>:    **As a condition of INA exchanging a mutual
> release with Strickland, Strickland, Strickland's
> personnel are going to cooperate with INA as
> well.**

(Tr., p. 14)

    3.    Upon hearing this, Mr. Klock protested that, at minimum, "every form of cooperation that Strickland provides to INA or ACE would also be provided to us." (<u>See</u> *Id.*) In response to Mr. Klock, Your Honor began yelling, which resulted in palpable intimidation of Plaintiffs:

7

| The Court: | **No discussions about that ... That request is denied**. If you want to invalidate the settlement tell me now.  I will leave... |
|---|---|
| Mr. Klock: | Your Honor, number 1, I never understood ... I don't think that it is... |
| The Court: | **Mr. Klock, we are done**. Are you invalidating the settlement or not. |
| Mr. Halmos: | No.[2] |
| The Court: | I heard somebody say "no." Who was the somebody? |
| Mr. Halmos: | No. We are not invalidating. |
| The Court: | Mr. Halmos, are you making that statement individually or individually and as CEO of the two corporations? |
| Mr. Halmos: | In the aggregate. |
| The Court: | Thank you sir.[3] |

(Tr., pp. 14-16)

    4.    Then, Strickland raised a new settlement term:

| Mr. Klock: | New Term. We don't agree. |
|---|---|
| The Court: | **(Yelling) OK. No settlement. Okay. We are done.** |
| The Clerk: | All rise. |
| The Court: | No. That's not fair. |

---

[2] I accepted elimination of Mr. Klock's "cooperation" precondition entrusted to Your Honor, as mediator, to secure only to demonstrate to Your Honor Plaintiffs' good faith intent to settle this litigation expeditiously. Strickland did not concede anything. Your Honor, as mediator and sole negotiator, had not accurately disclosed to Plaintiffs the terms of settlement Your Honor had made with Strickland.

[3] Your Honor prejudicially adjudicates in Orders, without any competent evidence, that Plaintiffs are: **"vexatiously and unreasonably multiplying the proceedings"** (April 21, 2010 Order Re: Ex-parte Emergency Motion for Protective Order [D.E. 667]; July 22, 2010 Order Granting Non-Parties Motion to Quash and Motion for Protective Order [D.E. 822]), and, among others, **"litigate for the sake of litigation"** (September 10, 2010 Order Enforcing Settlement Agreement [D.E. 1029]).

| | |
|---|---|
| Mr. Klock: | That is not fair ... Your Honor, respectfully, when a new term is introduced ... that was not discussed... |
| The Court: | (**Yelling** at Mr. Klock) **SIT**. |
| Mr. Klock: | It is not fair to add them now. |
| The Court: | (**Yelling** at Mr. Klock and me) **Mr. Klock, take your seat. Now you are trying my patience. Okay. Mr. Halmos, this is one of your lawyers, okay, and he is trying my patience...** |

        Mr. Bassman: **Because we agreed to a mutual release....**[4]

(Tr., pp. 16-18)

      5.    The transcript does not show that Your Honor was consistently yelling at Mr. Klock (and me) but not at counsel for Strickland. Given Your Honor's (a) yelling; (b) omission of anything that would indicate that mutual releases did not apply to all releases; (c) palpable, overbearing intimidation, I was simply afraid to say anything that could incur Your Honor's wrath. But then Your Honor stated:

| | |
|---|---|
| The Court: | **Okay. If you throw in an additional condition that Mr. Halmos has to swim the Atlantic, I am going to have a problem with that.** |

(Tr., p. 19)

      6.    Given this above representation, I trusted Your Honor that reciprocal releases from all released non-parties are intact. For Plaintiffs to voluntarily agree to release non-parties without reciprocal releases would be suicidal, like trying to swim the Atlantic.

    **C.**    **"The first reason the mutual release claim is not found to be part of the agreed settlement is because it simply wasn't there ... further support for the fact that the mutual releases were never a part of the agreement is the fact that defendant could not have agreed to same if it wanted to. Those releases involved entities who were not parties to the lawsuit...."** (Order, pp. 2-3)

---

[4]  Bassman's representation and Your Honor's silence further confirmed to me that Strickland agreed to mutual releases for all persons/entities Plaintiffs are releasing.

Your Honor's Order, for the first time, revealed that Your Honor knew at the May 6, 2010 hearing and failed to disclose that Strickland could not agree to reciprocal releases from non-parties even if it wanted to. In my opinion, this demonstrates a damning betrayal of mediation and judiciary duties. To side-step Your Honor's betrayals, from Plaintiff's subsequent August 27, 2010 Brief, Your Honor plucks out the following snippet for inclusion in the September 10, 2010 Order:

> **"Plaintiffs' most telling comment that: 'Strickland does not want to agree to this rather [mutual releases] basic term...' (page 3 of the brief) indicates that plaintiffs' objecting here is to try to reform the release. Nowhere does it say that Strickland did, in fact agree to this condition ... probably because there's absolutely nothing to support that claim."** (Order, p. 3)

Your Honor's bias and prejudice is here manifest. Given that Your Honor was the only negotiator go-between with Strickland, Plaintiffs and their counsel only knew what Your Honor chose to disclose to us. During the May 6, 2010 proceedings, Your Honor concealed Strickland's inability to procure reciprocal releases known only by Your Honor and Strickland.

**D.** **"This is yet another chapter in plaintiffs apparent 'litigation for the sake of litigation' strategy as has been noted in this case on numerous occasions ...."** (Order, p. 3)

The May 6, 2010 proceedings demonstrate that contrary to "litigation for the sake of litigation," Plaintiffs and their counsel not only mediated in good faith but actively worked on the record to end this litigation.

## III.   ANALYSIS OF JULY 20, 2010 ORDER DENYING DUE PROCESS IN DISCOVERY

Your Honor's inconsistent and contradictory discovery rulings continue to punish

10

Plaintiffs and compromise their rights in this case.

> A.   **"This attempt at 'discovery', which has absolutely nothing to do with any claim in this lawsuit, relates back to Plaintiffs' own motion filed November 6, 2009, which raised a collateral issue having nothing to do with the claims in this case. A review of the current complaint ... reveals it has no claims related to the matters to which this 'discovery' relates ...:**
>
> > **"THE FEDERAL RULES OF CIVIL PROCEDURE STRONGLY FAVOR A FULL AND BROAD SCOPE OF DISCOVERY WHENEVER POSSIBLE, ALLOWING A PARTY TO OBTAIN DISCOVERY OF ANY MATTER, NOT PRIVILEGED, THAT IS RELEVANT, ... 'TO THE CLAIM OR DEFENSE OF ANY PARTY'".** (Emphasis Added) (<u>Rosenbaum v. Becker & Poliakoff, P.A.</u>, No. 08-CV81004, 2010 WL 623699 at *1 (S.D. Fla. Feb. 23, 2010))

(July 20, 2010 Order Re: Motion for Protective Order [D.E. 877], pp. 1, 3)

Your Honor sanctioned Plaintiffs for seeking discovery Your Honor improperly determined as being not relevant to a claim or defense in this case.[5]  However, when INA and/or Strickland seek discovery not relevant to any claim or defense in this case, Your Honor obliges with Pavlovian regularity:

> 1.   **April 16, 2010 Order (D.E. 660)**
>
> **"Mr. Halmos should understand that the scope of allowable discovery is rather broad ... For example, while the court recognizes that he might not want to answer certain questions regarding litigation between he and his family ... that is no basis for not answering ... the fact that questions seem irrelevant to the issues in the case is not a basis to refuse to answer."**

There is absolutely no claim or defense in this case whatsoever to do with purported litigation between a defunct partnership with my brother that was settled eight

---

[5] <u>See</u> Fowler White Burnett scam below, and Your Honor's pre-existing, concealed conflict which should have been disclosed.

years before Hurricane Wilma. Nevertheless, Your Honor manifestly disregarded the Rosenbaum citation in the above referenced July 20, 2010 Order, adjudicating without any competent evidence that:

> **"Plaintiff Halmos shall answer (not object to) the First Set of Interrogatories and shall produce (not object to) all documents in his care, custody and/or control requested in the First Request for Production on or before Friday, October 2, 2009...."** (September 22, 2009 Order, pp. 1-2 [D.E. 268])

Yet nowhere is there any showing by Defendants, or by Special Master Klein, or inquiry by Your Honor, that purported litigation between "my family" and me, or my personal medical records from every healthcare provider, has any relevance whatsoever to any claim or defense in this case.

### 2. Subpoenas Issued By INA Without Authorization For My Personal Medical Records Despite No Relevant Claim Or Defense In This Case

Without waiting for authorization from Special Master Klein, INA carpet-bombed subpoenas to all of my healthcare providers. How did INA procure the information to subpoena all of my healthcare providers? Your Honor ordered me to provide such information despite there being no relevance to any claim or defense in this case.

Despite the undeniable fact that, **"Mr. Halmos has not made any claim in the Complaint for personal injuries ... there is no tort claim in the Complaint..,"** as stated by Hugh Morgan to Special Master Klein (November 23, 2009 Tr., p. 65), Your Honor had previously forced me to answer interrogatories disclosing names of all healthcare providers. INA illicitly used that information to carpet-bomb subpoenas to all of my healthcare providers for all of my personal medical records without even obtaining the requisite authorization:

Mr. Morgan:   We objected to that Interrogatory. We were overruled. He was ordered to answer and he answered the question on the Interrogatory even though it's totally irrelevant to this matter."

(Tr., p. 68)

\* \* \* \* \* \* \* \* \*

Mr. Morgan:   We have not made any of those claims in the Complaint ... you've asking for medical authorization[6] when none of those claims have been made in the Complaint.

Mr. DeMahy: Because I believe they have.

Mr. Morgan:   I have the Second Amended Complaint right next to me. Show me where it has that.

(Tr., p. 66)

Because Your Honor ordered me to reveal the names, addresses, and other medical information as to each of my healthcare providers despite no relevance to any claim or defense in this case, INA did not even wait for the November 23, 2009 Special Master Klein hearing to obtain the requisite authorization. INA had already issued all such subpoenas just days prior to Special Master Klein's November 23 hearing because of Your Honor's stated predispositions. Your Honor knows full well the continuing implications on healthcare providers served with subpoenas for all records.[7]

## IV.   DENIAL OF PLAINTIFFS' DUE PROCESS RIGHTS:
   ## THE FOWLER WHITE BURNETT SCAM

   ### A.   The Chance Discovery Of The Deception And Due Process-Bashing Wrongdoings Of Fowler White Burnett ("FWB") And Joseph Ackerman ("Ackerman")

---

[6] INA "asking" for authorization was, of course, perfunctory given INA's carpet-bombing of subpoenas to all of my healthcare providers for all of my medical records without authorization.

[7] Special Master Klein DENIED INA authorization to subpoena all of my healthcare providers because there is no relevant claim or defense in this case. But it was too late. INA had already issued the subpoenas to all my healthcare providers because Your Honor forced me to disclose that information. No sanctions were imposed upon INA.

1.    **Ackerman's History Representing Plaintiffs And Their Affiliates; Ackerman's Secret Employment With FWB**

From November 13, 2003 to August 22, 2007, Ackerman represented my legal interests and that of my corporate affiliates. Ackerman was directly and centrally involved in my maritime legal matters and that of IYC and HPC. In 2005-2007, for example, Ackerman was directly involved in IYC's SOL and Patton litigation, and in IYC's claims under INA's Policies.

On July 31, 2009, Ackerman became employed by and remains a shareholder of FWB. Not only is FWB counsel to INA in this case since at least 2005, but its shareholder, Michael Pennekamp, is central to much of INA's wrongdoings at issue here. FWB also represents insurance companies liable for the wrongdoings of construction contractors in a real estate building case involving one of my corporate affiliates pending in Florida's 15th Judicial Circuit.[8]

2.    **An FWB Shareholder Blows The Whistle**

Ackerman's July 31 employment with FWB was first revealed by Richard Brown ("R. Brown"), an FWB shareholder who courageously made an unsolicited telephone call to C. Wade Bowden ("Bowden"), counsel for my corporate affiliate in the Construction Case, on October 14, 2009.[9] Bowden immediately sent an e-mail to FWB demanding the return of all confidential and/or privileged information relating to me and all of my affiliates conveyed by Ackerman (Exh. 1).

Two days later, on October 16, 2009, Henry Burnett (senior shareholder of

---

[8]  Europa Building Associates, Inc., v. PAH Co. et al., Case No: 502001CA012670XXCDAD ("Construction Case").

[9]  R. Brown terminated affiliation with FWB on October 21, 2009.

FWB) responded to Bowden with a litany of false or misleading representations including the claim that FWB only possessed a few non-confidential emails (Exh. 2).  On October 26, 2009, Ackerman purportedly returned all such e-mails (Exh. 3), representing the totality of documents and information in his and/or FWB's care, custody and control. To the contrary, on October 29, 2009, Ackerman was deposed in the Construction Case and admitted through counsel for FWB that he and FWB were still in possession of over 1,000 pages of confidential attorney-client privileged documents that are the property of my affiliates and me.[10]

### B.   Plaintiffs' Ex-Parte Emergency Motion For Protective Order Re: FWB  And This Court's Sua Sponte Order Against Plaintiffs To Show Cause

1.     Eight days after Ackerman's October 29, 2009 deposition referenced above, Plaintiffs filed their November 6, 2009 Ex-Parte Emergency Motion for Protective Order ("FWB Motion") with Your Honor pursuant to Fed.R.Civ.P. 30(c)(1). Given Henry Burnett's and Ackerman's misrepresentations to cover-up (a) 1,000 privileged e-mails and (b) another 20-30 boxes of purloined "Halmos" documents, Plaintiffs' due process rights in this case had already been compromised.

Your Honor held a hearing on Plaintiffs' FWB Motion on November 10, 2009, and Your Honor **DENIED** Plaintiffs' request for evidentiary hearing and for protective order. In so doing, Your Honor revealed the extent of collusion among INA, FWB, and others apparently having ex-parte access to this Court:

> The Court:   **I have a response from INA ... that's a new trick on me ... I don't know how you respond to a motion when you haven't seen it....** (D.E. 387)

---

[10] Subsequently, evidence was obtained that Ackerman had purloined 20-30 boxes of documents—many containing privileged material.

(Tr., pp. 6-7).[11]

When Your Honor realized Strickland likewise responded to a motion it was not supposed to have seen (D.E. 393), Your Honor quickly swept this alarming development under the rug:

> The Court:   **I am going to strike docket entry 387 (and 393) ... defense, I am actually doing you a favor.** (Tr., pp. 7-8)

Doing INA and Strickland this "favor" begs the burning question, *i.e.*, **"I don't know how you respond to a motion you haven't seen."** (See *Id*.)  Your Honor could have easily determined, for example, that a copy of the ex-parte FWB Motion was same-day hand-delivered to Your Honor's selected special master, Herbert Klein (Exh. 4).

2.     On November 13, 2009, INA gratuitously filed a second Response to Plaintiffs' FWB Motion that Your Honor had previously DENIED on November 10 (D.E 407). INA prohibitively misrepresented, among others: (a) Plaintiffs' FWB Motion was filed "[w]ithout a shred of evidence"; (b) whistleblower R. Brown did not actually exist; (c) there is "absolutely no support for any of their conclusory and scandalous allegations." (See INA Response, pp. 1-2, 8-11)

3.     Judge French disqualified FWB from the Construction Case. Before Plaintiffs could present to Your Honor the competent FWB evidence that had been compiled in the Construction Case, as Your Honor directed on November 10 (*i.e.*, "...that state court case, if something comes out of that, **trust me, I really want to know about it**"[12] (see *id*.) (emphasis added), Your Honor **sua sponte** inexplicably issued the April 21, 2010 Order to

---

[11] Mr. DeMahy: I represent to Your Honor that none of this is true. (Tr. p. 19)

[12] The Court: ...let me tell you ... if I smell smoke which I don't yet, but let's take for example, that state court case, if something comes out of that, trust me, I really want to know about it. (Tr., p. 38)

Show Cause against Plaintiffs allowing only nine days and eight pages to respond:

> "Plaintiffs shall have through and including Friday, April 30, 2010 to show good cause, in writing, why substantial sanctions should not be imposed under FRCP 11 for the filing of this motion, and further why the Court should not, sua sponte, award said sanctions under either the inherent power of the court or 18 U.S.C. §1927 for vexatiously and unreasonably multiplying the proceedings herein. Said filing shall be limited to a maximum of eight (8) pages." (Order, p. 4)

(See *Id.* at p. 2)

4.       Having again trusted Your Honor to their detriment, Plaintiffs nevertheless complied with the sua sponte Show Cause Order on April 30, 2010 ("Response to Order to Show Cause"), presenting a multitude of competent evidence including affidavits from R. Brown (Exh. 5), Bowden, and Ms. Nikki Trammell (Exh. 6). Plaintiffs emphasized additional discovery was needed in this case to determine the extent of confidential attorney-client communications impacting this case that were now in the hands of INA and its lawyers (Response, pp. 6-7). The affidavit of Mrs. Judy Hyman (Exh. 7) demonstrates that Ackerman purloined 20-30 boxes of "Halmos" documents apparently related to this case.[13]

5.       On May 21, 2010, as directed by Your Honor, Plaintiffs filed Notice (D.E. 786-2) of FWB depositions (Exh. 8). Instead of discovery, on May 24, 2010, this Court entered an Order Re: Joint Motion for Abatement (D.E. 706) imposing an immediate prohibition on taking of depositions in this case until June 21, 2010 (Order, p. 1).[14]

6.       On June 28, 2010, just one week after the so-called Court-imposed deposition prohibition had lapsed, IYC served subpoenas to FWB. Despite Plaintiffs' May 21, 2010 advance Notice of taking FWB depositions, INA filed a Motion for Protective Order

---

[13] Mrs. Hyman, with terminal cancer, nevertheless took the time in her last painful days of life to file her sworn affidavit with this Court.

[14] INA, of course, continued taking depositions with Special Master Klein's cooperation.

17

to stop all FWB depositions (D.E. 812). <u>Without</u> <u>waiting</u> <u>for</u> <u>Plaintiffs'</u> <u>Response</u>, Your Honor crucified Plaintiffs in the Court's July 20, 2010 Order ("Pre-Emptive July 20 Order").  Your Honor prevented all FWB discovery because it **"has absolutely nothing to do with any claim or defense in this lawsuit[.]"** (Order, p. 1) (Emphasis added)

Your Honor manifestly ignored that FWB discovery has everything to do with Plaintiffs' due process rights in this case. The Federal Rules of Civil Procedure clearly permit broad discovery into matters affecting litigants' civil rights. Rule 26(b)(1) is "construed broadly to encompass any matter that bears on, or that could reasonably lead to other matter that could bear on, any issue that is or may be in the case." To deny Plaintiffs' due process rights in this case, Your Honor mischaracterized the competent evidence of record while ignoring the affidavits of Mrs. Judy Hyman, Ms. Nikki Trammell, R. Brown, and others: **"[T]here is at best some hearsay from another case that supports this extraordinary request."** (Order, p. 2) (Emphasis added)

7.     Your Honor further confused that "several of these proposed deponents have already been deposed regarding the very same issues in the state (Construction) case." (See *Id*. at p. 2)  Even if true, which it is not, Your Honor knows the use of depositions from a separate and independent action is contrary to Fed.R.Civ.P. 32(a).  Plaintiffs specifically addressed Rule 32(a) in their Response to INA's Motion for Protective Order (See the Response of Plaintiff IYC to INA's Motion for Protective Order, p. 10 n.11.), which proved pointless only because Your Honor didn't even bother to wait for Plaintiffs' Response. Instead, the Court issued the Pre-Emptive July 20 Order that denied Plaintiffs' due process rights and shielded FWB from discovery for wrongdoings in this case. Further, Your Honor publicly maligned that Plaintiffs were proceeding **"down a path of obfuscation, delay, and**

18

**improper and inappropriate activity"** (emphasis added) (see _id_. at p. 3), and threatened the ultimate due process denial:

> **PLAINTIFF IYC IS PLACED ON NOTICE THAT THE COURT MUST CONCLUDE, IF FURTHER TRANSGRESSIONS OCCUR, THAT MONETARY SANCTIONS DO NOT SUFFICE, AND THAT DISMISSAL WILL BE THE ONLY REMEDY LEFT**. (See _Id_. at p. 4) (Emphasis original)

8.      Your Honor inexplicably faulted Plaintiffs for not filing a Reply to INA's November 13 second Response to Plaintiffs' FWB Motion that Your Honor **DENIED** on November 10. Moreover, Your Honor did not wait for the FWB "smoke" from the Construction Case that Your Honor expressly stated, **"[T]rust me, I really want to know about it."** (See _Id_.) Instead, Your Honor manifestly disregarded the facts and the law to find Plaintiff in Rule 11 contempt. Then Your Honor also **GRANTED** FWB's Motion for Protective Order and sanctioned Plaintiffs for that as well. Plaintiffs were compelled to pay about $50,000 to FWB and INA for attempting to protect their civil rights.

## V.      PRETENSE OF OBSESSION WITH FULL DISCLOSURE

Your Honor's purported "obsession" with full disclosure in this case appears to be limited to trivialities. For example:

> **"In my obsession with full disclosure, you should know that I am going to be gone 10 days in September...."** (August 12, 2010 Hrg. Tr., p. 12:13-14) (Emphasis added)

Full disclosure in this case would reasonably require Your Honor to disclose having been an **Insurance Defense Lawyer** for some 20 years, and to being conflicted when sitting in judgment of the wrongdoings of Henry Burnett and FWB in this case.

1.      When soliciting Plaintiffs to agree for Your Honor to be the trial judge in this case, Your Honor disclosed having substantial trial experience:

> "...parties shall be prepared to address whether or not they would be willing to consent to the Magistrate Judge resolving ... motions and/or the trial in this case ... Here are some reasons why the parties may wish to consent..:
>
> "(3) **The undersigned has substantial civil trial experiences as an attorney....**" (Emphasis added)

(August 31, 2009 Order, pp. 2-3)(D.E. 236)

2.      After Plaintiffs agreed to Your Honor as both trial judge and mediator, at the Strickland settlement mediation in chambers on May 6, 2010, Your Honor *for the first time disclosed that for some 20 years*, Your Honor's occupation was that of an Insurance Defense Lawyer. Your Honor then alarmingly revealed a pre-disposed evaluation of this case, not based upon competent evidence but rather on Your Honor's prior 20 years experience as an Insurance Defense Lawyer.

Had Your Honor's 20-year occupation as an Insurance Defense Lawyer been disclosed on August 31, 2009, when soliciting Plaintiffs' consent as referenced above, Plaintiffs would *not* have consented to Your Honor as the trial judge and/or mediator in This case.

3.      At the same May 6, 2010 Strickland settlement mediation in chambers with Plaintiffs, for the first time, Your Honor disclosed material pre-existing FWB conflicts that should have been disclosed no later than August 31, 2009:

(a)     Your Honor explained how after 20 years as an Insurance Defense Lawyer, trials weighed upon Your Honor's conscience.

(b)     Your Honor then expressed admiration for one particular Miami Insurance Defense Lawyer with whom Your Honor has enjoyed a professional and personal relationship for nearly 40 years. This "admirable" Insurance Defense Lawyer, whose "admirable trait" apparently is the uncanny ability to have no conscience in trials, Your

20

Honor identified as none other than <u>Henry</u> <u>Burnett</u>, name shareholder of FWB.15

Had Plaintiffs known of Your Honor's long, pre-existing personal and professional relationship with – and personal admiration of – Henry Burnett, Plaintiffs would not have agreed to Your Honor as trial judge and/or mediator in this case.

## VI.   **BIAS AND PREJUDICE**

The record in this case demonstrates Your Honor's apparent deep-seated favoritism towards INA, and a manifest prejudice towards me that is neither supported by competent evidence nor my conduct. Your Honor leverages the Court's immunities to issue inflammatory Orders attributing nefarious intent to me based upon speculation, if not gossip.

Submitted by,

PETER HALMOS, pro se
c/o Meyers & Associate, CPA
4540 PGA Blvd., Suite 216
Palm Beach Gardens, FL 33418
Telephone: (561) 249-1712
Facsimile: (561) 249-1709
gail@meyerscpa.com

By: _____

---

[15] From the inception of this case, Plaintiffs repeatedly represented that FWB and its shareholders Michael Pennekamp and Henry Burnett not only represent INA, but are the instrumentalities of INA's egregious wrongdoings. The central role of FWB in the merits of this case was well-known by Your Honor before, on, and after August 31, 2009.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by U.S. Mail and/or other electronic means on counsel of record in this action on this 19th day of October, 2010.

_____
Peter Halmos, Pro se

## SERVICE LIST

Hugh J. Morgan, Esq.
Law Office of Hugh J. Morgan
P.O. Box 1117
Key West, FL 33041
Tel.: 305-296-5676
Fax: 305-296-4331
hugh@hjmorganlaw.com

Jack Spottswood, Esq.
Spottswood, Spottswood & Spottswood
500 Fleming St,
Key West, FL 33040
Tel.: 305-294-9556
Fax: 305-292-1982
jack@spottswood.com

Brenton N. Ver Ploeg, Esq.
Stephen A. Marino, Jr., Esq.
Ver Ploeg & Lumpkin, P.A.
100 S.E. 2d St., 30th Flr.
Miami, FL 33131
Tel.: 305-577-3996
Fax: 305-577-3558
bverploeg@vpl-law.com
smarino@vpl-law.com

Clinton S. Payne, Esq.
Pete L. DeMahy, Esq.
DeMahy Labrador Drake Payne & Cabeza
150 Alhambra Cir., Penthouse
Coral Gables, FL 33134
Tel.: 305-443-4850
Fax: 305-443-5960
cpayne@dldlawyers.com
pdemahy@dldlawyers.com

C. Wade Bowden, Esq.
Jones, Foster, Johnston & Stubbs, P.A.
505 S. Flagler Dr., Suite 1100
W. Palm Beach, FL 33402-3475
Tel.: 561-650-0406
Fax: 561-650-0430
wbowden@jones-foster.com

Joseph P. Klock, Esq.
Juan Carlos Antorcha, Esq.
Rasco Klock
283 Catalonia Ave., 2d Flr.
Coral Gables, FL 33134
Tel.: 305-476-7100
Fax: 305-476-7102
jklock@rascoklock.com
jantorcha@rascoklock.com

Frank J. Sioli, Esq.
Zascha Abbott, Esq.
Datran Two, Ste. 1609
9130 S. Dadeland Blvd.
Miami, FL 33156-7851
Tel.: 305-274-5507
Fax: 305-274-5517
fsioli@brownsims.com
zabbott@brownsims.com

Kenneth G. Engerrand, Esq.
P. Michael Bowdoin, Esq.
Michael Varner, Esq.
Robert M. Browning, Esq.
Brown Sims, P.C.
1177 W. Loop South, 10th Fl.
Houston, TX 77027
Tel.: 713-629-1580
Fax: 713-629-5027
kengerrand@brownsims.com
mbowdoin@brownsims.com
mvarner@brownsims.com
rbrowning@brownsims.com

David Paul Horan, Esq.
Horan, Wallace & Higgins, LLP
608 Whitehead St.
Key West, FL 33040
Tel.: 305-294-4585
Fax: 305-294-7822
dph@horan-wallace.com

**<u>SERVICE LIST (Continued)</u>**

Scott Bassman, Esq.
Cole, Scott & Kissane, P.A.
Dadeland Centre II
9150 S. Dadeland Blvd, Suite 1400
Miami, FL 33156
Facsimile: 305-373-2294
<u>scott.bassman@csklegal.com</u>

# Exhibit

# 1

From:       Bowden, C. Wade

Sent:       Wednesday, October 14, 2009 2 05 PM

To:         'jweissman@fowler-white com'; jackerman@fowler-white com

Cc:         ptibs@att net, shishigallery@yahoo com; Tomlinson, Allen R , ghgpa@bellsouth net; Michael Switzer

Subject:    Europa v PAH Co v Eliopoulos (Our File No 24587 2) - Conflict of Interest and Client Files

It has just come to my attention that Joseph L Ackerman, Jr , Esq has become a shareholder with Fowler White Burnett, P A  As I am certain you are aware, Mr Ackerman represented my client in the above-captioned matter from December 1, 2005 until August 15, 2007  On December 7, 2007, Fowler White appeared as counsel for Europa  Now that Mr Ackerman is a shareholder with Fowler White, there is a conflict under R  Regulating Fla Bar 4-1 19 & 1 10  Further, Mr Ackerman has files pertaining to his representation of my client in his possession, most likely at the Fowler White office in West Palm Beach  As recently as March 9, 2009, on which date my client and I reviewed files at Mr Ackerman's former firm, Mr Ackerman produced pertinent documentation pertaining to this civil action

My client is going to move to have Fowler White disqualified as counsel immediately  I suggest that your firm immediately withdraw voluntarily  We are, in addition, concerned that our client's confidential information has been and continues to be compromised  I therefore demand all files pertaining to my client and any affiliated entity immediately be sequestered and delivered to my office within the hour  As our offices are less than a mile away from each other, this should not be a problem  Last, please notify your managing partner of this situation right away

Both of you must have been aware of this conflict, which you both should have brought to my attention and to that of the parties and the Court long before we discovered it today  The concealment of this conflict is inexcusable

C. Wade Bowden, Esq.

**Jones, Foster, Johnston & Stubbs, P.A.**
Attorneys & Counselors

wbowden@jones-foster.com  |  Website

505 South Flagler Drive   |   Suite 1100 |   West Palm Beach, FL  33401
Direct Dial: 561-650-0465 | Phone  561-659-3000 | Fax. 561 650-0430

 Please consider the environment before printing this e-mail

IRS Notice  U S  Treasury Regulation Circular 230 requires us to advise you that written communications issued by us are not intended to be and cannot be relied upon to avoid penalties that may be imposed by the Internal Revenue Service

Incoming replies and e-mails are filtered for "spam" and "viruses."  Filtering may quarantine or delay the e-mail  We cannot guarantee receiving your reply or e-mail, or receiving it timely  Consider sending important or time-sensitive communications by other than e-mail, or confirm receipt

This e-mail is personal to the named recipient(s), and may be a privileged and confidential attorney-client communication  If you are not an intended recipient or agent delivering it to an intended recipient, you received this in error, and any review, dissemination or copying of the e-mail and any attachments is prohibited  If so, please immediately notify us by e-mail, and delete the original message

# Exhibit

# 2

Bowden, C. Wade

From:     Henry Burnett [HB@FOWLER-WHITE.COM]
Sent:     Friday, October 16, 2009 11:42 AM
To:       Bowden, C. Wade
Cc:       Stubbs, Sidney A.
Subject:  Europa v. PAH Co., your file number 24587 2

Dear Mr. Bowden:

We are in receipt of your email of October 14, 2009 with regard to the above matter. This conflict was unknown at the time of Mr. Ackerman's association with our firm, which was almost two years after he and his prior firm had withdrawn from representing your client. Thereafter it did come to our attention and a decision was made to file a Motion to Withdraw. It has yet to be filed, secondary to our intent and desire to satisfy our obligation to our present client and to facilitate an orderly transfer of the representation, which we are in the process of doing.

We have also inquired of Mr. Ackerman as to his possession of any files to which you refer and have been assured that those files remained and are at Buckingham Doolittle and Burroughs. As you know, a law firm and an attorney are entitled to keep pertinent records of their representation of a client. Mr. Ackerman only has some emails relating to your request to review records in March 2009 at Buckingham. Those records never became a part of any files of Fowler White Burnett. If you wish, I will ask Mr. Ackerman to send you copies.

I can further assure you that there has been no discussion or transmittal of any information of client confidences pertaining to this matter between Mr. Ackerman and the other members of our firm. He has had no involvement with this matter since his arrival, which is the reason that this did not come to our attention at the outset.

I can assure you that there has been no intent to conceal this situation from anyone including you or your client, nor has your client in any way been compromised secondary to this situation.

Sincerely,

Henry Burnett


Henry Burnett
Fowler, White, Burnett, P.A.
1395 Brickell Avenue
Espirito Santo Building - 14th Floor
Miami, Florida 33131
305 789.9206
305 789.9201
hburnett@fowler-white.com

Note: The Fowler White Burnett, P.A. disclaimer is only added to internet email        MDQT 00012

10/19/2009

# Exhibit

# 3

October 26, 2009

C. Wade Bowden
Jones Foster Johnston & Stubbs, P A
505 South Flagler Drive
Suite 1100
West Palm Beach, Florida 33401

Confidential: Attorney Client Communication re Europa v. PAH, CO

Dear Mr. Bowden:

Enclosed please find the following:

1) Emails dated March 6, 2009 by and between Natalie Trompet and me and by and between Natalie Trompet and Richard Crum (2);

2) Email dated March 6, 2009 by and between you and me;

3) Emails dated March 6, 2009 by and between Natalie Trompet and me (2) and by and between you and me;

4) Email dated March 9th, 2009 by and between Natalie Trompet and me;

5) Emails dated March 9th, 2009, by and between Natalie Trompet and me and by and between David Porter and Natalie Trompet;

6) Email dated March 10, 2009, by and between me and Natalie Trompet; emails dated March 9th 2009 by and between Natalie Trompet and me, by and between Natalie Trompet and David Porter.

7) Emails dated March 10th and March 9th 2009 by and between me and Natalie Trompet (2);

8) Email dated March 10th 2009 by and between Natalie Trompet and Will Smith;

9) Email dated March 24th 2009 by and between Natalie Trompet and you;

10) Email dated March 24th 2009 by and between Natalie Trompet and you:

11) Emails dated March 24th 2009 by and between you and Natalie Trompet (2)

MDQT 00331

These documents are the documents to which Henry Burnett referred in his email to you dated
October 16th, 2009

Sincerely yours,

Joseph L. Ackerman, Jr.

# Exhibit

# 4

## RASCO KLOCK REININGER PEREZ ESQUENAZI VIGIL & NIETO
### ATTORNEYS & COUNSELORS AT LAW

283 Catalonia Avenue
Coral Gables, Florida 33134-6700
(305) 476-7100
Fax: (305) 476-7102

Joseph P. Klock, Jr
Partner
305.476.7111
jklock@rascoklock.com



November 6, 2009

Via Hand-Delivery

The Honorable Herbert Klein
2655 LeJeune Rd. PH-1-G
Miami, Florida 33134

Re: *Peter Halmos et al. vs. Insurance Company of North America et al. – Case No. 08-10084*

Dear Judge Klein:

Enclosed please find a sealed envelope containing a courtesy copy of "Plaintiffs' Ex-Parte Emergency Motion for Protective Order" (the "Motion"), along with a copy of "Plaintiffs' Ex-Parte Motion to Seal", filed this day with the Clerk of the Court.

While Plaintiffs' await certain relief by Judge Brown and/or yourself, please be advised that the majority of the responsive documents ordered to be produced by this Court's Order dated November 3, 2009, are sealed and ready to be delivered to your office upon your instructions. Otherwise, we will retain possession of the nine sealed boxes of responsive documents, and the one box containing the privilege log, at our office pending a determination of our Motion.

Also, please note that there are approximately 20,000 of additional responsive pages currently being duplicated by a copy service which will be available on Monday, November 9, 2009.

If you have any questions, please feel free to contact me.

Very truly yours,

Joseph P. Klock, Jr.


EXHIBIT
B

# Exhibit

# 5

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
FLORIDA

KEY WEST DIVISION

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

| | |
|---|---|
| PETER HALMOS, INTERNATIONAL YACHTING CHARTERS, INC and HIGH PLAINS CAPITAL, | § § § § |
| Plaintiffs, | § § |
| v | § § |
| INSURANCE COMPANY OF NORTH AMERICA AND STRICKLAND MARINE INSURANCE, INC (f/k/a STRICKLAND MARINE AGENCY, INC ). | § § § § § § § |
| Defendants | § § |

## AFFIDAVIT OF RICHARD L. BROWN, ESQ.

BEFORE ME, the undersigned authority, this day personally appeared RICHARD

L. BROWN, ESQ , who, first being duly sworn, deposes and says

1    My name is Richard L. Brown, Esq   My professional address is 4445
North Highway A1A, Ste  130, Vero Beach, FL  32963   I have been an attorney in the
state of Florida since 1993

2    I was a shareholder with Fowler White Burnett, P A  ("Fowler White" or the
"Firm") from May 27, 2008 until October 21, 2009

Halmos v. Ins. Co. of N. Am.
Case No. 09-10084-CIV Martinez-Brown
Affidavit of Richard L. Brown, Esq.
Page 2

3.     In early August of 2009, I understood through acquaintances in the Firm that the Firm was hiring a new shareholder in the West Palm Beach office. On August 5, 2009, I received an e-mail confirming that this individual was Joseph I. Ackerman, Esq. See the Internal Fowler White August 5, 2009 E-mail (the "E-mail") attached hereto as Exhibit 1.

4.     While with the Firm, I became acquainted with J. Michael Pennekamp. I spoke to him regarding a conflict involving an existing Firm client in early 2009.

5.     During my time at Fowler White, I became aware of a matter called Europa Building Associates, Inc. v. PAH Co. v. Eliopoulos Architecture, Inc., Case No. 502001CA012670XXCDAD, 15th Judicial Circuit in and for Palm Beach County, FL ("Europa"). Fowler White was at the time counsel for Europa Building Associates, Inc. in that matter.

6.     I realized soon after getting the E-mail that Mr. Ackerman had been opposing counsel in Europa. I immediately became concerned the Firm might have a conflict in that matter.

7.     By October of 2009, I discovered that the Firm was attempting to conceal Mr. Ackerman's employment at the Firm. I became profoundly concerned regarding how the Firm was handling the possible conflict situation.

8.     When it became clear that the Firm was attempting to conceal Mr. Ackerman's presence at the Firm, I felt I had no other choice but to telephone C. Wade Bowden, Esq., counsel for PAH Co. in Europa in accordance with the Florida Bar Rules regarding conflicts. I did so on October 14, 2009. I told Mr. Bowden everything I knew

Holmes v. Ins. Co. of N. Am.
Case No. 09-10084-CIV Martinez-Brown
Affidavit of Richard L. Brown, Esq.
Page 3

of the situation relating to that matter

FURTHER AFFIANT SAYETH NAUGHT

RICHARD L. BROWN

STATE OF FLORIDA

COUNTY OF PALM BEACH

The foregoing instrument was sworn to, subscribed and acknowledged before me this 27th day of April, 2010 by RICHARD L. BROWN, who is personally known to me or has produced a driver's license as identification

Notary Public, State of Florida
Print Name   Frederick H. Lurie

FREDERICK H. LURIE
Commission DD 724595
Expires January 27, 2012
Bonded Thru Troy Fain Insurance 800-385-7019

My commission expires:

From:       Yami Aguilera
To:         ALL
Date        Wednesday · August 5, 2009 10:12 AM
Subject:    Welcome Joseph Ackerman & Natalie Trompet

Join me in welcoming attorney Joseph L. Ackerman, Jr & Natalie Trompet to FWB

Joe, a C Shareholder, is working in our West Palm Beach office. Prior to joining FWB, Joe
worked at Buckingham Doolittle & Burroughs where his practice focused on commercial
litigation, civil rights litigation, personal injury litigation as well as probate litigation.  He
received his J.D. from the University of Florida in 1977   Joe can be reached at either Ext
1771 or 561-472-6394 or jla@fowler-white.com

Joe is joined by his assistant, Natalie.  Natalie has been working with Joe for over 5 years
and is a registered paralegal with the Florida Bar.  Natalie can be reached at Ext. 1779 or
nat@fowler-white.com

Please take a moment this week to say hello.



EXHIBIT

1

# Exhibit

# 6

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
FLORIDA

KEY WEST DIVISION

Civil Action No. 08-10084-CIV MARTINEZ-BROWN

| | |
|---|---|
| PETER HALMOS, INTERNATIONAL YACHTING CHARTERS, INC and HIGH PLAINS CAPITAL, <br><br> Plaintiffs <br><br> v. <br><br> INSURANCE COMPANY OF NORTH AMERICA AND STRICKLAND MARINE INSURANCE, INC (f/k/a STRICKLAND MARINE AGENCY, INC) <br><br> Defendants | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

## AFFIDAVIT OF NIKKI TRAMMELL

BEFORE ME, the undersigned authority, this day personally appeared NIKKI TRAMMELL, who, first being duly sworn, deposes and says:

1.      I am over the age of eighteen years and make the statements herein of my own knowledge

2.      I have been working with Peter Halmos ("Mr Halmos") and his companies ("Halmos affiliates") in various capacities for approximately 13 years

3.      I am a Vice President of PAH Co [1]  I am the corporate representative for PAH Co

_____

[1] A Halmos affiliate

Halmos v. Ins. Co. of N. Am.
Case No. 08-10081-CIV Martinez-Brown
Affidavit of Nikki Trammell
Page 2

in the Europa Building Associates, Inc. v. PAH Co. v. Eliopoulos Architecture, Inc., Case No.

502001CA012670XXCDAD, 15th Judicial Circuit in and for Palm Beach County, FL ("the

Europa case")

    4.    Joseph L. Ackerman, Esq ("Mr. Ackerman") was counsel for Mr. Halmos and

Halmos affiliates from approximately November of 2003 through August of 2007.   Mr.

Ackerman represented Mr. Halmos and International Yachting Charters ("IYC") in matters

concerning S/Y Legacy, including the Patton Marine case (Legacy valuation), the Rybovich

Spencer case. Legacy repairs, the Upham case (SOL collision)  and other Legacy

"maritime/yachting" matters.  Mr. Ackerman was also attorney of record and lead counsel for

PAH Co. in the Europa case.

    5.    Fowler White Burnett P.A. ("Fowler White") is and has been litigation counsel

and claims adjusters for ACE-INA in relation to this action and other matters. Fowler White was

also counsel for Europa Building Associates, Inc. ("Europa") in the Europa case until

disqualified by Judge David French on October 19, 2009.

    6.    Mr. Ackerman and his assistant, Natalie Trompet (who has been his assistant at

all times relevant), joined Fowler White on July 31, 2009. Mr. Ackerman is a Fowler White

shareholder.

    7.    Mr. Ackerman's representation of Mr. Halmos and Halmos affiliates is and has

been adverse to Fowler White clients ACE-INA, Markel and Europa.

    8.    The conflict was known by Mr. Ackerman and others at the Fowler White firm,

including management, and concealed from Mr. Halmos and Halmos affiliates for months.

    9.    On October 14, 2009, Richard L. Brown, Esq (at the time a Fowler White

Holmes Ins Co. of D. Air
Case No. 09-10084-CIV-Martinez-Brown
Affidavit of Nikki Trammell
Page 3

shareholder[2]) contacted counsel for Mr. Halmos and Halmos affiliates, C. Wade Bowden, Esq. ("Mr. Bowden") and disclosed to him Mr. Ackerman's conflicted presence at Fowler White. He divulged Fowler White's attempts to conceal Mr. Ackerman's presence at the firm. Mr. Brown asked Mr. Bowden to keep his identity confidential for fear of retaliation from Fowler White. See Exhibit 1, Affidavit of Richard L. Brown, Esq. Mr. Bowden revealed Mr. Brown's identity only when compelled by Judge French.

16.     Prior to Mr. Brown's call, on March 6, 2009, Mr. Bowden and I confronted Mr. Ackerman at his Buckingham Doolittle & Burroughs ("Buckingham Doolittle") office about missing documents and his withholding of files. Ackerman produced an additional three boxes of important and sensitive documents, but refused to produce others:

> "You were asking us to give you the Firm's records of its representation. That's what I would not turn over." (Ackerman October 29, 2009 Dep. Tr., at p. 22:12-14, Case No. 502001 CA 012670 XXCDAD ["Europa case"]).
>
>> October 29, 2009 Deposition of Joseph L. Ackerman, Esq.
>> (the "Ackerman Depo." attached hereto as Exhibit 2) (33:12-13)

Mr. Ackerman provided us with a copy of the three boxes. He kept the originals for himself. He later provided us with one additional box, all of which was related to PAH Co.

17.     On March 6, 2009, in the presence of Mr. Bowden, I told Mr. Ackerman that he is conflicted and that I was going to find out what he was up to. In a letter addressed to Mr. Bowden dated March 24, 2009 (Exhibit 3), Mr. Ackerman denied that he removed documents from the files and that he is conflicted:

> "I hope this provides some assistance in locating the documents for which you and Nikki Trammel were looking. At the present, I do not have a recollection of

---

[2] Mr. Brown terminated his employment with Fowler White on October 21, 2009.

Pedmont Ins. Co. of N. Am.
Case No. 09-10084-CIV Martinez-Brown
Affidavit of Nikki Trammell
Page 4

the document that Nikki is describing   Further, her accusations that "I am conflicted" or that I removed the document are completely false "

12     When the conflict was discovered, we made additional further demands on Fowler White, Mr. Ackerman and Mr. Ackerman's previous firm, Buckingham Doolittle, that the files be turned over to Mr. Bowden's firm, Jones Foster Johnston & Stubbs, P.A. ("Jones Foster") immediately

13     We were told by Fowler White that Mr. Ackerman had only a few emails[1] and that the physical files were still at Buckingham Doolittle. Buckingham Doolittle refused to turn over the files that Mr. Ackerman purportedly left behind

14     It wasn't until March 10, 2010, that Buckingham Doolittle agreed to give us our files  When Mr. Bowden and I arrived at the Buckingham Doolittle offices in Boca Raton, there were only the same three boxes of documents Mr. Ackerman copied us in March of 2009

15     Mr. Scott Topolski, Esq. and Bonnie Radewitz of Buckingham Doolittle had no explanation as to why it took nearly five months to return three boxes of documents  Nor could they explain why, if they were being "stored," that the files were in new, unmarked boxes  Nor could they explain where the documents came from, other than West Palm Beach (where Ackerman is working at Fowler White)  Nor could they explain what happened to the rest of the documents

16     On September 17, 2007, Ackerman's assistant Natalie represented to Ackerman's successor Jones Foster that "You have all the files" (Exhibit 4)  "All the files" consisted of 19 boxes of Europa case files picked up by Jones Foster in 2007  This was NOT all the files  Not

---

[1] Mr. Ackerman provided a few emails prior to his deposition on October 26, 2009 and represented that it was all that he had  On October 29, 2009, counsel for Fowler White, Carlton Field, turned over more than 1000 pages of additional attorney-client privileged documents from Ackerman

Halmos v. Ins. Co. of N. Am.
Case No. 09-10084-CIV Martinez-Brown
Affidavit of Nikki Trammell
Page 5

even all the Europa files were in those 19 boxes

17    Judy Hyman, counsel for Mr. Halmos and Halmos affiliates, and lead counsel in the Upham case (SOL collision), wrote an Affidavit regarding missing "Halmos" files.  See Exhibit 5  I have not, since Brian Cook saw the 20-30 boxes of documents in early 2008, received anything[2] from Mr. Ackerman, directly or indirectly, and neither has Mr. Halmos or authorized agents of Halmos affiliates or their counsel.

18    With that said, Mr. Ackerman never accounted for the other files belonging to Mr. Halmos, IYC, and other Halmos affiliates or for the missing PAH Co. documents

19    ACE-INA makes several misrepresentations of fact and flat out false statements in their November 13, 2009 Response to Plaintiff's Ex Parte Emergency Motion for Protective Order and Memorandum of Law in Support (the "ACE-INA Response")

20    ACE-INA misrepresents in their Response, p 1-2, that Mr. Ackerman represented one of Mr. Halmos' companies in another litigation. Mr. Ackerman represented Mr. Halmos and Halmos affiliates for several years in various matters and litigations, including matters involving IYC, Legacy and Mr. Halmos

21    ACE-INA falsely states (the ACE-INA Response at 4) that Mr. Ackerman transferred all of his files to Mr. Halmos' new lawyers at the termination of his attorney-client relationship  Mr. Ackerman never returned documents relating to his representation of Mr. Halmos, IYC matters concerning S/Y Legacy, the Patton Marine case, the Rybovich Spencer case, the Upham case (SOL collision), the Legacy repairs or the "maritime/yachting" matters, among others  Further, Mr. Ackerman turned over an additional three boxes in March of 2009, a year and a half after his termination

_____

[2] Other than the four total boxes described herein

22    ACE-INA in their Response accurately recounts Mr. Ackerman's admission that he retained certain electronic files belonging to Mr. Halmos and Halmos affiliates. However, they do not tell the Court that Mr. Ackerman turned Mr. Halmos' and Halmos affiliates' attorney-client privileged information to counsel for Fowler White, Carlton Fields, who put the files on their system without the knowledge and/or consent of Mr. Halmos, me, current counsel or any authorized agent(s) of Mr. Halmos or Halmos affiliates. Carlton Fields PRODUCED over 1000 pages of Mr. Halmos' and Halmos affiliates' highly sensitive attorney-client privileged confidential information with BATES STAMPS on October 29, 2010. Counsel for Fowler White, Carlton Field, Bates stamped information obtained from Mr. Ackerman during his employment at Fowler White, regarding Mr. Ackerman's representation of Mr. Halmos and Halmos affiliates.

23    ACE-INA (ACE-INA Response at 4) represents to the Court that Mr. Ackerman never shared his files with anyone at Fowler White. The record shows that Mr. Ackerman did indeed share his files with counsel for Fowler White, Carlton Fields. According to an argument made by counsel for ACE-INA, Mr. DeMahey, at the hearing on the Ex Parte Emergency Motion for Protective Order, November 12, 2009, the client can have whatever the attorney has and the attorney can share everything with the client, and the Court agreed. See Exhibit 6 (33:13-25; 34:1-14). Therefore, to state that Mr. Ackerman never gave Fowler White any of his documentation is disingenuous at best. It is an undisputable fact that Mr. Ackerman gave documents to Carlton Fields, counsel for Fowler White. See Exhibit 2 (15:14 – 17:1). ACE-INA should have known this since they attached the same transcript to the ACE-INA Response as Exhibit 3 and the hearing took place just days prior to the filing of said Response.

24    Therefore, Fowler White did obtain information from Mr. Ackerman, and if

Halmos v. Ins. Co. of N. Am.
Case No. 09-10084-CIV-Martinez-Brown
Affidavit of Nikki Trammell
Page 7

Fowler White has the information, ACE-INA has the information

25    M: Ackerman freely trafficked in Mr. Halmos' and Halmos affiliates' attorney-client privileged information, on the record, to a third-party without authorization. See Exhibit 1 (15:14 - 17:1).

26    ACE-INA also offers the self-serving Affidavits of J. Michael Pennekamp (Exhibit 7) and Mr. Ackerman (Exhibit 8), both of whom represent there was never any substance discussed regarding Mr. Ackerman's representation of Mr. Halmos and Halmos affiliates. To the contrary, Mr. Ackerman testified that he discussed the Patton Marine case with Mr. Pennekamp and Mr. Pennekamp discussed a "boat" case with Mr. Ackerman. Messrs. Ackerman and Pennekamp discussed the cases substantively to determine that they were two different cases. See Exhibit 2 (46:18-47:18).

27    Mr. Ackerman's affidavit provides inconsistent testimony.    Mr. Ackerman testified in his deposition he did not recall whether he had dealt with Mr. Pennekamp while representing Mr. Halmos/PAH Co. See Exhibit 2 (43:7-15)  Yet in his Affidavit, prepared for ACE-INA in support of the ACE-INA Response, he swears he never talked to Mr. Pennekamp, except for the conversation referenced in Paragraph 26 above. See Exhibit 8.

28    ACE-INA makes the ridiculous assertion (ACE-INA Response at 3) that it would be "impossible" for Mr. Pennekamp to provide ACE-INA with information from Mr. Ackerman simply because he sent his "RETENTION" file to ACE-INA on June 11, 2009. Assuming Mr. Pennekamp has not been bound and gagged or otherwise wholly incapacitated since June 11, 2009, he has obviously been perfectly capable of sharing vast information with ACE-INA since

that time [5]   I am perplexed why ACE-INA was perusing Mr. Pennekamp's "retention" file in
June of 2009 while Fowler White was negotiating the employment of Mr. Ackerman

29.     Further, ACE-INA misrepresents (the ACE-INA Response at 7) that Mr.
Ackerman had no dealings with Mr. Pennekamp at all, in spite of the fact that Mr. Ackerman's
testimony contradicts this   Both Mr. Pennekamp and Mr. Ackerman admit they discussed two
unidentified cases involving Mr. Halmos and Halmos affiliates and other matters

30.     Neither Mr. Pennekamp nor Mr. Ackerman stipulate as to indirect
communications via third-parties

31.     Mr. Ackerman has another conflict matter involving Allstate and Mr. Pennekamp
Mr. Ackerman's representation of his client is adverse to those of Allstate. Mr. Pennekamp's
client   Mr. Ackerman's client, adverse to Allstate, was an active client when he joined Fowler
White   That conflict should have been discovered prior to Mr. Ackerman's joining the firm. Mr.
Henry Burnett ("Mr. Burnett") of Fowler White confirms that the Halmos conflicts were
detected prior to Ackerman's joining the firm, and so testified on March 12, 2010:

> Q    When was the date you first became aware of Mr. Ackerman and the
>      conflict?
>
> A    I can't give you the date   Mr. Kelly and Mr. Ackerman came to my office
>      and discussed his joining the firm, went over two subjects:  One is the
>      underlying case that you all are dealing with, the other was some cases
>      relating to Allstate with an inquiry as to whether I felt that there was a
>      conflict of interest   It was discussed   I expressed my opinion and that was
>      the first occasion and that was my last really significant involvement in
>      it

> Hearing Transcript, March 12, 2010
> Exhibit 9, (38:17-25; 39:1-10)
> I expressed my opinion, said — well, I expressed the obvious, there's a

---

[5] Mr. Pennekamp appears not to be so incapacitated, as he purportedly authored and executed an affidavit for ACE-INA on November 12, 2009

conflict and we've got to get out

Exhibit 9, (39:13-15)

32    If the conflict wasn't discovered until after Mr. Ackerman joined the firm, the implication is that neither Mr. Ackerman, nor Fowler White complied with the Florida Rule of Professional Conduct as to conflicts checks prior to his joining Fowler White. Obviously when a conflict check is run after the fact, the damage is done.

33    Fowler White ignored the opinion given by their in-house counsel, Mr. Burnett.

34    Mr. Kelly and Mr. Burnett work in the same office as Mr. Pennekamp, where Mr. Ackerman went to discuss the conflicts involving Mr. Pennekamp's client.

35    Christopher E. Knight ("Mr. Knight") is a managing partner of Fowler White. On October 19, 2009, Mr. Knight appeared for Fowler White at PAH Co.'s Emergency Motion to Disqualify Fowler White in the Europa case. That Motion was granted by the Court. I filed my Amended Affidavit in Support of PAH Co.'s Motion to Disqualify Fowler White Burnett, P.A. See attached Exhibit 10. The affidavit details how Mr. Ackerman's representation of PAH Co., Mr. Halmos and IYC overlap claims with Fowler White's representation of ACE-INA in the underlying litigation and the Europa case.

36    Mr. Knight attended the subsequent hearing in the Europa case, on October 26, 2009. When he learned that I was filing another Affidavit, he accosted me outside the courtroom. Without my counsel present, knowing who I was and that I was represented by counsel, Mr. Knight began lunging at me in a physically threatening manner and demanded I give him a copy of the Affidavit which I have attached as Exhibit 11.

37    I filed a Bar complaint against Mr. Knight regarding the incident described above, which happened in the Europa case. See Exhibit 12. Mr. Knight's response to the Florida Bar

Holmes v. Ins. Co. of N. Am.
Case No. 09-10084-CIV Martinez-Brown
Affidavit of NIKKI Trammell
Page 10

Inquiry/Complaint was truly bizarre.  <u>See</u> Exhibit 13  He included an exhibit from the ACE-INA

case and misrepresented to Florida Bar from where the document came  <u>See</u> my reply to Mr

Knight's response to the Florida Bar Inquiry/Complaint, Exhibit 14

38.    Based on my seven years of exposure to Mr  Ackerman, I know him to be a

thoroughly untrustworthy, dishonest, back-stabbing man who views the Florida Rules of

Professional Conduct as an annoying technicality

FURTHER AFFIANT SAYETH NAUGHT

NIKKI TRAMMELL

STATE OF FLORIDA

COUNTY OF PALM BEACH

The foregoing instrument was sworn to, subscribed and acknowledged before me this
30<u>th</u> day of April, 2010 by NIKKI TRAMMELL, who is <u>personally known to me</u> or has
produced a driver's license as identification



Notary Public, State of Florida
Print Name: Mary Catherine Best

My commission expires:

MARY CATHERINE BEST
Commission # DD 944382
Expires February 21, 2014
Bonded Thru Troy Fain Insurance 800-385-7019

# Exhibit

# 7

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

PETER HALMOS; INTERNATIONAL
YACHTING CHARTERS, INC.; and
HIGH PLAINS CAPITAL,

      Plaintiffs,

vs.

INSURANCE COMPANY OF NORTH AMERICA
and STRICKLAND MARINE INSURANCE, INC.
(f/k/a STRICKLAND MARINE AGENCY, INC.),

      Defendants.

## AFFIDAVIT OF JUDY HYMAN

COMES NOW, Judy Hyman, who after being duly sworn, testified:

1. I have been and remain a member of good standing of the Florida Bar since 1982. I have never been sanctioned by the Florida Bar.

2. On Saturday, October 28, 2009, I ran into Brian Cook, an attorney whom I have known for a number of years. I congratulated him on his recent law firm move and I wished him the best and hoped that being at Buckingham Doolittle & Burroughs in West Palm Beach would be a great opportunity.

3. We further discussed that I have been and continue to be counsel for IYC and Peter Halmos (as beneficial owner) in the SOL collision case and that I had discussed one other of Peter Halmos' cases with Wade Bowden, who worked at Jones Foster. I informed Mr Cook that I had heard that there was a problem with missing documents and this matter was troublesome. I opined that I did not know why an attorney of Mr. Joseph Ackerman's standing would be involved with anything so sorted.

4. Thereafter, Mr. Cook and I discussed the recent employment of Mr. Ackerman as a Fowler White Burnett shareholder and some of the unpleasantness that involved Peter Halmos retrieving his files from Mr Ackerman.

5   During our discussion I explained to Mr. Cook, who was surprised when I told him, that I was told that Mr. Ackerman had possession of Peter Halmos' files and the files were not returned. Mr. Cook told me that he saw the boxes of Peter Halmos' files in a conference room or library about 1½ years ago, in early 2008. Although he did not know how many boxes were there, he guessed that there were about 20-30 boxes of files marked "HALMOS." Mr. Cook told me he had a conversation about the boxes with Mr. Ackerman informing him if he was no longer representing Peter Halmos et al., the boxes should be returned. Mr. Ackerman informed Mr. Cook that the boxes were being returned. However, Mr. Cook informed me that he did see the boxes on a subsequent occasion. Mr. Ackerman informed Mr. Cook that at the time the boxes were in his possession, Mr. Ackerman no longer represented Peter Halmos et al.

6   Mr. Cook told me that he had instructed Mr. Ackerman to "get the ['HALMOS'] boxes out of here."

7.   Later, Mr. Cook inquired of Mr. Ackerman as to the status of the "HALMOS" file boxes. Mr. Cook stated that Mr. Ackerman had confirmed removal of the "HALMOS" file boxes from Buckingham Doolittle & Burroughs premises.

_____

Judy Hyman
Florida Bar No. 0353738 Judy Hyman Law Office
1615 Forum Place
Suite 3A
West Palm Beach, FL 33401
Telephone: (561) 686-8010
Facsimile: (561) 686-8663

SUBSCRIBED AND SWORN TO BEFORE ME on this 29 day of April, 2010, by Judy Hyman, who is __x__ personally known to me; or ____ produced _____ as identification .

State of Florida )

) ss

County of Palm Beach )



Notary Public My commission expires:

Marlene Baker
Commission # DD552571
Expires June 18, 2010

# Exhibit

# 8

e 4:08-cv-10084-STB   Document 786-2   Entered on FLSD Docket 06/24/2010   Page 3 of 4

## Persons Plaintiffs May Wish To Depose

Price Waterhouse Coopers LLP
Two Commerce Square, Suite 1700
Philadelphia, PA  19103
        Corporate Representative and the person in charge of the audits for SEC
        Compliance of ACE, LTD and/or State Compliance of ACE American & ACE
        USA and related ACE entities

Tom Corness
c/o Patton Marine
2464 SW 22nd St
Miami, FL  33245

Dr. Phil Frank

## PLUS WITNESSES ALL LISTED IN:

(1)   ACE INA's Amended Answers to HPC's First Interrogatories
(2)   STRICKLAND's Answers to IYC Interrogatories
(3)   Plaintiff's Rule 26 Disclosures
(4)   Peter Halmos' Supplemental Rule 26 Disclosures
(5)   IYC & HPC Supplemental Rule 26 Disclosures
(6)   IYC's, HPC's and Peter Halmos' Answers to INA's and STRICKLAND's
        Interrogatories

Individuals:              Fowler, White Incident
Bonnie Radewitz
Buckingham Doolittle Corporate Rep
Carla Ventrono
Christine Demaline
Christopher Knight
David Tobin
Dixie Rogers
Elizabeth Hackney
Fowler White Burnett Corporate Rep - most familiar with the employment of Joseph
        Ackerman; representation of ACE-INA and its affiliates; litigation between ACE-
        INA and Peter Halmos, IYC and HPC; Litigation between Europa Building
        Associations and PAH Co; Litigation between UPham and IYC, Peter Halmos
        regarding the SOL collision
Henry Burnett
Jason Weissman
Joseph Ackerman
Joseph Ianno
Michelle Ganetis

Natalie Trompet
Patrick Kelly
Paul Thibadeau
Rory Eric Jurman.
Scott Topolski.
Sue Marlin.
Yami Aguilera

Corporate Representative of:
ACE Marine Advisory Services
ACE Fire Underwriters Insurance Company
ACE Indemnity Insurance Company
ACE Insurance Company
ACE Insurance Company of the Midwest
ACE Ocean Marine
ACE Recreational Marine
Bankers Standard Fire and Marine Company
Bankers Standard Insurance Company
Century Indemnity Company
ESIS, Inc. – Recovery Services International, Inc.
Illinois Union Insurance Company
Indemnity Insurance Company of North America
Pacific Employers Insurance Company
Westchester Surplus Lines Insurance Company