IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

KEY WEST DIVISION

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

PETER HALMOS, et al.,

    Plaintiffs,

vs.

INSURANCE COMPANY OF NORTH
AMERICA, et al.,

    Defendants.
_____/

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER RE: FOOTSIE
MOTIONS [D.E. 1079]**

On October 7, 2010, this Court entered its Order Re: Footsie Motions (D.E. 1079) in which it denied Plaintiffs' Motion (D.E. 918) and Granted Defendant's Motion For Protective Order (DE 887). The Order, however, somehow (1) finds fault with the Plaintiffs for bringing the motion and for Plaintiffs' attorney, JC Antorcha, for terminating the deposition, (2) makes a specific finding that INA's two witnesses, both of whom had a great deal to lose, were "credible," and not Plaintiffs' witness who actually had a picture of what he saw, took the picture, and had nothing at stake in the proceedings unlike INA's two witnesses, and (3) does not even address the picture, nor the testimony of one of the "credible" witnesses who admitted repeated foot tapping by the other credible witness, Mr. Engerrand.

Respectfully, while the Court suggests that the Plaintiffs made "a quantum leap from what was seen and observed," it is the Court that ignored an actual photo, and

unrebutted testimony that admitted repeated foot contact, with rational explanation given as to why it, such bizarre and inappropriate behavior, was done. As a result, Plaintiffs request, pursuant to Rules 59(e) and 60(b)(6) of the Federal rules of Civil Procedure[1], the Court to reconsider its findings, as there is clearly some uncontroverted evidence that was overlooked.[2] In support thereof, Plaintiffs state the following:

On July 12, 2010, Plaintiffs took the deposition of Connie Dennis. As reflected by the transcript, the deposition began at approximately 9:57 a.m., and concluded, after a lunch break, at 12:48 p.m. when counsel for the Plaintiffs terminated the deposition after receiving a text picture with Mr. Engerrand's foot tapping the deponent. Upon questioning of Ms. Dennis during the deposition, she <u>admitted</u> to the foot-tapping having occurred "<u>a couple of times</u>" (Depo. Tr. 75/22-23), and counsel for IYC and HPC terminated the deposition.

On October 4, 2010, this Court held an evidentiary hearing and entertained testimony of Johnathan Burke, Connie Dennis and Kenneth Engerrand. Prior to entertaining the testimony, the Court stated "the Court has enough information in front of it, however, to say, using criminal law, there is a basis for making the allegations." *See Hearing Tr. 5/9-10*. Then, despite the fact that the evidence supported the allegations, on October 7, 2010, the Court issues its order, finding compensatory fault

---

[1] Rule 60(b)(6) gives courts "ample power" to "accomplish justice" by rescinding or amending orders for "any other reason justifying relief from the operation" of an order." *See Jackson v. people's Republic of China*, 794 F. 2d 1490, 1494 (11th Cir. 1986); *see also KRSTIC v. Princess Cruise Lines, Ltd.*, 706 F.Supp.2d 1271, 1281 (S.D. Fla. 2010)("When, as here, a motion for reconsideration is served within twenty-eight days of the entry of the order at issue, Federal Rule of Civil Procedure 59(e) applies.")
[2] In addition, there is the fact that the Court, which insisted on handling the hearing itself, but which allowed "questions" to be submitted. Because the Court insisted on doing all of the questioning itself, it was responsible for all of the questions asked and for the propriety of them. Without question, the absence of cross-examination was beneficial to the accused.

only with the plaintiffs. Plaintiffs now seek reconsideration of that order.

### 1. Cancellation of the Deposition Was Appropriate

The Court finds Plaintiffs at fault for cancelling the deposition and how the "matter was handled." The Court finds support for this conclusion in (1) stating the Mr. Engerrand offered to move away from the deponent, and (2) Mr. Engerrand offered to try to get Chief Judge Brown on the phone to resolve the motion. Both options, as noted by the Court were rejected. According to the Court, the "prudent thing" to do would have been to have Mr. Engerrand move and have the deposition completed.

First, the deposition of IYC and HPC was in fact concluded. *See Hearing Tr. 62/9-12.* Mr. Engerrand did request to move away from the witness, but that leaves little solace for counsel for IYC and HPC who concluded his deposition, and more importantly, was not present in person at the deposition to determine if the foot tapping was replaced with a less subtle form of witness tampering.

More importantly, while the Court notes that Mr. Engerrand offered to get the Court on the phone, that was not what happened. He offered to get the Special Master on the phone, as is inferentially clear by Mr. Antorcha's record response to the offer: "[w]e're going straight to Judge Brown on this one." *See Depo Tr.76/6-10.* Clearly, what did the Court have in mind, get Judge Klein over the phone, have Mr. Antorcha text the footsie picture to him, and have a telephonic evidentiary hearing where Judge Klein can determine the demeanor of the witnesses over the phone?

Termination of the deposition was the only available option, yet this Court chastises Plaintiffs and finds that "[t]here is a quantum leap made by plaintiffs from what was seen and observed at the deposition to the conclusion reached." Most importantly,

the Court embraces side issues and ignores the fact that the foot tapping was admitted and extracted no explanation as to why. Without any question, INA had the responsibility to explain, and the Court did not require it beyond the vague answer that Mr. Engerrand was paying close attention to the questions.

### 2. Findings Regarding Johnathan Burke

Although this Court said it need not decide which side to believe, it in fact did just that by omission. The Court stated "[t]he Court need not decide who to believe to resolve this issue—thought the Court does find the testimony of Ms. Dennis and Mr. Engerrand to be credible." *Order at 2.* Yet in the preceding paragraph, the Court attempted to impeach Mr. Burke, and implicitly found his testimony not credible. Each of the Court's findings will be addressed:

First, the Court finds Mr. Burke's testimony regarding the timing of the incident to be at odds with the deposition transcript. The Court, incorrectly, notes that Mr. Burke testified that the deposition "was going on for about thirty minutes" prior to the incident. The Court found that to be "quite at odds with the transcript itself." That, however, is not the case.

Mr. Burke actually testified to this Court that the deposition was occurring for "*well over* 30 minutes." Hearing Tr. 10/22-23. The Court apparently equates "well over" to mean "about." However, when Mr. Engerrand and Ms. Dennis estimated the time of the event, one at two hours, the other at two and one-half hours, that posed no problem for the Court – then again, both Engerrand and Ms. Dennis prepared for the hearing, and Mr. Burke did not.

Second, the Court also focuses on construction occurring during the deposition,

as if somehow that is relevant to the issue—when both INA witnesses testified that the tapping took place. Plaintiffs would respectfully point out to the Court that clearly absent from the transcript is any indication that there were any problems with the noise or hearing *during the incident*. In fact, both Mr. Halmos and Mr. Antorcha were on the phone, yet were able take the deposition irrespective of the "construction going on in the building and the noise attendant thereto." In fact, Mr. Burke testified that the "construction noise" was earlier that day, not during the incident occurring. *Hearing Tr. 16/5-7.*[3] Ms. Dennis testified that there was mention of the construction *prior to the deposition. Hearing* Tr. 38/17-24. Thus, Mr. Burke testified he heard the tapping, and Ms. Dennis admitted that tapping occurred. Clearly, under these circumstances, what does it matter if there is construction, when what was heard by Mr. Burke is confirmed by what was felt by Ms. Dennis?

Third, the Court notes that Mr. Burke testified that the incident was going on during Mr. Halmos' questioning, as far as he knew. Ms. Dennis, however, testified "it happened more than once throughout the whole deposition a couple of times." *Hearing Tr. 36/13-14.*

Fourth, the Court asked the respective witnesses what preparation was done. Mr. Burke testified, none. *Hearing Tr. 10/10-16.* Ms. Dennis testified none, except that her counsel informed her "tell the truth." *Hearing Tr. 39/3 – 41/3.* Mr. Engerrand, however, testified that after the deposition, Mr. Engerrand "went over her deposition answers with her and asked her the same questions that they did, she didn't remember

---

[3] Mr. Engerrand testified that the construction was going on "since at least Friday, and there was noise under the table." *Hearing Tr. 26/16-20.* Absent that statement, nothing regarding when the construction was occurring during the deposition, except that he would have picked a different signal, if he "were going to pick a signal." Maybe, stepping on someone's foot alleviates the noise/signal issue.

anything then, either." *Hearing Tr. 24/15-17.* Clearly, Ms. Dennis must have forgotten to inform the Court. Silly, Plaintiffs' counsel ought not to have prepared their witness, as letting him "go it alone" subjected his testimony to minute analysis and disbelief, while the more credible witnesses, who clearly had and ultimately admitted to having reviewed what occurred at the deposition before the hearing, did not have their testimony analyzed with a microscope.

Finally, it bears to mention that INA has recently filed a Motion By Non-Party John F. Roth For Relief From Court's Order. *D.E. 1115*[4]. Interestingly, in attempting to exculpate Mr. Roth from directly violating a Court order requiring Ms. Dennis to be informed of her right to counsel,[5] INA has in fact impeached their own witness, Ms. Dennis. Now, not only did Ms. Dennis, who testified that there were no preparations/meetings before the hearing, except for instructions to "tell the truth," we now know of a third meeting—a telephonic conference call between Mr. Roth, Mr. Browning and Ms. Dennis. *See D.E. 1115 at 6* ("a subsequent conference call took place with Ms. Dennis, Mr. Roth and with Robert Browning . . . during which the Notice of Hearing was discussed at greater length."). INA claims that such "disconnect" between Ms. Dennis' answers on this particular issue and the evidence submitted with this Motion is likely due to nothing more than the passage of time . . . or nervousness."

---

[4] Plaintiffs will respond to this Motion in greater detail within the time frame allotted by the rules, however, certain new revelations will be discussed in this motion.
[5] In fact, the email Mr. Roth sent stated to Ms. Dennis that the "order requires your appearance on October 7, 2010 in federal court in Miami." D.E. 1115 at 5. That is false representation of what the order required. INA excuses such misrepresentation by saying "in retrospect, Mr. Roth could have made this point more clearly . . . [h]owever, Mr. Roth did make clear that Ms. Dennis would be represented by counsel . . . [and] the Notice of Hearing itself was provided to Ms. Dennis." *Id.* at 6. That's right, the attorney's accused of the improper conduct will be representing Ms. Dennis, and besides, the Assistant General Counsel of the company she works for attached the Court's order which he informs her *requires her to be at the hearing*. That is exactly what this Court no doubt intended to avoid by requiring INA to inform Ms. Dennis to seek her own counsel.

*Id. at 7.* So, Ms. Dennis's testimony was untrue, and Mr. Browning stood there and allowed her to testify incorrectly without bringing it to the attention of the Court.

Here's the problem with such a bold statement:

First, Mr. Browning was before this Court at the footsie evidentiary hearing and did not inform the Court of the obvious misrepresentation by Ms. Dennis that in fact there was a meeting between him, Mr. Roth and Ms. Dennis at an undisclosed date[6]. Interesting how there is no need to clear it up when the truth is being sought, but when Mr. Roth is sanctioned, well now it's time to clear up the misunderstanding. Or maybe the "passage of time" or "nervousness regarding the hearing" allowed the fact to slip Mr. Browning's mind as well.

Second, there is testimony via Mr. Engerrand, and now affidavits before this Court as "supplemental evidence" that in fact conclusively establish that there were at least two meetings that Ms. Dennis attended (besides the meeting the morning of the hearing where "tell the truth" was all that was said). The first, Mr. Engerrand's and Ms. Dennis's question by question review of the deposition. The second, a conference call with Robert Browning and Mr. Roth regarding the actual hearing.

But, as the Court stated it "need not decide who to believe", Plaintiffs will simply point out that (1) Mr. Burke's testimony is actually consistent but for "well over 30 minutes" being interpreted as about 30 minutes, (2) the only witness that has nothing to gain or to lose from testifying is Mr. Burke, all other witnesses have their jobs, reputation, and in Mr. Engerrand's case, his bar license and perhaps law firm

---

[6] For some reason, INA fails to provide the date of the meeting between the three, maybe so INA can blame Ms. Dennis' memory on the passage of time. Yet, Mr. Browning could simply have looked up the information on his monthly time reports, as they have so willingly done in the past to support sanctions awards by this Court.

partnership,[7] at stake –yet the Court found a need to find incredible the individual who simply took the picture and thought nothing more of it other than it was funny and did not gather the seriousness of what he just saw. *See Hearing Tr. 13*/17-20. (stating "I just made a joke about it. . . . We have got people playing footsey, or something. . .")

  (3) **Facts Which the Court May Have Overlooked**

  Clearly absent from the Court's order are any findings regarding the picture that was taken, and more importantly the fact that both Mr. Burke and Ms. Dennis testified that Mr. Engerrand tapped Ms. Dennis' foot several times. *Hearing Tr. 13/8-Tr. 14/2; Tr. 36/11-14.* Even the transcript of the deposition is consistent with this fact. *Hearing Tr. 75/21-25.* How could the Court find that no foot-tapping occurred, when Ms. Dennis admitted it and the picture showed a hernia-threatening maneuver to contact Ms. Denis's foot.

  Furthermore, when the Court asked Mr. Burke [*Hearing Tr.14/3-13*]:

> Now, other than what you heard and the fact that you heard it more than once, do you have any basis for testifying here today that what was going on was a deliberate attempt to coach the witness?

Burke answered:

> Because once I realized what was happening and I got a better understanding of what was going on, it seemed every time I heard a thump that the witness would respond with, "I don't have the recollection or I don't know the answer to the questions that were being asked. *Id.*

  Thus, the undeniable fact is that the foot tapping did occur. Now, whether that foot tapping had any meaning to it or not, is not an issue that deserved shots at

---

[7] In response to the Court's question, Mr. Engerrand indicated that fees from INA were somewhere between the top and the bottom of his law firm's revenues, presumably hundreds of thousands if not millions of dollars. ("It's not the largest. It is not the smallest. It is in the middle." *Hearing Tr. 19/15-19)*

Plaintiffs or credibility determinations towards Mr. Burke.

*The issue was whether or not there was any meaning to the foot-tapping, and clearly, the Court found solace in the two witnesses who had everything to lose from the situation who dutifully testified that nothing was meant by it.* Yet, the Court disregarded the real issue in question, and focused its analysis on noise, construction and the timing of the incident – none relevant to an issue admitted to have occurred by the witness.

The Court bent over backwards in attempting to find ill will and impropriety on behalf of Plaintiffs and its sole witness. The matter could have simply been resolved by finding that the testimony did not support the conclusion. However, if the Court had chosen to ignore Ms. Dennis's affirmation that there had been repeated foot tappings[8] and ignore the photo which showed an almost painful stretch of Mr. Engerrand's foot to that of Ms. Dennis, the Court could have done so without taking shots at the Plaintiffs.[9]

The plain fact is that the Court overlooked a number of the points raised above which it should reconsider, or at least explain what conceivable reason Mr. Engerrand would have to have been tapping Ms. Dennis's foot. It is not as if this took place in a sports bar. It was a proceeding of the federal courts. Perhaps that kind of conduct is considered acceptable in some quarters. But, a United States judge ought not countenance it.[10]

---

[8] Of course, in response to the Court's question, about whether was any physical contact between the two, the Court stated: "It happened more than once? *Hearing Tr. 25/12-14*, to which Mr. Engerrand stated: "It could have. That's what they say." Now, there's a candid and truthful response.

[9] It must be noted that the only witness asked as to whether or not he had been convicted of a felony and whether or not his employer had represented him in the past, was of the young African-American witness, and not of the other two witnesses.

[10] It should also be noted that the only wrongdoing on the part of INA appears to have been by its General Counsel, John Roth who the Court castigated for having failed to tell Ms. Dennis she had a right to counsel. But, it might be pointed out that Mr. Roth is not counsel of record in this case. Mr. Engerrand and others are. So, why is Mr. Roth guilty of unethical conduct when the lawyers to whom Mr. Roth is

Moreover, there is direct evidence that goes contrary to what Ms. Dennis testified regarding preparation for the hearing. This is not a "timing issue" or "construction issue," this goes to the heart of INA's witness tampering conduct, and clearly informing a witness on what to say. Voluntary amnesia regarding one prep session – possible, two separate sessions with separate individuals merits a bit more scrutiny from this Court.

The Court should note that not only did INA "not come clean," no one even apologized for the conduct, suggested it was wrong, or offered any explanation. All they did, was seek a protective order for attorneys' fees if the deposition were to continue. Who says the best defense is not an offense. It surely paid off for INA and Mr. Engerrand.

Finally, the Plaintiffs take exception to the Court's suggestion that improper and unethical conduct can be "remedied" by sliding over at the table. Why does the Court take such a cavalier approach towards such conduct? The conduct at the deposition was just plain wrong, and the Court's order countenances it.

### CERTIFICATE OF GOOD FAITH CONFERENCE

Undersigned counsel conferred with counsel for INA, Robert Browning, who stated that INA opposes this instant motion for reconsideration.

WHEREFORE, Plaintiffs respectfully request that this Court reconsider its Order Re: Footsie Motion [D.E. 1079], find that Mr. Engerrand's conduct was improper, levy sanctions against him and INA, including disbarment from this Court, and relieve the plaintiffs of the sanctions levied against them, the messengers.

---

paying princely sums to represent him and his company are not?

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

Respectfully submitted,

Joseph P. Klock, Jr.  FBN 156678
Juan Carlos Antorcha FBN 0523305
RASCO KLOCK REININGER PEREZ
ESQUENAZI VIGIL & NIETO
283 Catalonia Avenue
Coral Gables, Florida  33134
Telephone: 305.476.7105
Facsimile: 305.476.7102

By:  /s/ Joseph P. Klock, Jr.


LAW OFFICE OF HUGH J. MORGAN
Hugh J. Morgan
P.O. Box 1117
Key West, Florida 33041
Telephone:  (305) 296-5676
Facsimile:   (305)296-4331
hugh@hjmorganlaw.com

SPOTTSWOOD, SPOTTSWOOD
&  SPOTTSWOOD
Jack Spottswood
500 Fleming Street
Key West, Florida 33040
Telephone:  (305) 294-9556
Facsimile:   (305) 292-1982
jack@spottswood.com

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

PETER HALMOS, pro se
c/o Meyers & Associates, CPA
4540 PGA Blvd., Suite 216
Palm Beach Gardens, FL 33418
Telephone: (561) 249-1712
Facsimile: (561) 249-1709
gail@meyerscpa.com

By: _____

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Juan Carlos Antorcha

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

## Service List

Frank J. Sioli
Zascha B. Abbott
BROWN SIMS P.C.
Datran One - Suite 908
9100 South Dadeland Boulevard
Miami, Florida  33156
Telephone: (305) 274-5507
Facsimile: (305) 274-551
fsioli@brownsims.com

Kenneth G. Engerrand
Michael A. Varner
P. Michael Bowdoin
Brown Sims p.c.
1177 West Loop South
Tenth Floor
Houston, Texas 77027-9007
Telephone: (713) 629-1580
Facsimile:  (713) 629-5027
kengerrand@brownsims.com
mvarner@brownsims.com

Scott Bassman
Dara Jebrock
Counsel for Defendant,
Strickland
Cole, Scott & Kissane, P.A.
Dadeland Centre II
9150 S. Dadeland Blvd, Suite 1400
Miami, FL 33156
Facsimile: 305.373.2294
dara.jebrock@csklegal.com
scott.bassman@csklegal.com

David P. Horan
HORAN, WALLACE &
HIGGINS, LLP
608 Whitehead Street
Key West, FL  33040
Telephone:  (305) 294-4585
Facsimile:  (305) 294-7822
dph@horan-wallace.com

Clinton Sawyer Payne
DeMahy Labrador Drake Payne
& Cabeza
Alhambra Center – Penthouse
150 Alhambra Circle
Coral Gables, FL  33134
Telephone:  (305) 443-4850
Facsimile:  (305) 443-5960

4843-4334-7975, v. 1