UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

**Case Number: 08-10084-CIV-MARTINEZ-BROWN**

PETER HALMOS, *et al.*
                                      *Plaintiffs*,

vs.

INSURANCE COMPANY OF NORTH AMERICA, *et al.*

                                      *Defendants*.
_____/

**INSURANCE COMPANY OF NORTH AMERICA'S
MOTION TO EXCLUDE PLAINITFFS' EXPERT RICHARD DAVIES**

COMES NOW Defendant, Insurance Company of North America ("INA"), and files its Motion to Exclude Plaintiffs' Expert Richard Davies. In support of its Motion, INA presents the following Memorandum of Law.

**I. MEMORANDUM OF LAW**

Plaintiffs have designated Richard Davies as their "primary damage survey and repair cost expert." *See* Pls.' Notice Expert Discl. [D.E. 620] at 2. To that end, Davies has prepared reports related to both the *Legacy* and the *Mongoose*. *See id.*; Pls.' Notice Supp'l Expert Reports [D.E. 679] at 1. Noticeably absent from these reports, however, are any relevant opinions on the damages sustained by these vessels *as a result of* the storms. *See id.* The reports are also silent on what it would cost to repair the vessels to their *pre-storm* conditions. *See id.* The measure of insurance benefits potentially payable under Part A: Property Damage Coverage of the INA Policy is set forth in the Loss Settlement provision of the Policy. The Loss Settlement provision indicates that the INA policy will pay the lowest of the following: (1) the Part A Property Damage Coverage limit as shown on the Declarations Page ($16 million); (2) the cost of replacement; or (3) the cost of repair with no deduction for depreciation (with certain exceptions). Consequently, to the extent that Plaintiffs intend to rely on Davies' testimony to establish the damages inflicted upon the vessels as a result of the storms, and/or the cost of repairing the vessels to their pre-storm conditions, Davies' testimony on these matters is unreliable and should be excluded. Moreover, as Davies has failed to establish any foundation

for such testimony, his testimony fails to satisfy the standard necessary for admissibility under *Daubert* and should be excluded on that ground.

The burden of laying the proper foundation for admitting expert testimony rests on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1261 (11th Cir. 2004). "Carrying this burden requires more than 'the *ipse dixit* of the expert.'" *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1113 (11th Cir. 2005) (internal citation omitted). Instead, the party offering the expert must show that "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact issue." *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1338 (11th Cir. 2003) (internal citation omitted).

Under the second element of this test (reliable methodology), a court should exclude the testimony of an expert if it is not reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993). For an expert's testimony to be reliable under Rule 702, the following requirements must be met: (1) the expert's testimony must be based on sufficient facts or data, (2) the expert's testimony must be the product of reliable principles and methods, and (3) the expert must apply the principles and methods reliably to the facts of the case. Fed. R. Evid. 702; *Covas v. The Coleman Co.*, No. 00-8541-CIV-LENARD/KLEIN, 2005 U.S. Dist. LEXIS 46712, at *4 (S.D. Fla. June 28, 2005); *accord United States v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002). Importantly, "the Court can only admit expert testimony if it rests on a reliable foundation." *Am Nat'l Fire Ins. Co. v. M/V Seaboard Victory*, No. 08-21811-CIV-SEITZ/O'SULLIVAN, 2009 U.S. Dist. LEXIS 127113, at *4 (S.D. Fla. Oct. 9, 2009).

Further, under the third element of this test, a court should exclude the testimony if it will not assist the trier of fact through the application of the witness's expertise. *Hudgens*, 328 F.3d at 1338. In this motion, INA challenges both the reliability of Davies' methodology as well as his ability to assist the trier of fact.

Here, Davies' testimony does not rest on a reliable foundation because it is not based on sufficient facts or data and since his testimony cannot assist the trier of fact. *See* Fed. R. Evid. 702; *Covas*, 2005 U.S. Dist. LEXIS 46712, at *4; *Conn*, 297 F.3d at 555. As will be demonstrated below, when formulating his opinions on repair costs, Davies failed to take into consideration certain material facts essential to a proper evaluation of the cost of repair. As a result, the Court should exclude Davies' testimony on repair costs as it relates to both (1) the *Legacy*, and (2) the *Mongoose*. Further, Davies' testimony cannot assist the trier of fact because (3) INA paid its hull limits as to the *Legacy* and (4) the hull payment as to the *Mongoose* is not a part of this litigation (as plaintiffs have abandoned this component of their claim). Exhibit C, HPC's Interrogatory Responses, at 3. Therefore, Davies' testimony cannot assist the trier of fact.

**1.  The Court Should Exclude Davies' Testimony on Repair Costs as It Relates to the *Legacy***

Davies' testimony related to repair costs for the *Legacy* should be excluded because it is based on insufficient facts or data. *See Kumho Tire Co*, 526 U.S. at 149; *Daubert*, 509 U.S. at 592–93; *Am Nat'l Fire Ins. Co.*, 2009 U.S. Dist. LEXIS 127113, at *4. Davies has been designated to testify on what it would cost to repair the *Legacy*. *See* Pls.' Notice Expert Discl. [D.E. 620] at 2.

Davies has no knowledge of the *Legacy's* pre-storm condition. He failed to conduct any research regarding *Legacy's* pre-storm condition. At no point during his investigation did Davies ever request any documentation or other evidence of the *Legacy's* pre-storm condition. Ex. A, Davies Dep. Tr. (July 23, 2010) at 57:17–58:4. Davies freely admitted to this deficiency during his deposition:

> Q: [A]s we sit here today, you can't specifically tell us what independent efforts you undertook to verify the condition of the Legacy before Hurricane Wilma, can you?
> A: I did not specifically make any efforts to verify her condition prior to Hurricane Wilma. It was not part of the brief of why I was there.
> Q: Did you ask for any specific documentation regarding --
> A: No.
> Q: -- the condition of the Legacy before Hurricane Wilma?
> A: No.

*See* Ex. A, Davies Dep. Tr. (July 23, 2010) at 57:17–58:4. Consequently, Davies has no reliable foundation upon which to base an opinion of what it would cost to restore the *Legacy* to its pre-

storm condition. *See Kumho Tire Co*, 526 U.S. at 149; *Daubert*, 509 U.S. at 592–93; *Am Nat'l Fire Ins. Co.*, 2009 U.S. Dist. LEXIS 127113, at *4.

Nevertheless, one of Davies' Reports indicates that it could cost up to € 15,558,000[1] to repair the *Legacy*. *See* Ex. B, Davies Report (Apr. 4, 2010) at 2–3. But Davies has also admitted that these "repair cost" calculations are based on what it would cost to refit the *Legacy* to the condition it was in when it was *first built* in 1995—some ten years before the storm. This estimate is *not* reflective of what it would cost to restore the *Legacy* to its pre-storm condition. As Davies explained:

> Q: Is the purpose of your cost analysis here to restore Legacy to pre-Wilma condition? Is that the aim?
> A: Yes. I -- with the qualification that I don't specifically know what the pre-Wilma condition was. I would restore -- with this cost estimate, restore Legacy to how she would have been close to when she was built.

*See* Ex. A, Davies Dep. Tr. (July 23, 2010) at 95:24–96:5; *see also id.* at 154:3–17; 161:5–162:13.  Since Davies did not attempt to render opinions regarding the cost to restore *Legacy* to its pre-storm condition, he should not be permitted to opine regarding that at the trial of this matter.

Davies further admitted that he did not even undertake the type of investigation that would be necessary for him to formulate a reliable opinion on the cost of repairing the *Legacy* to its pre-storm condition.  Specifically, he stated:

> Q: You said the report was used -- was prepared mainly, using quotations, for a major refit [as opposed to a repair]. Why didn't you prepare a report for the repair of a Perini?
> A: It would have been a much more lengthy and complex thing to do. I would have had to actually go out and get quotations for it, which I didn't. You know, this is to get a feeling of the -- of where the overall thing's going to be. This is not a quotation. This is not actually what it's going to cost.

*See* Ex. A, Davies Dep. Tr. (July 23, 2010) at 87:18–88:3.  Without the underlying investigation upon which to base an opinion regarding the cost to repair *Legacy* to its pre-storm condition, Davies' opinion cannot satisfy the foundational reliability element and should be struck.

---

[1] Approximately $21,000,000.

Davies also testified that, when conducting his survey, he was unaware of the *Legacy's* 2001 allision with the *Sol*. More importantly, he testified that such knowledge would have been necessary for him to properly assess the damages caused by the storm (not that he was properly assessing those damages in the first place):

> Q: Do you know whether or not at any time after Legacy was built -- I'm talking about the time period between 1995 and 2005 -- whether or not Legacy sustained damage that could have affected her classification?
> A: Before the hurricane?
> Q: Before the hurricane.
> A: No, I don't know of anything.
>    ...
> Q: Would it have been important for you to know that the gangway was damaged in such a way that it had to be tied up?
> A: I think in making an assessment of restoring the vessel to her pre-hurricane condition, it would have been important for me to know whether we were dealing with damages of one incident or two incidents.

*See* Ex. A, Davies Dep. Tr. (July 23, 2010) at 140:14–20; 142:18–24. Plaintiff claims $11 million in unrepaired damage due to the *Sol* allision. Without considering this material information, Davies' opinions regarding the cost to repair *Legacy* to her pre-Wilma condition cannot be foundationally reliable.

In consideration of the foregoing, the Court should exclude Davies. All of Davies' calculations reflect his opinions on what it would cost to restore the *Legacy* to its brand new condition, not its pre-storm condition. Davies' opinion does not provide assistance in determining the measure of damages potentially recoverable under the INA Policy. Further, Davies admits that he did not conduct the type of investigation necessary to even formulate an opinion on what it would cost to restore the *Legacy* to its pre-storm condition. Lastly, Davies was unaware that the *Legacy* had ever been involved in another allision which allegedly caused $11 million in unrepaired damage prior to Hurricane Wilma. Consequently, the Court should exclude Davies from testifying on repair costs because his opinions would be foundationally unreliable.[2]

---

[2] Furthermore, because Davies' calculations and estimates of repair costs are based on what it would cost to repair the *Legacy* to its brand new condition, as opposed to its pre-storm condition, the Court should exclude Davies from testifying on the costs of repairs under Rule 402 because his estimates are irrelevant to these proceedings. *See* Fed. R. Evid. 402. Even if his testimony is somehow deemed relevant, it should be excluded under Rule 403 because its probative value is

**2.     The Court Should Exclude Davies' Testimony on Damages and Repair Costs as It Relates to the *Mongoose***

Davies' testimony related to the *Mongoose* should be excluded because it, too, is based on insufficient facts or data. *See Kumho Tire Co*, 526 U.S. at 149; *Daubert*, 509 U.S. at 592–93; *Am Nat'l Fire Ins. Co.*, 2009 U.S. Dist. LEXIS 127113, at *4. In particular, his testimony lacks foundational reliability with respect to repair costs.

There are multiple reasons why Davies cannot testify on what it would cost to restore the *Mongoose* to its pre-storm condition. First, Davies has no knowledge of the *Legacy's* pre-storm condition. In fact, he admitted that he has "no objective evidence" regarding the *Mongoose's* pre-storm condition. *See* Ex. A, Davies Dep. Tr. (July 23, 2010) at 114:21–115:6. Instead of independently verifying the condition of the *Mongoose* prior to the storm, Davies simply took Halmos' word that the *Mongoose* had been kept in pristine condition. In fact, Davies' entire opinion on the *Mongoose's* condition prior to the storms is based upon what Halmos and Captain Collins told him. *See* Ex. A, Davies Dep. Tr. (July 23, 2010) at 111:25–112:13; 113:14–115:6. He had to do this because Halmos forgot his keys preventing Davies from inspecting the interior of the vessel. See Ex. A, Davies Dep. Tr. (July 23, 2010) at 109:3-8. But an expert's failure to independently verify material facts supplied by an interested party renders the expert's opinion unreliable. *Mercedes-Benz USA, Inc. v. Coast Auto. Group, Ltd.*, 362 Fed. App'x 332, 334 (3d Cir. 2010); *United States v. Tipton*, 269 Fed. App'x 551, 560 (6th Cir. 2008). As one court has explained it "Rule 703 'was not intended to abolish the hearsay rule and allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.'" *Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 726 (E.D. Wisc. 2008) (quoting *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005)). Since Davies' has no knowledge of the *Mongoose's* condition prior to the storms, he lacks the requisite foundation to testify on the damages that the vessel sustained during the storms. *See Kumho Tire Co*, 526 U.S. at 149; *Daubert*, 509 U.S. at 592–93; *Am Nat'l Fire Ins. Co.*, 2009 U.S. Dist. LEXIS 127113, at *4.

Second, Davies specifically admitted that he has no opinion on the damages caused by the storms. In his own words:

---

substantially outweighed by the danger of unfair prejudice and/or confusion of the issues. *See* Fed. R. Evid. 403.

> Q: It says here that Mr. Slakoff's opinion was the majority of the repairs needed by the Mongoose are the result of general wear and neglect not directly related to the hurricane damage. Do you have any reason to dispute that?
> A: Only inasmuch as that's not what I was told [by Halmos]. But --
> Q: Okay. Well, let's --
> A: I can't dispute it. I don't have a list of the repairs that were needed, and neither do I have any evidence one way or the other.
> Q: You have no opinion upon what damage was caused by the hurricane and what was caused by the --
> A: No.

*See* Ex. A, Davies Dep. Tr. (July 23, 2010) at 116:23–117:11. Thus, there is no way for Davies to offer reliable testimony about what it would cost to restore the *Mongoose* to its pre-storm condition.

Third, and finally, even if Davies had the necessary data to form a reliable opinion, he has specifically admitted that he lacks the requisite expertise to offer such an opinion. In his own words:

> A: The first time I saw the Mongoose was in 2006, when I was visiting Legacy. These sort of boats are not particularly my area of expertise. It's a boat. It's made of wood.

*See* Ex. A, Davies Dep. Tr. (July 23, 2010) at 19:11–14. While experts may offer opinions on areas within their expertise, they may not offer opinions on matters outside of their expertise. *See, e.g.*, *In re Nationsrent Rental Fee Litig.*, No. 06-60924-CIV-BROWN, 2009 U.S. Dist. LEXIS 3438, at *6–7 (S.D. Fla. Jan. 12, 2009); *James v. Equifax Info. Servs., LLC*, No. 6:05-cv-1428-Orl-22JGG, 2007 U.S. Dist. LEXIS 86427, at *7 (M.D. Fla. Jan. 12, 2007). Thus, when Davies admitted that wooden boats such as the *Mongoose* are outside of his expertise, he disqualified himself from testifying as an expert on any matter related thereto. *See id.*

3. **The *Legacy* Hull Limits Have Been Paid In Full And, Therefore, Davies' Testimony Will Not Aid The Trier Of Fact**

As stated in the preceding pages, Davies offers opinions regarding the damages to and cost to repair the *Legacy's* hull. The applicable policy provided $16,000,000.00 in Part A: Property Damage Coverage. D.E. 688-6. INA made two payments totaling $16,000,000—one for $11,192,531.54 and another for $4,807,468.46—both for property damage to *Legacy* as described by Mr. Knowles' reports. *See* Ex. D, Harting-Forkey Aff. at 2-3 ¶¶ 8–9, 11–13. Because

$16,000,000 was the full extent of INA's obligations under the "Part A: Property Damage Coverage" section of the Policy, IYC is entitled to no further recovery from INA for property damage to *Legacy*. Consequently, Davies' opinions regarding damages to and the cost to repair *Legacy's* hull do not aid the trier of fact. *Hudgens*, 328 F.3d at 1338. On this ground, Davies' opinions should be struck in their entirety.

Also, in proffering this testimony, predicated on the assertion that an insurer is responsible for restoring insured property back to its original condition, Plaintiffs abandon one of the cornerstones of insurance law: the scope of coverage is determined by the insuring agreement of the policy. In this case, the insuring agreement provides "coverage for accidental, direct physical loss or damage you [the] insured vessel" but explicitly excludes coverage for wear and tear or other deterioration to the vessel. Davies' report wholly abandons these basic tenants of insurance law—as most evident from the failures of the evidential underpinnings of his testimony. Therefore, on this separate ground, Davies' opinions cannot aid the trier of fact and should be struck.

**4.   There Is No Claim As To The *Mongoose* Hull Limits And, Therefore, Davies' Testimony Will Not Aid The Trier Of Fact**

As stated in the preceding pages, Davies offers opinions regarding the damages to and the cost to repair the *Mongoose's* hull. Plaintiff High Plains Capital does not assert a claim related the *Mongoose's* hull limits. Exhibit C, HPC's Interrogatory Responses, at 3. In fact, HPC's Interrogatory Answers state:

> Although damages to Mongoose exceed the aggregate $393,000 INA paid on February 23, 2009, because INA made this payment without reservation, IYC [sic] will accept this payment for hull damages.

Exhibit C, HPC's Interrogatory Responses, at 3. No further claim for *Mongoose* hull damages is made in the interrogatory responses. Exhibit C, HPC's Interrogatory Responses, at 3. Therefore, the extent of damage or necessity of repairs is not relevant to this litigation and will not assist the trier of fact. *Hudgens*, 328 F.3d at 1338. On this ground, Davies' opinions cannot aid the trier of fact and should be struck.

## II. CONCLUSION & PRAYER

WHEREFORE, PREMISES CONSIDERED, INA hereby prays that the Court grant INA's Motion to Strike Plaintiffs' Motion to Exclude Plaintiffs' Expert Richard Davies in its entirety, and

- 9 -

that it further grant INA any and all other relief, whether general or special, at law, in equity, or in admiralty, to which it is justly entitled.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1.A.3, counsel for the moving party hereby certifies that he conferred in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Case 4:08-cv-10084-STB   Document 1214   Entered on FLSD Docket 12/29/2010   Page 9 of 14

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        Respectfully submitted,

        **BROWN SIMS, P.C.**

By: /s/ Frank J. Sioli
    Frank J. Sioli
    Florida Bar No. 009652
    Datran Two – Suite 1609
    9130 South Dadeland Boulevard
    Miami, Florida 33156-7851
    Telephone: 305.274-5507
    Facsimile: 305.274-5517

*Attorneys for Defendant*
*Insurance Company of North America*

OF COUNSEL:

Kenneth G. Engerrand
P. Michael Bowdoin
Robert M. Browning
Michael A. Varner
BROWN SIMS, P.C.
1177 West Loop South, Tenth Floor
Houston, Texas 77027
Telephone: 713.629-1580
Facsimile: 713.629-5027

**SERVICE LIST**

Mr. Hugh J. Morgan
Law Office of Hugh J. Morgan
317 Whitehead Street
Key West, Florida 33040
Telephone: 305.296-5676
Facsimile: 305.296-4331
hugh@hjmorganlaw.com
(via CM/ECF)

Mr. Jack Spottswood
Spottswood, Spottswood & Spottswood
500 Fleming Street
Key West, Florida 33040
Telephone: 305.294-9556
Facsimile: 305.292-1982
jack@spottswood.com
(via CM/ECF)

Peter Halmos, *Pro Se*
c/o Meyers & Associates, C.P.A.
4540 PGA Blvd, Suite 216
Palm Beach Gardens, FL 33418
(via Certified Mail, return receipt requested & via U.S. Mail, postage pre-paid)

Brenton N. Ver Ploeg, Esq.
Stephen A. Marino, Jr., Esq.
Ver Ploeg & Lumpkin, P.A.
100 S.E. 2nd Street
30th Floor
Miami, FL 33131
Telephone: 305-577-3996
Facsimile: 305-577-3558
bverploeg@vpl-law.com
smarino@vpl-law.com
(via CM/ECF)

Mr. Clinton S. Payne
Mr. Pete L. DeMahy
DeMahy Labrador Drake Payne & Cabeza
150 Alhambra Circle - Penthouse
Coral Gables, Florida 33134
Telephone: 305.443-4850
Facsimile: 305.443-5960
cpayne@dldlawyers.com
pdemahy@dldlawyers.com
(via CM/ECF)

Mr. David Paul Horan
Horan, Wallace & Higgins, LLP
608 Whitehead Street
Key West, Florida 33040
Telephone: 305.294-4585
Facsimile: 305.294-7822
dph@horan-wallace.com
(via CM/ECF)

Mr. Joseph P. Klock, Esq.
Mr. Juan Carlos Antorcha, Esq.
Rasco Klock Reininger Perez Esquenazi Vigil & Nieto
283 Catalonia Avenue
Second Floor
Coral Gables, FL 33134
(305) 476-7100
(305) 476-7102
jklock@rascoklock.com
jantorcha@rascoklock.com
(via CM/ECF)

C. Wade Bowden
Jones Foster Johnston & Stubbs, P.A.
505 S. Flagler Dr., Ste. 1100
P.O. Box 3475
W. Palm Beach, FL 33402-3475
Telephone: (561) 650-0406
Facsimile: (561) 650-0430
rvargas@jones-foster.com
wbowden@jones-foster.com
(via CM/ECF)

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

**Case Number: 08-10084-CIV-MARTINEZ-BROWN**

PETER HALMOS, *et al.*

                *Plaintiffs*,

vs.

INSURANCE COMPANY OF NORTH AMERICA, *et al.*

                *Defendants*.
_____/

**ORDER GRANTING
INSURANCE COMPANY OF NORTH AMERICA'S
MOTION TO EXCLUDE PLAINITFFS' EXPERT RICHARD DAVIES**

      On this day came to be heard Insurance Company of North America's Motion to Exclude Plaintiffs' Expert Richard Davies, and the Court, being fully apprised of the circumstances, and having considered any and all responses, replies, and oral argument, if any, is of the opinion that it is well-taken and should be granted in all things. It is therefore:

      ORDERED, ADJUDGED, AND DECREED that Insurance Company of North America's Motion to Exclude Plaintiffs' Expert Richard Davies is hereby GRANTED in its entirety and Richard Davies is hereby excluded from proffering any witness testimony at trial, or at any other time.

      Signed on this _____ day of _____, 2010.

                                                          _____
                                                           STEPHEN T. BROWN
                                                           Chief United States Magistrate Judge

<u>Peter Halmos, Int'l Yachting Charters, Inc. &</u>
<u>High Plains Capital v. Insurance Co. of North America</u>
Case Number: 08-10084-CIV-BROWN

**SERVICE LIST**

Mr. Hugh J. Morgan
Law Office of Hugh J. Morgan
Post Office Box 1117
Key West, Florida 33041
Telephone: 305.296-5676
Facsimile: 305.296-4331
hugh@hjmorganlaw.com

Mr. Clinton S. Payne
Mr. Pete L. DeMahy
DeMahy Labrador Drake Payne & Cabeza
150 Alhambra Circle - Penthouse
Coral Gables, FL 33134
Telephone: 305.443-4850
Facsimile: 305.443-5960
cpayne@dldlawyers.com
pdemahy@dldlawyers.com

Mr. Jack Spottswood
Spottswood, Spottswood & Spottswood
500 Fleming Street
Key West, Florida 33040
Telephone: 305.294-9556
Facsimile: 305.292-1982
jack@spottswood.com

Mr. David Paul Horan
Horan, Wallace & Higgins, LLP
608 Whitehead Street
Key West, Florida 33040
Telephone: 305.294-4585
Facsimile: 305.294-7822
dph@horan-wallace.com

Brenton N. Ver Ploeg, Esq.
Stephen A. Marino, Jr., Esq.
Ver Ploeg & Lumpkin, P.A.
100 S.E. 2nd Street
30th Floor
Miami, FL 33131
Telephone: 305-577-3996
Facsimile: 305-577-3558
bverploeg@vpl-law.com
smarino@vpl-law.com

Mr. Joseph P. Klock, Esq.
Juan Carlos Antorcha, Esq.
Rasco Klock Reininger Perez Esquenazi
Vigil & Nieto
283 Catalonia Avenue
Second Floor
Coral Gables, FL 33134
(305) 476-7100
(305) 476-7102
jklock@rascoklock.com
jantorcha@rascoklock.com

Peter Halmos, *Pro Se*
c/o Meyers & Associates, C.P.A.
4540 PGA Blvd., Suite 216
Palm Beach Gardens, FL 33418

Mr. Frank J. Sioli
Ms. Maria Saad
Datran Two – Suite 1609
9130 South Dadeland Blvd.
Miami, FL 33156-7851

2

|  |  |
|---|---|
|  | Telephone: 305-274-5507 |
|  | Facsimile: 305-274-5517 |
|  | fsioli@brownsims.com |
|  | msaad@brownsims.com |
| Kenneth G. Engerrand | C. Wade Bowden |
| P. Michael Bowdoin | Jones Foster Johnston & Stubbs, P.A. |
| Michael A. Varner | 505 S. Flagler Dr., Suite 1100 |
| Robert M. Browning | P.O. Box 3475 |
| Brown Sims, P.C. | W. Palm Beach, FL 33402-3475 |
| 1177 West Loop South, Tenth Floor | Telephone: 561-650-0406 |
| Houston, Texas 77027 | Facsimile: 561-650-0430 |
| Telephone: 713-629-1580 | rvargas@jones-foster.com |
| Facsimile: 713-629-5027 | wbowden@jones-foster.com |
| kengerrand@brownsims.com |  |
| mbowdoin@brownsims.com |  |
| mvarner@brownsims.com |  |
| rbrowning@brownsims.com |  |