08-10084.oay

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number:  08-10084-CIV-BROWN

PETER HALMOS, INTERNATIONAL
YACHTING CHARTERS, INC., and HIGH
PLAINS CAPITAL,

       Plaintiffs,

vs.

INSURANCE COMPANY OF NORTH
AMERICA and STRICKLAND MARINE
INSURANCE, INC., (f/k/a STRICKLAND
MARINE AGENCY, INC.),

       Defendants.

_____/

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

      **This matter** came before this Court on Defendant, Insurance Company of North America's

("INA's") Motion For Summary Judgment (D.E. 1000) and Corporate Plaintiffs' Motion for Partial

Summary Judgment (D.E. 1031).  The Court has reviewed the motions, the responses and replies,

and all pertinent portions of the file.

### FACTS

      Plaintiff International Yacht Charters, Inc. ("IYC") is a Cayman Islands corporation with its

principal place of business in Florida.  Plaintiff High Plains Capital ("HPC") is a Wyoming

corporation, with its principal place of business in Florida.  At all times material hereto, Plaintiff

Peter Halmos ("Halmos") was the President and sole shareholder of IYC and HPC.  Bill Meyers

("Meyers") was IYC's insurance broker.

      IYC is purchaser and registered owner of the *S/Y Legacy* ("the *Legacy*"), a 158 foot Italian

built sailing vessel.  In August, 2001, Defendant Insurance Company of North America ("INA"),

through Strickland Marine Insurance, Inc. ("Strickland"), issued a Yachtsman/Windjammer Policy to IYC to insure the *Legacy* bearing Policy # YWR Y06973504 ("the 2001 Policy"). The 2001 Policy, which provides coverage from August 7, 2001 through August 7, 2002, provided coverage for property damage up to the amount of $14,000,000, and liability coverage up to the amount of $25,000,000. IYC paid all premiums due on the 2001 Policy and it was in full force and effect at the time of the loss.

On September 15, 2001 an approximate 100 foot steel hull vessel named *The Sol* collided into the *Legacy* while it was anchored in a harbor in West Palm Beach, Florida.

In August, 2002, INA, through Strickland, issued a renewal Yacht Policy to IYC bearing a coverage period extending from August 7, 2002 to August 7, 2003 to insure the *Legacy* and its tenders, including the *Island Runner* ("the 2002 Policy"). The 2002 Policy contains a Dinghy-Tender Endorsement, which extended coverage for the *Island Runner*. The total insured value of the *Island Runner* indicated on the 2002 Policy is $88,690. IYC paid all premiums due on the 2002 Policy and it was in full force and effect at the time of the loss. On July 28, 2003, the *Island Runner* was lost at sea while she was being towed behind the *Legacy* in heavy weather during the night.

In August, 2003, INA, through Strickland, issued a renewal Yacht Policy to IYC bearing a coverage period extending from August 7, 2003 to August 7, 2004 to insure the *Legacy* and its tenders ("the 2003 Policy"). IYC paid all premiums due on the 2003 Policy and it was in full force and effect at the time of the loss. On July 31, 2004, a 20 foot sailboat allided into the *Legacy's* hull, and the mast and hull of the sailboat careened down the *Legacy's* port side ("the Hit-and-Run"). The 2003 Policy was subject to a $70,000.00 property damage deductible. On August 5, 2004, IYC made a claim related to the Hit-and-Run allision. INA acknowledged the claim on August 5, 2004.

In December, 2004, INA, through Strickland, issued a Yachtsman's Policy to HPC to insure a vessel named the *Mongoose* bearing Policy #Y05031205, which extended coverage from December 7, 2004 to December 7, 2005 ("the *Mongoose* Policy"). The Policy provides property damage coverage up to the amount of $660,000 and liability coverage up to the amount of

2

$25,000,000.  IYC paid all premiums due on the *Mongoose* Policy and it was in full force and effect at the time of the loss.  In late August of 2005 Hurricane Katrina struck the southern Florida area. The *Mongoose* was pushed aground upon the sand 200 yards from where it was moored.  IYC notified Strickland of the *Mongoose* incident on August 27, 2005.

In August, 2005, INA issued a renewal policy of IYC's Marine Recreational Yacht Policy for the *Legacy*, which extended coverage for the *Legacy* and its tenders from August 7, 2005 through August 7, 2006 ("the 2005 Policy").  IYC paid all premiums due on the 2005 Policy and it was in full force and effect at the time of the loss. On October 23, 2005, Hurricane Wilma struck Key West, Florida and *Legacy* sustained extensive damage as a result.  IYC timely notified Strickland and INA of the 2005 *Legacy* loss.  *Legacy* was in the Keys immediately prior to Hurricane Wilma and it was preparing for a commercial treasure hunting expedition.

On October 22, 2008, Plaintiffs filed suit seeking expenses related to these separate incidents. The operative pleading is the Fourth Amended Complaint, filed May 5, 2010 (D.E. 688).  INA has raised eight affirmative defenses and a Counterclaim for Declaratory Judgment.

**DISCUSSION**

The purpose of summary judgment is "to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee's note). Summary judgment is proper only when no genuine dispute as to any material fact exists and the moving party is entitled to a judgment as a matter of law. H&R Block Eastern Enterprises, Inc. v. Morris, 606 F.3d 1285, 1290 (11th Cir. 2010); Fed.R.Civ.P. 56.[1]

The moving party bears the initial burden of explaining to the Court the basis for the motion and identifying those portions of the record that demonstrate that there is no genuine dispute of material fact.  Allen v. Board of Public Educ. for Bibb County, 495 F.3d 1306, 1313 (11th Cir.

---

[1]An issue of fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

2007).  Thus the movant must either show that the nonmoving party has no evidence to support its case, or present "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004). However, the Court must view all of the evidence in the light most favorable to the nonmoving party, with all reasonable inferences also being drawn in the nonmovant's favor. Info. Sys.& Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002); Siemens Power Transmission & Distribution, Inc. v. Norfolk Southern Railway Co., 420 F.3d 1243, 1248 (11th Cir. 2005).  If the movant is able to demonstrate either of the aforementioned requirements, the burden shifts to the nonmoving party to show that a genuine dispute remains for trial. Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010).

A genuine dispute as to material fact exists only when "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Allen, 495 F.3d at 1313; Hickson Corp., 357 F.3d at 1260. The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. Anderson, 477 U.S. at 247-48.

Where a reasonable fact finder may "draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion." Doe v. School Bd. of Broward County, Fla., 604 F.3d 1248, 1254 (11th Cir. 2010) (quoting Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)). However, if the facts and inferences overwhelmingly favor one side, such that a reasonable jury could only arrive at one verdict, then summary judgment must be granted as a matter of law. Williams v. Dresser Indus., Inc., 120 F.3d 1163, 1167 (11th Cir. 1997); Bishop v. City of Birmingham Police Dept., 361 F.3d 607, 609 (11th Cir. 2004).  For the non-movant to survive such a grant, there must be more than a mere scintilla of evidence. Williams, 120 F.3d at 1167.

With respect to those issues as to which both Plaintiffs and Defendant have requested

4

summary judgment, the propriety of summary judgment in each parties' favor will be addressed concurrently. The court will then separately address the individual issues which have been raised in the respective motions.

### I.   Affirmative Defenses/Both Motions

Plaintiffs and Defendant move for summary judgment on the following affirmative defenses: Payment/Accord & Satisfaction (Second Affirmative Defense); Statute of Limitations and/or Laches (Fourth Affirmative Defense); *Uberrimae Fidei* (Fifth Affirmative Defense); the Absolute and Negative Implied Warranties of Seaworthiness (Sixth and Seventh Affirmative Defense); Fraud (Eight Affirmative Defense).

Plaintiffs initially argue that INA cannot seek rescission of the Policies by way of their affirmative defenses because (1) rescission must be sought by way of an affirmative claim or counterclaim, and (2) the statute of limitations for rescission has run. INA responds that is it not affirmatively seeking rescission via these affirmative defenses, but rather maintains that the facts supporting these affirmative defenses render the applicable policies void *ab initio*.[2]   The Court agrees with INA's position. See Certain Underwriters at Lloyd's, London v. Johnson, 124 F. Supp. 2d 763, 771-72 (D.P.R. 1999) (breach of either express or implied warranty of seaworthiness voids policy);  HIH Marine Svcs., Inc. v. Fraser, 211 F.3d 1359, 1363 (11th Cir. 2000) (stating that under the doctrine of *uberrimae fidei*, "a material misrepresentation on an application for marine insurance is grounds for voiding the policy."); see also Hilsenroth v. Kessler, 446 So. 2d 147, 149-50 (Fla. 3d DCA 1983) (citing Payne v. Nicholson, 131 So. 324, 326 (Fla. 1930)) (stating that "it is an established principle that even after an action for affirmative relief is barred by the statute of limitations, it may be asserted by way of defense to a claim...").[3]

---

[2]A void contract need not be rescinded; it is already void. See 17A Am. Jur. 2d Contracts §548 (2010).

[3]The Court additionally rejects Plaintiffs' argument that these defenses, which were properly raised in the Answer and Affirmative Defenses, were waived by INA representative

A. <u>Payment/Accord & Satisfaction (Second Affirmative Defense)</u>

1. *Legacy*

INA argues that payments of $16,000,000 already made under the "total loss" provision of the 2005 Policy exhausts the Policy's limits relating to "Part A: Property Damage Coverage" and therefore IYC's claim for breach of contract related to any additional property damage relative to damages to *Legacy* during Hurricane Wilma is barred. The "LOSS SETTLEMENT" provision of the 2005 Policy provides:

> **LOSS SETTLEMENT**: In the event of loss or damage to your insured property, we will pay the lowest of the following amounts:
> a. the Part A: Property Damage Coverage limit as shown on the Declarations Page;
> b. the cost of replacement;
> c. the cost to repair with no deduction for depreciation, except as specified in Part A: Property Damage Coverage and as shown in the Property Subject to Depreciation section.
>
> We will pay for a total loss to your vessel and other covered property only if:
> a. the vessel is completely lost or destroyed;
> b. the cost of recovering and/or repairing the vessel is greater than the amount of insurance shown on the Declarations Page.
>
>     *     *     *
>
> The amount we will pay for a total loss shall be reduced by the amount paid for repairs of prior covered damage not completed at the time of the total loss.

2005 Policy [D.E. 688-6 at 7]. The Policy's "Declarations Page" specifies that the limit of liability applicable to the "Part A: Property Damage Coverage" section is $16,000,000. <u>Id.</u> at 16.

Plaintiffs do not contest that INA paid $16,000,000 for property damage coverage. They argue, however, that INA's payment made under the 2005 Policy does not preclude their recovery of damages under the 2001 through 2004 Policies for the *Sol* and Hit-and-Run claims. The Court

---

Joseph Smith's testimony that the only "policy conditions" that INA was asserting regarding IYC's claims pertain to IYC's failure to timely notify its insurer and to cooperate with respect to the reporting of the 2001 *Sol* incident.

agrees with Plaintiffs' position that each Policy represents a different contractual obligation which is not extinguished by the "total loss" provision of a subsequent policy. However, as to the 2005 Policy, the Court finds that Plaintiffs have failed to counter INA's argument that INA has paid the Policy limit under the Loss Settlement Provision (i.e. "Hull Limit"). See Def. Mot., Ex. O, Ex. P, Ex. Q at 13, Ex. S; Ex. E, Harting-Forkey Aff. at 2 ¶ 9. Accordingly, as to that limited issue, summary judgment will be granted on INA's affirmative defense of Payment.

    2. *Island Runner*

    INA argues that payments already made under the 2003 Policy bar IYC's claim for breach of contract related to the *Island Runner* by way of either payment or accord and satisfaction, citing an endorsement to the Policy which indicates that the *Island Runner* was insured for a total of $88,690.00 at the time of the loss (See INA Mot. Ex. U).   It is undisputed that INA offered that amount to IYC and IYC's response, through a July 4, 2006 letter from Halmos to Pamela Harting-Forkey, was, *inter alia*, as follows:

> Because I'm so pressed for time and must focus on serious Legacy salvage issues, I will accept the $88,690 payment - without prejudice and reserving all rights - on the condition that your analysis and explanation does not set a precedent as to any other claim nor can same be used adversely to my interests as to any other claim. My willingness to compromise and settle a portion of the Island Runner claim must not, directly or indirectly, be prejudicial to my interests in any other claim ...
>
> When we have more time and, continuing in the spirit of our May 19th meeting, I would like to discuss other unresolved issues regarding the Island Runner matter. ...

Plf. Mot. Ex. B.

    This Court finds that this language does not constitute an accord and satisfaction, in which the obligee accepts "performance of [a] new agreement in full satisfaction and discharge of the debtor's prior disputed obligation." See Republic Funding Corp. v. Juarez, 563 So. 2d 145, 146 (Fla.

7

5th DCA 1990). In his letter, Halmos states that IYC was accepting the tendered amount to settle only a "portion" of the *Island Runner* claim, and IYC maintains that it is still entitled to "property damage costs relating to salvage charges and protection against loss charges available under the Policy." Plf. Mot. p. 29. The Court finds that a genuine dispute of material fact exists as to this claim, and accordingly, summary judgment will not be awarded to either party.

  3. *Mongoose*

INA maintains that its payment of approximately $393,034.34 on HPC's *Mongoose* claim constituted a payment which exceeds the claim's value. Plaintiffs argue that HPC "is entitled to be made whole from property damage costs incurred in salvaging, protecting and repairing the *Mongoose* under the policies." Plf. Mot. p. 30. The Court finds that a genuine dispute of material fact exists as to this claim, and accordingly, summary judgment will not be awarded to either party.

  B. Statute of Limitations (Fourth Affirmative Defense)

The statute of limitations for bringing a breach of contract claim is five years from the insurer's "specific refusal to pay a claim." Donovan v. State Farm Fire & Cas. Co., 574 So. 2d 285, 286 (Fla. 2d DCA 1991). The Court finds there is a genuine dispute of material fact regarding when Plaintiff made a "claim" regarding the *Sol* incident, and when INA specifically refused to pay that "claim." The Court additionally finds a genuine dispute of material fact as to when "notice" was given, as well as whether, with respect to the affirmative defense of laches, INA was prejudiced by any delay in filing a claim or giving notice.[4] Accordingly, summary judgment will not be awarded to either party.

---

  [4]With respect to the issue of notice, the Court finds that there is a genuine dispute as to whether Strickland was the authorized agent of INA for purposes of receiving notice of a claim, and if so, whether any such notice was communicated to INA.

C. *Uberrimae Fidei* (Fifth Affirmative Defense)

With respect to the doctrine of *uberrimae fidei*[5], although "[i]t is well settled that the marine insurance doctrine of *uberrimae fidei* is the controlling law" of the Eleventh Circuit, HIH Marine Svcs., Inc., 211 F.3d at 1362, the Eleventh Circuit has also held that parties to a marine insurance contract may "'contract-out' or 'contract around' state or federal law with regard to an insurance contract, so long as there is nothing void as to the public policy or statutory law about such a contract." King v. Allstate Ins. Co., 906 F. 2d 1537, 1540 (11th Cir. 1990). This applies to the doctrine of *uberrimae fidei*. Id. at 1542; see also Axis Reins. Co. v. Henley, 2009 WL 3416248, No. 4:80cv168-WCS (N.D. Fla. Oct. 22, 2009).

As INA acknowledges, the 2002 through 2005 Policies contain language which states:

> **CONCEALMENT, MISREPRESENTATION OR FRAUD**: All coverage provided by [INA] will be voided from the beginning of the Policy Period if you intentionally conceal or misrepresent any material fact or circumstance relating to this contract of insurance, or the application for such insurance, whether before or after a loss. (emphasis added)

2002 Policy [D.E. 688-3 at 23] .

The Eleventh Circuit in King found that by this language, an insurer can contract out of the doctrine of *uberrimae fidei*, and agree that only intentional concealment or misrepresentation of material facts will void the policy. King, 906 F.2d at 1540; see also Henley, 2009 WL 3416248, at *14; contra New Hampshire Ins. Co. v. C'Est Moi, Inc., 519 F.3d 937, 939 (9th Cir.), cert. denied, ___ U.S. ___ (2008) (discussing King). INA has done so with respect to the Policies involved in this

---

[5]The doctrine of *uberrimae fidei* "requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk." HIH Marine Svcs., Inc., 211 F.3d at 1362; see also Certain Underwriters at Lloyd's, London v. Giroire, 27 F.Supp.2d 1306, 1311 (S.D. Fla. 1998). A misrepresentation is material if "it might have a bearing on the risk to be assumed by the insurer." Id. (quoting Northfield Ins. Co. v. Barlow, 983 F. Supp. 1376, 1380 (N.D. Fla. 1997)).

case. Therefore summary judgment will be granted in favor of Plaintiffs as to this affirmative defense.

### D.   Seaworthiness (Sixth and Seventh Affirmative Defenses)

Federal admiralty law implies an absolute warranty of seaworthiness into marine insurance contracts. The Conn. Indem. Co. v. Palivoda, 8:04CV1044T-24MSS, 2004 WL 3661069, at **3-4 (M.D. Fla. Aug. 24, 2004). "The warranty of seaworthiness has been held to mean 'that the vessel is reasonably fit for the intended use.'" Lloyd's U.S. Corp. v. Smallwood, 719 F. Supp. at 1540, 1549 (M.D. Fla. 1989) (quoting Aguirre v. Citizens Casualty Co., 441 F.2d 141, 144 (5th Cir.), cert. denied, 404 U.S. 829 (1971)). Federal maritime law additionally imposes a "negative modified warranty" of seaworthiness in a time policy of insurance which mandates that the insured, "from bad faith or neglect, will not knowingly permit the vessel to break ground in an unseaworthy condition." Gulfstream Cargo, Ltd. v. Reliance Ins. Co., 409 F.2d 974, 983 (5th Cir. 1969).

Plaintiffs argue that the warranty of seaworthiness does not apply to "recreational vessels," citing Mathis v. Hanover Ins. Co., 192 S.E. 2d 510 (Ga. Ct. App. 1972). That case is not binding on this Court. Although the District Court for the Middle District of Florida has "questioned" whether the warranty of seaworthiness "ought to apply to a pleasure craft given that the historical development of the warranty is rooted in a commercial context[,]" see Axis Reins. Co. v. Resmondo, No. 8:08-cv-569-T-33TBM, 2009 WL 1537903, at *9 n. 6 (M.D. Fla. June 2, 2009), there has been no decision binding on this Court which so holds, and the warranty of seaworthiness has recently been discussed within this Circuit in the context of recreational vessels. See Henley, 2009 WL 3416248, at **16-17. Accordingly, this Court rejects Plaintiffs' argument.[6]

---

[6]Moreover, the Court finds that Plaintiffs have failed to establish that the vessel was only used for recreational purposes. See Facts p. 3.

The Court further finds that there is a genuine dispute of material fact as to the *Legacy's* seaworthiness which precludes summary judgment.[7]

### E. Fraud (Eighth Affirmative Defense)

INA maintains that IYC and Halmos "submitted fraudulent and fabricated claims for reimbursement under the Policy" by "fraudulently submitting claims for sham work allegedly performed by corporations owned by none other than Plaintiff, Peter Halmos." Def. Mot. pp. 13, 14. In support of this allegation, INA points to the testimony of David Meredith of the David Meredith Law Firm, who allegedly submitted the invoices to Plaintiffs, and who denied performing any legal services and submitting any invoices. Plaintiffs argue that this evidence is "immaterial to the resolution of the present breach of contract case" (Plf. Resp. p. 18) because Halmos has "withdrawn the invoices" and is "reserving pursuit of these damages for a future bad faith action" (Plf. Resp. p. 17). The Court agrees with INA that this does not address the argument raised in its motion, which is that the misrepresentations void the Policy. However, as INA itself points out, Halmos testified in his deposition that these fees were legitimately incurred for legal services rendered, thereby creating a genuine dispute of material fact. Furthermore, INA states in its Response to Plaintiffs' Motion that its fraud affirmative defense is based on alleged misrepresentations in addition to these invoices. Accordingly, summary judgment as to this affirmative defense will be denied.[8]

---

[7]Although Halmos did testify to the *Legacy's* condition in the *Sol* litigation using the terms "seaworthy" and "fit for intended use", as he acknowledged, he is a layman and not an expert on this issue. The Court finds there are disputed issues of material fact as to whether the *Legacy* remained unseaworthy from 2002 through 2005, particularly in light of American Bureau of Shipping survey reports as well as the report prepared by INA's surveyor in 2004 and INA's subsequent increase in property damage policy limits for the *Legacy*. See Plf. Resp. Ex. G.

[8]The Court finds Plaintiffs' argument that this affirmative defense is not plead with particularity to be untimely raised and therefore does not address it herein.

## II.  **Affirmative Defenses/ Plaintiffs' Motion**

Plaintiffs additionally move for summary judgment as to the affirmative defenses of Failure to Satisfy Conditions Precedent (First Affirmative Defense)[9] and Failure to Mitigate Damages (Third Affirmative Defense).

The Court finds that there are numerous disputed issues of fact which prevent summary judgment in Plaintiffs' favor as to these two affirmative defenses, including but not limited to Plaintiffs' argument that actions of INA constituted waiver of its right to rely on any of the policy conditions.[10]  Accordingly, Plaintiffs' request for summary judgment as to these affirmative defense will be denied.

## III.   **INA's Motion for Summary Judgment**

### A.  **IYC's Breach of Contract Claim for Hit-and-Run allision (Count 3)**

INA maintains that it is entitled to summary judgment on IYC's claim for Breach of Contract related to the *Legacy* Hit-and-Run allision because IYC's damages were less than the Policy's $70,000.00 deductible, citing a damage survey prepared by marine surveyor Stewart Hutcheson. Def. Mot. Ex. V; Hutcheson Aff. (Ex. X).  Plaintiffs respond that "IYC previously reported to INA that the costs it incurred following the 2004 Hit-And-Run claim were $550,000.00," (Plf. Resp. p. 21), referencing a May 4, 2009 letter from INA to the Florida Department of Financial Services (Plf. Resp. Ex. N).  In that letter, INA states that "Halmos wrote to INA demanding payment of at least

---

[9]In this affirmative defense, INA has raised numerous conditions precedent which Plaintiffs have allegedly failed to comply with under the Policies, including failure to notify INA of claims, failure to cooperate, and failure to mitigate damages.

[10]"Waiver is either an intentional or voluntary relinquishment of a known right, or conduct giving rise to an inference of the relinquishment of a known right." Sentry Ins. v. Brown, 424 So. 2d 780, 784 (Fla. 1st DCA 1982).  The question of waiver is generally a question of fact. Id.

$550,000" with respect to the Hit-And-Run claim. Ex. N at 2. The Court agrees with INA that this reference to a demand letter, without more, viewed in a light most favorable to Plaintiffs, is at best a mere "scintilla," of evidence, and does not create a genuine dispute as to this issue. Accordingly, summary judgment in favor of INA will be granted as to Count 3.

### B. Halmos' Unjust Enrichment Claims

#### 1. Claim that Halmos Conferred a Benefit on INA by Undertaking IYC's Obligations to Protect Legacy After Wilma (Count 15)

A claim for quasi contract (otherwise known as unjust enrichment), exists where "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co., Inc., 695 So. 2d 383, 386 (Fla. 4th DCA 1997). The "benefit" upon which Halmos bases his claim in Count 15 is that he personally "t[ook] all steps to protect the Legacy and mitigate damages to it and the environment." FAC ¶ 179.

INA argues that it "never demanded - or even requested - that Halmos personally protect the Legacy following Wilma." INA Reply p. 12. However, under the elements listed above, Halmos is not required to prove that INA made such a demand or request. Accordingly, summary judgment on this claim is not warranted.

#### 2. Claim that Halmos Conferred a Benefit on INA Through His Negotiations with NOAA (Count 16)

In Count 16, Halmos alleges, *inter alia*, that he "conferred a benefit on INA by negotiating and personally entering into contracts with NOAA which benefitted INA by allowing INA to avoid having to pay monies to NOAA that would have been due pursuant to the policy provisions." FAC

¶¶190.

INA first argues that it "already paid IYC for the legal fees it incurred to execute the NOAA settlements." Mot. p. 22. Because Count 16 is brought by Halmos, individually, the Court finds summary judgment is not appropriate on this ground. INA further argues that Halmos cannot recover because the alleged "benefit" was actually a benefit to Halmos himself because NOAA was threatening to file suit to levy a $22 million fine against Halmos "individually." Def. Mot. p. 24. The Court finds that there is a genuine dispute as to whether INA was in fact benefitted by Halmos's action in that Halmos maintains that the release of IYC (and thereby, INA's responsibility under the Policy) was only accomplished by his efforts and surrender of claims. Accordingly, the Court declines to enter summary judgment on this Count in favor of Defendant.

### C. Counterclaim/Declaratory Judgment

INA argues that it is entitled to summary judgment on its declaratory judgment counterclaim as to the following issues.

1. Affirmative Defenses of Seaworthiness, *Uberrimae Fidei* and Fraud

The Court rejects INA's arguments based on the discussion of these affirmative defenses, *supra.*

2. Whether Legacy Policy provides coverage for IYC's alleged expenses

a. IYC 2005 Policy Hull Limits Were Paid in Full

Summary judgment on this issue will be granted based on the discussion of this issue, *supra.*

b. $16 million hull limit payment limits liability under the Loss Settlement Provision relative to Sol and Hit-and-run losses

The Court agrees with Plaintiffs' position that each Policy represents a different contractual

14

obligation which is not extinguished by the "total loss" provision of a subsequent policy.[11] Summary judgment on this ground is therefore denied.

> c.   The Policy Provides no Further Coverage for the Property Damage IYC
>        allegedly incurred related to the *Sol* or Hit-and-Run allisions

>> (i)   *Legacy* was rendered a total loss after Wilma

Summary judgment on this ground as to the 2001 and 2004 Policies is denied based on the discussion of this issue, *supra*.

>> (ii) Failure to Cooperate

The Court finds that disputed issues of material fact prevent summary judgment on this issue.

> d.   The Policy Provides no further coverage for the "Protection Against Loss"
>        expenses IYC allegedly incurred after October 27, 2008

The Policy's Protection Against Loss provision provides:

> PROTECTION AGAINST LOSS: If your vessel or other property covered by this policy is damaged, you must take all reasonable steps to protect it from further damage. We will reimburse you for reasonable expenses for protecting the property from further damage. Payments for protecting damaged property will be in addition to any other payments we make for losses covered by this policy. However, the most we will pay for protecting damaged property is the coverage limit which applies to that property.

2005 Policy [D.E. 688-6 at 12] (emphasis added).

INA notes that the duty imposed on the insured by this provision is intended to benefit the insurer and reduce its exposure for a covered loss. INA argues that because it paid the entirety of the 2005 Policy's Part A, Property Damage Coverage Limits on October 27, 2008, when it

---

[11]The language cited by INA in its Reply with respect to reduction of the amount to be paid for a total loss pertains to "amount[s] paid for repairs of prior covered damage not completed at the time of the total loss." Reply p. 13 (quoting 2005 Policy p. 4). INA has not cited to the Court any such "amounts paid."

determined the *Legacy* to be a total loss,  its insurable interest in the *Legacy* was extinguished and any charges incurred by IYC thereafter do not constitute "Protection Against Loss" under the Policy.

In response, Plaintiffs initially argue that the *Legacy* was under-insured.  Although this might form the basis of some other claim by IYC, it is not a reason for non-enforcement of the above language in the Protection Against Loss provision.

Plaintiffs' only other argument is that "INA made no effort to distinguish damage arising from the Wilma claim from that caused by the Sol or Hit-And-Run claims" and that if the damage was "separate and distinct", "then the October 27, 2008 hull payment must be allocated to the insured's maximum benefit, which would be in part for the prior claims and in part for the Wilma damage." Plf. Resp. p. 27. The Court finds this argument to be legally unsupported. Furthermore, in its October 27, 2008 letter which accompanied the final payment of the $16,000,000 limit, it appears that INA took the position that all of the damage for which it was paying was caused by Hurricane Wilma. See Def. Mot. Ex. S, p. 7 (stating that "[w]e have been advised by Mr. Knowles that the vessel was in a pristine state prior to the damage caused by Hurricane Wilma.") If Plaintiffs are able to prove that some of that damage was caused by prior incidents for which they are entitled to coverage under the other Policies, they may have damage claims under those Policies, but as to the 2005 Policy, the property damage coverage limit has been met.   Accordingly, the Court finds that there was no "Protection Against Loss" coverage available under the 2005 Policy for expenses IYC allegedly incurred after October 27, 2008, and summary judgment in favor of INA will be granted as to this issue.

### e. The Policy Provides no coverage for the "Salvage Charges" IYC allegedly incurred after February 25, 2008

The Court finds that there is a disputed issue of material fact as to whether the *Legacy* was

16

in a state where there was "reasonable apprehension of peril" as of February 25, 2008, in that although the yacht was anchored in a marina, Halmos's affidavit states not only that her keel was inoperable but also that it was not until early 2010 that "bow thrusters, main engines, main generators, steering controls and rudder, water pumps, halon system, among others" were repaired to an operational state. Plf. Mot., Ex. Q at ¶6. See Fine v. Rockwood, 895 F. Supp. 306, 309 (S.D. Fla. 1995) (stating that "the danger need not be immediate or actual" )(citation omitted).[12]

> f. The Policy Provides no coverage for defense costs IYC allegedly incurred
> outside the context of a suit against IYC

The 2005 Policy provides, in pertinent part, as follows:

> **CLAIM OR SUIT AGAINST YOU**: If a claim is made or suit is brought against you or a Covered person for liability that may be covered under this policy, you must immediately notify us and send us every demand, notice, summons or other legal papers received by you or your representative. We will pay the ensuing cost of the suit. We will also have the option of naming attorneys to represent you. Payments for the cost of your legal defense will be in addition to payments we make under your coverage for liability claims against you.

2005 Policy [D.E. 688-6 at 13].

> 1. Attorneys Fees incurred in relation to the *Sol* collision

INA argues that IYC is not entitled to recover attorneys fees incurred in the litigation in which IYC sued the owners of the *Sol*, seeking damages related to the *Sol*'s allision with the *Legacy*. The Court agrees that the above cited provision does not cover attorneys fees incurred by IYC for attorneys' services which were incurred solely in connection with the *Sol* litigation, which was brought by IYC, not against IYC. Summary Judgment will be granted in INA's favor on this issue.

---

[12]The Court declines to address Plaintiffs' waiver argument, as the evidence which they cite to in support thereof was not located at the record cite provided.

### 2. Attorneys Fees incurred to defend against Federal, State, and Natural Resource Claims

INA argues that IYC is not entitled to reimbursement of these fees because the evidence demonstrates that natural resources damages "lawsuits" were never "brought against" IYC. Plaintiffs maintain that the Policy does not limit reimbursable fees to "litigation" but rather includes "pre-suit" attorneys fees incurred in defending "claims."

The Policy language refers to two separate occurrences in the disjunctive - a "claim" for liability that may be covered under the Policy or "suit" for liability that may be covered under the Policy.[13] Although there obviously may be times that a "claim" and "suit" are brought with respect to the same occurrence, the subsequent language of the Policy regarding payment, rather than referring to "a claim" or "a suit," provides that only the cost of "the suit" will be provided. The Court finds no ambiguity in the language of this provision which requires any further construction.

The Court therefore further finds that INA is not required to pay for the cost of attorneys fees incurred to defend against Federal, State, and Natural Resource claims, and summary judgment in INA's favor on this issue is appropriate.

### 3. Defense costs incurred to defend against Florida State Citations

INA argues that these costs are not reimbursable because the Policy specifically excludes fees related to defending against governmental fines or penalties. See 2005 Policy [D.E. 688-6 at 8]. Plaintiffs have not responded to this argument, and summary judgment in INA's favor on this issue is appropriate.

---

[13]The word "claim" is not defined in the Policy, but has been defined as the "assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional." Black's Law Dictionary Seventh Ed. 1999.

18

4.  Attorneys Fees incurred in relation to the NOAA Settlement

INA argues that it is not required to reimburse IYC for attorneys fees incurred in connection with the NOAA settlement because (1) all attorney's fees related to the negotiation of the NOAA Agreements have been paid by INA, and (2) any attorneys' fees related to the "performance and administration of the NOAA Agreements" do not quality as defense costs incurred in relation to "suits" "brought against" IYC.

This Court agrees that because the attorneys fees paid in connection with the NOAA settlement involved a "claim" and not a "suit," the fees are not recoverable under the Policy.  IYC argues however that INA waived its right to assert that NOAA attorneys' fees are not compensable by (1) voluntarily paying a portion of the fees and (2) failing to comply with Fla. Stat. §627.426(2)(b), and that it is therefore entitled to summary judgment on this portion of INA's counterclaim.   The Court finds that there is a genuine dispute of fact as to whether INA's conduct constituted a waiver, which prevents the entry of summary judgment for either party on this issue.[14]

g.  Policy provides no coverage for "Rental Reimbursement" expenses

INA requests summary judgment on the issue that the 2005 Policy (1) limits rental reimbursement damages to a maximum of $50,000, and (2) IYC is not entitled to such damages absent proof of expenses incurred in chartering another vessel while the *Legacy* was laid up for repairs.  Plaintiffs do not contest this interpretation of the Policy, but rather argue that summary judgment is not appropriate because IYC has not been reimbursed for a valid rental expense. Because INA only requests summary judgment on the issue of interpretation, as opposed to compliance with that provision, summary judgment in INA's favor on this issue is appropriate.

---

[14]The Court additionally finds that there is an issue of fact as to "payment."

### D.  No Evidence Summary Judgment

INA argues that Plaintiffs have failed to meet their burden of producing evidence with respect to entitlement to reimbursement of several categories of costs and/or damages.  The Court finds that there is sufficient evidence in the record, including Plaintiffs' responses to interrogatories, which create an issue of fact as to entitlement to reimbursement for these items.

### IV.  Plaintiffs' Motion as to INA's Counterclaim/Declaratory Judgment

Plaintiffs' Motion for Summary Judgment on INA's declaratory judgment counterclaim will be denied based on disputed issues of material fact, except as to Defendant's request for a declaration that the affirmative defense of *uberrimae fidei* bars Plaintiff's claims.

### CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  Defendant, Insurance Company of North America's Motion For Summary Judgment is hereby **GRANTED** in part and partial summary judgment is granted in favor of Defendant as to Count 3 of the Fourth Amended Complaint, and as to Defendant's Affirmative Defense of Payment of the 2005 Policy Property Damage "Loss Settlement Provision."

Summary Judgment is also **GRANTED** in favor of Defendant on its Declaratory Judgment Counterclaim as to the following issues:

   a)  The 2005 Policy Hull Limits were paid in full;

   b)  The 2005 Policy provides no coverage for "Protection Against Loss"  expenses IYC allegedly incurred after October 27, 2008;

   c)  The 2005 Policy provides no coverage for attorneys fees incurred by IYC solely for purposes of the claim or litigation against the owners of the *Sol*;

   d)  The 2005 Policy provides no coverage for attorneys fees incurred to defend against Federal, State, and Natural Resource claims;

20

e)   The 2005 Policy provides no coverage for defense costs to defend against Florida State Citations;

f)   The 2005 Policy (1) limits rental reimbursement damages to a maximum of $50,000, and (2) IYC is not entitled to such damages absent proof of expenses incurred in chartering another vessel while *Legacy* was laid up for repairs.

As to all other grounds, the Motion is **DENIED**.

2. Corporate Plaintiffs' Motion for Partial Summary Judgment is hereby **GRANTED** in part and partial summary judgment is granted in favor of Corporate Plaintiffs as to INA's Fifth Affirmative Defense (*Uberrimae Fidei*).  As to all other grounds, the Motion is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of January, 2011.

STEPHEN T. BROWN
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:   Counsel of record

21