UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

PETER HALMOS, et al.,

*Plaintiffs,*

vs.

INSURANCE COMPANY OF NORTH
AMERICA, et al.

*Defendants.*

_____

**INSURANCE COMPANY OF NORTH AMERICA'S
MOTION FOR SANCTIONS DUE TO
PLAINTIFFS' MOST RECENT WITHHOLDING OF MATERIAL DOCUMENTS,
REQUEST FOR AN EXPEDITED BRIEFING SCHEDULE,
AND MEMORANDUM OF LAW IN SUPPORT**

Insurance Company of North America ("INA") files this Motion for Sanctions Due to Plaintiffs' Most Recent Withholding of Material Documents and Memorandum of Law in Support ("Motion").[1] Plaintiffs wrongfully withheld material documents that relate to the condition of the S/Y Legacy from discovery in this case, however these documents were produced by Halmos and IYC in the state court proceeding against Christopher Upham.[2] INA

---

[1] INA regrets having no choice but to file this series of sanctions motions. However, INA received the materials that are the subject of this sanction motion only days ago. It is INA's desire to apprise the Court of Plaintiffs' serious discovery transgressions as promptly as possible to permit the Court to "manage its affairs so to achieve the orderly and expeditious disposition of claims." *See Flury v Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). There can be no doubt that INA has been prejudiced by Plaintiffs' discovery transgressions, however it is critical to INA that the Court retain its current trial setting of February 22, 2011.

[2] The state court case against Upham is captioned *International Yachting Charters v. Upham,* Case No. 2003 CA 004410 AN, 15th Judicial Circuit, Palm Beach County, FL. Plaintiffs vigorously challenged all of INA's efforts to secure these documents, asserting that the documents were "confidential." However, these documents were recently produced in this

1

just received the Upham documents.[3] They reveal – once again – that Plaintiffs withheld a key document from discovery. In support of the Motion, INA would show the Honorable Court as follows:

## REQUEST FOR AN EXPEDITED BRIEFING SCHEDULE

Since this document was just received by INA in response to a subpoena served on Upham, INA requests that this Court enter an expedited briefing schedule. INA requests that this matter be fully briefed prior to the commencement of the February 22, 2011 trial date.

## BACKGROUND FACTS

On January 18, 2011, INA filed its Motion for Sanctions Due to Plaintiffs' Withholding of Material Documents. (D.E. 1238). That motion was filed due to Plaintiffs' withholding of the June 23, 2006 written estimate of $4,804,047.60 issued by Perini Navi and Ranieri Quinzii ("Quinzii") to Peter Halmos ("Halmos") for repairing hurricane damage to *S/Y Legacy*. (D.E. 1238). INA discovered Plaintiffs' wrongful withholding of this estimate upon receiving Perini Navi's response to INA's subpoena (it took almost a year from issuance of the subpoena to production of the documents and necessitated a commission for the issuance of a subpoena on Perini Navi through the Italian Courts).

On January 21, 2011, INA filed its Motion for Sanctions Due to Plaintiffs' Additional Withholding of Material Documents. (D.E. 1243). That motion was filed due to Plaintiffs' withholding of several documents directly rebutting key allegations made by Plaintiffs in this matter. INA learned of Plaintiffs' withholding of those documents as a result of Rybovich

---

litigation in response to INA's subpoena. The documents produced by Upham in response to INA's subpoena in this case are hereinafter referred to as the "Upham Documents."

[3] INA previously received documents from Rybovich Spencer. Discoveries from that production resulted in the filing of D.E. 1243. This Motion is filed based upon separate production just received from Upham. That discovery was received in two parts. The second part just arrived days ago.

Spencer's response to INA's subpoena. The Court will recall that Plaintiffs fought the production of Rybovich Spencer's documents for almost year. (D.E. 1146 provides background facts of this dispute).

INA believes that Plaintiffs' withholding of a material document found in the Upham file constitutes another instance of repeated discovery violations by Plaintiffs in this case which should be firmly addressed by this Court. There can be no dispute that Plaintiffs' repeated document withholding is part of a larger pattern to deprive INA of documents directly related to Plaintiffs' claims.

A.  **The Withheld Document**

Whether the *S/Y Legacy* was seaworthy on each policy anniversary is a critical issue in this case. Also, whether IYC misrepresented or failed to disclose the true condition of the *S/Y Legacy* during policy renewals is a key component of one of INA's affirmative defenses, as the failure to disclose the unseaworthiness of the vessel operates to void the policies. The recent Upham production demonstrates that Plaintiffs withheld a document that is directly related to those issues.[4]

INA found a March 16, 2005 letter authored by Halmos to Bruce Brakenhoff of Perini Navi, USA[5] in the Upham Documents. This letter addresses the condition of the *S/Y Legacy* in the months immediately proceeding Hurricane Wilma. (Exhibit "A"). In that letter, Halmos describes significant problems with the *S/Y Legacy* and her systems, including the apparent "fact" that the sailing system of this sailing yacht had been inoperable since 2001 and the Halon

---

[4] If Halmos wishes to impeach the accuracy of his own representations to Perini Navi as contained in his March 16, 2005 letter to Perini Navi, Plaintiffs should still have produced the letter so that INA could have investigated the veracity of Halmos' assertions in discovery. To the extent that Plaintiffs wish to impeach Halmos' representations in the letter at this late date, INA will address those arguments in its Reply.

[5] This entity is separate and distinct from Perini Navi Italy. Perini Navi Italy's documents are the subject of D.E. 1238.

3

fire extinguishing system was not in good and efficient working order This document was never produced by Plaintiffs.

**B.     INA's Requests For Information Regarding The Condition Of The *S/Y Legacy***

INA's requests for information related to the condition of the *S/Y Legacy* began in June 2009. (Exhibits "B" and "C"). Specifically, INA sent the following requests to both Peter Halmos and IYC:

> 8.    Any Documents regarding the periodic, required or optional maintenance work performed upon any of the Vessels made the basis of This Lawsuit from 1995 to present.
>
> 18.   Produce all communications by or between (or courtesy/blind copied to) You or anyone acting on Your behalf and Peter Halmos & Sons, Inc. concerning any of the underlying facts, claims, defenses, incidents, or losses made the basis of This Lawsuit, and all Documents related to all such communications.
>
> 53.   Any journals, logs, sketches, diagrams or other Documents kept by You or in Your possession which describe the occurrence(s) in This Lawsuit, the geographical area, Vessels and/or property or equipment involved, the damages alleged, including any and all property damage, any and all environmental damage, and any and all mental or physical injuries resulting disability, if any.
>
> 57.   Produce copies of any and all statements made by persons with knowledge of relevant facts regarding the claims made the basis of This Lawsuit.
>
> 62.   Any and all Documents that indicate if there were incidents involving property damage regarding the Vessels for which You claim damages, whether before or after the incidents made the basis of This Lawsuit.
>
> 74.   Any Documents relating to operation of all Vessels made the basis of This Lawsuit, including all ship's logs, personnel files, crew lists, crew pay notes, crew licenses, repair records, immigration records, maintenance records and deck logs.

4

(Exhibits "B" and "C"). Despite those requests, Plaintiffs never produced the March 16, 2005 letter regarding the condition of *S/Y Legacy*. (Exhibit "D," ¶ 2).

## C. The Withheld Document Goes To A Critical Issue In The Case

Prior to insurance coverage being bound for the *S/Y Legacy*, Plaintiffs represented that the vessel had no losses or hull losses. (Exhibit "E"). Plaintiffs never disclosed any other losses, hull losses, or changes to the condition of *S/Y Legacy* during the next few years as the policies were being renewed.

The March 16, 2005 letter was authored by Halmos and Plaintiffs should have produced it. (Exhibit "A"). The reason why they did not do so is obvious – the content is material to INA's underwriting of this risk and the letter was not helpful to Plaintiffs' view of this case.

### 1. The Document Is Material

The March 16, 2005 letter is material because it specifically outlines a variety of serious hull issues and changes to the condition of the *S/Y Legacy* during the renewal period. (Exhibit "A"). It is obvious that the operation of the sailing system aboard a sailing yacht is a critical factor in evaluating the underwriting risk posed by that vessel. Halmos' description of the Legacy's sailing system is revealing:

> *Legacy's **sailing system has not been operational since 2001**. We have made extensive repairs, replaced components, and struggled with this for years.*

(Exhibit "A," p. 8 (emphasis supplied)). IYC never disclosed this fact to INA.

The March 16, 2005 letter also indicates that the fire extinguishing system had low pressure in both Halon tanks, leading to a very serious and potentially life threatening condition aboard the S/Y Legacy. This condition would have had significant risk management and insurance consequences, and would have necessitated follow up questions and a survey at a

5

minimum. See Exhibit "A." IYC never disclosed this fact to INA. The operation of the fire extinguishing apparatus is so important to INA, that INA added a warranty to the INA policy (including the policy issued to IYC) warranting the installation and operation of such a system: The warranty provides, in pertinent part, as follows:

> You agree that your yacht is equipped with a built-in automatic system of fire extinguishing apparatus, properly installed in the engine room and maintained in good and efficient working order.
>
> MA-4656b

Had any of these matters been disclosed to INA, they would have been a material underwriting factor to consider in evaluating whether to underwrite this risk and at what cost.

2.  There Is Prejudice Associated With Failing To Produce The Document

The prejudice associated with Plaintiffs' withholding is equally obvious. Each policy applicable to *S/Y Legacy* contained a contractual *uberrimae fidei* clause. (D.E. 688-6 at 12).[6] Specifically, each policy contained the following provision:

> **CONCEALMENT, MISREPRESENTATION OR FRAUD:**
> All coverage provided by [INA] will be voided from the beginning of the Policy Period if you intentionally conceal or misrepresent any material fact or circumstance relating to this contract of insurance, or the application for such insurance, whether before or after a loss.

(D.E. 688-6 at 12). Under this provision, coverage will be voided if IYC misrepresents or conceals any material fact or circumstance relating to the insurance contract or application.

While IYC did not complete insurance renewal applications each year, the law imposes an affirmative obligation upon IYC to advise INA regarding material changes in the *S/Y*

---

[6] INA acknowledges this Court's summary judgment Order finding that common law *uberrimae fidei* does not exist. As this Court observed, contractual *uberrimae fidei* (the Concealment, Misrepresentation or Fraud section) still remains. (D.E. 1237, pp. 9-10).

6

*Legacy's* condition. *Lloyd's U.S. Corp. v. Smallwood*, 719 F. Supp. 1540, 1549 (M.D. Fla. 1989) (the insured "warrants to the insurer the seaworthiness of the vessel at the inception or attachment of a time policy") (citing *Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.*, 795 F.2d 940, 945 (11th Cir. 1986)). "The general rule concerning the status of insurance applications is that in the absence of a new application, or anything showing a different intention, the renewal of an insurance policy is made on the basis that the statements in the original application or policy are still accurate and operative." *Griffith v. Am. Nat'l Fire Ins. Co.*, No. Civ.A. 94-395-JJF, 1996 WL 931821, at *11 (D. Del. June 28, 1996) *cited in Great Lakes Reins. PLC v. Barrios*, No. 08-20281-CIV, 2008 WL 6032919, at *5 (S.D. Fla. Dec. 10, 2008). Courts have construed this as an "information-forcing" rule. *Allendale Mut. Ins. Co. v. Excess Ins. Co.,* 992 F.Supp. 278, 282-83 (S.D.N.Y. 1998) (*citing Unigard Sec. ins. Co. v. N. River Ins. Co.,* 4 F.3d 1049, 1066 (2nd Cir. 1993)).

IYC never disclosed these defective conditions, including the inoperable fire extinguishing and sailing systems, to INA.  Instead, INA continued to rely upon IYC's representations made in the original insurance application. If the sailing systems were inoperable since 2001, and/or the fire extinguishing system was not properly maintained, then *S/Y Legacy* was not seaworthy and underwriting would have adopted a materially different approach in evaluating whether to underwrite this risk and the cost associated with underwriting the risk (if it chose to do so).. *See Texaco, Inc. v. Univ. Marine, Inc.*, 400 F. Supp. 311, 320 (D.C. La. 1975) (citing, *inter alia*, *Horn v. Cia de Navegacion Fruco, S.A.*, 404 F.2d 422 (5th Cir. 1968)) ("Since the term 'seaworthy' is a relative one, its meaning is dependant upon the vessel involved and the service in which it is to be employed. In general, a ship must be sufficiently strong and staunch and equipped with the appropriate appurtenances to allow it to *safely* engage in the trade for which it

was intended.") (emphasis added); *see Law v. Sea Drilling Corp.*, 510 F.2d 242, 248 (5th Cir. 1975). This material misrepresentation and failure to disclose voids the entire insurance policy as a matter of law. *See Certain Underwriters at Lloyd's, London v. Johnson*, 124 F. Supp. 2d 763, 771–72 (D.P.R. 1999).

The prejudice to INA exceeds whether it would have underwritten the risk, however. IYC's withholding of this document prevented INA from conducting additional discovery or depositions on this precise issue and from presenting this and other evidence developed on this issue in a motion for summary judgment. *Reliance Ins. Co. v. McGrath*, 671 F. Supp. 669, 675–76 (N.D. Cal. 1987) ("If the vessel is unseaworthy at the time the insurance attached (i.e., on May 15, 1984, when McGrath renewed the insurance), the breach voided the policy."). Plaintiffs should not go unpunished for this discovery abuse.

### D.     Plaintiffs' Withholding Of Information Is Part Of A Larger Pattern

These *S/Y Legacy* documents are not the only material documents that Plaintiffs have withheld in this litigation. Plaintiffs have also withheld reports or documents related to Perini Navi,[7] Robert Nailon,[8] Pillsbury,[9] Richard Davies,[10] and discovery documents found in the Rybovich Spencer file. This pattern of withholding documents was addressed in D.E. 1238 and D.E. 1243. INA incorporates those arguments into this brief.

Plaintiffs' discovery abuses in this case have been well documented. (*See, e.g.,* D.E. Nos. 266, 268, 464, 541, 629, 685, 877, 882, 900, 917, 1169, 1238, and 1243). This Court has stated that:

---

[7] Perini Navi was the *S/Y Legacy's* builder and the company who surveyed the damage in June 2006.
[8] Robert Nailon is Plaintiffs' designated environmental remediation expert.
[9] Pillsbury was previously Plaintiffs' lead counsel in this case. They withdrew in March 2010.
[10] Richard Davies is Plaintiffs' retained expert who surveyed the *S/Y Legacy* as early as 2006.

8

> The Court finds that this is "the last straw." Plaintiff IYC is placed on notice that the Court must conclude, if further transgressions occur, that monetary sanctions do not suffice, and that dismissal will be the only remedy left.

(D.E. 877 at 4 (original emphasis removed)). The March 16, 2005 letter demonstrates that the Plaintiffs misrepresented the condition of the *S/Y Legacy* and the document was not disclosed because Plaintiffs knew that it was pertinent to INA's underwriting assessment and the document was not helpful to Plaintiffs' view of the case. The failure to produce this document authored by Halmos constitutes such a further transgression. The withholding of such documentation has certainly been prejudicial to INA. Under the circumstances, as set forth more fully below, dismissal is a just and appropriate sanction.

## MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 37, a party who fails to provide information in discovery may be appropriately sanctioned by the Court. FED. R. CIV. P. 37(c)(1)(C). Further authority for sanctioning Plaintiffs and their counsel for Plaintiffs' discovery misconduct may be found in 28 U.S.C. § 1927 and from the Court's inherent power to manage its affairs so to achieve the orderly and expeditious disposition of claims. *Flury v Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Sanctions here are proper for Plaintiffs' failure to produce documents which have been in their possession related to the Upham litigation and the condition of the *S/Y Legacy*. Furthermore, counsel has an affirmative obligation to monitor their clients' obligation to preserve evidence and not to improperly withhold such evidence. *Swafford v. Eslinger*, 671 F.Supp.2d 1274, 1287-1288 (M.D. Fla. 2009); *see also* FL Rules of Professional Conduct, Rule 4-3.4.

Federal law governs the imposition of sanctions, as these sanctions are evidentiary in nature. *Flury v Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). However, in spite of

the application of federal law to the imposition of such sanctions, a federal court should be informed and guided by state law principles, provided that those principles are consistent with federal law. *Id.* Sanctions for discovery abuse are "intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Id.* Judge Martinez noted that "several federal courts have held that the need for sanctions is heightened when the misconduct relates to pivotal or 'lynchpin' issue in the case" and where a party repeatedly lies under oath. *Oantum Comm. Corp. v Star Broadcasting Inc.*, 473 F.Supp.2d 1249, 1268 (S.D.Fla 2008), aff'd 290 Fed Appx. 324 (11th Cir. 2008). As outlined above, each of these factors is applicable in the case at bar. As the *Flury* Court noted, a federal court may look to state law principles as long as the state law principles are consistent with federal spoliation principles. 427 F.3d at 944; *see also Southeastern Mechanical Services, Inc. v. Brody*, 657 F.Supp.2d 1293, 1299, (M.D.Fla. 2009). The *Southeastern Mechanical Services* Court noted that under "Florida law, spoliation is established when the party seeking sanctions proves that (1) the evidence existed at one time, (2) the alleged spoliator had a duty to preserve the evidence and (3) the evidence was crucial to the movant's *prima facie* case or defense. *Id. citing Golden Yachts, Inc. v Hall*, 920 So.2d 777, 781 (Fla. 4th DCA 2006). The Eleventh Circuit has applied the spoliation standard (and associated sanctions) to a party who did not produce documents in discovery. *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.* 549 F.3d 1344 (11th Cir. 2008). In that case, the appellate court noted that compliance with the rules is not "merely aspirational." *Id.* at 1363. In this case, Plaintiffs' actions rise to the level necessitating the imposition of serious sanctions. INA believes that the evidence supports a finding that Plaintiffs' actions constitute "a fraud... practiced upon [the Court] or [actions evincing that] the very temple of justice has been defiled or [actions where] a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts

litigation, or hampers the enforcement of a court order." *Oantum Comm. Corp. v Star Broadcasting Inc.*, 473 F.Supp.2d 1249, 1268 (S.D.Fla 2008).

Further, the district court possesses the inherent power to police its docket. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962). Rule 41(b) authorizes a district court to dismiss a complaint for failure to comply with a court order or the federal rules. FED.R.CIV.P. 41(b). The Eleventh Circuit recently dismissed a case under Rule 41(b) when it was "apparent from district court's order" that the Plaintiff exhibited a clear pattern of delay, repeatedly failed to submit discovery, respond to motions, or comply with the court's orders. *Calloway v. Perdue Farms, Inc.*, 313 Fed. Appx. 246, 249 (11th Cir. 2009). In the *Moon* case, the Eleventh Circuit stated "in general, where the plaintiff has been forewarned, dismissal following the plaintiff's disregard of an order is not an abuse of discretion." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

"[A] dismissal with prejudice, whether on motion or *sua sponte*, is an extreme sanction that may be properly imposed only when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice.... Moreover, the harsh sanction of dismissal with prejudice is thought to be more appropriate in a case where a party, as distinct from counsel, is culpable. *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1338-39 (11th Cir. 2005); *Gratton v. Great Am. Communs.*, 178 F.3d 1373, 1374-1375 (11th Cir. Ala. 1999).

The instant case meets the two stated criteria. First, "contumacious conduct" is defined as "willfully stubborn and disobedient conduct, commonly punishable as contempt of court." Black's Law Dictionary 330 (6th edition 1990); *Cooper v. Subsea Int'l, Inc.*, 1999 U.S. Dist. LEXIS 11461 (E.D. La. July 26, 1999). Plaintiffs have continually found themselves in contempt

of court for a variety of issues. Now, the clearly disobedient conduct regarding the Upham documents is yet another example of Plaintiffs continued disregard for the Court. Second, there are no more sanctions available to the Court which would deter Plaintiffs' conduct. (D.E. 877 at 4). Admonitions, monetary sanctions, and the threat of serious sanctions have not made a difference to Plaintiffs. (D.E. 877 at 4). Plaintiffs' actions amount to a "further transgression" as contemplated by D.E. 877 and dismissal is proper.

The Court may also consider the following possible remedies:

1) <u>Removal of Evidentiary Burdens</u>:  Plaintiffs withheld the production of the documents that Plaintiffs produced in the Upham litigation. To the extent that the Court does not dismiss this entire case due to Plaintiffs' transgressions, the material is relevant to the defense of INA's case. As discovery is concluded, INA is not in a position to secure the evidentiary foundation for admission of these documents. INA, therefore, requests that these documents be deemed admissible at trial. Even if the Court were to dismiss claims related to the 2005 Policy, the documents will still be relevant to impeach Plaintiffs' credibility and as part of INA's affirmative defense of fraud.

2) <u>Limited Default Against Plaintiffs</u>: Plaintiffs have again withheld a pivotal document in this litigation. INA repeatedly requested this type of document. To counteract the prejudice resulting from Plaintiffs' withholding of this document, INA asks that the Court grant INA a non-rebuttable presumption that the 2005 Policy is void, and that default is entered against all claims related to the 2005 Policy.

3) <u>Serious Sanctions</u>:  As Plaintiffs actions evince a continued refusal to comply with the applicable rules and a continued disregard of this Court's authority, INA asks the Court

to impose serious sanctions against Plaintiffs. Plaintiffs conduct challenges the very foundation of judicial authority, the pursuit of the truth.[11]

4) <u>Trial Date</u>: To the extent the Court does not dismiss the action, it is critical that the trial date of February 22, 2011 be retained in order to bring final resolution to this matter.

5) Such other and further relief as the Court may deem appropriate in light of the above-referenced conduct.

## CONCLUSION

Plaintiffs have withheld some of the most material documents applicable to 2005 Policy. This discovery violation follows a pattern of violations by Plaintiffs. Therefore, INA requests that this Court determine that a "further transgression" has occurred and issue a sanctions order.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Insurance Company of North America respectfully requests that the Court enter an expedited briefing schedule and sanction Plaintiffs as the Court deems just and proper and grant Defendant any and all other relief to which it may show itself justly entitled, whether at law, in equity, or in admiralty.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1.A.3, counsel for the moving party hereby certifies that counsel for the moving party conferred in a good faith effort to resolve the issues raised in the motion and has been unable to do so. Plaintiffs failed to indicate whether they were opposed or unopposed to the relief sought herein as requested by Defendant's counsel.

## CERTIFICATE OF SERVICE

---

[11] See *Dubois Brewing Co. v. U.S.*, 34 F.R.D. 126 (W.D.Pa. 1963) and Charles Alan Wright and Arthur R. Miller, *Federal Practice & Procedure*, § 1029 (3rd ed.)

I hereby certify that on **February 14, 2011**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

    Respectfully submitted,

    BROWN SIMS, P.C.

    By: /s/ Frank J. Sioli
        Frank J. Sioli
        Florida Bar No. 009652
        Datran Two– Suite 1609
        9130 South Dadeland Boulevard
        Miami, Florida 33156
        Telephone: 305.274-5507
        Facsimile 305.274-5517

    *Attorneys for Defendant, Insurance Company of North America*

OF COUNSEL:

Kenneth G. Engerrand
P. Michael Bowdoin
Robert M. Browning
Michael A. Varner
BROWN SIMS, P.C.
1177 West Loop South, Tenth Floor
Houston, Texas 77027
Telephone: 713.629-1580
Facsimile: 713-629-5027

## SERVICE LIST

Mr. Hugh J. Morgan
Law Office of Hugh J. Morgan
317 Whitehead Street
Key West, Florida 33040
Telephone: 305.296-5676
Facsimile: 305.296-4331
hugh@hjmorganlaw.com
(via CM/ECF)

Mr. Jack Spottswood
Spottswood, Spottswood & Spottswood
500 Fleming Street
Key West, Florida 33040
Telephone: 305.294-9556
Facsimile: 305.292-1982
jack@spottswood.com
(via CM/ECF)

Peter Halmos, *Pro Se*
c/o Meyers & Associates, C.P.A.
4540 PGA Blvd, Suite 216
Palm Beach Gardens, FL 33418
(via Certified Mail, return receipt requested & via U.S. Mail, postage pre-paid)

Brenton N. Ver Ploeg, Esq.
Stephen A. Marino, Jr., Esq.
Ver Ploeg & Lumpkin, P.A.
100 S.E. 2nd Street
30th Floor
Miami, FL 33131
Telephone: 305-577-3996
Facsimile: 305-577-3558
bverploeg@vpl-law.com
smarino@vpl-law.com
(via CM/ECF)

Mr. Clinton S. Payne
Mr. Pete L. DeMahy
DeMahy Labrador Drake Payne & Cabeza
150 Alhambra Circle - Penthouse
Coral Gables, Florida 33134
Telephone: 305.443-4850
Facsimile: 305.443-5960
cpayne@dldlawyers.com
pdemahy@dldlawyers.com
(via CM/ECF)

Mr. David Paul Horan
Horan, Wallace & Higgins, LLP
608 Whitehead Street
Key West, Florida 33040
Telephone: 305.294-4585
Facsimile: 305.294-7822
dph@horan-wallace.com
(via CM/ECF)

Mr. Joseph P. Klock, Esq.
Mr. Juan Carlos Antorcha, Esq.
Rasco Klock Reininger Perez Esquenazi Vigil & Nieto
283 Catalonia Avenue
Second Floor
Coral Gables, FL 33134
(305) 476-7100
(305) 476-7102
jklock@rascoklock.com
jantorcha@rascoklock.com
(via CM/ECF)

C. Wade Bowden
Jones Foster Johnston & Stubbs, P.A.
505 S. Flagler Dr., Suite 1100
P.O. Box 3475
W. Palm Beach, FL 33402-3475
Telephone: 561-650-0406
Facsimile: 561-650-0430
rvargas@jones-foster.com
wbowden@jones-foster.com
(via CM/ECF)