08-10084.obi

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number:  08-10084-CIV-BROWN

PETER HALMOS, INTERNATIONAL
YACHTING CHARTERS, INC., and HIGH
PLAINS CAPITAL,

    Plaintiffs,

vs.

INSURANCE COMPANY OF NORTH
AMERICA and STRICKLAND MARINE
INSURANCE, INC., (f/k/a STRICKLAND
MARINE AGENCY, INC.),

    Defendants.
_____/

## ORDER GRANTING MOTION FOR SANCTIONS

**This matter** is before this Court on defendant INA's [latest] Motion for Sanctions...(D.E. 1275). The Court has considered the motion, the response, the reply, the additional documents (D.E. 1305, 1306), INA's Response (D.E. 1313), and all pertinent materials in the file.

There have been numerous motions in this case...motions to compel, motions for sanctions, and motions for contempt. They've been filed by plaintiffs and defendants. Some have had merit, some have not. The Court finds that this motion addresses a serious matter that has serious consequences. The motion alleges that plaintiffs failed to produce a letter that Mr. Halmos sent to the yacht builders on March 16, 2005 ("the letter"), alleging numerous defects in the vessel including but not limited to the fact that "*Legacy's* sailing system has not been operational since 2001" (see Exh. A, p. 13 (D.E. 1275-1)).

This motion alleges that plaintiffs have withheld from defendant a significant document which is relevant, material, and of significance. In the response, plaintiffs suggest that the letter was produced, that in any case the defendant had knowledge of the issues raised in the letter, and that a protective order in a state case prevented plaintiffs from producing same. Plaintiffs suggest that defendants litigated the confidentiality of the state court materials "presumably to mask the fact that INA was already privy to these same documents..." (Resp., pp. 2-3). Apparently plaintiffs would have this Court believe that defendant has brought the existence of this document to the Court at this late date so it could avoid having to do discovery on this letter, and so that it would be too late to get an expert to address this letter and the significance of it at trial.

Plaintiffs next state ... without any equivocation whatsoever ... that the letter was produced on July 23, 2010. (See Resp. p. 3). They further state that they found the letter in preparation for trial in the March 2005 box. Plaintiffs complain that they had to search many documents to respond to this Court's expedited briefing schedule. (See Resp. p. 3, n. 4).

A reply was filed pointing out that the letter was not produced, the box in which the letter was located was not produced[1], the Bates stamp on the letter relied on by plaintiffs to support production was not from this case, and that Mr. Halmos' affirmation, present on the other responses, was notably missing from this one.

Incredibly, plaintiffs next filed a Notice of Clarification (D.E. 1305) in which: (1) they admit they did not produce the letter, complaining they only had two days to respond to the motion (although, they claim, they believed it was produced sometime, somewhere); and (2) they state that

---

[1]Quoting from plaintiffs' own document (D.E. 1006).

Mr. Halmos' affirmation does not appear because "[he] could not remember whether the letter was produced and when" (D.E. 1305, p. 2), though he did sign the response to the motion. All this Court can say is "simply amazing"! Just when you think you've seen it all ....

In the first place - the complaint about two days to respond is almost laughable, coming from plaintiffs who have made no less than 40 motions for extension of time in this case ... but not in this instance! Secondly, and far more importantly, if plaintiffs weren't sure of their response, why didn't they say so ... before they got "caught with their hand in the cookie jar"? Paragraph 2 of the response ... apparently untrue. The statement on page 3 that "the document was produced inadvertently on July 23, 2010"... apparently untrue. These representations are serious violations of Fed.R.Civ.P. 11(b). Signing a response to a pleading containing statements that counsel or a party knows or should know may not be true is egregious.

Plaintiffs employ the doctrine of "the best defense is a good offense" by arguing that defendant knew of these issues when it deposed Mr. Corness in July of 2010 (Resp. p. 4). Apparently Plaintiffs believe there is no requirement to produce discovery if the gist of it is out there somewhere. Plaintiffs are quite careful to say that defendant knew about the issues, but never say it knew about the letter. All of this, to this point - is not dissimilar to reoccurring matters in this case.

There are two issues to be considered herein: (1) are plaintiffs guilty of sanctionable conduct, and if so;(2) what sanctions are appropriate? The first question is easily answered in the affirmative. The second requires discussion.

Plaintiffs have had previous problems with the Federal Rules of Civil Procedure, with the Local Rules for the Southern District of Florida, and with orders entered by the Court. Their conduct

suggests that they consider these things to be mere suggestions, at best. Their own words support this conclusion.

They state "even if the document had not been produced ... INA knew about the issues addressed in the letter for quite some time now...", and then go on to state "The Court should remember that INA claims prejudice and sanctionable conduct by INA [sic] in a circumstance where it is clear that it has not been harmed and has no basis to seek sanctions" (Resp. p. 3). Apparently a letter that is directly relevant to the issue of the seaworthiness of the vessel at the heart of this litigation, authored by the pro se plaintiff who is also the CEO of the two corporate plaintiffs, that is not produced when requested is a case of "no harm no foul" because, according to plaintiffs, defendant allegedly "knew about the issues". The Court finds this unconscionable. This is almost like saying if plaintiff has a witness to a defendant's transgressions, then the defendant hiding its written admission of same doesn't matter.

Addressing the response of INA (D.E. 1313), the Court permitted same to address "the accuracy of certain representations made by Plaintiffs" (D.E. 1306). As it turns out, this was more about the opportunity to get in the last word. The information as to section "A" is relevant, but the rest is more rhetoric than help. For example, in the response, plaintiffs discuss the deposition of Mr. Corness taken July 6, 2010. For reasons known only to defendant, it also supplied another - not discussed at all - deposition of Mr. Corness from another case. If INA was unclear as to what was being requested, a one page motion would have clarified same ... instead of wasting "trees".

Some of the documents requested by the Court, however, prove more interesting. In the response, Plaintiffs buttress their "no harm, no foul" argument by noting that issues inquired about by Mr. Horan in deposing Mr. Corness on July 6, 2010, "were about Mr. Halmos's counterclaim in

the Patton Litigation which are the exact issues INA now claims surprise over in the Confidential Document" (Resp. p. 4). This may be true, but one would not know that by a reading of said counterclaim, which mentions activities from 1994-1996 but says nothing about the problems of 2005, at least by mention of the years involved. In reviewing the relevant deposition of Mr. Corness, the pages cited by plaintiffs in support of their position are about as helpful as extra ice to Eskimos. They don't come close to discussing "the exact issues INA now claims surprise over" (Resp. p. 4).

Plaintiffs have also hidden behind the Agreed Confidentiality Protective Order in the Palm Beach case of IYC v. Upham et. al., Case No. 50-2003 CA004410 XXON AN ("the Upham case"). A review of that order, however, reflects that plaintiffs could have easily gotten this letter released from same. Contrary to the argument that said order was "binding plaintiffs" (D.E. 1291, ¶1), the order allows the release of any documents subject to that order "upon stipulation of the party that produced or disclosed the confidential discovery material" (Order, ¶ 3.D.).[2] This is just another disingenuous argument by plaintiffs.

Ultimately the matter boils down to the following: (1) plaintiffs did not produce a material, relevant document in this litigation that they could have and should have produced long before defendant obtained same; (2) plaintiffs improperly "hid" behind a protective order in a state Court case, claiming it precluded them from said production when, in fact, it did not; and (3) plaintiffs have never disputed the authenticity of the March 16, 2005, letter, the contents of same, or who authored it. Plaintiffs' conduct, if allowed to go unpunished, has effectively prevented defendant from doing any discovery regarding this document and from offering any evidence or testimony with regard to

---

[2]For this reason this order is applicable to all of the documents obtained by defendant from the Upham case.

same.

Accordingly, and the Court being otherwise fully advised in the premises, it is hereby **ORDERED AND ADJUDGED** that said motion be and the same is hereby **GRANTED** pursuant to FRCP 37, FRCP 11, and the Court's inherent authority to grant sanctions. See, e.g., Flury v. Daimler Chrysler Corp., 427 F. 3d 939, 944 (11th Cir. 2005).

Quite clearly the Court is authorized to consider the severest of sanctions, including dismissal. See, e.g., OFS Fitel, LLC v. Epstein, Becker and Green, P.C., 549 F. 3d 1344, 1366 (11th Cir. 2008). The history of this case is self explanatory. Plaintiffs have been sanctioned ... more than once. Plaintiffs have been found to be in Civil Contempt ... more than once ... and the beat goes on. Given the history, the sanction of dismissal might well be upheld on appeal. However, the Court will impose a sanctions tailored to the offense as follows:

1. The letter (and all documents from the Upham case) will be admitted into evidence without the necessity of authentication, if offered, requiring only a supporting affidavit from the defense, under oath, that the documents being offered are from the Upham case.

2. Plaintiffs are precluded from challenging the letter or any such documents from the Upham case by offering any evidence or testimony to contradict, explain or otherwise distinguish any statements made within the letter or such documents or the significance of those statements.

3. Defendant is permitted to offer evidence or testimony regarding the significance of the letter or any such documents from the Upham case. However, defendant shall have through and including Friday, April 1, 2011, to file a supplemental witness list - only addressing any witnesses that will testify regarding said documents.

4. Plaintiffs and defendant will be permitted to argue the significance of the letter or any

such documents from the <u>Upham</u> case in opening/closing arguments.

5. All <u>reasonable</u> expenses incurred by defendant in obtaining the documents from the Upham case and in seeking relief from this Court are awarded as further sanctions. If the parties cannot agree on the amount of same, the Court will award same on proper motion. It is noted, however, that if a motion is filed and the Court finds either plaintiffs or defendant is being unreasonable, that may result in either an upward or downward award of expenses.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of March, 2011.

_____
STEPHEN T. BROWN
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: Counsel of record