IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

KEY WEST DIVISION

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

PETER HALMOS, et al.,

        Plaintiffs,

vs.

INSURANCE COMPANY OF NORTH
AMERICA, et al.,

        Defendants.

_____/

FILED by _____ D.C.

**APR 2 8 2011**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

## MOTION TO VACATE CONSENT[1] OF REFERRAL
## TO MAGISTRATE JUDGE AND MEMORANDUM OF LAW

Plaintiff, Peter Halmos, pro se, respectfully moves for an Order of this Court

pursuant to Federal Rule of Civil Procedure 73(b) and 28 U.S.C. § 636(c)(2) vacating its

prior Consent Order referring this matter to Chief Magistrate Judge Stephen T. Brown

("Judge Brown"), and to reassign the case back to United States District Judge Jose

Martinez for further proceedings.[2] There are two bases for the request:

1.    Lack of jurisdiction over the subject matter because of the improper

involvement in the referral process by Judge Brown, and

---

[1] I waited until now as prior to writing this motion I had not received medical clearance to proceed. I now have medical clearance and will be forwarding those letters to Judge Brown's chambers.

[2] I request that the district judge rule on the motion to vacate a reference to Chief Magistrate Judge Brown. See *Pacemaker Diagnostic Clinic of America, Inc., v. Instromedix Inc.*, 725 F.2d 537, 546 (9th Cir. 1984)(stating "[t]he power to cancel a reference, taken together with the retention by Article III judges of the power to designate magistrate positions and to select and remove individual magistrates, provides Article III courts with continuing, plenary responsibility for the administration of the judicial business of the United States Courts."); *see also Federal Rule of Civil Procedure 73(b)(3)*.

2.     Even if there were subject matter jurisdiction, the extraordinary circumstances that have arisen due to Judge Brown's conduct and actions since the referral which warrant a termination of the referral.

## I.     The Federal Magistrate Lacks Subject Matter Jurisdiction From The Very Beginning.

The improper method in which Judge Brown solicited and obtained the Plaintiff's consent to have him preside over all the proceedings in this case negated subject matter jurisdiction. Specifically, Judge Brown violated the Federal Magistrate Act by forcing me into agreeing to have him preside over the case or else suffer repercussions. Then, once he had succeeded in getting his way, he made it clear that if anyone wanted to change things back, that would be a non-starter because "Judge Martinez knew about this already," thus making any objection futile. As a result, I withdraw my consent to having Judge Brown preside over the trial of this case, as the consent was neither voluntary nor confidential in violation of the Federal Magistrate Act and the Federal Rules of Civil Procedure.

### The Federal Magistrate Act

The Federal Magistrate Act, codified at 28 U.S.C. § 636 and Rule 73(b) of the Federal Rules of Civil Procedure, provides that upon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter. Both of these rules allow for the reference of a case to a magistrate judge only upon the, explicit, voluntary, clear, and unambiguous consent of a party. *See* 28 U.S.C. § 636(c); *McNab v. J & J Marine, Inc.*, 240 F.3d 1326, 1328 (11th Cir. 2001); *see also Anderson v. Woodcreek Venture Ltd.*, 351 F.3d 911, 914 (9th Cir. 2003) *citing* H.R. Rep. No. 96-287, 13 (1979) ("The bill makes clear that the knowing, and voluntary consent of the parties is required before any civil action may be referred to a magistrate;

2

**no coercion will be tolerated**" (emphasis added). In fact, the strict adherence to the procedures during a transfer controls the legitimacy of the transfer. If you do not follow the required steps, the magistrate does not acquire jurisdiction. This is more than a procedural nicety; it goes to the essence of Article III jurisdiction of the federal judiciary.

The procedures for referral to a magistrate judge set forth in Sections 636(c) and 73(b) require the clerk of court to notify the parties, upon the filing of a matter, of the availability of a magistrate judge to exercise civil jurisdiction and requires that "the decision of the parties [consenting to a Magistrate Judge's exercise of Civil Jurisdiction] shall be communicated to the clerk of court." *See* 28 U.S.C § 636(c). Moreover, Rule 73(b) fortifies the process *by prohibiting the magistrate or the district judge from being informed of the parties' response to the clerk's notification. See* Fed R. Civ. P. 73(b). Resolving any doubt, Rule (3)(b)(2) of this Court's Rules Governing Magistrates Judges states that:

> [n]o consent form will be made available, nor will its contents be made known, to any District Judge or Magistrate Judge, unless all parties have consented to the reference to a Magistrate Judge. No Magistrate Judge, District Judge, or other Court official may attempt to persuade or induce any party to consent to the reference of any matter to a Magistrate Judge.

"Consent thus emerges from the statute as the touchstone of magistrate judge jurisdiction." *See Anderson*, 351 F.3d at 914. A magistrate's exercise of jurisdiction, "in turn depends on proper district court designation and the voluntary consent of the parties to entry of judgment by the magistrate judge." *Id. citing Roell v. Withrow,* 538 U.S. 580 (2003) (Thomas, J., dissenting) ("consent is a jurisdictional prerequisite. . . § 636(c)(3) permits a court of appeals to examine the validity of the consent to the magistrate judge's authority *sua sponte*.") *See also McNab v. J & J Marine, Inc.*, 240 F.3d 1326, 1328 (11th Cir. 2001) ("because its direct impact on our appellate

3

jurisdiction, we consider *sua sponte* whether the parties consented to the magistrate judge's jurisdiction").

Lastly, Rule 73(b) and Section 636(c)(2) allow a district judge, on his own for good cause, or when a party shows extraordinary circumstances, to vacate a referral to a magistrate judge. As will be explained in further detail below, the improper solicitation and improper method of obtaining consent by Magistrate Judge Brown and the dramatic alteration and nature of this matter from the time that consent was obtained constitute extraordinary circumstances warranting the revocation of consent.

### Judge Brown's Solicitation of Consent
### Defeats Subject Matter Jurisdiction

From the beginning of this matter, Judge Brown's desire to fully preside over this case was no secret. In fact, in one of his first orders, Judge Brown requested that a status conference take place on September 10th, 2009, in which he ordered, *inter alia*, that the parties "be prepared to address whether or not they would be willing to consent to the Magistrate Judge resolving this/these motions and/or the trial in this case, if needed, by consent." *See* DE 236 at. 2. Such a request was directly in contravention of Rule 73(b) and § 636(c)(2) which provide a "blind consent" provision "to ensure that neither the judge nor the magistrate attempt to induce a party to consent to reference of a civil matter . . . to a magistrate." *See Roell*, U.S. 538 at 589 (internal citations omitted). If anyone wanted to understand the wisdom of Congress's mandate about confidentiality and non-coercion, attendance at that hearing was all that you would need to understand it.

Further, during the September 10, 2009 status conference, Judge Brown informed the plaintiffs that the only way to get an extension was to agree for him to try the case:

4

> THE COURT: . . . In any event, *if you want more time, you are stuck with me to get you more time.* Okay. It is that simple. I am not going to ask you, although I am being a little bit hypocritical here because I usually talk to you and say, "have you discussed this matter amongst yourselves," et cetera, et cetera . . . Well, unless you are going to tell me everybody has consented to me handling this case in dispositive fashion, then we are not going to go any further.

*See* September 10th, 2009 Tr. 6/7-22 (emphasis added).

Then the gloves came off:

> THE COURT: Three. Excuse me. Mr. Halmos, we will start with you, and I am not picking on you, sir.
> MR. HALMOS: Yes, sir.
> THE COURT: But you are the first name on the list. Okay?
> MR. HALMOS: That is okay.
> THE COURT: I hate to do this, but I am going to do it, anyway. Do you consent to this court handling this case in dispositive fashion, through and including the trial in this case, sir?
> MR. HALMOS: Yes, sir.

*Id.* 7/11-15.

Without question, whether I wanted to agree to him or not, he would know my choice, and full-time or part-time on the case, he would be able to reward or punish me for not giving the answer he wanted. After obtaining each party's consent, the parties, in the presence of Judge Brown, signed the consent form. This is the exact situation which Congress wanted to prevent when promulgating Section 636(c)(2) and its protective "blind consent" procedures. *See Roell,* 538 U.S. at. 588 *citing* H. R. Rep. No. 96-287, at 2 ("no pressure, tacit or expressed, should be applied to litigants to induce them to consent to trial before the magistrates").

As further intimidation, on April 8, 2010, Judge Brown threatened me if I were to attempt to revoke my consent:

> THE COURT: And, by the way, just in case you think you want to do some forum shopping as it regards the consent

> situation, let me give you a news flash. Judge Martinez is aware of this case. I will leave it at that.

See April 8, 2010 Tr. 7-8/25-3.

> THE COURT: I haven't made that decision yet. I am considering it. I just want you to know that. And I hasten to add, by the way, when I said to you if you want to go back to Judge Martinez, he knows about this case.
>
> I hasten to add, and I will direct this to you, Mr. Morgan, because you are one that about [sic] it up, and I respect that, as far as venue, if you think going back to Judge Martinez, in the event I decide to move this to Dade County is going to get you back to Key West, don't jump to that conclusion. I will just give you a hint. Okay. Is there anything else that we can accomplish at this time?

See April 8, 2010 Tr. 13-14 /17-3.

Because the blind consent procedures under the federal rules were not followed, and because I was pressured and coerced into consenting to Judge Brown presiding over the full case, the consent is invalid. As such, Judge Brown lacks subject matter jurisdiction to issue a final disposition in this case. See McNab v. J & J Marine, Inc., 240 F.3d 1326, 1328 (11th Cir. 2001) (holding that the magistrate judge lacked jurisdiction to issue a final disposition in the case and that the orders issued were not final and appealable since the parties did not voluntarily consent).

This Court must reassume control of this case, as it has never relinquished jurisdiction or properly consented to a referral. This magistrate judge does not have subject matter jurisdiction to try this case. The case should be reassigned to the Honorable Jose Martinez, who can either try the case or allow the parties, if they wish to do so, to properly consider the referral of this matter.

**II.    Even If Subject Matter Jurisdiction Were Proper, The Magistrate's Conduct And Actions Create The Exceptional Circumstances Necessary To Cause A Withdrawal Of A Consent To Referral**

The magistrate's conduct since the time of "referral" has demonstrated the inappropriateness of this matter remaining with him for disposition. His service as a mediator, also by coercion, seemingly not a problem at the time (April 8, 2010 Hearing Transcript), became a problem when he later struck my jury trial rights. His private meeting with me after the mediation with just the two of us present in his private office,[3] during which he discussed his financial sacrifices involved in his job, was intimidating at best. The fact that he did not recuse himself after he struck my jury trial rights, even though as mediator in *compulsory* mediation, he had become privy to admissible and non-admissible information regarding the facts of the case, cause me to irrevocably believe I will not get a fair trial. Combined with his hostile and prejudicial attitude towards me; his order which forbade me from participating in proceedings for a period of time during which he falsely accused me of concealing a document for which he imposed fatal sanctions without conducting an evidentiary hearing; and an order directing that I cannot attend my trial, among a myriad of other baseless sanctions and *ad hominem* insults, all militate in favor of this Court finding extraordinary circumstances and pulling this case from him.

### Judge Brown Appoints Himself Mediator

Judge Brown, in addition to soliciting and pressuring me to consent to him presiding over the full trial, also "suggested," on more than one occasion, that the parties allow him to become the mediator in the case. On two occasions, he stated in open court that the "report" he got was that only one Plaintiff objects to him as being the

---

[3] I hesitated to accept his invitation for me to join him in his private office, but he insisted.

mediator – as he glared down at me from the bench (April 8, 2010 Hearing Tr. 10/15-23; 10/15—23; and Tr. 11/4-5.) As a result, as I knew that I had a jury trial and actually having no choice (of course hoping something positive might happen), I agreed to him conducting the compulsory mediation.

As you would expect with any mediation, confidential settlement arrangements and sensitive information was discussed with Judge Brown serving as mediator. Judge Brown met with the parties separately. While wearing his "mediator's hat," Judge Brown learned of my utmost confidences and concerns, and he questioned me about allegations made by INA and its lawyers; he grilled the attorneys for IYC and HPC as to their views on the weaknesses of our case; and viewed documents and solicited information that cannot possibly be admissible at trial. He told me about what INA and its lawyers purportedly said, and I wondered what he was telling INA and its lawyers about me. All told, I felt comfortable in sharing confidential information with the "neutral mediator" since, at that time, a jury trial was set, which, if mediation were unsuccessful, could have Judge Brown wear his "judge's hat" as opposed to his "juror's hat."[4] Under no circumstances would I have agreed to a mediation with Judge Brown if I had anticipated any possibility that the case would be a judge-only case.

At the end of the mediation, Judge Brown directed me, a party and the corporate representative of the Plaintiffs, into his private office without any attorneys being present.[5] I did not want to but overcame my trepidation since the matter was a jury trial.

---

[4] It is precisely because a magistrate judge is uniquely able to proceed comparatively unencumbered when conducting mediations that districts utilize the process of referring cases to magistrate judges for mediation under their alternative dispute resolution policies. *See Kearny v. Milwaukee County*, 05-C-834, 2007 WL 3171395 (E.D. Wis. Oct. 26, 2007).

[5] I left the personal conversation in chambers extremely uneasy. While I will not get deeply into the conversation, I was not at all comfortable discussing the financial change in circumstances

The consequences became alarmingly clear shortly thereafter in open court with Judge Brown announcing the purported terms of the settlement agreement with Strickland, which he alone negotiated. *See May 6, 2010 Hearing Transcript.*

## Judge Brown Strikes the Jury Trial

Over two years into the case, Defendant INA requested that the Court strike the Plaintiffs' demand for jury trial. *See* DE 1061. In its Motion, Defendant conceded that: "Under the Seventh Amendment, Plaintiffs would be entitled to a jury trial to the extent that the claims arise under the Court's diversity jurisdiction . . . . U.S. Const. amend. VII." *Id.* at 3 (emphasis added). This request came after, without exception, every complaint, and even one of INA's answers demanded a jury trial and all parties and the Court had consistently spoken of the fact that the case would be tried to a jury.

The magistrate then struck the jury trial demand, based on what I believe to be his erroneous analysis on maritime jurisdiction and his desire to try this case[6]: "[w]hile recognizing that the Court had the discretion to grant a jury trial, desiring to try the case once," Judge Brown decided against a jury because of his "fear of a far greater chance of error were this case tried by a jury." *See* DE 1130 at 4, FN3. As a result, Judge Brown (while already knowing my utmost confidences through compulsory mediation) converted this life-shattering case to a bench trial - thereby appointing himself as the sole trier of fact. Any reference to the transcripts makes it clear that the magistrate's calendar is the real reason he struck a jury. Judge Brown implies he could do a better job than a jury, but I irrevocably believe otherwise, particularly after having mediated with him, reluctantly had discussions with him in chambers, and then suffered innumerable prejudices, false accusations, and fatal sanctions before him in his

---

that might drive a magistrate judge from owning a Porsche to having to adjust to a Mercedes.
[6] *See* DE 1130; October 14, 2010 Tr. 12-13 /6-4.

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

judiciary capacity. All of these were bad, but did not hold a candle to him trying the case without a jury.

On hindsight, I should not have been shocked as Judge Brown has hinted at his "better way" more than once. More precisely, during an October 14, 2010, status conference, Judge Brown made the following remarks:

> THE COURT: I want to grant that motion . . . and I will tell you also, candidly, having read the motion, I have some doubts as to whether I can grant it. . . Now, let me tell you why I want to grant the motion because plaintiffs might want to give some thought to this. . . there is only one reason why I want to grant that motion. . .
>
> I am going to tell you why I want to grant it. I think it is the only -- oh, of trying a case without reversible error, that's why I want to grant it. *It is not prejudice for one side or the other.*
>
> I think this case is going to be a zoo if it goes to trial in front of a jury. How that is going to come out and the wash, I don't know. Okay.
>
> *Although people may think I am kidding, I don't care if Mr. Halmos gets millions upon millions of dollars or he gets zero. Okay. I really don't, but what I don't want is to have to try this case twice.*

October 14, 2010 Tr. 12-13/6-4. (Emphasis added)

Were Judge Brown honestly impartial, I see no reason for him to repeatedly seek to convince me of this. Nevertheless, on November 2, 2010, Judge Brown struck the jury. *See* DE 1130. In his Order, Judge Brown, once again, articulates his reason for wanting to try the case without a jury; that is, he wants to decide the facts and the law without appellate review:

> This Court recognizes that it has discretion to allow this case to be tried by a jury . . .The Court chooses not to exercise that discretion however, due to the absurdly vituperative manner in which the parties have chosen to litigate this case to date, which, the Court believes, would only be exacerbated by a trial before a jury. . . The

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

> Court has previously expressed, and renews herein, its fear of a
> far greater chance of error were this case to be tried before a jury.

See DE 1130 at 4, FN3.

Thus, not only did Judge Brown announce that he really wanted to grant INA's motion, even though he believed he could not and *before a response having been filed*, Judge Brown actually does because he and he alone will decide the final outcome of this trial. This was not foreseeable at the time that my consent was improperly coerced by Judge Brown. Had I known he will deprive me and the corporate Plaintiffs of having a jury trial, neither I nor the corporate Plaintiffs would have been pressured into consenting to Judge Brown presiding over the full trial or the mediation. Without doubt and for sure if Judge Brown were in a pool of jurors, I would try to strike him for cause or otherwise.

Recognizing it is not my decision to make, but after striking the jury trial, I believe the proper course of action for Judge Brown is to recuse himself, given that he is privy to all of the confidential information I was compelled to reveal during the mediation. Once this occurs, especially under compulsion, "it is impossible to un-ring that bell." A magistrate judge who acts as a mediator without the expectation that the case may be re-assigned to them as the trial judge will almost invariably be presented with a case where impartiality may reasonably be questioned, thereby necessitating a recusal."[7] The Fifth Circuit has explained that this situation is not permissible:

> Apparently at the request of the parties, the district judge
> appears to have mediated the settlement conference, in the
> course of which he would have gained significant knowledge
> of the parties' settlement positions. When the settlement
> negotiations failed, the judge was faced with the possibility of

---

[7] *Kearny v. Milwaukee County*, 05-C-834, 2007 WL 3171395 (E.D. Wis. Oct. 26, 2007) (judge who served as a mediator recused himself when he was subsequently appointed to preside over the full case).

also becoming the trier of fact. Indeed, it was eminently
reasonable to expect such an occurrence-had the jury found
Becker to be a longshoreman rather than a seaman, the
judge would have been the fact finder in a non-jury trial. This
role would have been inappropriate given his discrete
knowledge of the parties' evaluation of their respective
financial positions on settlement. After that possibility
materialized, he should have been recused, either by
offering to do so *sua sponte* or by granting a recusal motion
filed by a party.

*Becker v. Tidewater, Inc.*, 405 F. 3d 257, 260 (5th Cir. 2005) (footnote omitted).

Despite the conflict, Judge Brown did not recuse himself.

## Judge Brown Has Displayed an Appearance of Partiality[8]

Judge Brown has habitually castigated me by expressing unsubstantiated
opinions and nefarious speculations about my motives. Judge Brown's Orders reveal
pervasive bias and prejudice and impose egregious sanctions without even holding an
evidentiary hearing, often solely upon INA's motions. This is especially troublesome
given that "when the judge is the actual trier or fact, the need to preserve the
appearance of impartiality is especially pronounced." *See Alexander v. Primerica
Holdings, Inc.*, 10 F.3d 155, 163 (1993) (in reassigning the matter based on the judge's
appearance of impartiality the court emphasized the fact that the matter was "a non-jury
case, and that Judge Lechner will be deciding each and every substantive issue at
trial").

Judge Brown's conduct throughout this litigation, however, has been far from
impartial. Judge Brown has consistently disparaged me and ruled in a manner that has
been inconsistent with the presented evidence and, when imposing fatal sanctions on

---

[8] *Carter v. Sea Land Services, Inc.*, 816 F.2d 1018, 1021 (5th Cir. 1987) (one factor court should
consider in section 636(c)(6) motion to vacate is "the possibility of bias or prejudice on the part
of the magistrate").

Plaintiffs without any evidence or in manifest disregard of the evidence Plaintiffs present. A few examples of Judge Brown's inconsistent and biased rulings follow:

### a.    Footsie Motion

On July 12, 2010, Plaintiffs took the deposition of Defendant witness, Connie Dennis. As reflected by the transcript, the deposition began at approximately 9:57 a.m., and concluded, after a lunch break, at 12:48 p.m., when counsel for Plaintiff, terminated the deposition after receiving a text picture from Jonathan Burke, a paralegal who was assisting counsel for the corporate Plaintiffs during the deposition. The text picture showed Defendant attorney Kenneth Engerrand's foot tapping the deponent. Upon questioning of Ms. Dennis during the deposition, she *admitted* to the foot-tapping having occurred "*a couple of times*" (Depo. Tr. 75/22-23), and counsel for IYC and HPC terminated the deposition.

On July 26, 2010, in an attempt to avoid Plaintiffs filing a motion for sanctions, Defendant filed a motion for protective order. *See* DE 887. Plaintiffs, soon thereafter, filed their response and moved for sanctions and revocation of Defendant counsel, Kenneth Engerrand's *pro hac vice* status for tapping a deponent's foot. *See* DE 960.

On October 4, 2010, the Court held an evidentiary hearing and heard testimony of Johnathan Burke, Connie Dennis and Kenneth Engerrand, one employed directly by INA, the other an outside lawyer for INA. Even before there was any testimony of record, Judge Brown stated "the Court has enough information in front of it, however, to say, using criminal law, there is a basis for making the allegations." *See October 4, 2010 Tr.* 5/9-10. Then, despite the fact that the competent evidence – testimony, photographs, transcripts -- conclusively supported the demonstrated foot-tapping, on October 7, 2010, the Court issued an order finding fault with the Plaintiffs for terminating

the deposition and went at great lengths to discredit the one individual, Mr. Burke, who simply took the photograph, so that Judge Brown could rule in favor of INA and against the greater weight of evidence. *See* DE 1079. So, the judge did not believe a 24 year-old part-time, college student paralegal who took a picture of Attorney Engerrand basically running the risk of spraining his calf, while Engerrand comically explained under oath that he just repeatedly tapped the witness's foot by accident.

### b. Order Banning Me From Trial

On February 17, 2011, Plaintiffs filed an Emergency Motion to Continue Trial (DE 1298). The motion requested a minimum of three months stay of the proceedings and a continuance of same so that I could recover from the ailments that have plagued me. Attached to the motion were letters from two physicians and a nurse that indicated that I would need a minimum of three months, but more like six months, to recover. An emergency hearing was held by Judge Brown in which he indicated that opinions by physicians were expert opinions that the Court would assume to be true. Irrespective of that, on March 2, 2011, Judge Brown entered an order continuing the trial for two months—one month less than the minimum requested by the doctors—and barring me from the proceedings until further order of Court.

The Order is clear that Judge Brown does not want me at the trial *pro se*. Judge Brown states that "[i]ronically, long ago this Court actually begged Mr. Halmos to get counsel . . . ." *Order at 2*. Judge Brown, in part, is actually referring to confidential communications which took place in chambers during the mediation. This alone is a clear indication that Judge Brown will not be able to separate what was discussed during the mediation, and being the trier of fact.

14

#### c. Recent Attacks On My Credibility

On March 22, 2011, Judge Brown sanctioned Plaintiffs based on a finding that Defendant was prejudiced because, according to Judge Brown, a certain letter among some 200,000 documents was allegedly not produced to Defendant. *See* DE 1319. The imposition of sanctions, however, is neither supported by the facts nor by case law, as is addressed in DE 1337.

Putting the error of his findings aside, Judge Brown's scandalous language in the Order, attacking Plaintiffs and counsel for filing a Notice of Clarification to correct an error, is – to be charitable – outrageously unjust. *See* DE 1305. Judge Brown's stated: "incredibly, plaintiffs next filed a Notice of Clarification . . . simply amazing." He then tops it off by – without any evidence whatsoever – accusing Plaintiffs, including me, of only filing a Notice of Clarification "when they got caught with their hand in the cookie jar." *See* DE 1319 at 2.

Such an attack on my character is improper and despicable, and clearly unjustified without an evidentiary hearing. A Notice of Clarification is the correct procedure when a party becomes aware there was error. In doing so, my co-plaintiffs informed the Court not to consider the argument since it was error. What would the Court wish me to do, stay silent and have the Court consider the argument and possibly rule in Plaintiffs' favor on inadvertently erroneous information?

Judge Brown's questioning of my credibility does not end there. On April 7, 2011, Judge Brown held a hearing on Defendant's Emergency Motion for relief from trial order (DE 1326) regarding a conflict with the trial dates. Plaintiffs were not opposed to the trial date either staying put on the same date or extended until June, 2011. Plaintiffs informed the Court that since I was barred from the proceedings, that Gail Meyers

would have to be the corporate representative, but had a vacation in the later part of May to Alaska. Thus, if the trial commenced on May 3, 2011, as originally planned, or was moved to June, then both INA's conflict and Plaintiffs' conflict as a result of INA's conflict would be solved. The Court's response, "which I candidly find, to be kind, grossly incredible . . . ." April 7, 2011 Tr. 7/5-7.

Upon Plaintiffs' counsel informing the Court that it has been twice in two weeks calling into question Plaintiffs' counsel or his client's credibility, without an evidentiary hearing, Judge Brown responded: "[o]ne of these days you are going to figure out who is running this courtroom, and it is not you." *Id.* at 7/22-23. It has thus come to a point where shooting from the hip, calling Plaintiffs' credibility into question, without an evidentiary hearing, is the norm – all because Judge Brown wants to show who "runs the courtroom" regardless of my rights.

### d. Judge Brown's Denial Of Request for Ruling On Outstanding Discovery

On February 2, 2011, Plaintiffs filed a Request for A Ruling on Outstanding Discovery Motions (DE 1256). In it, Plaintiffs requested that Judge Brown rule on pending motions that have been pending since July 2010. *See* DE 826. The motion requests sanctions against INA for failure to respond to interrogatories as ordered three separate times by Special Master Klein.

Plaintiffs, seeing that trial was fast approaching, requested that Judge Brown rule on the pending motion. On February 16, 2011, Judge Brown ruled that the motion was one that could have been brought up before his motion cut-off date of January 5, 2011, and thus denied the motion. *See* DE 1283. Thus, Judge Brown denies the underlying motion for sanctions filed months prior to his cut-off date, because the notice informing the Court that there is a pending motion that Judge Brown has yet to rule on, was filed

after the cut-off date. As a result, Plaintiffs are forced to proceed to trial without the
requested discovery information. Which begs the question, had Plaintiffs not filed the
notice, how would Judge Brown have denied the underlying motion that was timely
filed? He couldn't, and Judge Brown's continuous attempts to bend procedure and facts
to assist INA is troublesome.

### e.    Strickland Settlement

Another troublesome situation involving Judge Brown occurred as a result of the
purported Strickland settlement Judge Brown alone negotiated.[9] During the
aforementioned mediation, a very serious matter I discussed with Judge Brown as being
a non-negotiable predicate, came up with respect as to what were the terms
subsequently excluded from language drafted by Strickland. Thus, in effect, Judge
Brown is a witness because he is the one who negotiated with Strickland during the
mediation. That, however, did not stop Judge Brown from finding Plaintiffs in contempt
for failing to execute a settlement agreement that excluded the non-negotiable predicate
I discussed with mediator Brown. See August 12, 2010, Tr. 9/4-15-10/16. ("That's not
what was discussed. That is not part of the agreement, and it is not becoming a part of
the agreement. Plain and simple.") And subsequent to the hearing, holding Plaintiffs in
contempt for refusing to sign the settlement agreement as drafted by Strickland. See DE
1235.

These are just a sample of orders by Judge Brown that, in my opinion, have no
place in a U.S. district court. I have refrained from citing the language of Judge Brown's
orders that are filled with scandalous accusations and vituperative speculations in a
flamboyant grammatical form as that is not the issue, yet leave much to be desired. The

---

[9] The Parties communicated only through Judge Brown, then acting as mediator.

problem becomes that Judge Brown has made this case personal to the point where he has intimidated and coerced his way into becoming judge, jury and mediator. He has used the assumed power of a district court judge to ban me from the proceedings and from a constitutional right to a jury trial which was initiated by an improper consent, so that he can sit as my juror to pre-empt appellate review.

## CONCLUSION

The methods in which Judge Brown solicited and obtained my consent to have him exclusively preside over all the proceedings in this matter were nothing short of improper and egregious given that his methods completely ignored and circumvented the blind consent provisions under the federal rules. Moreover, the improperly obtained referral has become even more tainted given that I consented under coercive measures, but having some comfort in the belief that there will be a full jury trial. Further, what occurred immediately after and subsequent to the mediation, after Judge Brown insisted that I have a private discussion with him in chambers, has been nothing short of hostile and retaliatory.

I understand that a request to withdraw an election of referral cannot be used as a backdoor to a recusal motion. But, as I understand it, a magistrate is not a United States District Judge, and a United States District Judge remains responsible for the conduct of these proceedings. It is simply inappropriate and unfair for a judge to intimidate himself into the judge's chair, sit as a mediator, compel my confidences, then, over my objection, bounce the jury and assume that role as well. The circumstances in this case are beyond extraordinary and the supervising federal district judge needs to revoke this referral.

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

Based upon the foregoing, Chief Magistrate Judge Brown never acquired subject matter jurisdiction to assume the role of a federal district court in this case, and even if he had, his conduct and actions demonstrate extraordinary circumstances that mandate the revocation of the referral and the re-assumption of the case by the district judge.

Pursuant to the Federal Rules of Civil Procedure, I conferred with counsel for INA, Kenneth Engerrand, who opposes this request.

PETER HALMOS, pro se
c/o Meyers & Associates, CPA
4540 PGA Blvd., Suite 216
Palm Beach Gardens, FL 33418
Telephone: (561) 249-1712
Facsimile: (561) 249-1709
gail@meyerscpa.com

By: _____

## CERTIFICATE OF SERVICE

I certify that the foregoing document is being served this 2 th day of April 2011

on all counsel of record identified on the attached Service List via First Class, U.S. Mail,

postage prepaid.

By: _____

Peter Halmos

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

## Service List

Frank J. Sioli
Zascha B. Abbott
BROWN SIMS P.C.
Datran One - Suite 1609
9100 South Dadeland Boulevard
Miami, Florida 33156

Scott Bassman
Counsel for Defendant,
Strickland
Cole, Scott & Kissane, P.A.
Dadeland Centre II
9150 S. Dadeland Blvd, Suite
1400
Miami, FL 33156

Clinton Sawyer Payne
DeMahy Labrador Drake Payne
& Cabeza
Alhambra Center – Penthouse
150 Alhambra Circle
Coral Gables, FL 33134

Kenneth G. Engerrand
Michael A. Varner
P. Michael Bowdoin
Brown Sims p.c.
1177 West Loop South
Tenth Floor
Houston, Texas 77027-9007

David P. Horan
HORAN, WALLACE &
HIGGINS, LLP
608 Whitehead Street
Key West, FL 33040
Telephone: (305) 294-4585
Facsimile: (305) 294-7822

Courtesy Copy
The Honorable Judge Jose E.
Martinez
United States District Court
Southern District of Florida
400 North Miami Avenue, Room 10-2
Miami, Florida 33128-1807