IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

KEY WEST DIVISION

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

PETER HALMOS, et al.,

        Plaintiffs,

vs.

INSURANCE COMPANY OF NORTH
AMERICA, et al.,

        Defendants.

_____/

FILED by _____ D.C.

MAY 0 4 2011

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM OF LAW TO DISMISS COUNTERCLAIM FOR FAILURE TO SUE IN THE NAME OF THE REAL PARTY IN INTEREST, JOIN INDISPENSIBLE PARTY, AND FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiff, Peter Halmos, pro se, respectfully moves for an Order of this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(7), 17 and 19, for an order dismissing the counterclaim filed in this case, based upon the Defendant/Counter-Plaintiff, INSURANCE COMPANY OF NORTH AMERICA'S (hereinafter, "INA") failure to join ACE LIMITED (hereinafter, "ACE LIMITED" or "ACE USA Group")[1] as indispensible parties; failure to prosecute its counterclaim in the name of the real party in interest; and, for lack of subject matter jurisdiction.

In support of this Motion, the Plaintiff states as follows:

_____

[1] The Court may have mistakenly used "ACE USA Group" in its Order in D.E. 902. The only entity referenced in INA's FRCP 7.1(a) Disclosure that appears to have a similar name as a parent company is ACE Group Holdings, Inc. Regardless, ACE Group Holdings, Inc. is 100% owned by ACE LIMITED.

 SCANNED

## NATURE OF RELIEF SOUGHT

1.     This action is set for a non-jury trial before Magistrate Brown beginning on May 3, 2011.

2.     In INA's Answer, Affirmative Defenses and Counterclaim in response to the Plaintiffs' Fourth Amended Complaint (D.E. 76), the Defendant INA filed a counterclaim in this matter seeking affirmative relief in the form of a declaratory judgment from this Court as to its rights, duties, and responsibilities under the terms of the various insurance policies at issue in this matter. INA's counterclaim made no reference to admiralty law (hereinafter, the "Counterclaim").

3.     This Court must dismiss INA's Counterclaim for failure to prosecute this matter in the name of the "real party in interest" (ACE LIMITED) in violation of Fed. R. Civ. P. 17 and their failure to join an indispensible party (ACE LIMITED) to this litigation pursuant to Fed. R. Civ. P. 19; and for conducting the business of insurance in Florida without the required Certificate of Authority in violation of Florida Statutes section 624.401.

4.     As a result, this Court must dismiss INA's counterclaim for lack of subject matter jurisdiction because without the required Certificate of Authority, INA and its parent (through which INA issued the Policies to IYC and HPC) are in violation of § 626.901, Florida Statutes (2010) and, as a result, cannot pursue any claims for affirmative relief in any Florida court pursuant to section 626.903, Florida Statutes (2010).

5.     The remedy of dismissal of an action (or counterclaim) for failure of a party to join an indispensible party or parties pursuant to Rule 12(b)(7) can be raised anytime,

2

including on appeal, or by the court on its own initiative. See, *Manning v. Energy Conversion Devices, Inc.* 13 F.3d 606, 609 ($2^d$ Cir.1994) (emphasis added). The Plaintiff is also allowed to raise the issue of this Court's subject matter jurisdiction at this time and even at trial.

## THE COURT'S ORDER FOUND ACE USA AND ACE LIMITED TO BE PARENT COMPANIES TO INA

**6.**     ACE LIMITED is the parent company ultimately responsible for both INA and ACE Group Holdings, Inc., a/k/a ACE USA Group. It is the real party in interest in this matter and/or an indispensible party under Fed. R. Civ. P. 19(b); is not licensed to conduct or transact insurance in the State of Florida pursuant to a Certificate of Authority required by section 624.401; and, therefore is prohibited from prosecuting any lawsuits in this state pursuant to section 626.901.

**7.**     This Court has expressly found that the claims at issue in this case "**arise out of incidents surrounding marine insurance Policies issued to Plaintiff's IYC and HPC by Defendant INA through its parent company, ACE USA Group (referred to collectively as "ACE-INA")**"[2] (underline added). See Order on Motion to Dismiss (D.E. 902). The Order is attached hereto and incorporated by reference as Exhibit "A."

**8.**     The Court's operative conclusion for purposes of this Motion is that the Policies issued to IYC and HPC were issued through INA's **_parent_**.

**9.**     Pursuant to the Certificate of Authority issued to INA by the State of Florida, INA's parent is ACE LIMITED, the actual party in interest in this litigation.

---

[2] The Court's confusion as to the actual name of INA's parent is understandable given Plaintiffs' numerous complaints about the corporate "shell game" being perpetrated in this case. See INA's Fed. R. Civ. P. 7.1(a) Disclosure (D.E. 54).

Pursuant to this Court's Order (D.E. 902, Exhibit A), ACE LIMITED is an indispensable party to properly adjudicate the merits of the Plaintiff's claims and INA's currently pending counterclaim.

## INA'S CERTIFICATE OF INTERESTED PERSONS AND DISCLOSURE STATEMENT SUPPORT DISMISSAL OF COUNTERCLAIM

10.     INA's **Certificate of Interested Persons and Disclosure Statement,** pursuant to Rule 7.1(a) (D.E. 54), stipulated its associated "Ultimate Parent" is ACE LIMITED, the real party in interest and an indispensible party to the current INA counterclaim. A copy of INA's Fed. R. Civ. P. 7.1(a) Disclosure ("Disclosure") is attached hereto as Exhibit "B."

11.     The Disclosure filed by INA is dispositive:

> Insurance Company of North America is a wholly-owned subsidiary of INA Holdings Corporation, which is a wholly owned subsidiary of INA Financial Corporation, which is a wholly-owned subsidiary of INA Corporation, which is a wholly-owned subsidiary of ACE INA Holdings, Inc.

> ACE Group Holdings, Inc., a wholly-owned subsidiary of ACE Limited, owns 80% of the stock of ACE INA Holdings, Inc. ACE Limited, a publicly traded company organized under the laws of Switzerland, owns 20% of the stock of ACE INA Holdings, Inc.

12.     The Disclosure stipulates that ACE INA Holdings, Inc. owns 100 percent of INA; ACE Group Holdings, Inc. owns 80 percent of ACE INA Holdings, Inc; ACE LIMITED owns 100 percent of ACE Group Holdings, Inc. and the remaining 20 percent of ACE-INA Holdings, Inc. Accordingly, ACE LIMITED is the parent of INA that issued the Policies to IYC and HPC.

13.     Even if it is argued that INA's "parent," pursuant to this Court's Order, is ACE INA Holdings, Inc., or ACE Group Holdings, Inc., the result is the same. Neither

4

ACE INA Holdings, Inc., nor ACE Group Holdings, Inc. has a Certificate of Authority from the State of Florida.

## A.M. BEST'S INSURANCE REPORT SUPPORTS MOTION TO DISMISS

**14.** The A.M. Best's Insurance Reports-Property and Casualty, 2010, repeatedly referenced in this case as authoritative by INA, lists ACE LIMITED as the "Ultimate Parent" of INA. The term "Ultimate Parent" refers to the parent company ultimately responsible for the policies issued by the subsidiaries that the "Ultimate Parent" owns or controls. ACE LIMITED is assigned an A.M. Best number (AMB# 058303) so that corporate structure and financial data can be provided as to each subsidiary. INA is listed as being 100 percent owned by ACE LIMITED with its own AMB# of 002259. INA's "Associated Ultimate Parent" is listed as ACE LIMITED (with the corresponding AMB# as previously referenced of #058303).

**15.** As detailed herein, applicable federal law; this Court's Order (D.E. 902, Exhibit A); the state of Florida registration information; and INA's Disclosure are conclusive, competent evidence that ACE LIMITED is the parent through which INA issued the Policies to IYC and HPC in this litigation and, consequently, ACE LIMITED is the real party in interest and/or an indispensible party to INA's counterclaim. This Court cannot entertain any claims for affirmative relief that would be filed by ACE LIMITED as it lacks the legal capacity to sue in Florida.

## FACTUAL BASIS FOR ACE LIMITED BEING INDISPENSIBLE

**16.** As the Court must determine pursuant to section 624.401, if INA had before joined, or must now, join ACE LIMITED to prosecute the counterclaim, this Court

would lack subject matter jurisdiction to do so and therefore must dismiss that counterclaim.

**17.** The real party in interest in this case is INA's "Ultimate Parent" company, ACE LIMITED, which is the parent through whom INA issued the Policies to IYC and HPC, as determined in this Court's Order (D.E. 902, Exhibit A). As stated in the A.M. Best Insurance Report, 2010 (at 25): "ACE Limited is the Swiss-incorporated parent company of the ACE Group and is listed on the New York Stock Exchange (NYSE: ACE). Through its various subsidiaries, ACE serves the property and casualty insurance needs of businesses of all sizes in a broad range of industries."

## NEITHER ACE USA GROUP NOR ACE LIMITED ARE LICENSED IN FLORIDA

**18.** This Court has determined that Florida law applies to all matters of substantive law in this case and the Florida Insurance Code governs the conduct of insurers such as INA holding a Certificate of Authority in this state.

**19.** Under the Florida Insurance Code, chapters 624 and 626, INA and its parent, ACE LIMITED, are required to maintain a Certificate of Authority (license) to transact insurance business in Florida.

**20.** ACE LIMITED does not have a Certificate of Authority to transact insurance in the State of Florida as required pursuant to section 624.401.[3]

## CHECKS ISSUED TO THE PLAINTIFFS SUPPORT THE MOTION

**21.** Furthermore, INA is not the company (or companies) which continue to (a) perform Policy obligations; (b) adjust the Plaintiffs' claims; and, (c) pay partial claims settlement proceeds to IYC and HPC in this case. In INA's Answer (D.E. 76 at

---

[3] Neither ACE INA Holdings, Inc. nor ACE Group Holdings, Inc. have a Certificate of Authority from the state of Florida.

paragraph 4), INA admits that it authorizes its affiliates, ACE American Insurance Company and INAMAR, to perform Policy obligations for INA.[4]

**22.**     The record in this case is clear that INA's name does not appear on any of the checks that "it" wrote to pay, in part, the claims of the Plaintiffs in this matter. The names on checks sent to IYC and HPC in this case are "ACE American Insurance Company", "ACE Property and Casualty Insurance Company", "Westchester Fire Insurance Company" and "Affiliated Insurers"     all 100% owned by the "Ultimate Parent" company, ACE LIMITED (Exhibit C).

**23.**     Such co-mingled accounts involving numerous statutory insurance companies are in Pennsylvania called "common treasury accounts." The Pennsylvania Insurance Department prohibits insurers domiciled in Pennsylvania from participating in such "common treasury accounts." INA is domiciled in Pennsylvania.

## POLICY REQUIRED DOCUMENTS SUPPORT MOTION

**24.**     Joseph Smith, senior vice president of ACE American, signed consent <u>as an officer of INA</u> (Exhibit D) for IYC to enter into a multi-million dollar salvage contract pursuant to Policy requirements, despite that Mr. Smith is neither an officer nor an employee of INA.

**25.**     Astoundingly, Ms. Pamela Harting-Forkey, assistant vice president and claims manager for ACE American, signed a Waiver of Subrogation (Exhibit E) <u>as an officer of INA</u> that was submitted to the U.S. Government's National Oceanic and Atmospheric Administration ("NOAA") to effect the January 5, 2007 NOAA Agreements central to this case. Ms. Harting-Forkey is neither an officer nor employee of INA.

---

[4] INA's Answer likewise admitted that Indemnity Insurance Company of North America is not authorized to perform Policy obligations for INA as to Policies issued to IYC and HPC through INA's parent.

**26.**    ACE LIMITED could choose to repudiate Mr. Smith's consent and Ms. Harting-Forkey's Waiver of Subrogation, or this Court could rule that either or both documents are null and void, leaving Plaintiffs in serious jeopardy. Or, in the alternative, NOAA could repudiate the January 7, 2005 Agreements because Ms. Harting-Forkey's Waiver of Subrogation is not enforceable. Unless ACE LIMITED is joined as the real party in interest and an indispensable party in this case, Plaintiffs cannot adjudicate their claims, including by compelling ACE LIMITED to ratify Ms. Harting-Forkey's bogus Waiver of Subrogation.

## TESTIMONY OF INA'S CORPORATE
### REPRESENTATIVE SUPPORTS MOTION

**27.**    INA's corporate representative, Mr. Smith,[5] testified that INA did not write the checks sent to IYC and HPC in this case (deposition, page 23, line 4-20). Mr. Smith, designated by the Defendant INA as their corporate representative for this matter on behalf of both ACE American Insurance Company and INA, said the following of the relationship between ACE American Insurance Company, INA and ACE LIMITED: "I believe the overreaching company would be ACE LIMITED", (see, Smith deposition, page 11, lines 13-18).

**28.**    When asked, "Do you have any professional relationship or economic relationship with ACE LIMITED?", Mr. Smith testified, "Other than they are the ultimate parent company of my employer." (see, page 11, lines 19-15, Smith deposition). All of the insurers and "affiliated insurers" under ACE LIMITED issue the policies, adjust and pay claims, but they are ultimately 100% owned by the parent through whom INA issued the Policies to IYC and HPC, as determined by this Court in Exhibit A.

---

[5] Mr. Smith is an officer of ACE American Insurance Company. He is not an officer of or employed by INA.

## COUNTERCLAIM MUST BE DISMISSED

**29.** Because this Court's Order (D.E. 902, Exhibit A) directly and definitively determined that INA issued the Policies to IYC and HPC through INA's parent, the Court should dismiss that counterclaim or, in the alternative, order (a) INA to join the real party in interest in this litigation, ACE LIMITED; and/or (b) ACE LIMITED be joined as an indispensible party to this litigation pursuant to Fed. R. Civ. P. 19. Whether as the real party in interest and/or an indispensable party pursuant to Fed. R. Civ. P. 17 and 19, respectfully, INA's parent (through which INA issued Policies to IYC and HPC) is prohibited from prosecuting the counterclaim in this case because it has no Certificate of Authority from the State of Florida as required by section 624.401 and is, therefore, an unauthorized insurer pursuant to section 626.901.

**30.** The record in this case demonstrates that INA is not involved whatsoever in the claims process and did not write any checks sent to IYC and HPC, but rather ACE American has performed all such functions. ACE American's parent is ACE INA Holdings, Inc., which is 100% owned by ACE Limited. (See page 15, Smith deposition.) ACE LIMITED is the real party in interest and indispensible to the counterclaim. Consequently, the counterclaim must be dismissed.

## INCORPORATED MEMORANDUM OF LAW

A Rule 12(b)(1) motion to dismiss directly challenges the district court's subject matter jurisdiction. *Gilmore v. Day*, 125 F. Supp. 2d 468, 470 (M.D. Ala. 2000). "Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.

5 (11th Cir. 2003)).

"Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint." *Id.* "When considering such challenges, the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true." *Id.* On the other hand, a "factual attack" challenges "subject matter jurisdiction in fact, irrespective of the pleadings." *Morrison*, 323 F.3d at 925. In a factual attack, "matters outside the pleadings, such as testimony and affidavits, are considered." *Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1260 (11th Cir. 2009) (quotation omitted). "The party commencing suit in federal court . . . has the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *Underwriters at Lloyd's, London v. Osting-Schwinn,* 613 F.3d 1079, 1085 (11th Cir. 2010).

## I.    ACE IS AN INDISPENSABLE PARTY UNDER FEDERAL RULE OF CIVIL PROCEDURE 19.

The United States Supreme Court has held that an indispensible party is a party who has an interest in the subject matter of the controversy to such a degree that a final decree cannot be rendered between other parties to the suit without radically and injuriously affecting the parties' interests or leaving controversy, such that a final determination may be inconsistent with equity and good conscience. *Provident Tradesmens Bank v. Patterson*, 390 U.S. 102, 109 (1968).

The remedy of dismissal of an action (or counterclaim) for failure to join an indispensible party under Fed. R. Civ. P. 12(b)(7) can be raised anytime, including on appeal, even by the court of appeals on its own initiative. *Manning v. Energy Conversion Devices*, Inc. 13 F.3d 606, 609 ($2^d$ Cir.1994).

Federal Rule of Civil Procedure 19 ("Rule 19") is the test of whether INA can

10

proceed with its counterclaim in the absence of any person necessary for its adjudication. Under Rule 19, there are two separate tests for determining whether a person (or company) is "necessary" under Rule 19(a) and "indispensible" under Rule 19(b). *Schlumberger Industries, Inc. v. National Surety Corp.*, 36 F.3d 1274 (4th Cir. 1994). ACE LIMITED is an indispensible party as set forth in Rule 19:

Rule 19. Required Joinder of Parties
(a) **Persons Required to Be Joined if Feasible.**
(1) Required Party.
A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
(i) as a practical matter impair or impede the person's ability to protect the interest; or
(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
(2) **Joinder by Court Order.**
If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.
(3) Venue.
If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

(b) **When Joinder Is Not Feasible**.

If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
(2) the extent to which any prejudice could be lessened or avoided by:
(A) protective provisions in the judgment;

(B) shaping the relief; or
(C) other measures;
(3) whether a judgment rendered in the person's absence would be
adequate; and
(4) whether the plaintiff would have an adequate remedy if the
action were dismissed for nonjoinder.

### INA HAS NOT SUED IN THE NAME OF THE REAL
### PARTY IN INTEREST IN VIOLATION OF FED. R. CIV. P. 17

As set forth herein, (a) INA issued the Policies to IYC and HPC through INA's

parent and (b) INA's parent is ACE LIMITED. Consequently, ACE LIMITED is the real

party in interest in this matter. The only current Defendant/Counter-Plaintiff, INA, is not

the company adjusting or paying the claims under the Policies. INA issued the Policies

through its parent company and is not ultimately responsible for Policy obligations.

The real parties in interest in this case are ACE USA Group and ACE USA

Group's "Ultimate Parent" company, ACE LIMITED. ACE LIMITED is a Swiss-based

company which owns and controls all ACE "sub-companies," including INA and ACE

USA Group. ACE LIMITED is the parent company ultimately responsible for both INA

and ACE USA. They are the real parties in interest in this matter and are indispensible

to this litigation.

The Federal Rule of Civil Procedure which the Court must follow to determine the

"real party in interest" is Fed. R. Civ. P. 17 ("Rule 17"). Rule 17 is also jurisdictional in

nature in that the parties who actually have an interest in the outcome of the litigation

must be joined and/or substituted as parties. It also speaks to the requirement that the

real party in interest must have the capacity to sue in federal court.

"Capacity to Sue" relates to a party's right to litigate. *Glickstein v. Sun
Bank/Miami, N.A.*, 922 F.2d 666, 670 (11th Cir. 1991). In this case, ACE LIMITED lacks

the legal capacity to sue as an unauthorized insurer conducting the business of

insurance in Florida.

Rule 17 reads as follows:

**Rule 17: Plaintiff and Defendant; Capacity; Public Officers.**

(a) **Real Party in Interest.**

(1) Designation in General.

An action <u>must be</u> prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought:

(A) an executor;
(B) an administrator;
(C) a guardian;
(D) a bailed;
(E) a trustee of an express trust;
(F) a party with whom or in whose name a contract has been made for another's benefit; and
(G) a party <u>authorized</u> by statute.

(2) **Action in the Name of the United States for Another's Use or Benefit.**
When a federal statute so provides, an action for another's use or benefit must be brought in the name of the United States.

(3) **Joinder of the Real Party in Interest.**
The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

(b) <u>Capacity to Sue or be Sued.</u>
Capacity to sue or be sued is determined as follows:
(1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;
(2) <u>for a corporation, by the law under which it was organized; and</u>
<u>(3) **for all other** parties, by the law of the state where the court is located, except that:</u>
(A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common

name to enforce a substantive right existing under the United States Constitution or laws. (emphasis added).

ACE LIMITED is either the real party in interest under Rule 17 and/or an indispensible party pursuant to Rule 19, contrary to INA's representations to this Court, ACE LIMITED should have been or now must be made a party to this litigation. However, INA's parent ACE LIMITED[6], through which INA issued the Policies to IYC and HPC, does not have a Certificate of Authority to conduct insurance business in the State of Florida and is prohibited from filing and maintaining the counterclaim in this case. It lacks the legal capacity to sue in any court in Florida because it is not legally entitled to do so.

Because ACE LIMITED is a corporation organized under the laws of Switzerland, it is not domiciled in any state in the United States. As such, Rule 17(b)(3) controls and the "law of the state where the court is located" controls the substantive state law under which this Court must determine ACE LIMITED's legal capacity to litigate.

As a result of their unauthorized status conducting the business of insurance in Florida, ACE LIMITED lacks that legal standing and capacity to litigate in Florida, under sections 624.401 and 626.903.

Consequently, this Court lacks subject matter jurisdiction over the INA Counterclaim pending before it because of ACE LIMITED's status as the real party in interest without the capacity to sue in the State of Florida. That counterclaim must be dismissed by this Court for lack of subject matter jurisdiction.

## **VIOLATION OF SECTION 624.401**

The regulatory statute which governs all insurance companies doing business in

---

[6] Or ACE USA Group as stipulated in this Court's Order (D.E. 902, Exhibit A).

the State of Florida is section 624.401 (2010). It is administrative, civil, and criminal in

nature. The relevant sub-section is section 624.401(1) which provides as follows:

> No **person** shall act as an insurer, and no insurer or its agents,
> attorneys, subscribers, or representatives shall directly or indirectly
> transact insurance, in this state except as authorized by a
> subsisting certificate of authority issued to the insurer by the office,
> except as to such transactions as are expressly otherwise provided
> for in this code.

The term "Person" is defined in F.S. § 624.04 as follows:

> **"Person"** includes an individual, insurer, company, association,
> organization, Lloyds, society, reciprocal insurer or interinsurance
> exchange, partnership, syndicate, business trust, corporation,
> agent, broker, service representative, adjuster, and every legal
> entity.

Both INA and its parent ACE LIMITED[7] are covered by this broad definition of

"Person." The prohibited activities specified in section 624.401 apply to ACE LIMITED,

INA, ACE USA Group, ACE Group Holdings, Inc., ACE INA Holdings, Inc., and all

insurers, companies, organizations, corporations and every legal entity with which they

are "affiliates" including, but not limited to, ACE American, INAMAR, and Indemnity

Company of North America.

Section 624.401 (regarding the requirement to have a Certificate of Authority)

also contains criminal sanctions under sub-section 4 as follows:

> (4)(a) Any person who acts as an insurer, transacts insurance, or
> otherwise engages in insurance activities in this state without a
> certificate of authority in violation of this section commits a felony of
> the third degree.
> (4)(b) However, any person acting as an insurer without a valid
> certificate of authority who violates this section commits insurance
> fraud, punishable as provided in this paragraph.[8]

---

[7] As is ACE USA Group.

[8] It is also relevant to note that under the Florida Civil Remedy statute, § 624.155, it is a direct
cause of action for an insured against an insurance company operating in violation of § 624.01.
F.S. § 624.155(1)(a)(2) states as follows: "Any party may bring a civil action against an

ACE LIMITED is the real party in interest in this case and also an indispensible

party, and it may not maintain a cause of action in Florida because of its failure to obtain

a Certificate of Authority, as required by the Florida Department of Financial Affairs and

the relevant Florida statutes as set forth herein.

## VIOLATION OF SECTION 626.901
## (Unauthorized Insurance Activities)

Because INA issued the Policies to IYC and HPC through its parent, both INA

and ACE LIMITED are in violation of section 626.901 (2010). That section reads as

follows:

### §626.901: Representing or aiding unauthorized insurer prohibited.

(1)  No person shall, from offices or by personnel or facilities located in this state, or in any other state or country, directly or indirectly act as agent for, or otherwise represent or aid on behalf of another, any insurer not then authorized to transact such insurance in this state in:

(a)  The solicitation, negotiation, procurement, or effectuation of insurance or annuity contracts, or renewals thereof;

(b)  The dissemination of information as to coverage or rates;

(c)  The forwarding of applications;

(d)  The delivery of policies or contracts;

(e)  The inspection of risks;

(f)  The fixing of rates;

(g)  The investigation or adjustment of claims or losses; or

(h)  The collection or forwarding of premiums;

or in any other manner represent or assist such an insurer in the transaction of insurance with respect to subjects of insurance resident, located, or to be performed in this state. If the property or risk is located in any other state, then, subject to the provisions of subsection (4), insurance may only be written with or placed in an insurer authorized to do such business in such state or in an insurer with which a licensed insurance broker of such state may lawfully place such insurance.

(2)  If an unauthorized insurer fails to pay in full or in part any claim or loss within the provisions of any insurance contract which is entered into in violation of this section, any person who knew or reasonably should have known that such contract was entered into in violation of this section

unauthorized insurer if such party is damaged by a violation of § 624.401 by the unauthorized insurer."

and who solicited, negotiated, took application for, or effectuated such insurance contract is liable to the insured for the full amount of the claim or loss not paid.

(3)  No insurance contract entered into in violation of this section shall be deemed to have been rendered invalid thereby. (emphasis added).

The statutory section which mandates that this Court dismiss the counterclaim in this case for lack of subject matter jurisdiction is section 626.903. This statute, when read in concert with the unauthorized insurance statute section 626.901, provides that INA's parent through whom the Policies were issued to IYC and HPC is the real party in interest and an indispensible party to this matter and *is not allowed to sue in Florida*. The statute states:

§ **626.903:**  Suits by unauthorized insurers prohibited. As to transactions not permitted under s. 624.402, no unauthorized insurer shall institute, file, or maintain, or cause to be instituted, filed, or maintained, any suit, action, or proceeding in this state to enforce any right, claim, or demand arising out of any insurance transaction in this state.

This statutory section is the Court's statutory direction to dismiss the counterclaim in this case based on the true ownership and control of INA over an unauthorized insurer, ACE LIMITED, the parent through whom INA issued the Policies to IYC and HPC. The same results if (a) ACE INA Holdings, Inc. is substituted for ACE LIMITED; (b) ACE Group Holdings, Inc. is substituted for ACE LIMTIED as the U.S.-based "parent" of INA; and, (c) ACE USA Group is substituted for ACE LIMITED.

The fact that ACE LIMITED is the "Ultimate Parent" of all "affiliated insurers," including INA, mandates that this Court find ACE LIMITED as both the real party in interest and an indispensible party. As such, ACE LIMITED is not allowed to continue prosecuting the counterclaim in this case because (a) it does not have a Certificate of Authority; (b) is an unauthorized insurer as defined in section 626.901; (c) is prohibited

from instituting, filing, or maintaining a cause of action; and, (d) is not authorized to do insurance business in Florida in violation of the above-referenced administrative, civil and criminal statutes.

It has been found that Florida law should be used in analyzing a corporations' ability to sue and that it is a substantive jurisdictional requirement. The case of *McCollum Aviation, Inc. v. CIM Associates, Inc.*, 438 F. Supp. 245 (S.D. Florida 1977) requires that the court must give precedence to Florida law on a corporation's right to sue over the language of Rule 17(b).

In that case, this Court found that the Florida Statute precluding a corporation from suing in Florida, unless it has obtained the required Certificate of Authority to transact business here, is the standard by which the court must determine a corporate party's ability to sue. Said another way, the explicit language of Rule 17(b) requires the court to use the "law of the state where the corporation was formed" to determine its ability to sue in federal court. In this case, ACE LIMITED is a Swiss corporation. It is also required to maintain a Certificate of Authority under section 624.401 to transact insurance, and an insurance company not authorized by Florida may not maintain a lawsuit in Florida without the required Certificate of Authority pursuant to section 626.903.

As the Court in *McCollum* found, Florida's substantive law on a corporation's ability and right to sue takes precedence over the procedural requirements of Rule 17(b). In *McCollum*, the Court found, "Florida Statute §607.354 is a rule which is highly influential in a person's choice of forum. Moreover, it has a non-litigative purpose of encouraging corporate qualification for the benefit of the state's citizenry. *Ulmer v. First*

18

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

*National Bank of St. Petersburg*, 61 Fla. 460, 55 So.405 (1911)." *Id.*

In this case, the State of Florida has established a very similar Certificate of Authority qualification requirement for insurance companies, also meant to protect the citizens of the state of Florida. Under Florida Statute §624.401, a Certificate of Authority is required to transact the business of insurance. Under Florida Statute §626.903, an unauthorized insurer is unable to prosecute a lawsuit which seeks affirmative relief exactly for the same reasons as set forth in *McCollum*.

As such, without the required Certificate of Authority, ACE LIMITED is unable to maintain a lawsuit which seeks affirmative relief. In the current INA Counterclaim, it is clear that ACE LIMITED is both the real party in interest and indispensible. Without it being able to seek affirmative relief, the Court must dismiss the INA Counterclaim.

## CONCLUSION

ACE LIMITED, the real party in interest and an indispensible party, cannot be joined as a Counter-Plaintiff because it does not have a Certificate of Authority from the State of Florida. Consequently the Court must dismiss INA's counterclaim. *Pit River Home and Agr. Co-op Assoc.* v. *U.S.,* 30 F.3d 1088, 1089 (9th Cir. 1994); and *Ranger Insurance Co. v. United Housing of New Mexico, Inc.*, 488 F.2d 682 (5th Cir. 1974).

PETER HALMOS, pro se
c/o Meyers & Associate, CPA
4540 PGA Blvd., Suite 216
Palm Beach Gardens, FL 33418
Telephone: (561) 249-1712
Facsimile: (561) 249-1709
gail@meyerscpa.com

By: _____

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

### CERTIFICATE OF SERVICE

I certify that the foregoing document is being served this _____4th_____ day of May 2011 on all counsel of record identified on the attached Service List via ~~First Class, U.S. Mail~~, Hand Delivery postage prepaid.

By: _____
　　　Peter Halmos

SERVICE LIST

Kenneth G Engevraud, Esq.

08-10084.oai

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

Case Number:  08-10084-CIV-BROWN

PETER HALMOS, INTERNATIONAL
YACHTING CHARTERS, INC., and HIGH
PLAINS CAPITAL,

        Plaintiffs,

vs.

INSURANCE COMPANY OF NORTH
AMERICA and STRICKLAND MARINE
INSURANCE, INC., (f/k/a STRICKLAND
MARINE AGENCY, INC.),

        Defendants.

_____ /

## ORDER ON INA'S RULE 12(b)(6) MOTION TO
## DISMISS ALL THE INDIVIDUAL CLAIMS OF PETER HALMOS, PRO SE

**This matter** is before this Court on Defendant Insurance Company of North America ("INA")'s Rule 12(b)(6) Motion to Dismiss all the Individual Claims of Peter Halmos, Pro Se (D.E. 708). The Court has considered the Motion, the Response and the Reply, and is otherwise fully advised.

Plaintiffs Peter Halmos ("Halmos"), International Yachting Charters, Inc. ("IYC"), and High Plains Capital ("HPC") (collectively "Plaintiffs") have filed a Fourth Amended Complaint ("FAC"), wherein Plaintiff Halmos raises the following claims against Defendant INA: Breach of Contract (Count 15); Quantum Meruit - NOAA Benefits (Count 16) and Fraud (Count 17).

The claims arise out of incidents surrounding marine insurance policies ("Policies") issued to Halmos's companies, Plaintiffs IYC and HPC by Defendant INA through its parent company, ACE USA Group (referred to collectively as "ACE-INA"), and which covered either the vessel

-1-



"Legacy," or "Island Runner" (IYC) or "Mongoose" (HPC).[1]

## DISCUSSION

INA moves for dismissal of all of Halmos's causes of action, based on failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) and failure to plead the fraud claim with particularity pursuant to Fed.R.Civ.P. 9(b) and to plead all of the necessary elements for a fraud claim.[2]

For purposes of a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations of material fact must be taken as true.  Financial Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282 (11th Cir. 2007).  In order to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a plaintiff must provide "more than labels and conclusions," and the complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).  In Watts v. Florida International University, 495 F.3d 1289 (11th Cir. 2007), the Court summarized the principles established in Twombly as follows:

> The standard is one of "plausible grounds to infer."  The Court has instructed us that the rule "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  It is sufficient if the complaint succeeds in "identifying facts that are suggestive enough to render [the element] plausible."

---

[1] The other named Defendant, Strickland Marine Insurance, Inc. (f/k/a Strickland Marine Agency, Inc.) ("Strickland") is alleged to be an independent insurance broker who procured the Policies at issue.

[2] Because the fraud claim is also the subject of INA's Motion to Abate Plaintiffs' Remaining Extra-Contractual Claims (D.E. 709), Plaintiff argues that the instant motion is moot.  The Court finds that because the claim is barred and subject to dismissal for the reasons discussed infra, the Motion to Abate as to that claim will denied as moot by separate order.

Id. at 1295-96.  As such, a complaint is facially plausible when the plaintiff has pleaded sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Furthermore, "[a] complaint need not specify in detail the precise theory giving rise to recovery.  All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests."  Criswell v. Intellirisk Management Corp., Inc., 286 Fed. Appx. 660, 664 (11th Cir. 2008) (quoting Sams v. United Food & Comm'l Workers Int'l Union, 866 F.2d 1380, 1384 (11th Cir. 1989)).  When it appears that on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate.  D.P. ex rel. E.P. v. School Bd. Of Broward County, 483 F.3d 725, 728-29 (11th Cir. 2007) (quoting Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993)).

### I.  Breach of Contract (Count 15)

In this Count, Plaintiff alleges, *inter alia*, that INA "demanded that Peter Halmos personally 'take all steps necessary' to protect the Legacy and mitigate damages to it and the environment.'" FAC ¶179.  He further alleges that INA was aware of the services being rendered by Halmos, that as a result of his efforts, INA received substantial value, and that Halmos is "entitled to be reimbursed for the reasonable value of his services rendered for INA's benefit."  FAC ¶¶ 181, 183, 186.

INA first argues that Halmos's breach of contract claims have already been dismissed with prejudice.  Although this is correct as to Halmos's claims for breach of the Policies, the instant claim is not based on the Policies.  INA's arguments concerning lack of standing based on third party

beneficiary and officer/shareholder theories are also inapplicable to this count as alleged.

Although Count 15 fails to state a claim for an express or implied-in-fact contract, it does state a claim for quasi contract (otherwise known as unjust enrichment), which exists where "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co., Inc., 695 So. 2d 383, 386 (Fla. 4th DCA 1997).[3]   Accordingly, this Count will not be dismissed

### II.   Quantum Meruit - NOAA Benefits (Count 16)

In this Count, Halmos alleges that he "conferred a benefit on INA by negotiating and personally entering into contracts with NOAA which benefitted INA by allowing INA to avoid having to pay monies to NOAA that would have been due pursuant to the policy provisions"; that "INA knew about and accepted the work done by Halmos and the benefits incurred by his negotiations with NOAA which saved INA $22 Million in fines covered under the subject policy"; and that the "circumstances are such that it would be inequitable for INA to retain the benefit without paying fair value for it and not paying for loss of use and monies." FAC ¶¶ 190-192.

The Court agrees with INA that Halmos has failed to allege all of the elements of a claim for quantum meruit recovery.  However, he has stated a claim in this count for quasi contract, or unjust

---

[3] The Court finds that although Halmos has not specifically alleged element number 4, a reading of the FAC in the light most favorable to Halmos raises an inference of that element which is sufficient to withstand a motion to dismiss.  Furthermore, the Court is aware of INA's argument that the "demand" referenced by Halmos was in actuality INA's "reminding" Halmos of IYC's obligation under the policy to protect the Legacy from further loss, but finds that this argument would more appropriately be addressed by way of a motion for summary judgment.

enrichment, as described above.  Because Halmos has only misidentified the theory under which he

is proceeding in this count, and INA has adequate notice of the grounds on which Halmos is

proceeding, it will not be dismissed.  See Hull & Co., Inc. v. Thomas, 834 So. 2d 904, 906-07 (4th

DCA 2003); see also Commerce Partnership 8098 Ltd. Partnership, 695 So. 2d at 385-388 (noting

the lack of clarity in court decisions concerning the theories of quasi contract and quantum meruit).

### III.  Fraud (Count 17)

The elements of a claim for fraudulent misrepresentation under Florida law are:

1. A false statement or misrepresentation of a material fact;
2. The representor's knowledge at the time the statement is made that such statement is false;
3. Such intended misrepresentation was intended to induce another to act in reliance thereon;
4. Action in justifiable reliance on the representation; and
5. Resulting damage or injury to the party so acting.

Thor Bear, Inc. v. Crocker Mizner Park, Inc., 648 So. 2d 168, 172 (Fla. 4th DCA 1994) (citing

Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985)).  Rule 9(b) of the Federal Rules of Civil

Procedure requires that fraud be pled with particularity.

The Court finds that in this Fourth Amended Complaint, Halmos still fails to state a

cognizable cause of action for fraud.  Plaintiff alleges the "misrepresentation" to be as follows: "[In

November 2005,] Pennekamp made a material representation to Halmos that INA would take care

of the NOAA issue and for him not to worry as it would be covered by the policy, as he would be

the "manager of operations."  FAC ¶195.  As INA notes, when viewed in light of the allegations

incorporated by reference into this count (¶¶72-82), the "NOAA issue" could be read to mean either

(1) obtaining the required permit; (2) the $22 million natural resource damage claim against IYC;

or (3) the $22 million fine against Halmos.

If the "issue" is the natural resource damage claim, Halmos has not alleged that INA intended

him personally to rely on the representation that such damages would be covered by the policy. Indeed, the facts do not allege that Halmos in his individual capacity took any actions in reliance on such a representation. Rather, it appears that real "issue" Halmos is complaining about (and which caused him to incur expenses) was the fine which Pennekamp negotiated with NOAA. However, Halmos alleges in the FAC that Pennekamp told him that "the INA policy excludes fines from NOAA" (¶ 75), so to the extent Halmos attempts to allege in Count 17 that Pennekamp represented that INA would cover that fine, he alleges the opposite in his general allegations.

The real gist of Halmos's claim seems to be that Pennekamp went "behind his back" to negotiate INA's way out of covering a natural damage claim against IYC. However, Halmos has failed to allege a specific "representation" which INA made to him upon which he relied in that regard. Rather, it appears that Halmos attempts to impose on INA a fiduciary duty towards him personally that INA did not owe. Accordingly, the Court finds that after five attempts, Halmos still has failed to state a cause of action for fraud, and this Count will be dismissed with prejudice.

The Court being otherwise fully advised in the premises, it is hereby **ORDERED AND ADJUDGED** that Defendant Insurance Company of North America ("INA")'s Rule 12(b)(6) Motion to Dismiss all the Individual Claims of Peter Halmos, Pro Se is hereby **DENIED** as to Counts 15 and 16, and **GRANTED** as to Count 17, which is hereby **DISMISSED WITH PREJUDICE.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28 day of July, 2010.

STEPHEN T. BROWN
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:    Counsel of record

-6-

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

### Case Number:  08-10084-CIV-MARTINEZ-BROWN

PETER HALMOS; INTERNATIONAL
YACHTING CHARTERS, INC.; and
HIGH PLAINS CAPITAL,

*Plaintiffs,*

vs.

INSURANCE COMPANY OF NORTH AMERICA
and STRICKLAND MARINE INSURANCE, INC.
(f/k/a STRICKLAND MARINE AGENCY, INC.),

*Defendants.*

_____/

### DEFENDANT INSURANCE COMPANY OF NORTH AMERICA'S
### CERTIFICATE OF INTERESTED PERSONS AND DISCLOSURE STATEMENT

In accordance with Fed. R. Civ. P. 7.1(a) and this Court's October 28, 2008

Order, Defendant Insurance Company of North America provides this Court with this

Certificate of Interested Persons and Disclosure Statement:

1. **Plaintiff**
   Peter Halmos, *pro se*
   1824 Flagler Avenue
   Key West, Florida 33040
   (561) 827-3662

2. **Plaintiff**
   International Yachting Charters, Inc.
   c/o 5725 Corporate Way, Suite 101
   West Palm Beach, Florida  33407

   According to the Plaintiffs, International Yachting Charters, Inc. is a
   corporation incorporated in the Cayman Islands and is a privately held
   corporation that has no parent corporation, and no publicly held
   corporation owns 10% or more of its stock.

1

**EXHIBIT**
B
tabbies

3.  **Plaintiff**
    High Plains Capital

    According to the Plaintiffs, High Plains Capital is a Wyoming
    corporation.

4.  **Attorneys for Plaintiffs International Yachting Charters, Inc. and
    High Plains Capital**
    Hugh J. Morgan
    Law Office of Hugh J. Morgan
    P.O. Box 1117
    Key West, Florida 33041
    (305) 296-5676
    (305) 296-4331 (fax)
    hugh@hjmorganlaw.com

    Jack Spottswood
    Spottswood, Spottswood & Spottswood
    500 Fleming Street
    Key West, Florida 33040
    (305) 294-9556
    (305) 292-1982 (fax)
    jack@spottswood.com

    Thomas A. Campbell, pending pro hac vice
    John F. Easton, pending pro hac vice
    Pillsbury, Winthrop, Shaw, Pittman, L.L.P.
    909 Fannin, Suite 2000
    Houston, Texas 77010
    (713) 276-7676
    (281) 582-6033 (fax)
    tom.campbell@pillsburylaw.com
    john.easton@pillsburylaw.com

5.  **Defendant**
    Insurance Company of North America
    1601 Chestnut Street
    Philadelphia, Pennsylvania 19103
    (800) 222-1755

    Insurance Company of North America is a wholly-owned subsidiary of INA
    Holdings Corporation, which is a wholly-owned subsidiary of INA Financial
    Corporation, which is a wholly-owned subsidiary of INA Corporation, which
    is a wholly-owned subsidiary of ACE INA Holdings Inc.

2

ACE Group Holdings Inc., a wholly-owned subsidiary of ACE Limited, owns 80% of the stock of ACE INA Holdings Inc.  ACE Limited, a publicly traded company organized under the laws of Switzerland, owns 20% of the stock of ACE INA Holdings Inc.

6.    **Defendant**
Strickland Marine Insurance Inc. (*f/k/a* Strickland Marine Agency, Inc.)

According to the Plaintiffs, Strickland Marine Insurance Inc. is a South Carolina corporation with its principal place of business in Charleston, South Carolina.

7.    **Attorneys for Defendant Insurance Company of North America**
Frank J. Sioli
Zascha B. Abbott
Brown Sims, P.C.
Datran One - Suite 908
9100 South Dadeland Boulevard
Miami, Florida 33156
(305) 274-5507
(305) 274-5517 (fax)
fsioli@brownsims.com
zabbott@brownsims.com

Kenneth G. Engerrand, pending pro hac vice
Michael A. Varner, pending pro hac vice
Brown Sims, P.C.
1177 West Loop South, Tenth Floor
Houston, Texas  77027
(713) 629-1580
(713) 629-5027 (fax)
kengerrand@brownsims.com
mvarner@brownsims.com


### CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2009, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is

being served this day on all counsel of record identified on the attached Service List in

3

the manner specified, either via transmission of Notices of Electronic Filing generated

by CM/ECF or in some other authorized manner for those counsel or parties who are

not authorized to receive electronically Notices of Electronic Filing.

**BROWN SIMS, P.C.**

Attorneys for Defendant, Insurance Company of
North America

Datran One - Suite 908
9100 South Dadeland Boulevard
Miami, Florida 33156
Telephone: (305) 274-5507
Facsimile: (305) 274-5517
Email: fsioli@brownsims.com

By: __s/ Frank J. Sioli____
        **FRANK J. SIOLI**
        Florida Bar No. 009652

4

## SERVICE LIST

Hugh J. Morgan
Law Office of Hugh J. Morgan
P.O. Box 1117
Key West, Florida 33041
Telephone:  (305) 296-5676
Facsimile:  (305) 296-4331
hugh@hjmorganlaw.com
(served via CM/ECF)

Jack Spottswood
Spottswood, Spottswood & Spottswood
500 Fleming Street
Key West, Florida 33040
Telephone:  (305) 294-9556
Facsimile:  (305) 292-1982
jack@spottswood.com
(served via U.S. mail, postage-prepaid)

Thomas A. Campbell
John F. Easton
Pillsbury, Winthrop, Shaw, Pittman, L.L.P.
909 Fannin, Suite 2000
Houston, Texas 77010
Telephone: (713) 276-7676
Facsimile:  (281) 582-6033
tom.campbell@pillsburylaw.com
john.easton@pillsburylaw.com
(served via CM/ECF)

Peter Halmos, *pro se*
1824 Flagler Avenue
Key West, Florida 33040
Telephone:  (561) 827-3662
(served via U.S. mail, postage pre-paid)

5

03 08 2006 17:57 FAX 8507558084     ACE ALL CLAIMS     @002



**ace usa**

ACE USA
Routing 1275
One Beaver Valley Road
Wilmington, DE 19803

302-476-7849 tel
302-476-7856 fax

www.ace-usa.com

Joseph E. Smith
VP Property & Marine Claims

March 06, 2006

International Yachting Charter Services, Inc.
c/o Mr. Peter Halmos
5725 Corporate Way
Suite 101
West Palm Beach, Florida 33407

Re:   Insured       :   International Yachting Charter Services, Inc.
      Claim No.     :   796S163381-9
      Policy No.    :   YWR Y06973504
      Date of Loss  :   October 24, 2005

Dear Mr. Halmos:

Pursuant to your request, please allow this to serve as Insurance Company of North America's (hereinafter "ACE") written consent for you, on behalf of the Insured, International Yachting Charter Services, Inc. (hereinafter "IYC"), to enter into the "Salvage Charges Contract for Rotation and Extraction Pursuant to Legacy Salvage Operation" (hereinafter "Agreement") with American Oceanics and Wayne Licina (hereinafter collectively "American Oceanics"). ACE further acknowledges that the Agreement is a salvage contract, the services and undertakings presently contemplated therein constitute salvage and/or are salvage charges as defined in the applicable ACE policy of insurance, namely policy number YWR Y06973504 for the period 8/7/05 through 8/7/06 for which ACE is liable up to the limits set forth in the policy of insurance. Nothing herein is intended to or does change or waive the terms and conditions of the policy of insurance; all rights, claims and defenses are reserved and no waiver is intended or implied.

Sincerely,
INSURANCE COMPANY OF NORTH AMERICA

Joseph E. Smith
VP Property & Marine Claims

JES:ns

One of the ACE Group of Insurance & Reinsurance Companies

Chrono 02-01-2010

PH-IYC-HPC 066636

EXHIBIT

01/05/2007 18:56 FAX 8567556084                ACE APL CLAIMS                                    ☑002

RE:        Vessel:       LEGACY
           Policy No.:   YWR Y06973504
           Insurer:      Insurance Company of North America

## WAIVER OF SUBROGATION

TO WHOM IT MAY CONCERN

In consideration of the execution of the Agreement and Mutual Release (hereafter Agreement), dated January 05, 2007, by and between the "Parties" (as defined in paragraph 1.6 of the Agreement), including but not limited to International Yachting Charters, Inc., and NOAA; the representation made by the "Governmental Entities" (as identified in paragraph 1.7 of the Agreement) that either directly or indirectly, there are no claims, rights, interests or benefits available to the "Governmental Entities" from or under the insurance coverage provided in Policy No. YWR Y06973504 issued by Insurance Company of America on the vessel LEGACY; and that any "Governmental Claims" (as defined in paragraph 1.8 of the Agreement) are and shall be released in accordance with the Agreement, INSURANCE COMPANY OF NORTH AMERICA, herein represents and warrants that it shall not assert or cause to be asserted on its behalf any subrogation claim (equitable or legal) against NOAA or any other "Party" to the Agreement, for any loss, damage, item of expense paid or payable under the Policy No. YWR Y06973504 relating to the "Subject Matter of the Agreement" (as defined in paragraph 1.2 of the Agreement). This "waiver" shall not include nor should it be interpreted to include any existing or potential subrogation claim(s) that INSURANCE COMPANY OF NORTH AMERICA has or may have against entities and individuals other than NOAA and any other "Parties" to the Agreement, including but not limited to American Oceanics (its owners, principals, employees, contractors) and Fas Dam (its owners, principals, employees, contractors).

Dated:     January 05, 2007

INSURANCE COMPANY OF NORTH AMERICA

By _Pamela A. _____  AVP PERSONAL LINES

PAMELA A. HARTINGS-TORREY

EXHIBIT
E