UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 08-10084-CIV-BROWN

PETER HALMOS, INTERNATIONAL
YACHTING CHARTERS, INC., and HIGH
PLAINS CAPITAL,

      Plaintiffs,

v.

INSURANCE COMPANY OF NORTH
AMERICA, et al.,

      Defendants.

_____/

**PLAINTIFF'S BRIEF ON ADMISSIBILITY OF EXPERT REBUTTAL TESTIMONY OF DAVID BYRD**

On June 15, 2011, Chief Magistrate Judge Stephen Brown directed the parties, on the last day of trial, to submit legal memoranda addressed to the following two issues:

1) Do rebuttal experts need to be listed on the pre-trial catalogue in order to be able to testify? and

2) Was the testimony of David Byrd proper rebuttal testimony or should it have been part of plaintiff's case-in-chief?[1]

In response, Plaintiffs respectfully submit:

1.     In light of the unanticipated trial testimony of Mr. Thomas Danti, Mr. David Byrd's testimony is proper rebuttal because:

---

[1] June 15, 2011, Trial Transcript at 62/10-16.

    a.    It is critical to IYC's defense of ACE/INA's ("ACE") counter-claim or to negate ACE's affirmative defenses. Thus, Byrd is technically not a rebuttal witness, but a defense witness to ACE's affirmative claims presented during its case.

    b.    ACE is not prejudiced by the inclusion of Byrd's testimony, as it has been aware of Byrd's professional qualifications and experience with *Legacy* since he was deposed by ACE in May 2010, and ACE had the opportunity to cross-examine him at trial.

2.    Byrd's testimony was proper rebuttal and not required to be presented by IYC in their case-in-chief because Plaintiffs are not required to anticipate and rebut ACE's defenses on the subject of towing and:

    a.    Neither Danti's Curriculum Vitae nor his Summary of Anticipated Testimony suggested that he would offer any testimony on the subject of towing;

    b.    Danti did not disclose during his deposition that his testimony and expert opinion/report would be one addressed to towing. In fact, in his deposition, he assumed that the vessel would move under its own power;[2]

    c.    There is nothing within the general subject of "seamanship" that would suggest an expertise in towing;[3] and

    d.    It would be highly unlikely that anyone could have anticipated that Danti or anyone else would suggest that a 360-ton vessel with an 80,000-pound retractable keel could be towed while dragging the keel across the bottom of the Key West Harbor or any

---

[2] Deposition of Thomas Edward Danti, July 22, 2010 at 37/11-20.

[3] "Seamanship is – obviously, it's a multilayered type of word. It involves the aspects of handling a vessel, procedures that you would follow onboard a vessel, both as crew members, as captain. It involves the laws and regulations pertaining to vessel operations. It pertains to maintenance . . . Its basically the overall word that we use for someone that . . . wants to find a job [at] sea . . . [It] would give them the . . . basic foundation to be able to work in that field." Deposition of Thomas Edward Danti, July 22, 2010 at 8/20-9/10.

2

other body of water that contained rocks, pipes, electric connections, or sensitive vegetative and marine life, especially if partially embedded in the bottom.

## DISCUSSION

### A. Experts Are Not Precluded From Testifying Because They Are Not Listed On A Trial Witness List.

It is well-established that an unlisted witness may testify at trial. *See Clay v. S. Ry. Co.*, 284 F.2d 152, 154 (5th Cir. 1960) (finding no injustice to plaintiff by trial court's refusal to strike unlisted witness's testimony where witness was subject to cross-examination and plaintiff knew of witness' identity before he testified); *Stewart v. Meyers*, 353 F.2d 691 (7th Cir. 1965). Furthermore, the trial court may allow unlisted expert testimony on rebuttal.[4] *See Marx & Co., Inc. v. Diners' Club, Inc.*, 400 F. Supp. 581, 586 (S.D.N.Y. 1975); *Sanchez v. Safeway Stores, Inc.*, 451 F.2d 998, 1000 (10th Cir. 1971). Indeed, the Court's witness disclosure schedule, created pursuant to the broad discretion granted it by Rule 16 of the Federal Rules of Civil Procedure "must be applied with intelligent flexibility, taking into full consideration the exigencies of each situation." *Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971).

In this case, Byrd's rebuttal testimony should not be excluded because ACE knew of his identity more than a year before the trial, had deposed him, and was fully familiar with his skills and areas of expertise.[5] The cited case law supports this conclusion.

---

[4] As an aside, an expert that is retained or specially employed to provide expert testimony must be disclosed pursuant to Rule 26 of the Federal Rules of Civil Procedure. But, this rule is inapplicable, where as here the Rule 26 disclosure "requirement does not apply to fact witnesses even though their involvement in the events in suit, or testimony about those events, may depend on the witness's expertise." *See* 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2031.1 (3d ed. 1998).

[5] The Court will recall that when he was called, INA's counsel, Mr. DeMahy, stipulated to his expertise in the area of towing without requiring any testimony and easily cross-examined him, showing no apparent impediments caused by lack of forewarning.

3

In *Stewart*, a witness, not included on the list of witnesses supplied to plaintiffs in accordance with the pre-trial order, was permitted to testify. *Stewart*, 353 F.2d at 696. The Seventh Circuit affirmed the decision, finding the trial court's ruling caused no substantial injustice because the identity of the witness was known to plaintiffs long before the trial. *Id.* Further, in *Marx*, the district court permitted an unlisted expert witness on rebuttal, finding the testimony appropriate because it directly contradicted the timeline proffered by defendant's contract claim defense. *Marx*, 400 F. Supp. at 586. Indeed, the court there found *one week's* notice to be sufficient to enable defendants to prepare for the witness' testimony, that the testimony was not prejudicial, and that allowing the testimony caused no substantial injustice. *Id.* Here, ACE had one year's notice of Byrd, took Byrd's deposition, and showed no lack of preparedness in cross-examining his rebuttal testimony.

The Fifth Circuit has identified four factors to consider in determining whether to exclude testimony of a witness not listed in a manner complying with a pre-trial order: 1) the reason for failing to name the witness, 2) the importance of the witness' testimony, 3) the opposing party's need for time to prepare for the testimony, and 4) whether a continuance would be useful. *Jochims v. Isuzu Motors, Ltd.*, 144 F.R.D. 350, 353 (S.D. Iowa 1992), *citing Murphy v. Magnolia Elec. Power Ass'n*, 639 F.2d 232, 235 (5th Cir. 1981),[6] *accord Patterson v. F.W. Woolworth Co.*, 786 F.2d 874, 879 (8th Cir. 1986); *Crawford v. NCB, Inc.*, 2001 WL 833715 at *1 (S.D. Fla. May 17, 2001) (Court should consider the *Murphy* factors in deciding whether to exclude testimony when a party has breached its duty under Fed. R. Civ. P. 26(e)).

---

[6] This case is binding on the Eleventh Circuit, as prescribed by *Bonner v. City for Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981).

In *Jochims*, applying the four-factor test, the district judge noted that the plaintiff had first learned of the defendant's extensive testing of a certain type at deposition, and then acted with reasonable diligence in securing its own experts to conduct similar testing. *Id.* The court found a valid reason for the late disclosure because plaintiff had acted in good faith in securing and naming the experts once plaintiff first learned of the need. *Id.* With respect to the second factor, the *Jochims* court found the expert rebuttal testimony was necessary to adequately respond to the specific testing conducted by defendant's experts, and, accordingly, was critical to plaintiff's case. *Id.*

In considering the third factor, the district court ruled that defendant would "obviously" need time to prepare for the testimony of plaintiff's unlisted experts, and allowed for a reasonable period of time for defendant to take their depositions. *Id.* Finally, the court ruled that a continuance was not necessary in this case, as both parties urged against it, and that if defendants designated counter-experts, the matter of a continuance could be revisited. *Id.* at 354. Based on its consideration of these factors, the court permitted plaintiff's experts to testify despite their untimely designation. *Id.*

An application of the factors identified by the Fifth Circuit to the present case demands a similar result:

*1. The reason for failing to name the witness.*

IYC was late in disclosing the identity of Byrd as a rebuttal expert because it did not know what Danti would testify to regarding towing. In a two-page, 10-paragraph, "Summary of Anticipated Testimony," the word "towing" or any derivative of the word never appears. The overwhelming focus of the "Summary," was the deleterious effects of *Legacy* sitting in the water for several years. In fact, this is emphasized by the other nine

5

paragraphs of the Summary, which dwell upon the damaging and deteriorating effects of *Legacy*'s remaining at anchorage in the Key West Harbor as long as she did. Thus, Danti's testimony was clearly that of an "expert" whose opinion addressed the condition of the vessel and not the fact that the vessel could be towed.

At trial, ACE surprised IYC by asking Danti questions that went far beyond his Summary of Anticipated Testimony and deposition testimony. Danti stated that *Legacy*'s keel being down would have no effect on the ability to tow her.[7] His opinion even extended to the fact that dragging an 80,000-pound keel across the sea bottom would cause no harm. Given the Summary's narrowly-described scope of anticipated testimony, as well as Danti's deposition testimony, IYC had no way of anticipating Danti's theory of damage-free, keel-down towing along a sea floor.[8]

Moreover, during his July 22, 2010, deposition, Danti assumed *Legacy*'s keel to be up and that she could operate under her own power while in Key West Harbor.[9] In fact, "towing" was only mentioned once during his deposition, when Danti was informed that *Legacy* had no power. Danti then responded, "obviously, this vessel could have been towed to a harbor for repairs."[10] Nowhere in Mr. Danti's Summary of Anticipated Testimony or July 22, 2010 deposition did ACE give any notice that Mr. Danti would offer testimony regarding and would testify that *Legacy* could be towed out of Key West Harbor with her keel dragging across the sea bottom.[11]

---

[7] Trial Transcript, Tuesday, May 31, 2011 at 23/12-24/15.
[8] Danti felt his Summary of Anticipated Testimony made it clear that he had rendered an opinion on keel-up towing as well as keel-down towing – despite never mentioning the word, "towing," let alone, "keel" in the Summary. Trial Transcript, Tuesday, May 31, 2011 at 57/6-15.
[9] Deposition of Thomas Edward Danti, July 22, 2010 at 40/4-7, 42/6-15.
[10] *Id.*
[11] Additionally, Danti's testimony is on the edge of impropriety. Presumably his testimony was not introduced to indicate that the feat could be accomplished even if the sea bottom was torn up

6

While INA suggests a link between Danti's expertise in opining that a vessel should not sit unattended in the water for a long time without suffering ill necessarily implies and incorporates an expertise in towing, there is no logical connection between the two, any more than an expert in imploding buildings who suggests that debris should be removed after the building collapses, possesses the expertise to opine on the removal of the debris.

Accordingly, IYC did not and could not know to designate Byrd as a rebuttal expert to contradict Danti's testimony until he testified on May 31, 2011. IYC then had to decide how to proceed in light of the unanticipated testimony, settled on using Byrd as a rebuttal witness, and subsequently notified ACE of its intent to call Byrd for rebuttal on the evening of June 14, 2011.

2. *The importance of the witness' testimony.*

Danti's testimony advances ACE's counter-claim theory that *Legacy* was removed from peril prior to IYC's proffered end-of-salvage date and, for that reason, it is critical to IYC's case in defense of the counter-claim that it be permitted an opportunity to present its own expert to refute ACE's contentions, as Danti again did not include that opinion in his Summary or discuss it in his deposition. In his deposition, Danti stated only that he felt *Legacy* was not in peril because she was still floating, not that she should or could have been towed with her keel dragging along the sea floor.[12] There is no

---

and the ship damaged - the clear suggestion was that this was an acceptable technique in towing a 360 ton vessel from point A to point B without damaging it or subjecting oneself to untold liability for environmental harm. Danti had no basis to make such an assertion; he had no knowledge of the legal implications of damaging an environmentally protected area, or if the repair yards to which he suggested *Legacy* could have been towed would have even accepted her, uninsured as she was.

[12] *See* Deposition of Thomas Edward Danti, July 22, 2010 at 36/1-37/4.

7

authority to suggest that Plaintiffs, in their case in chief, should be required to put on evidence to defend against INA's anticipated defense or counter-claim.

*3. The opposing party's need for time to prepare for the testimony.*

The defendant was not prejudiced by Byrd's rebuttal testimony. ACE had knowledge of Byrd's professional qualifications as well as his personal experience with *Legacy*. Byrd was identified as a witness by IYC long ago and ACE deposed Byrd roughly one year before trial began. Accordingly, ACE was not prejudiced by any surprise testimony and should not have a need to designate a new expert to deal with Byrd's testimony on sur-rebuttal, if the defense should desire it.

*4. Whether a continuance would be useful.*

There is and was no need for a continuance. ACE was as prepared as it could be to cross-examine Byrd, ACE had: i) previously retained its own expert; ii) detailed knowledge of Byrd's professional qualifications as well as his personal experience with *Legacy*; iii) deposed Byrd ten months before the trial; iv) heard, and cross-examined, Byrd's testimony during IYC's case-in-chief; and v) cross-examined Byrd on his rebuttal testimony at the time it was proffered on June 15, 2011.

### B. Byrd's Testimony Was Rebuttal.

Byrd's testimony was proper rebuttal or as a defense to ACE's case-in-chief regarding its counter-claim. Rebuttal evidence is generally allowed either to counter new facts presented in the defendant's case-in-chief or to rebut evidence unavailable earlier through no fault of the plaintiff. *Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 764 (5th Cir. 1979);[13] *Rodriguez v. Olin Corp.*, 780 F.2d 491, 496 (5th Cir. 1986) ("[E]vidence is

---

[13] Binding precedent in the Eleventh Circuit. *See* n.6 *supra* at 4.

8

new if . . . the evidence was not fairly presented to the trier of fact before the defendant's case in chief."). The general rule that a party must provide evidence in support of an issue in its case-in-chief does not necessarily apply where the evidence to be presented on rebuttal negates a potential defense, even if the evidence also confirms an affirmative position on which the party seeking to present the evidence bears the burden of proof. *Rodriguez*, 780 F.2d at 496; *Martin v. Weaver*, 666 F.2d 1013, 1020 (6th Cir. 1981). Furthermore, the plaintiff has no duty to anticipate or to negate a defense during its case-in-chief. *Martin*, 666 F.2d at 1020, *accord McAfee v. Murray Ohio Mfg., Inc.*, 2003 WL 21015787 at *7 (5th Cir. 2003) ("[P]urpose of this rule is to allow the plaintiff to present whatever evidence it deems necessary to making its prima facie case without requiring it to anticipate and negate the defendant's case in its own case-in-chief.").

Plaintiffs have never wavered from their position that ACE owes all unpaid salvage charges, specifically, all charges related to the entire process of extricating *Legacy* from her position on the flats in the Great White Heron National Marine Sanctuary and delivering her safely to a repair yard, *i.e.* removing her from peril. To that end, IYC submitted its case-in-chief to the Court and requested salvage costs all the way through *Legacy*'s delivery to Grand Bahama. IYC then rested.

ACE then offered the testimony of Danti during its case-in-chief to advance an affirmative defense, or alternatively, ACE's counterclaim. The testimony of Danti was put on by ACE to, presumably, establish that *Legacy* was actually removed from peril, despite being inoperable, when she was anchored in the Key West Harbor and, accordingly, ACE's duty to pay salvage charges ended at that time. IYC presented no facts regarding the ability to tow *Legacy*, keel-down, from the Key West Harbor, because

9

it was not considered an option due to the legal liability IYC and Peter Halmos would incur for doing so. So, when ACE brought these facts before the Court, they constituted "new facts." Accordingly, IYC had no other option but to refute ACE's position and Danti's testimony in rebuttal, as IYC had already finished presenting its case-in-chief at the time.

## CONCLUSION

The facts of this case militate in favor of allowing David Byrd's rebuttal testimony, as it results in no prejudice or substantial injustice to ACE, should have been anticipated by ACE, was a proper response to ACE's testimony, and the need of which could not have reasonably been anticipated by the plaintiffs. Further, there is no obligation for Plaintiffs to anticipate INA's defense or testimony to support its counterclaim and then "defend" such anticipated assertions in Plaintiffs' case in chief.

Respectfully submitted,

Joseph P. Klock, Jr.  FBN 156678
Juan Carlos Antorcha FBN 0523305
RASCO KLOCK REININGER PEREZ
ESQUENAZI VIGIL & NIETO
283 Catalonia Avenue
Coral Gables, Florida  33134
Telephone: 305.476.7105
Facsimile: 305.675.7707

By: /s/ Joseph P. Klock, Jr.
Joseph P. Klock, Jr.

THE LAW OFFICE OF HUGH J. MORGAN
Hugh J. Morgan
P.O. Box 1117
Key West, Florida 33041
Telephone: (305) 296-5676
Facsimile: (305)296-4331
hugh@hjmorganlaw.com

PETER HALMOS, pro se
c/o Meyers & Associate, C.P.A.
4540 PGA Blvd., Suite 216
Palm Beach Gardens, FL 33418
Telephone: (561) 249-1712
Facsimile: (561) 249-1709
gail@meyerscpa.com

By: _____

## CERTIFICATE OF SERVICE

I hereby certify that on 22nd day of June 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Joseph P. Klock, Jr.

**Service List**

Frank J. Sioli
Zascha B. Abbott
BROWN SIMS P.C.
Datran One - Suite 1609
9100 South Dadeland Boulevard
Miami, Florida 33156
Telephone: (305) 274-5507
Facsimile: (305) 274-551
fsioli@brownsims.com

Scott Bassman
Dara Jebrock
Counsel for Defendant,
Strickland
Cole, Scott & Kissane, P.A.
Dadeland Centre II
9150 S. Dadeland Blvd, Suite 1400
Miami, FL 33156
Facsimile: 305.373.2294
dara.jebrock@csklegal.com
scott.bassman@csklegal.com

Clinton Sawyer Payne
DeMahy Labrador Drake Payne & Cabeza
Alhambra Center – Penthouse
150 Alhambra Circle
Coral Gables, FL 33134
Telephone: (305) 443-4850
Facsimile: (305) 443-5960

Kenneth G. Engerrand
Michael A. Varner
P. Michael Bowdoin
Brown Sims p.c.
1177 West Loop South
Tenth Floor
Houston, Texas 77027-9007
Telephone: (713) 629-1580
Facsimile: (713) 629-5027
kengerrand@brownsims.com
mvarner@brownsims.com

David P. Horan
HORAN, WALLACE & HIGGINS, LLP
608 Whitehead Street
Key West, FL 33040
Telephone: (305) 294-4585
Facsimile: (305) 294-7822
dph@horan-wallace.com