UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

**Case Number:  08-10084-CIV-BROWN**

PETER HALMOS; INTERNATIONAL
YACHTING CHARTERS, INC.; and
HIGH PLAINS CAPITAL,

<em>Plaintiffs,</em>

vs.

INSURANCE COMPANY OF NORTH AMERICA
and STRICKLAND MARINE INSURANCE, INC.
(f/k/a STRICKLAND MARINE AGENCY, INC.),

<em>Defendants.</em>

_____/

**INSURANCE COMPANY OF NORTH AMERICA'S RESPONSE TO
PRO SE PLAINTIFF'S MOTION FOR RELIEF FROM ORDERS DE 1319
AND DE 1344 PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE
60(b)(1), (2), (3), (6) AND MEMORANDUM OF LAW IN SUPPORT**

Insurance Company of North America ("INA") files its Response to Pro Se Plaintiff,

Peter Halmos' Motion for Relief from Orders DE 1319 and DE 1344 Pursuant to Federal Rules

of Civil Procedure 60(b) (1), (2), (3), and (6)  and  Memorandum of Law in Support as follows.

In his Motion for Relief, Peter Halmos seeks: (1) relief from Court Orders rendered on

March 22, 2011 (DE 1319) and May 2, 2011 (DE 1344); and (2) to correct the record regarding a

statement made by the presiding Chief Magistrate Judge during the Bench Trial on May 11, 2011

(Transcript of Bench Trial, volume 7, p. 19, lines 11-14). For the reasons cited herein, INA

requests that the Court deny the relief requested by the Pro Se Plaintiff, Peter Halmos, and grant

INA such other and further relief as this Honorable Court deems just and proper, whether at law,

in equity, or in admiralty.

## FACTUAL BACKGROUND

Plaintiffs first filed their Original Complaint on October 22, 2008. Since the suit was filed, the case has been prosecuted by Plaintiffs for nearly three years and includes over 1,400 docket entries, culminating in a six-week trial ending more than three months ago. In spite of the fact that Plaintiffs have been accorded every opportunity to participate in discovery, adduce evidence and otherwise present their case, Plaintiffs continue to re-litigate this case in contravention of the applicable rules and orders of this Court. As evident from the current filing, Mr. Halmos is again attempting to undermine the judicial process with another legally and factually unsupported and untimely post-trial motion attacking pre-trial orders of the Court.

This Court is acutely aware of the background, development, and ultimate resolution of all of the issues discussed in Plaintiff's latest Motion for Relief, which began on February 14, 2011 with the filing of INA's Motion for Sanctions (DE 1275). At the core of that motion was Plaintiffs' failure to produce in discovery a material document (the March 16, 2005 letter), authored by the Pro Se Plaintiff himself, detailing serious seaworthiness issues concerning Legacy prior to the inception of INA's 2005-2006 insurance policy. This discoverable document was improperly withheld from INA despite specific requests for production of documents of this type. Plaintiffs have proffered myriad excuses for their improper withholding of this document. The Plaintiffs initially responded to INA's Motion for Sanctions on February 17, 2011 by filing DE 1291 asserting that: (1) the March 16, 2005 letter at issue was "subject to a court-decreed protective order, binding plaintiffs, entered by the Palm Beach County Circuit Court" shielding it from production in the instant case (DE 1291, p. 2); (2) "[h]owever, inadvertently and before the protective order was lifted, on July 23, 2006, the document was produced with Bates number HL 000084 in response to a production subpoena directed to Peter Halmos & Sons" (DE 1291, p. 2);

2

(3) that "Plaintiff's were able to find the missing document in the March 2005 box" (DE 1291, p. 3); and finally that (4) INA's counsel "had possession of documents from the litigation in a separate action in which Mr. Halmos counterclaimed identifying each issue enumerated in the letter." (DE 1291, p. 2). This response was filed on February 17, 2011, after Plaintiff's had searched "hundreds of documents to respond to this Court's expedited briefing schedule." (DE 1291, p. 3 n.4).

INA then demonstrated in DE 1303 on February 22, 2011 that the representations made by Plaintiffs were not correct, establishing that: (1)  the letter had only been produced as a result of a third-party subpoena to Christopher Upham and not by the Plaintiffs; (2) the boxes produced by the Plaintiffs did not include a March 2005 box; (3) INA had conducted numerous searches verifying that the document had not been produced by Plaintiffs; (4) the March letter should never have been deemed "confidential" and shielded from disclosure; (5) Plaintiffs were improperly withholding its disclosure by misapplying the state-court order in another case; and (6) the Corness deposition (wherein issues concerning Legacy's condition were discussed) was not relevant to the Sanctions Motion. (*See*  DE 1303).

In response to the evidence offered by INA that the document had not been produced, Plaintiffs filed their Notice of Clarification on February 23, 2011 and represented that "Mr. Kirkpatrick[1] stated that the document was produced as a result of the ISC and PHS[2] third-party production—since the document belongs to PHS and not any of the Plaintiffs. Apparently, after reading INA's reply, it was not." (DE 1305, p. 2). Plaintiffs then stated that "Mr. Halmos believes the document from PHS was either given to INA prior to litigation, or produced during the litigation. . . .  Again, Mr. Halmos is in the process of checking his files." (DE 1305, p. 2

---

[1] Mr. Kirkpatrick assisted Mr. Halmos in the third-party production. (DE 1305, p.1).

[2] ISC and PHS are respectively "Intelligence Services Corporation" and "Peter Halmos & Sons, Inc."

n.1). After seven months of "checking his files," Mr. Halmos now presents a new argument that the document was not physically produced to INA because INA never asked for it. However, the scope of INA's discovery requests encompassed documents such as the withheld March 16, 2005 letter; yet, in contravention of their discovery obligations, the document was never produced by Plaintiffs to INA.

Pursuant to a specific request from this Court, INA responded on March 9, 2011 in DE 1313, stating that: (1) Plaintiffs had never produced the document to INA prior to or during this litigation or in the Sol litigation and (2) the letter was never provided to Pamela Harting-Forkey to document a claim for personal injury by Mr. Halmos. The Court, having considered the evidence, then entered an Order for Sanctions against Plaintiffs on March 22, 2011. (DE 1319). In that order, the Court stated, "The Court finds that this motion addresses a serious matter that has serious consequences." (DE 1319, p. 1). The Court added:

> Ultimately the matter boils down to the following: (1) plaintiffs did not produce a material, relevant document in this litigation that they could have and should have produced long before defendant obtained same; (2) plaintiffs improperly "hid" behind a protective order in a state Court case, claiming it precluded them from said production when, in fact, it did not; and (3) plaintiffs have never disputed the authenticity of the March 16, 2005, letter, the contents of same, or who authored it. Plaintiffs' conduct, if allowed to go unpunished, has effectively prevented defendant from doing any discovery regarding this document and from offering any evidence or testimony with regard to same.

(DE 1319 at pp. 5-6).

Approximately one month later, on April, 25, 2011, Plaintiffs filed DE 1335 wherein they argued that: (1) "there is an issue as to whether the document was required to be produced in the first instance;" (2) the Court should have given Plaintiffs sufficient time to respond to the allegations; and (3) Plaintiffs had produced two "drafts" of the document containing all the

information contained within the March 16, 2005 letter. (DE 1335, p. 3). The next day, Plaintiffs filed a "corrected" motion for relief from DE 1319 asserting further arguments that DE 1319 was wrongly decided. (DE 1337). On May 2, 2011, the Court again rejected Plaintiffs arguments. (DE 1344). The case then proceeded to trial before the Court on May 3, 2011. Trial was concluded on June 15, 2011.

On September 21, 2011, more than three months after the conclusion of the trial, Plaintiffs renewed their Motion for Relief from DE 1319, for the first time seeking relief under Federal Rule of Civil Procedure 60(b) based on their recent discovery of five alleged instances where the March 16, 2005 letter had been "produced" pursuant to Rule 34 at depositions of the Plaintiffs on March 9, 2010, March 10, 2010, July 6, 2010, July 23, 2010, January 25-27, 2011 and February 11, 2011. (DE 1420, p. 5). On September 22, 2011, the Court denied Plaintiffs' motion for relief (DE 1420), finding the Plaintiff's motion "to be without merit." (DE 1421, p. 1).

The instant Motion for Relief filed by the Pro Se Plaintiff (DE 1422), seeks the same relief, is based upon the same factual allegations, and applies the same legal arguments concerning Federal Rule of Civil Procedure 60(b) as were presented in DE 1420. Based on the fact that all of the previous issues raised by the Plaintiff have been weighed and considered by the Court, nothing in this latest Motion for Relief filed by Pro Se Plaintiff changes any of the previous judicial holdings contained in DE 1319, DE 1344 or DE 1421. Therefore, Peter Halmos' Motion for Relief (DE 1422) should be found similarly "without merit." (DE 1421, p. 1).

<u>MEMORANDUM OF LAW</u>

I.   **PLAINTIFF HAS FAILED TO SHOW THAT ANY RELIEF SHOULD BE GRANTED UNDER RULE 60(B)(1), (2), (3) OR (6)**

   A.   **Plaintiff's Rule 60(b)(1) "Mistake"**

In Plaintiff's latest motion for relief (DE 1422, p. 11), Peter Halmos alleges that the Plaintiffs were "surprised and confused" by INA's "series of sanctions motions" (DE 1238, 1243 and 1275) during their trial preparation and in their expedited February 17, 2011 response (DE 1291). As a result, Mr. Halmos asserts that "Plaintiffs (a) accurately and truthfully represented that the March 16, 2005 Letter had been produced pursuant to Rule 34, but (b) mistakenly stated the March 16, 2005 Letter is in the 'March 2005 Box' among the 63 boxes delivered on July 22, 2010." (DE 1422, p. 11-12) (citing DE 1291).

However, notwithstanding the express representations to the Court contained in item (a) above, an examination of DE 1291 reveals that nowhere in DE 1291 do Plaintiffs ever mention: (1) "Rule 34;" (2) "Local Rule 34.1;" (3) that the March letter was made available to INA for copying, but INA failed to do so; or (4) that four copies of the letter were made available to INA pursuant to Rule 34 on January 5, 2009, June 19, 2009, August 7, 2009, November 6, 2009, November 11, 2009, November 12, 2009, March 9, 2010, March 10, 2010, July 6, 2010, July 23, 2010, January 25, 2011, January 26, 2011, January 27, 2011, or February 11, 2011 (as alleged for the first time in DE 1422, p. 2 n. 2). Instead, Plaintiffs claimed:

> [T]he document was produced inadvertently on July 23, 2010, in response to Judge Klein's order requiring third parties, Peter Halmos & Sons and ISC, to produce documents supporting the invoices issued by those companies. They did, and as the Court will recall, the production was done on a month-by-month basis. In the short time allotted by this Court, and in the midst of preparing for trial, Plaintiffs were able to find the "missing document" in the March 2005 box. The document contains the HL 000084 Bates legend.

6

(DE 1291, p. 3) (footnote omitted). It was only after INA responded in DE 1303 and established by clear evidence that Plaintiffs' own discovery inventory did not contain a March Box that the mistaken delivery misrepresentations by Plaintiffs were revealed.

The attempt by Plaintiffs to correct the "mistake" in DE 1305 on February 23, 2011 included the supporting rationale of: (1) Mr. Halmos' unverified, unsupported "belief" that the document was produced but he could not recall the exact details (DE 1305, p. 1); (2) Mr. Kirkpatrick's unsupported, unverified statement that the document was produced as a result of the ISC and PHS third-party production (DE 1305, pp. 1, 2); and (3) Mr. Halmos' unsupported, unverified "belief" that the document was given to INA prior to litigation (DE 1305, p. 2, n. 1). However, notably missing from Plaintiff's clarified response on February 23, 2011 is the assertion made for the first time in the instant Motion that:

> (a) the 63 boxes delivered July 22, 2010, comprised copies of previously produced documents; (b) the documents in the "March 2005 box" are identified in Plaintiffs' March 5, 2010 Amended Answers; (c) the documents in the "March 2005 box" were produced for inspection and copying pursuant to Rule 34 on March 9, 2010 and March 10, 2010; (d) the "March 2005 box" was produced for inspection and copying pursuant to Rule 34 on July 6, 2010; July 23, 2010; January 25, 2011; January 26, 2011; January 27, 2011; and February 11, 2011 . . . .

(DE 1422, p. 12).

In conclusion, it is clear that the "mistake" made by Plaintiffs under Rule 60(b)(1) was two-fold. First, they misrepresented to the Court the fact that the March letter was in the March box delivered to INA on July 22, 2010. Secondly, when making this misrepresentation to the Court, they "overlooked" the fact that since the production concerned documents beginning in October 2005, the March box was not (and could not) be contained in the subject production. As discussed below and contrary to the latest assertions made by the Pro Se Plaintiff, these

misrepresentations to the Court by the Plaintiffs are not the "mistakes" courts have recognized as permissible for relief under Rule 60(b)(1).

Federal Rule of Civil Procedure 60(b) (1) provides that a district court "may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." *United States v. Menendez*, 355 Fed. Appx. 343, 345 (11th Cir. 2009) (citing Fed. R. Civ. P. 60(b) (1)). A party seeking relief on the basis of mistake, inadvertence, or excusable neglect must demonstrate that "(1) it had a meritorious defense that might have affected the outcome, (2) granting the motion would not result in prejudice to the opposing party, and (3) good reason existed for the party's omission." *African Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1202 (11th Cir. 1999); *see also Revere v. McHugh*, 362 Fed. Appx. 993, 999 (11th Cir. 2010). Applying this rule, courts have considered granting a party relief under Rule 60(b) (1) for failure to answer motions and complaints and for failure to adhere to other procedural requirements. *Solaroll Shade and Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1132 (11th Cir.1986) (Eleventh Circuit refused to grant relief under Rule 60(b) for "oversight" of counsel in refusing to respond to a motion); *Valdez v. Feltman (In re Worldwide Web Sys.)*, 328 F.3d 1291, 1296 (11th Cir. 2003) (Eleventh Circuit rejected Rule 60(b)(1) relief for party's failure to attend a hearing); *SEC v. Pitters*, 2011 U.S. Dist. LEXIS 110910, at *16–*17 (S.D. Fla. Sept. 28, 2011) (this Court denied relief under Rule 60(b)(1) for a party that sought to overturn a default judgment on the basis that he did not understand he had a duty to defend the action, he could not afford and attorney, and that he hadn't received certain court orders).

As noted above, in order to be entitled to relief under Rule 60(b), a party must demonstrate that "granting the motion would not result in prejudice to the opposing party."

*African Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1202 (11th Cir. 1999); *see also Revere v. McHugh*, 362 Fed. Appx. 993, 999 (11th Cir. 2010). In his motion, Mr. Halmos did not demonstrate, or even argue, that INA would not be prejudiced if the Court were to grant his Rule 60(b) motion and overturn its prior finding that the contents of the March 15, 2005 letter were irrebuttable. What the Court said in its Order on March 22, 2011 is as true today as it was more than six months ago, Plaintiffs' conduct "has effectively prevented defendant from doing any discovery regarding this document and from offering any evidence or testimony with regard to same." (DE 1319, pp. 5-6). The resultant prejudice to INA from Plaintiffs' default in their discovery obligations is clear.

Additionally, Mr. Halmos has failed to demonstrate the necessary excusable neglect or "exceptional circumstances" necessary to invoke Rule 60(b). *Griffin v. Swim-Tech Corp*., 722 F.2d 677, 680 (11th Cir. 1984). In the Motion for Relief filed by Pro Se Plaintiff, he asserts that the "mistake" by Plaintiffs in representing that the March letter was in the March box and that Plaintiffs and counsel "overlooked" the fact that the copies of the documents in the 63 boxes produced on July 22, 2010 only included boxes labeled "October 2005-October 2008" warrants the remedy provided for in Federal Rule of Civil Procedure 60(b)(1). (DE 1422, p. 12). As legal support for this argument, Plaintiff cites *Pioneer Investment Services Co. v. Brunswick Associates*, 507 U.S. 380, 123 L.Ed. 2d 74, 113 S. Ct. 1389 (1983), holding that relief from an order or judgment is appropriate as a result of "mistake, inadvertence, surprise or excusable neglect." (DE 1422, pp. 12-13). However, *Pioneer* reveals a far different set of circumstances than in the present case. *Pioneer* is a bankruptcy case concerning the late filing of a claim by a creditor's attorney. In *Pioneer*, the court explained that "excusable neglect" under Rule 60(b) (1) "is understood to encompass situations in which the failure to comply with a filing deadline is

attributable to negligence" (*Id.* at 392) and that determination of what type of neglect would be considered "excusable" was an equitable one, taking account of all relevant circumstances surrounding a party's omission (*Id.* at 393). These circumstances included the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the Movant, and whether the Movant acted in good faith (*Id.* at 394). Furthermore, *Pioneer* contains no mention of a "mistake" under Rule 60(b) (1) of the type asserted by the Plaintiff. Applying the facts of the instant case, Mr. Halmos cannot show a good faith reason for the delay or that the neglect was not within the control of the Plaintiffs. All of the facts as to Plaintiffs' production were within the knowledge and control of the Plaintiffs more than six months ago. They knew then what they produced and did not produce. Plaintiffs failed to meet their burden of proof in opposing INA's sanction motion in February 2011, and likewise fail to meet their burden of proof in the instant motion.

## B.   Plaintiff's Rule 60(b)(2) "Newly Discovered Evidence" Concerning Compliance with Rule 34

Federal Rule of Civil Procedure 60(b)(2) provides that the Court may relieve a party from a final judgment, order, or proceeding based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Rule 59(b) further provides: "A motion for new trial must be filed no later than 28 days after the entry of judgment."

The issue regarding the non-production of the March letter made the basis of the latest motion was first raised by INA in its Motion for Sanctions dated February 14, 2011 (DE 1275). However, Plaintiffs' latest excuse, based upon "newly discovered evidence," that Plaintiffs "actually produced' the March 16, 2005 letter at several depositions in this case pursuant to Rule

34, was raised for the first time by Plaintiffs in DE 1420 and DE 1422. These filings come more than 180 days after the date of the Court's Sanction Order rendered on March 22, 2011. In the first place, considering the fact that the depositions all occurred long before the sanctions motion was filed and that the document in issue was within the sole custody and control of Plaintiffs at all pertinent times, there can be no reasonable excuse for Plaintiffs to have delayed for so long in bringing forward this "newly discovered evidence" of Rule 34 compliance. Additionally, there is no mention of this Rule 34 compliance issue in Plaintiffs' first response dated February 17, 2011 (DE 1291), Plaintiff's Clarified Response, dated February 23, 2011 (DE 1305), or Plaintiffs' third attempt at reconsideration of the Court's Order on April 25, 2011 (DE 1335).

Plaintiffs IYC and HPC's Renewed Motion for Relief (DE 1420), filed on September 21, 2011, for the first time, asserted that the March 16, 2005 letter was repeatedly produced to INA by Plaintiffs, pursuant to Rule 34 (b)(2)(B), at the depositions of Plaintiffs, dated March 9, 2010, March 10, 2010, July 6, 2010, July 23, 2010, January 25-27, 2011, and February 11, 2011 (five separate productions) (DE 1420, pp. 4-5). Plaintiffs cite no evidence as support for their argument regarding these attempts at production pursuant to Rule 34 or that the March letter was even among the documents they brought to the depositions that INA allegedly chose not to copy. Furthermore, Plaintiffs' base their assertion that INA knew copies of the letter were in the documents that Plaintiffs brought to the depositions solely on the fact that a broad, all-inclusive range of Bates numbers containing copies of the letter was disclosed to INA by way of interrogatory responses by IYC and HPC dated March 5, 2010. It should be noted that Plaintiffs listed the same 16 categories of Bates numbers, each containing a total of 311,994 pages, in answer to each interrogatory. (*See* Exhibit A, IYC's Amended Answers to Interrogatories dated March 5, 2010). The identical entry was listed irrespective of incident, policy or policy

provision, subject matter of the question, time period, nature of damages, vessel, or claim. In short, an identical listing of the same 311,994 pages of documents was provided for every answer to every question. The fact that Plaintiffs simply refer to 311,994 pages of documents is not equivalent to producing them. These are the same legal and factual arguments and evidentiary support offered by Plaintiff, Peter Halmos, Pro Se, in the instant Motion (DE 1422). Just as this Court held in its Order dated September 22, 2011, the allegations in the current motion are "without merit." (DE 1421, p. 1).

Plaintiffs have offered no competent evidence, by affidavit, verification, or otherwise, concerning these allegations. Despite the fact that the Rule 34 offer of production, inspection and copying was allegedly made at these depositions, nowhere in the record can Plaintiffs point to their offer and the refusal by INA to copy the documents in the boxes brought by Plaintiffs to the depositions. All documents offered to INA by Plaintiffs in discovery were copied by INA. INA did not limit its request for documents[3] nor did INA refuse to copy documents actually produced by Plaintiffs.

The deposition transcripts on March 9 and 10, 2010 demonstrate that Mr. Halmos' assertions are not correct. First, Plaintiff, Peter Halmos, did bring to the deposition on March 10, 2010, 115 boxes of documents, not for production, but to show the jury or Court on the videotape what he had done to prepare for the deposition. On that day, Peter Halmos stated on the record, "No, I would like to have the record show what I had to do to get ready. Please take the camera, or I'll have to come over there and do it, and show what we're talking about. Show the jury."

---

[3] Plaintiff asserts that INA limited its request for documents to PHS to October 2005 to October 2008. (DE 1422) (citing the July 8, 2010 letter from INA's counsel, Exhibit 10 thereto). The specific request in the letter, however, was only directed at a portion of the required subpoena response and did not purport to waive the request for the production of the remaining discoverable documents, which included the March 16, 2005 letter.

"Show the Court." Judge Klein then stated, "Apparently, there are 115 boxes around." (*See* Exhibit B, Depo. of Peter Halmos as Representative of High Plains Capital, March 10, 2010, p. 459: 17-25, p. 460:1-2). Second, it was represented to INA on March 9, 2010 that the 160 boxes of documents brought to the deposition included only those documents which had been previously produced to INA. These included: (1) boxes of documents that Plaintiffs had already produced to INA; (2) every other document INA and Strickland produced to Plaintiffs; (3) documents INA produced to Plaintiffs; and (4) documents produced in response to third-party subpoenas. This is demonstrated by a statement Mr. Antorcha made to explain the contents of the 160 boxes. Mr. Antorcha stated "Second, the boxes that are here are not just boxes we produced to you. Its every other document that you guys produced to us, INA produced to us, and third party subpoenas." (*See* Exhibit C, Depo. of Peter Halmos as Representative of High Plains Capital, March 9, 2010, p. 270:23-25 and p. 271:1-2). Third, the documents were not brought to the deposition to produce to INA. On March 9, 2010, Mr. Halmos brought 160 boxes of documents to his deposition. When counsel for plaintiffs, Mr. Antorcha, was asked by counsel for INA, "Why would you give us that?" Mr. Antorcha replied, "We're not giving it to you at all. We're bringing it." (*See* Exhibit C, Depo. of Peter Halmos as Representative of High Plains Capital, March 9, 2010, p. 271:3-6).

Notwithstanding the assertions made by Peter Halmos, neither the 160 boxes nor the 115 boxes were brought to the depositions on March 9-10, 2010 to give to INA for inspection and copying pursuant to Rule 34. They were simply brought by Plaintiff to "show the jury." Similarly, according to the express assertions made on the record by Mr. Antorcha, the 160 boxes did not contain documents which had not been previously produced to INA as Plaintiffs

now assert. Further, nowhere in the record does Plaintiff offer the production of documents at any deposition much less show that such an offer of production was refused.

In arguing that this Honorable Court should overturn its previous rulings, Plaintiff has cited *Western Helicopter Service, Inc. v. Roberson Aircraft Corp.*, 777 F. Supp. 1543 (D. Ore. 1991). In examining the rule governing the application of Rules 59(b) and 60(b)(2) of the Federal Rules of Civil Procedure to newly discovered evidence, the *Western* court stated:

> A party may obtain relief from summary judgment based on newly discovered evidence under Rules 59(b) and 60(b)(2) of the Federal Rules of Civil Procedure. In order to obtain relief, the movant must show that the evidence (1) existed at the time of the summary judgment motion, "(2) could not have been discovered through due diligence, and (3) was 'of such magnitude that production of it earlier would have been likely to change the disposition of the case.'"

*Id.* at 1545 (quoting *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (quoting *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987))).

While the courts in *Western* and *Jones* did find that the Plaintiff met its burden on all three prongs of this test, both quoted *Coastal Transfer* as the source for the rule. In *Coastal Transfer*, the plaintiff made local deliveries for a motor sales company. After becoming dissatisfied with plaintiff's services, the company hired another carrier. Plaintiff brought suit against defendants, including the company, the company's dealers, and the new carrier, alleging violations of the Sherman Act. After dismissing the suit against the dealers, the district court granted summary judgment to the other defendants. Plaintiff then filed a motion to set aside the judgment, asserting grounds of newly discovered evidence and a mistake by plaintiff's own expert. The district court denied both motions and imposed sanctions. On appeal, the court affirmed, holding that plaintiff had possessed the information upon which plaintiff's expert based an opinion since the start of litigation; plaintiff failed to exercise due diligence in discovering the

14

expert's mistake; and plaintiff had not shown how the expert's new testimony could alter the result.  Sanctions were upheld because there was no basis in law or fact for the action.

Specifically, the court stated:

> After a hearing, the district court denied Coastal's motion for a new trial and imposed sanctions on Coastal and its counsel under Fed. R. Civ. P. 11 and 28 U.S.C. §1927.  The court reasoned, first, that "the revised testimony of [Coastal's] retained expert . . . does not appear to be 'new' evidence within the meaning of Rule 59 [because] Coastal Transfer has possessed the information upon which Walters bases his opinion since before defendants moved for summary judgment."  Second, the court stated that Coastal had failed to exercise the requisite due diligence in attempting to discover Walters' mistake.  Third, Coastal had not shown how Walters' testimony could alter the result in the action.  The court ordered that Coastal and its two law firms pay defendants' attorneys' fees in the amount of $5,000.00.
>
> By any measuring rod, this appeal is frivolous.  In well reasoned and well written dispositions, two district court judges pointed out to Coastal the defects in its approach.  Whether we limit our review to the appeal from the denial of the Rule 59 and 60 motions as we must or whether as Coastal urges we reverse denial of those motions and reach the merits, the result is the same.  There is *no* basis in law or fact for this action.

*Coastal*, 833 F.2d at 210-11 (emphasis in original).

Applying the test cited above in *Coastal Transfer* to the present motion, it is clear that not only was the March 16, 2005 letter made the subject of the sanction in the possession of Plaintiff since before the start of the litigation, but the "newly discovered evidence" concerning the letter's alleged production was within the knowledge of the Plaintiff since at least the first date upon which the Rule 34 production is claimed to have occurred, January 5, 2009.  (DE 1422, p. 2 n 2.) Therefore, as the court held in *Coastal*, there is "no basis in law or fact" for Plaintiff's motion.

C.    **Plaintiff's Claim Concerning "ACE et al.'s Rule 60(b) (3) Planned and Carefully Executed Scheme"**

Peter Halmos asserts that INA (referred to as ACE, et al.) engaged in a planned and carefully executed scheme to mislead the Court that the Plaintiffs had not produced the March 16, 2005 letter. This scheme allegedly involved the omission of certain facts in affidavits concerning the search efforts employed to verify that Plaintiffs did not produce the March letter. Mr. Halmos alleges that the search efforts employed by INA's counsel and independent contractor were limited to the documents INA "chose to copy."

This allegation is without merit and unsupported by any competent affidavit, document or evidence of any kind.  In fact, as evidence of this allegation, the Plaintiff states that the Court's decisions (in DE 1319 and 1344) are not so much based on the content of the withheld document, but on the success of INA's Rule 60(b)(3) planned scheme to improperly influence the Court by filing a series of motions for contempt and sanctions (see DE 1422, pp. 17-18). Plaintiff further states that the success of INA's scheme is demonstrated by the Court's conclusion that Plaintiffs are "all about the litigation journey," as opposed to timely resolution of the case (see DE 1422, p. 18, citing DE 1235 and DE 1364). Lastly, Plaintiff argues that the Court, without having even gone through the document in any great detail, and without allowing the Plaintiffs an evidentiary hearing, granted DE 1275. Mr. Halmos' allegations, while purportedly directed at INA, are essentially targeted at the Court for not giving credence to the ever-changing excuses proffered by the Plaintiffs to explain their discovery defaults. However, the Court properly considered the evidence and arguments and the Court's ruling was amply supported by law and evidence, both then and now.

Plaintiff has cited several cases supporting the proposition that the misrepresentations by counsel create the need for a remedy under Federal Rule 60(b)(3).  In *Johnson v. Law Offices of*

*Marshal C. Watson, PA*, 348 Fed. Appx. 447 (11th Cir. 2009), the plaintiffs made a claim that the defendants conspired with a Florida state court Judge. The Court stated that to prove fraud on the Court under Rule 60(b)(3) the plaintiff must show by clear and convincing evidence an unconscionable plan designed to improperly influence the court in its decision. *Johnson*, 348 Fed. Appx. at 449. Similarly, in *Bulloch v. United States*, 763 F.2d 1115 (10th Cir. 1985) the Court reiterated the clear and convincing standard for fraud upon the court under Rule 60(b)(3). Furthermore, fraud upon the court is fraud directed to the judicial machinery itself and is not fraud between the parties, or fraudulent documents, false standards or perjury. It is fraud where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function, where the impartial functions of the court have been directly corrupted. *Bulloch*, 763 F.2d at 1120. These cases simply have no application with respect to the pending motion, which addresses the proper consideration given by the Court to all of the evidence and argument. Lastly, Plaintiffs cite to *Kenner v. Commissioner of Internal Revenue*, 387 F.2d 689 (7th Cir. 1968) wherein the Court stated that "'Fraud upon the court' should, we believe, embrace only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudicating cases that are presented for adjudication." *Kenner*, 387 F.2d at 691 (quoting 7 Moore's Federal Practice, 2d ed., p. 512 ¶ 60.23). There has been no presentation of clear and convincing evidence in the present case of improper conduct that has corrupted the judicial function of this Court. The simple fact is that Plaintiffs never produced the March 16, 2005 letter, which was a material document. Plaintiffs' failure to produce this document was the culmination of a pattern of discovery abuses by Plaintiffs, and that conduct was properly sanctioned by the Court.

II.     **PRO SE PLAINTIFF, PETER HALMOS' LACK OF STANDING TO REQUEST RELIEF FROM DE 1319 AND DE 1344 PURSUANT TO FRCP 60(B)(1), (2), (3), AND (6)**

Pursuant to the Court's Order on INA's Motion for Summary Judgment (DE 1237) dated January 18, 2011, the only remaining claims the Pro Se Plaintiff retained that proceeded to trial are Counts 15 and 16 in Plaintiff's Fourth Amended Complaint (DE 688). In Count 15, paragraph 179, the Pro Se Plaintiff alleges that INA "demanded that Peter Halmos personally 'take all steps necessary' to protect the Legacy and mitigate damages to it and the environment." Secondly, the Court ruled that Count 16, Quantum Meruit – NOAA Benefits, contained in paragraphs 189-192 (DE 688), wherein Peter Halmos claimed that he negotiated and personally entered into contracts with NOAA to the benefit of INA, could proceed to trial.

An examination of the March 16, 2005 letter, however, reveals that the core issues contained in DE 1422 have no bearing on Mr. Halmos' claims of unjust enrichment or quantum meruit. The content of the letter concerns pre-acceptance construction defects that caused Legacy not to be "fit for use." (*See* Exhibit D, letter of March 16, 2005, p. 9). The letter details problems that include: (1) defects in the fresh air system; (2) problems with the fairing compound; (3) problems with the teak deck; (4) problems with the Halon system; (5) problems with the sailing system; and (6) problems with the bilges. However, Legacy is owned by International Yachting Charters, Inc. (DE 688, ¶11). Mr. Halmos is not a party to the insurance contract and has no contractual claim that could be affected by the March 16 letter. None of these conditions impact, either directly or indirectly, the two equitable claims by Peter Halmos to recover amounts expended by Peter Halmos & Sons for which INA allegedly benefited (DE 688, ¶¶184, 185) or for benefits allegedly received by INA under contracts with NOAA (DE 688, ¶190). Consequently, Mr. Halmos has no standing to complain of the provisions of DE 1319 preventing the admission of evidence contradicting the condition of the Legacy.

III.   **PLAINTIFF, PETER HALMOS' REQUEST TO CORRECT THE RECORD REGARDING A STATEMENT MADE DURING THE TRIAL BY THE CHIEF MAGISTRATE JUDGE**

Mr. Halmos, has requested that the Court "correct" the trial record in this case by striking the following quote by the Chief Magistrate Judge: "It doesn't matter because they are trying, unsuccessfully, to attempt, once again, to mitigate something with total disregard for the fact that they FLAT OUT LIED TO THE COURT." (DE 1422) (quoting Transcript of Bench Trial – Vol. 7 (May 11, 2011), p. 19:11-14) (emphasis provided in DE 1422). However, Mr. Halmos provides neither factual nor legal support for the extraordinary remedy of striking a statement from the record made by the presiding judge during trial.

Plaintiff's request should be denied for several reasons. First, Plaintiff made no objection to the statement during trial. At the time the statement was made in his presence, Mr. Halmos was fully aware that he disagreed with the statement by the Judge, and he had the opportunity to present to the Judge all of the arguments he now asserts. His failure to present any objection or evidence at the time the statement was made, or during the remaining 34 days before the close of evidence, waives his objection. Second, the case was tried to the Court, not to a jury, and as such, the statement could not be prejudicial to another trier of fact. Finally, for the reasons set forth in this response (pp. 6-7), the statement of the Chief Magistrate Judge was and is fully supported by the evidence presented to the Court.

## RELIEF REQUESTED

WHEREFORE, Defendant, INA, respectfully requests that the Court: 1) deny Pro Se Plaintiff's Motion for Relief from Orders DE 1319 and DE 1344 Pursuant to Federal Rules of Civil Procedure 60(b)(1), (2), (3), (6);  2) deny Pro Se Plaintiff's request to correct the record; and 3)  award INA any and all other relief to which it is justly entitled, whether at law, in equity or in admiralty.

Respectfully submitted,

BROWN SIMS, P.C.


By: /s/ Frank J. Sioli
     Frank J. Sioli
     Florida Bar No. 009652
     Datran Two – Suite 1609
     9100 South Dadeland Boulevard
     Miami, Florida 33156
     Telephone: 305.274-5507
     Facsimile 305.274-5517

*Attorneys for Defendant, Insurance Company of North America*

OF COUNSEL:

Kenneth G. Engerrand
P. Michael Bowdoin
Robert M. Browning
Michael A. Varner
BROWN SIMS, P.C.
1177 West Loop South, Tenth Floor
Houston, Texas 77027
Telephone: 713.629-1580
Facsimile: 713-629-5027


## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**SERVICE LIST**

Mr. Hugh J. Morgan
Law Office of Hugh J. Morgan
317 Whitehead Street
Key West, Florida 33040
Telephone: 305.296-5676
Facsimile: 305.296-4331
hugh@hjmorganlaw.com
(via CM/ECF)


 C. Wade Bowden
Jones Foster Johnston & Stubbs, P.A.
505 S. Flagler Dr., Suite 1100
P.O. Box 3475
W. Palm Beach, FL 33402-3475
Telephone:  561-650-0406
Facsimile:  561-650-0430
rvargas@jones-foster.com
wbowden@jones-foster.com
(via CM/ECF)



Brenton N. Ver Ploeg, Esq.
Stephen A. Marino, Jr., Esq.
Ver Ploeg & Lumpkin, P.A.
100 S.E. 2nd Street
30th Floor
Miami, FL 33131
Telephone:  305-577-3996
Facsimile:  305-577-3558
bverploeg@vpl-law.com
smarino@vpl-law.com
(via CM/ECF)


Peter Halmos, *Pro Se*
c/o Meyers & Associates, C.P.A.
4540 PGA Blvd, Suite 216
Palm Beach Gardens, FL 33418
(via Certified Mail, return receipt requested &
via U.S. Mail, postage pre-paid)

Mr. Clinton S. Payne
Mr. Pete L. DeMahy
DeMahy Labrador Drake Payne & Cabeza
150 Alhambra Circle - Penthouse
Coral Gables, Florida 33134
Telephone: 305.443-4850
Facsimile: 305.443-5960
cpayne@dldlawyers.com
pdemahy@dldlawyers.com
(via CM/ECF)


Mr. David Paul Horan
Horan, Wallace & Higgins, LLP
608 Whitehead Street
Key West, Florida 33040
Telephone: 305.294-4585
Facsimile: 305.294-7822
dph@horan-wallace.com
(via CM/ECF)


Mr. Joseph P. Klock, Esq.
Mr. Juan Carlos Antorcha, Esq.
Rasco Klock Reininger Perez Esquenazi Vigil
& Nieto
283 Catalonia Avenue
Second Floor
Coral Gables, FL 33134
(305) 476-7100
(305) 476-7102
jklock@rascoklock.com
jantorcha@rascoklock.com
(via CM/ECF)