UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION
Case Number: 08-10084-CIV-MARTINEZ-BROWN

PETER HALMOS, *et al.*

*Plaintiffs*,

vs.

INSURANCE COMPANY OF NORTH AMERICA, *et al.*

*Defendants*.

_____/

**INSURANCE COMPANY OF NORTH AMERICA'S
MOTION FOR SANCTIONS**

Pursuant to the Court's inherent powers and Federal Rules of Civil Procedure 11 and 54, Defendant Insurance Company of North America ("INA") files this Motion for Sanctions as follows:

**I. INTRODUCTION**

This litigation was filed on October 22, 2008 (D.E. 1). Plaintiffs' pleadings and litigation tactics demonstrate that Plaintiffs engaged in fraudulent and bad faith conduct since the outset of litigation. For more than three years, INA has incurred millions of dollars in attorneys' fees and costs to uncover Plaintiffs' extensive fraud, to defend itself against Plaintiffs' frivolous pleadings, to secure responses to INA's reasonable discovery requests, and to prepare this case for trial settings and evidentiary hearings which Plaintiffs intentionally attempted to avoid.

Plaintiffs' conduct, including the perpetration of fraud, was the sole reason why these attorneys' fees and expenses were incurred. In fact, had Plaintiffs acted fairly and honestly, this litigation would have been avoided in its entirety. For the reasons discussed in greater detail herein, INA requests that this Court award INA its attorneys' fees and costs in this matter as a sanction against Plaintiffs.

## II. ARGUMENT AND AUTHORITIES

Due to Plaintiffs' fraud and the repeated bad faith and dilatory conduct that supported the fraud, INA requests that its attorneys' fees and costs expended in this litigation be awarded as an appropriate sanction. The Court may award the requested attorneys' fees and/or costs under at least two separate avenues: (1) the bad faith exception to the American Rule, which is also known as the court's "inherent" power; and (2) Fed. R. Civ. P. 11. The court's right to award attorneys' fees and costs under each of these two avenues is discussed in turn.

### A. Attorneys' Fees and Costs Should Be Awarded Pursuant to the Court's Inherent Power

The Court should award INA attorneys' fees pursuant to its inherent powers, as discussed in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Throughout this litigation Plaintiffs have engaged in a campaign of fraud and bad faith that was perpetrated and supported by delay and dilatory tactics as well as disrespect and contempt for this Court when the Court responded to Plaintiffs' contumacious conduct. Plaintiffs' actions have resulted in extensive damages to INA, but INA was not Plaintiffs' only target. Plaintiffs' conduct was also aimed at tarnishing the reputation of the Court and the legal system in general (attacking not only the Court, but also lawyers and law firms).

A federal court, acting under its inherent power, can assess attorneys' fees if a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). This power derives from the courts need "to manage its own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43. This power is broad, as the "inherent power of a court can be invoked even if procedural rules exist which sanction the

same conduct." *Id.* at 58. In other words, "[even though] the other mechanisms [reach] only certain individuals or conduct, the inherent power extends to a full range of litigation abuses."

The Eleventh Circuit has held that "the key to unlocking a court's inherent power is a finding of bad faith." *Id.* (citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)). Bad faith is present "if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,'" or if "a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'" *Chambers*, 501 U.S. at 46 (quoting *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575 (1946) and *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1970)). In determining what will constitute bad faith, "the inquiry will focus primarily on the conduct and motive of the party, rather than on the validity of the case." *See Rothenberg v. Security Management Co., Inc.*, 736 F.2d 1470, 1472 (11th Cir. 1984). Plaintiffs' conduct in this litigation rises to the level of "bad faith."

1.   Plaintiffs' Fraud Constitutes "Bad Faith"

Bad faith exists if a fraud has been perpetrated upon the Court. *Chambers*, 501 U.S. at 46 (quoting *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575 (1946) and *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1970)); *Qantum Communs. Corp. v. Star Broad., Inc.*, 290 Fed. Appx. 324 (11th Cir. Fla. 2008) (court affirmed district courts award of attorney's fees pursuant to the court's inherent authority because party had "lied under oath about a central issue in the case, withheld discovery about the issue of bad faith, and filed a bankruptcy petition in a bad-faith effort to delay the proceedings")". Such is the case here.

This Court determined that Plaintiffs committed fraud. (D.E. 1431-1, ¶¶ 37-41). Plaintiffs' fraud and bad faith permeate every claim on which INA made payment. This Court found that IYC "misrepresented the condition and value of the *Island Runner* prior to the loss"

and failed to disclose serious mechanical issues which would have dramatically reduced the vessel's value, all the while claiming that the vessel was "one sweet boat," and that the vessel "was in great/pristine condition, and had a value exceeding $200,000.00." (D.E. 1431, ¶ 38 and D.E. 1431-1, ¶ 39). Significant fraud was also committed by HPC related to the submission of the *Mongoose* claim as the Court found that "Halmos knowingly misrepresented the nature of Merritt's estimate." (Id., FF ¶ 73). (D.E. 1431-1, ¶¶ 52-60). Finally, IYC committed fraud by failing to disclose the March 16, 2005 letter and the 2006 Perini Navi survey, misrepresenting various law firm invoices, and fabricating the Merideth Law Firm invoices. (D.E. 1431-1, ¶¶ 91-100).

Uncovering these instances of fraud required significant legal work and expense which would not have been necessary had these failures to disclose and misrepresentations by Plaintiffs not occurred. It would be inequitable for INA to have to pay the cost for uncovering Plaintiffs' fraud. Therefore, since Plaintiffs' bad faith has been established, INA requests that it be awarded its attorneys' fees and costs related to uncovering this fraud.

2. Asserting Frivolous Claims Constitutes "Bad Faith"

Filing false and frivolous pleadings can result in an award of attorneys' fees and costs pursuant to the Court's inherent authority. *Chambers*, 501 U.S. at 50-51 (the filing of false and frivolous pleadings throughout the litigation constituted bad faith and justified sanctions under the Court's inherent powers); *Wachovia Bank v. Tien*, 406 Fed. Appx. 378, 383 (11th Cir. 2010) (court upheld district court's decision to award $3.4 million in sanctions because the plaintiff "falsified corporate documents" and because "plaintiff asserted a frivolous claim of joint ownership," which he pursued for four years); *Maid of the Mist Corp. v. Alcatraz Media, LLC*, Nos. 10-11758, 10-11981, 10-12515, 10-12516, 2011 U.S. App. LEXIS 22250, *3–6 (11th Cir.

Oct. 31, 2011) (court upheld district court's award of attorney's fees pursuant to its inherent authority because it found that dozens of party's filed motions were "totally frivolous" and "filed in bad faith."); *White v. Brenner*, No. 6:10-cv-134-Orl-28GJK, 2011 U.S. Dist. LEXIS 114957 (M.D. Fla. Aug. 30, 2011) (court awarded attorney's fees and costs under its inherent authority because plaintiff made allegation in complaint that he knew to be false). Plaintiffs filed such frivolous claims here.

As an initial matter, Plaintiffs' claims were almost entirely premised upon fraud. (D.E. 1431, CL ¶¶ 91-99). This is frivolous as a matter of law. *Chambers*, 501 U.S. at 46.

To the extent that any further discussion is warranted, Plaintiffs also filed a RICO claim. (D.E. 339, ¶¶ 341-366 and D.E. 505, ¶¶ 307-332). Only when faced with INA's Motion to Dismiss did Plaintiffs withdraw the claim. (*Compare* D.E. 339, ¶¶ 341-366 and D.E. 505, ¶¶ 307-332 *with* D.E. 688); *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1330–31 (11th Cir. 1998) ("Florida courts consistently have held that defendants are entitled to fees under [Fla. Stat.]section 772.104 where civil RICO counts were dismissed with prejudice or a verdict was directed in the defendant's favor.").

Plaintiffs also filed a claim seeking remediation damages. (D.E. 688, ¶¶ 72-73). Such a claim was barred by the release in favor of IYC and Halmos. (D.E. 1431, CL ¶ 104). Even if such a claim survived, Plaintiffs never presented any evidence demonstrating any demand by NOAA requiring remediation or that any amounts were due in excess of what INA already paid. (D.E. 1431, FF ¶ 93, CL ¶ 105).

Fighting these frivolous claims (and others), required significant legal work and expense which would not have been necessary had these claims not been made. INA requests that this

Court exercise its inherent powers and require Plaintiffs to bear the cost associated with the filing of these claims.

    3.    <u>Plaintiffs' Fraud Was Committed with Concealment and Falsification of Documents that Constitute "Bad Faith"</u>

Plaintiffs' submission of falsified records, misrepresentation of evidence, and concealment of documents to commit and cover up their fraud is sanctionable bad faith. *See Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 919 (11th Cir. 1982) (court found it had authority to award attorney's fees against counsel who willfully disobeyed a court order); *Vargas v. Peltz*, 901 F. Supp 1572, 1573–1578 (S.D. Fla. 1995) (court awarded sanctions and dismissed plaintiff's case under its inherent authority because plaintiff manufactured physical evidence and offered false testimony to support their claim of sexual harassment); *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378 (S.D.N.Y. 2010) (party held to be in bad faith by failing to preserve critical computer logs); *Wolters Kluwer Fin. Servs. v. Scivantage*, 525 F. Supp. 2d 448,542 (S.D.N.Y. 2007) (party found to have acted in bad faith because he created false employment records); *Wiginton v. CB Richard Ellis*, No. 02 C 6832, 2003 U.S. Dist. LEXIS 19128, at *24–25 (N.D. Ill. Oct. 24, 2003) (court found that party acted in bad faith by concealing/destroying relevant documents); *Pope v. Federal Express Corporation*, 138 F.R.D. 675 (W.D. Mo. 1990), aff'd in relevant part, 974 F.2d 982 (8th Cir. 1992) (plaintiff found to be in bad faith in a sexual harassment case for manufacturing note, allegedly from her supervisor, containing improper remarks from supervisor). This case is replete with Plaintiffs' continuing acts of bad faith.

In this litigation, Plaintiffs concealed material documents. (D.E. 1431, CL ¶¶ 93-95). It is well documented that Plaintiffs wrongfully withheld and concealed the material March 16, 2005

correspondence as well as the 2006 Perini Navi survey. (D.E. 1431, FF ¶¶ 84 fn. 13, FF ¶¶ 109-111, CL ¶¶ 93-95). Plaintiffs also admit that they failed to preserve the *S/Y Legacy's* computer logs. (Exhibit "1," ¶¶ 5-11). Plaintiffs also concealed the $16,000 Robert Nailon remediation estimate (Exhibit "2," Robert Nailon Deposition (May 11, 2010), p. 51:9-52:6) while contemporaneously asserting such a claim against INA for $25,000,0000 in remediation damages. (D.E. 688," ¶¶72-73).

Plaintiffs also fabricated documents in this litigation. (D.E. 1431, CL ¶¶ 98). The Meredith Law Firm invoices were fabricated. (D.E. 1431, FF ¶¶ 148-153). The ISC and PHS invoices were also not based upon any meaningful or quantifiable basis. (D.E. 1431, FF ¶¶ 131-32). Each of these invoices were also presented to INA for reimbursement and made part of this claim until such time as INA discovered Plaintiffs' fraud. (D.E. 1431, FF ¶¶ 131-33, 148-153). Only then did Plaintiffs attempt to withdraw the reimbursement request and those claims from this litigation. (D.E. 1431, FF ¶¶ 153).

Plaintiffs also made repeated misrepresentations with respect to the documents in this case. Plaintiffs misrepresented that all of the Pillsbury legal invoices were related to the Hurricane Wilma incident in order to induce INA to issue payments. At trial, it was revealed that many of the Pillsbury legal invoices were actually related to many other distinct legal matters which were wholly unrelated to the Hurricane Wilma salvage efforts. (D.E. 1431, FF ¶¶ 137). Plaintiffs also misrepresented that the Merideth Law Firm invoices were for "Legal and Legal Support Services" related to salvage and protection against loss of the *S/Y Legacy* due to Hurricane Wilma. (D.E. 1431, CL ¶¶ 97). In fact, the Court found that these invoices and Plaintiffs' associated representations, established that Plaintiffs were engaged in the unauthorized practice of law in contravention of the laws of the State of Florida and the District

of Columbia. With respect to the *Mongoose*, the Court found that "Halmos knowingly misrepresented the nature of Merritt's estimate." (*Id.*, FF ¶ 73). Plaintiffs also repeatedly refused to provide documentary support for claims, while at the same time testifying that the documentary support existed "in the boxes."

These examples of document concealment, illegality, fraud, and misrepresentation are the types of transgressions that warrant the imposition of sanctions by this Court. INA respectfully requests that it be awarded its attorneys' fees and costs related to uncovering and responding to these transgressions in the ongoing fraud on INA and this Court.

4.  Attacks Upon the Court Constitute "Bad Faith"

When this Court responded to the acts of bad faith by Plaintiffs, the Plaintiffs lashed out at the Court in an effort to distract attention from their own conduct. This Court has ample power to protect the integrity of the Court and the litigation process. *Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1317-21 (11th Cir. 2002) (upholding sanctions against an attorney for attacking the court and opposing counsel's character); *Maus v. Ennis*, No. 6:10-cv-1904-Orl-31DAB, 2011 U.S. Dist. LEXIS 100429, at *6-8 (M.D. Fla. Aug. 17, 2011) (party found to have acted in bad faith because it "adopted a posture or rudeness and disrespect towards other parties and . . . [the] Court."); *Bettis v. Toys "R" Us*, NO. 06-80334-CIV-ZLOCH, 2009 U.S. Dist. LEXIS 123664, at *64-65 (S.D. Fla. Dec. 30, 2009) (court found that attorney engaged in bad faith because he "impugned the qualifications and integrity [of the judge]" and "vexaciously multiplied the proceedings."). Courts have observed that:

> [m]ere accusations of bias or impropriety damage our faith in the legal system. When these accusations of misconduct are brought half-heartedly or as a litigation tactic, the state of the profession reaches an even lower ebb. When attorneys bring accusations challenging the impartiality of the court without pursuing every

> available evidentiary lead, our hopes for life and liberty in a nation of laws and not of men is diminished.

*In Re: Green Rivers Forest, Inc.*, 190 BR 477, (M.D. GA. 1995).

Plaintiffs' bad faith conduct is laid bare when Plaintiffs improperly questioned the impartiality both of this Court and its Special Master. Plaintiffs made many statements that this Court was not impartial, including the filing of a scandalous motion, in which no relief was sought, but wherein Halmos called the Court's orders "biased, antagonistic and prejudiced" and further asserted that "[t]he record in this case demonstrated Your Honor's apparent deep-seated favoritism towards INA, and a manifest prejudice towards me . . . ." (D.E. 1111, pp. 1, 21, *see, e.g.*, Tr. Trans (June 14, 2011), p. 124:19-20 and p. 131:3-7, D.E. 1337 p. 3 (Plaintiffs asserted that the Court had "a continuing prejudice against [Plaintiffs'] inappropriate for the United States District Court")). By way of example, Plaintiffs addressed the Court as follows:

> You are making yourself clear, Judge, and you are acting in a prejudicial fashion.

(Tr. Trans. (June 14, 2011), p. 124:19-20). Plaintiffs also stated:

> Again, Your Honor, I object to the prejudicial treatment and the intimidation by the Court. I will not make any further objection since to do so obviously will incur [sic] my client because of the Court's disparity [sic] treatment of me and my client.

(Tr. Trans. (June 14, 2011), p. 131:3-7). No basis for such statements existed.

Plaintiffs' also attacked the impartiality of the Special Master. Throughout the discovery process, Plaintiffs made frequent statements regarding the Special Master's impartiality or his rulings. (Exhibit "3" (Deposition of Peter Halmos as Corporate Representative of High Plains Capital (March 10, 2010), p. 433: 14-20 and Deposition of Peter Halmos as Corporate

Representative of Intelligence Services, Inc. (February 27, 2011) p. 69:9 (referring to Special Master Klein's ruling as "ridiculous"). An example of such an exchange is as follows:

> So, I mean, I've stated my objection for the record. And Mr. Halmos can state his objection for the record. But, your Honor, and I also take exception with your characterization of his answers, which I don't think are fair, and perhaps show a bias, Your Honor.

(Exhibit "3" (Deposition of Peter Halmos as Corporate Representative of High Plains Capital (March 10, 2010), p. 433: 14-20). Once again, no basis for such statements existed. Therefore, the repeated nature of these statements constitutes "bad faith."

Finally, Plaintiffs made scandalous allegations against this Court via mandamus to the Eleventh Circuit Court of Appeals and within the Motion to Vacate Consent of Referral to Magistrate Judge ("Motion to Vacate"). (Exhibit "4" (without appendix); D.E. 1343). Specifically, Halmos stated within the Motion to Vacate that this Court forced Halmos to agree to permit Judge Brown to "preside of the case or else suffer repercussions" (D.E. 1343, p. 2) and that Judge Brown would "reward or punish me for not giving the answer he wanted." (D.E. 1343, p. 5). Further, Halmos asserted that the Court "coerced" Halmos into consenting to Judge Brown as the mediator and engaged in other "intimidation" tactics. (D.E. 1343, p. 6). Finally, Halmos asserted that the Court struck the jury not based upon facts or law, but because of the "magistrate's calendar" (D.E. 1343, p. 9) and that the Court was not impartial. (D.E. 1343, pp. 10, 12-13). These baseless allegations were made despite Halmos' express consent on the record and within paperwork submitted to the Court. (Exhibit "5," Hearing Tr. (September 10, 2009), p. 7:11-15; D.E. 245).

Notwithstanding Judge Martinez's and the Eleventh Circuit's rejection of Plaintiffs' allegations (D.E. 1348 and D.E. 1345, p. 6), Plaintiffs' own statements to this Court demonstrate

that the basis of Plaintiffs' pleadings is false. Specifically, Plaintiffs' counsel stated that he was unopposed to Judge Brown serving as the mediator of the case:

> Now, one of the things that Your Honor suggested early on, and we want to make clear that we are comfortable with, either in conjunction with Mr. Greer, or apart from Mr. Greer, we would be happy to have the court mediate the case without disqualifying the presiding officer from trying the case.

(Exhibit "6," Hearing Tr. (April 8, 2010), p. 10). Plaintiffs continued:

> Your Honor, we are prepared to have Your Honor mediate the case and are prepared to waive all conflicts.

(Exhibit "6," Hearing Tr. (April 8, 2010), p. 14). These unfounded attacks upon the impartiality of the Court and its officers are improper and warrant punishment. Such punishment is proper under this Court's inherent power, and INA requests that Plaintiffs be required to pay INA's attorneys' fees and costs as a result.

     5.     <u>Unnecessarily Prolonging Litigation Is "Bad Faith"</u>

Plaintiffs' fraud and bad faith include the continued, unnecessary delays in every aspect of this litigation, which support the award of attorneys' fees and costs as the appropriate sanction. *See Chambers*, 501 U.S. at 62 (1991). Plaintiffs' attempts to prolong this litigation are well documented.

First, Plaintiffs purposefully obstructed INA's legitimate discovery efforts. Plaintiffs refused to abide by Court orders related to the subpoenaed discovery until January 2010. (D.E. 464). Even then (and unknown to INA), Plaintiffs withheld material documents from discovery such as the March 16, 2005 letter and the 2006 Perini Navi survey.

Second, Plaintiffs refused to abide by Court orders related to discovery deadlines. For example, even when presented with an ultimate Court deadline for the designation of experts,

Plaintiffs refused to abide by it. (D.E. 620 and D.E. 629). Also, Plaintiffs made scandalous and unsupported allegations against Fowler White Burnett, P.A. on the eve of Halmos' deposition. (D.E. 386). When viewed in conjunction with Plaintiffs' other discovery abuses, it is clear that this was done merely for the purpose of delay.

Third, during settlement negotiations before the Court, Plaintiffs proposed a mechanism for narrowing the scope of disputes to be tried. Plaintiffs asked the Court to inquire whether INA would be amenable to such a procedure. INA worked with Plaintiffs and a joint motion was presented to the Court. The Court adopted the procedure as articulated in the joint motion and the process was reduced to an Order. The joint procedure ultimately contemplated submission of outstanding issues to the Court in the form of an evidentiary hearing. (D.E. 698 and D.E. 706). Such a mechanism would have aided resolution of the claim via either settlement or a shorter trial. After significant work had been expended by INA to prepare for the hearing, Plaintiffs unilaterally cancelled it asserting that they never agreed to waive their right to a jury trial on coverage (a position directly contradicted by their agreement to the evidentiary hearing procedure itself). (D.E. 1085, p. 1). This action increased the length of the ultimate trial.[1]

Finally, Plaintiffs engaged in an obvious attempt to prevent this case from coming to trial. In February, only two business days before the case was to be called to trial, Plaintiffs filed their Emergency Motion to Continue Trial asserting grounds which were ultimately contradicted by a filing made by Plaintiffs only approximately three months later. (*Compare* D.E. 1297, D.E. 1298, and D.E. 1299 *with* D.E. 1349 and D.E. 1350). Plaintiffs attempted the same delay tactic

---

[1] In its Order, this Court provided the Plaintiffs the opportunity to brief why they should not be sanctioned (as they had been in the past) due to their failure to abide by their agreement to conduct the evidentiary hearing. (D.E. 1118, p. 3). It does not appear as if the Court made a determination whether Plaintiffs should be sanctioned for this action.

- 12 -

when they filed their mandamus to the Eleventh Circuit and Motion to Vacate Consent of Referral to Magistrate Judge on the eve of the May 3, 2011 trial setting.

These are merely some of the material examples of Plaintiffs' efforts to prolong this litigation, and these actions warrant the award of INA's attorneys' fees and costs as a sanction.

**B.    Rule 11 Sanctions**

The Court should award attorneys fees and costs to INA under the powers granted pursuant to Rule 11 of the Federal Rules of Civil Procedure. Rule 11 sanctions are designed to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001). A court will assess such sanctions:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.

*Id.* at 1301 (quotes and cites omitted; emphasis added); *see also* Fed. R. Civ. P. 11.[2] In considering a motion for sanctions pursuant to Rule 11, a court conducts a two-step inquiry: (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). Thus, courts will determine sanctions are appropriate based upon whether a reasonable attorney, in like circumstances, could believe that his actions were legally and factually justified. *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002).

A claim is frivolous when it is without arguable merit either in law or fact. *Hyland v. Parker*, 163 Fed. Appx. 793, 798 (11th Cir. 2006) (*citing Bilal v. Driver*, 251 F.3d 1346, 1348 (11th Cir. 2001); *Head v. Medford*, 62 F.3d 351, 355 (11th Cir. 1995) (noting that findings of

---

[2] Rule 11 sanctions may be imposed for a party's violation relating to any "pleading, written motion, or paper" filed with the Court.

frivolity have generally been sustained when plaintiffs failed to introduce evidence supporting their claims), *citing Sullivan v. Sch. Bd. of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985). A frivolous claim also exists when it appears that the plaintiff has little or no chance of success, i.e., when the complaint on its face makes clearly baseless allegations or relies on legal theories that are indisputably meritless. *Id.* (*citing Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993). "Frivolous claims include claims 'describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.'" *Bilal*, 251 F.3d at 1349 (*citing Neitzke v. Williams*, 109 S. Ct. 1827, 1833 (1989)).

"A case is not frivolous where the plaintiffs provide sufficient evidence to support their claims. Yet, where a plaintiff continues to litigate even after the claim was clearly groundless, frivolous, or unreasonable, an award of fees may be proper. *Ruszala v. Walt Disney World Co.*, 132 F. Supp. 2d 1347, 1351 (M.D. Fla. 2000) (*citing Turner v. Sungard Business Systems, Inc.*, 91 F.3d 1418, 1423 (11th Cir. 1996) (one internal citation omitted); *Footman v. Cheung*, 139 Fed. Appx. 144 (11th Cir. 2005) (Rule 11 sanctions upheld when plaintiff "demonstrated a consistent pattern of reckless, unprofessional, and unethical conduct including filing an amended complaint that contained false and unsupported allegations, filing interrogatory answers that contradicted allegations in the amended complaint, submitting multiple unsworn and un-notarized versions of answers to court interrogatories that purported to be sworn and notarized, and filing a frivolous motion to disqualify the district court judge."); *Wachovia Bank v. Tien*, 406 Fed. Appx. 378, 383 (11th Cir. 2010) (court upheld district court's decision to award $3.4 million in sanctions because the plaintiff "falsified corporate documents" and because "plaintiff asserted a frivolous claim of joint ownership," which he pursued for four years.). Such is the case here.

Like the facts presented in *Footman* and *Tien*, it is well documented that the Plaintiffs made fantastic claims involving allegedly sophisticated conspiracies, which allegations were devoid of any evidential support, and attempted a meritless mandamus and motion to disqualify Judge Brown on the eve of trial. Despite being provided multiple opportunities to replead and suggestions from the Court regarding the necessity to assert a basic notice pleading (*e.g.* D.E. 651, p. 2), Plaintiffs continued to assert baseless theories against INA. These included a RICO claim which was contained in both the Second and Third Amended Complaints but was ultimately abandoned. Plaintiffs' filing of frivolous claims necessitated the filing of multiple motions to dismiss (which were eventually granted in D.E. 883) and generally delayed this case advancing toward trial.

Plaintiffs' frivolous pleadings took almost a year and a half to resolve. The negative effect of Plaintiffs' repeatedly harassing, frivolous, and vexacious complaints affected all aspects of the litigation. INA was forced to incur millions of dollars in attorneys' fees as a result of Plaintiffs' conduct. Therefore, INA requests that it be awarded its attorneys' fees and costs which were incurred due to Plaintiffs' frivolous pleadings.

### III. INA'S COSTS AND ATTORNEYS' FEES

Pursuant to Local Rule 7.3 and Federal Rule of Civil Procedure 54(d)(2)(C), "either party may move the court to determine entitlement prior to submission on the issue of amount."[3] Given the costs and attorneys' fees expended in this case, and the amount of time and money that will be necessary to compiling the documentation necessary to support the amount of INA's requested

---

[3] The award of attorneys' fees and costs in this case arises out of the Court's power to sanction a party for its misconduct, as outlined herein, and INA believes that the meet and confer procedure outlined in Local Rule 7.3 would not be applicable as such a sanction award would not be inextricably tied to a final judgment or order. Consequently, INA has communicated with Plaintiffs in the form contemplated by Local Rule 7.1(a)(3). In the event that the Court disagrees with INA's position, INA respectfully requests an opportunity to file a motion that employs the procedure contemplated by Local Rule 7.3.

costs and attorneys' fees, INA requests that the Court determine INA's entitlement to fees under the Court's inherent authority and Rule 11 prior to requiring submissions relating to the amount of those attorneys' fees and costs.

INA further requests, in the event the Court determines it is entitled to recovery of its attorney's fees and costs, that the Court allow additional briefing and any hearing it deems necessary in order to determine the amount of INA's reasonable attorneys' fees and costs.

### IV. CONCLUSION & PRAYER

WHEREFORE, PREMISES CONSIDERED, INA hereby prays that the Court grant Defendant's Motion for Sanctions, and that it further grant INA any and all other relief, whether general or special, at law, in equity, or in admiralty, to which it is justly entitled.

### CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1.A.3, counsel for the moving party hereby certifies that counsel for the moving party conferred in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

### CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        Respectfully submitted,

        **BROWN SIMS, P.C.**

        By: /s/ Frank J. Sioli
            Frank J. Sioli
            Florida Bar No. 009652
            Datran Two – Suite 1609
            9130 South Dadeland Boulevard
            Miami, Florida 33156-7851
            Telephone: 305.274-5507
            Facsimile: 305.274-5517

        *Attorneys for Defendant*
        *Insurance Company of North America*

OF COUNSEL:

Kenneth G. Engerrand
Robert M. Browning
Michael A. Varner
BROWN SIMS, P.C.
1177 West Loop South, Tenth Floor
Houston, Texas 77027
Telephone: 713.629-1580
Facsimile: 713.629-5027

## SERVICE LIST

Mr. Hugh J. Morgan
Law Office of Hugh J. Morgan
317 Whitehead Street
Key West, Florida 33040
Telephone: 305.296-5676
Facsimile: 305.296-4331
hugh@hjmorganlaw.com
(via CM/ECF)

Peter Halmos, *Pro Se*
c/o Meyers & Associates, C.P.A.
4540 PGA Blvd., Suite 216
Palm Beach Gardens, FL 33418
(via Certified Mail, return receipt requested &
via U.S. Mail, postage pre-paid)

Brenton N. Ver Ploeg, Esq.
Stephen A. Marino, Jr., Esq.
Ver Ploeg & Lumpkin, P.A.
100 S.E. 2nd Street
30th Floor
Miami, FL 33131
Telephone: 305-577-3996
Facsimile: 305-577-3558
bverploeg@vpl-law.com
smarino@vpl-law.com
(via CM/ECF)

Mr. Clinton S. Payne
Mr. Pete L. DeMahy
DeMahy Labrador Drake Payne & Cabeza
150 Alhambra Circle - Penthouse
Coral Gables, Florida 33134
Telephone: 305.443-4850
Facsimile: 305.443-5960
cpayne@dldlawyers.com
pdemahy@dldlawyers.com
(via CM/ECF)

Mr. David Paul Horan
Horan, Wallace & Higgins, LLP
608 Whitehead Street
Key West, Florida 33040
Telephone: 305.294-4585
Facsimile: 305.294-7822
dph@horan-wallace.com
(via CM/ECF)

Mr. Joseph P. Klock, Esq.
Mr. Juan Carlos Antorcha, Esq.
Rasco Klock Reininger Perez Esquenazi Vigil
& Nieto
283 Catalonia Avenue
Second Floor
Coral Gables, FL 33134
(305) 476-7100
(305) 476-7102
jklock@rascoklock.com
jantorcha@rascoklock.com
(via CM/ECF)

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

Case Number: 08-10084-CIV-MARTINEZ-BROWN

PETER HALMOS, *et al.*

*Plaintiffs,*

vs.

INSURANCE COMPANY OF NORTH AMERICA, *et al.*

*Defendants.*
_____/

**ORDER GRANTING DEFENDANT
INSURANCE COMPANY OF NORTH AMERICA'S
<u>MOTION FOR SANCTIONS</u>**

On this day came to be heard Defendant Insurance Company of North America's Motion for Sanctions, and the Court, being fully apprised of the circumstances, and having considered any and all responses, replies, and oral argument, if any, is of the opinion that it is well-taken and should be granted in all things. It is therefore:

ORDERED, ADJUDGED, AND DECREED that Defendant's Motion for Sanctions is hereby GRANTED. An evidentiary hearing will be conducted on _____, 2012 at _____, a.m./p.m. related to the amount of attorney fees and costs to be awarded.

Signed on this _____ day of _____, 2012.

_____
STEPHEN T. BROWN
Chief United States Magistrate Judge

**SERVICE LIST**

Mr. Hugh J. Morgan
Law Office of Hugh J. Morgan
317 Whitehead Street
Key West, Florida 33040
Telephone: 305.296-5676
Facsimile: 305.296-4331
hugh@hjmorganlaw.com
(via CM/ECF)

Peter Halmos, *Pro Se*
c/o Meyers & Associates, C.P.A.
4540 PGA Blvd., Suite 216
Palm Beach Gardens, FL 33418
(via Certified Mail, return receipt requested & via U.S. Mail, postage pre-paid)

Brenton N. Ver Ploeg, Esq.
Stephen A. Marino, Jr., Esq.
Ver Ploeg & Lumpkin, P.A.
100 S.E. 2nd Street
30th Floor
Miami, FL 33131
Telephone: 305-577-3996
Facsimile: 305-577-3558
bverploeg@vpl-law.com
smarino@vpl-law.com
(via CM/ECF)

Mr. Clinton S. Payne
Mr. Pete L. DeMahy
DeMahy Labrador Drake Payne & Cabeza
150 Alhambra Circle - Penthouse
Coral Gables, Florida 33134
Telephone: 305.443-4850
Facsimile: 305.443-5960
cpayne@dldlawyers.com
pdemahy@dldlawyers.com
(via CM/ECF)

Mr. David Paul Horan
Horan, Wallace & Higgins, LLP
608 Whitehead Street
Key West, Florida 33040
Telephone: 305.294-4585
Facsimile: 305.294-7822
dph@horan-wallace.com
(via CM/ECF)

Mr. Joseph P. Klock, Esq.
Mr. Juan Carlos Antorcha, Esq.
Rasco Klock Reininger Perez Esquenazi Vigil & Nieto
283 Catalonia Avenue
Second Floor
Coral Gables, FL 33134
(305) 476-7100
(305) 476-7102
jklock@rascoklock.com
jantorcha@rascoklock.com
(via CM/ECF)