UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

**CASE NO. 08-10084-CIV-MARTINEZ/BROWN**

PETER HALMOS, *et al*.,

     Plaintiffs,

vs.

INSURANCE COMPANY OF NORTH AMERICA, *et al*.,

     Defendants.

_____/

## <u>PLAINTIFFS' OPPOSITION TO INA'S MOTION FOR SANCTIONS</u>

Corporate Plaintiffs, International Yachting Charters, Inc. and High Plains Capital Corporation, and Peter Halmos, Individually (collectively, "Plaintiffs"), file this opposition to Defendant Insurance Company of North America's ("INA") motion for sanctions (D.E. 1434). The motion should be denied for the reasons which follow.  Alternatively, should the Court believe any grounds may exist to entertain the imposition of sanctions, an evidentiary hearing is required to address factual disputes.

## <u>SUMMARY OF THE ARGUMENT</u>

This Court's findings of fact and conclusions of law, and the judgment that followed, granted INA the relief it requested in its pleadings.  Emboldened by its victory, INA now asks the Court to sanction Plaintiffs for prelitigation conduct, litigation conduct (which the Court already addressed), and (acting as the Court's advocate) for perceived attacks on the Court.  Respectfully, the relief INA presently seeks cannot and should not be granted.

INA's Rule 11 motion is untimely because INA waited until after the conclusion of the case to file the request.  Rule 11 sanctions will not be imposed unless the party against whom

sanctions are sought refuses to withdraw a position asserted or an offensive pleading within 21 days. At no time during the litigation did INA request such withdrawal. INA cannot now, subsequent to the Court's resolution of the merits of the matter, seek sanctions on the basis of any pleadings on which the Court has already ruled.

Nor can INA obtain relief under the inherent power doctrine. INA asserts that the following constitutes "bad faith" *litigation* conduct sufficient to justify such a sanction: (1) alleged fraud, concealment and falsification of documents in the claims process and at policy renewal, based on this Court's finding in its favor on its affirmative defense (Motion, points 1 and 3); (2) allegedly asserting frivolous claims (Motion, point 2); (3) alleged concealment of documents (including the March 2005 letter for which this Court has already awarded sanctions including fees) and failure to preserve computer logs (Motion, point 3); (4) alleged attacks on the Court (Motion, point 4); and (5) allegedly unnecessarily prolonging the litigation (Motion, point 5).

INA's assertions fail because (1) conduct underlying this Court's finding of a breach of the policies' "Concealment, Misrepresentation or Fraud" during the claims process and failure to disclose unseaworthiness conditions at policy renewal cannot legally be the basis for a fee award; (2) no frivolous claims were asserted, as demonstrated by the facts that this Court denied summary judgment and submitted the case for trial after extensive discovery and INA made payments before and after suit was filed, paying and settling certain claims; (3) this Court has already awarded sanctions with respect to the March 2005 letter, and there was no concealment of other documents or failure to preserve computer logs; (4) there were no improper attacks on the Court and the statements to which INA cites are insufficient to serve as a basis for a fee award; and (5) Plaintiffs did not unnecessarily prolong the litigation.

## ARGUMENT

### I.     INA's Request For Attorney's Fees Under Rule 11 Is Both Untimely And Procedurally Improper

INA's request for attorney's fees under Federal Rule of Civil Procedure 11 is untimely and procedurally improper.  Rule 11 provides that a motion for sanctions "shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."  Fed. R. Civ. P. 11(c)(1)(A).  This provision was added to the rule with the 1993 amendments, and the accompanying committee notes explain that

> These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation.

*Morroni v. Gunderson*, 169 F.R.D. 168, 171 (M.D. Fla. 1996) (citing Fed. R. Civ. P. 11, 1993 advisory committee notes).  Courts have ruled that the "safe harbor" period is an absolute requirement for Rule 11 sanctions.  *See, e.g.*, *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir. 1997) (vacating the imposition of sanctions where the motion for sanctions was filed without affording counsel the twenty-one day "safe harbor" period mandated by the 1993 revised rule) (citing cases); *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995) (recognizing that the plain language of the rule indicates that the "safe harbor" provision is mandatory); *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir. 1995) (reversing sanctions award in part because no evidence indicated compliance with "safe harbor" period that current version of Rule 11 specifically mandates); *United Food & Commercial Workers Union Local No. 576 v. Four B Corp.*, 893 F. Supp. 980, 987 (D. Kan. 1995) (stating that Rule 11 "prohibits" the filing of a

motion until twenty-one days after the "safe harbor" service), *aff'd*, 83 F.3d 433 (10th Cir. 1996). Here, INA filed its request for fees under Rule 11 after the conclusion of this case, and without ever requesting that Plaintiffs withdraw any allegedly offending pleading at any point throughout this litigation, thus rendering INA's motion procedurally improper.

And because a party would never be able to comply with the rule's safe harbor provision when a Rule 11 motion is filed after the court has ruled on any allegedly offending pleading or position, courts have consistently held that Rule 11 motions filed after the conclusion of a matter are untimely. *See*, *e.g.*, *Peer v. Lewis*, 606 F.3d 1306, 1313 (11th Cir. 2010) (Rule 11 motion untimely where court had already struck the allegedly offensive pleading); *Oceanside Lauderdale, Inc. v. Ocean 4660 LLC*, 2011 WL 1327379, at *3 (S.D. Fla. Mar. 8, 2011) (Rule 11 motion untimely where filed five months after final ruling by court); *Sure Fill & Seal, Inc. v. GFF, Inc.*, 8:08-CV-882-T-17TGW, 2010 WL 3063287, at *8 (M.D. Fla. July 6, 2010) *report and recommendation adopted*, 8:08-CV-882-T-17TGM, 2010 WL 3125593 (M.D. Fla. 2010) *aff'd sub nom. Sure Fill & Seal, Inc v. GFF, Inc.*, 411 Fed. Appx. 267 (11th Cir. 2011) (Rule 11 motion untimely where filed after parties entered into a settlement agreement, which effectively concluded the matter).  As such, sanctions may not be awarded pursuant to Rule 11.[1]

## II.    INA's Request For Sanctions Under The Court's Inherent Power Must Be Denied

INA also seeks sanctions under the inherent power doctrine.  In an effort to substantiate its position, INA gathers virtually every example of what it perceives to be an offense. INA's examples and arguments are without merit, and its request for relief should be denied.

---

[1]  INA's Rule 11 motion must also fail on its merits. The gravamen of INA's Rule 11 motion is that Plaintiffs' claims were frivolous and without arguable merit in either law or fact. The substance of INA's motion is contradicted by the fact that the majority of Plaintiffs' claims survived summary judgment and proceeded to trial on their merits.

A.   **This Court's Finding That Plaintiffs Breached The Policies' "Concealment, Misrepresentation Or Fraud" Provisions In The Claims Process And A Failure To Disclose The Contents Of The March 2005 Letter At Policy Renewal Cannot Be The Basis For An Attorney's Fee Award Under The Inherent Power Doctrine**

The crux of INA's argument rests on this Court's finding that Plaintiffs breached the policies' fraud and concealment provision during the claims process and breached an implied warranty at policy renewal as a basis for an award of fees.  Motion at 3-4, 6-8.[2]  Respectfully, these findings are disputed and are the subject of an appeal.  In any event, they cannot serve as a basis for an attorney's fee award.  Prevailing party fees are not available under substantive law for a breach of the policies, and the inherent power of the court cannot be used to override substantive law – or the American Rule – and provide such a remedy.

It is well settled in the Eleventh Circuit, as in the majority of other federal circuits, that

---

[2]   All of the findings relied on by INA relate to alleged fraud or concealment in the claims process or at policy renewal, not during this litigation:  (1) As to Island Runner, this Court found concealment "during the claim submission process" (D.E. 1431: FF ¶ 39) and INA paid the property damage claim prelitigation in July 2006 (D. Ex. O-9); (2) As to Mongoose, this Court found concealment or misrepresentation "[i]n the process of asserting claims for property damage" (D.E. 1431: CL ¶ 54) and the Merritt  estimate was received by INA prelitigation in 2007 (D. Ex. C-20); (3) As to the March 2005 letter, this Court found a misrepresentation of Legacy's condition prior to the hurricane in August 7, 2005 at policy renewal (D.E. 1431: CL ¶ 94, FF ¶ 85); (4) As to the Perini Navi partial estimate, the alleged nondisclosure occurred prelitigation in June 2006 (D.E. 1431: FF ¶ 109) while *Legacy* was partially buried in mud so that full damage could not be seen and INA paid the property damage claim in October 2008 (D. Ex. O-8); (5) As to the Meredith Law firm charges, this Court found concealment or misrepresentation in the claims process by submitting a reimbursement request (D.E. 1431: FF ¶ 148), which was a December 2008 email enclosing a preliminary list and stating "[t]o the extent ACE has no dispute with identified reimbursements, we would greatly appreciate payment" (P. Ex. 226); (6) As to the ISC and PHS invoices, the finding was based on the same claims process December 2008 email (D.E. 1431: FF ¶¶ 130-131).; (7) As to the Pillsbury law firm charges, this Court found misrepresentations in the prelitigation claims process in October 2007 (D.E. 1431: FF ¶¶ 122, 124).   The Pillsbury invoices containing items unrelated to negotiation and compliance with the NOAA agreement were not introduced into evidence at trial by Plaintiffs, but by INA (D. Ex. I-3).   Instead, Plaintiffs introduced Pillsbury invoices which redacted the unrelated items and highlighted the related items. (P. Ex. 255, part 3 of 3, pp. 235-469; D.E. 1038-11 to 1038-23).

the inherent power to assess fees under the "bad faith" exception to the American Rule does not extend to pre-litigation conduct which is at issue in the litigation and constitutes the primary conduct forming the basis of the parties' claims or defenses.  *See Woods v. Barnett Bank of Fort Lauderdale*, 765 F.2d 1004, 1014 (11th Cir. 1985) ("The bad faith or vexatious conduct must be part of the litigation process itself. .... Vexatious conduct inherent in the fraudulent acts that make up the 10b-5 cause of action cannot be the basis for an attorneys' fee award...."); *Weathertrol Maint. Corp. v. Nova Casualty Co.*, No. 05-21345-CIV-TORRES, 2007 WL 566293, at *3-*5 (S.D. Fla. Feb. 20, 2007); *Centex Corp. v. United States*, 486 F.3d 1369, 1372 (Fed. Cir. 2007) ("[W]e align ourselves with eight other circuits that have taken the position that fee awards cannot be assessed based on claims of bad faith primary conduct."); *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.*, 313 F.3d 385, 391 (7th Cir. 2002) (inherent authority is "to be exercised sparingly, to punish misconduct [] occurring in the litigation itself, not in the events giving rise to the litigation (for then the punishment would be a product of substantive law-designed, for example, to deter breaches of contract)"); *Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc.*, 976 F.2d 541, 548-549 (9th Cir. 1992) ("the inherent power of a federal court to award fees for bad faith conduct does not extend to the conduct upon which the suit is based"); *Sanchez v. Rowe*, 870 F.2d 291, 295 (5th Cir. 1989) (the requisite bad faith "may not be based on a party's conduct *forming the basis* for the substantive claim").[3]

---

[3]  Although the majority opinion of the Supreme Court in *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991), expressly declined to address the issue, *see id.* at 54 n.16, all four dissenters agreed that the inherent power doctrine did not extend to prelitigation conduct relating to the substantive breach of contract at issue. *See id.* at 72-75; *see also Lamb Eng'g & Constr. Co. v. Nebraska Pub. Power Dist.*, 103 F.3d 1422, 1436 (8th Cir. 1997) (inherent power did not extend to prelitigation conduct upon which substantive contract claim was based; "We find support for our holding today implicitly in the language of the *Chambers* majority opinion and explicitly in the

As Judge Torres succinctly summarized in *Weathertrol* in denying a request for bad faith fees for prelitigation misconduct relating to the breach of contract at issue in the lawsuit:

> Significantly, the Eleventh Circuit has squarely taken the position and held that the bad faith or vexatious conduct that can overcome the American Rule must have occurred or been "part of the litigation process itself." *Woods v. Barnett Bank of Ft. Laud.*, 765 F.2d 1004, 1014 (11th Cir. 1985) (following binding precedent from Fifth Circuit), *Barton v. Drummond Co.*, 636 F.2d 978, 985 (5th Cir.1981).  <u>Thus, as in *Woods*, if a court finds that the bad faith or vexatious conduct cited as support for an award of fees was inherent in the acts or conduct at issue in the litigation, then an award of fees is improper under the American Rule.</u>[4]  *See also Chambers*, 501 U.S. at 53, 54 n.16 ("the imposition of sanctions under the bad-faith exception depends not on which party wins the lawsuit, but on how the parties conduct themselves *during the litigation*") (emphasis added).
>
> * * *
>
> [A] court cannot award attorney's fees under the bad faith exception to the American Rule where a party is relying solely on prelitigation conduct underlying the alleged wrong at issue in the litigation.  In other words, the American Rule cannot be set aside merely because a case involves a "bad faith" breach of contract or a "bad faith" securities fraud.  The Eleventh Circuit rejected that approach in *Woods* and we are bound to reject it here.

*Weathertrol*, 2007 WL 566293 at *3-*4.[5]

The Tenth Circuit similarly explained the limitations on the inherent power doctrine:

---

[4] dissenting opinions."); *Ass'n of Flight Attendants*, 976 F.2d at 548 ("While recognizing the limitation in the majority decision, four Justices nonetheless took the opportunity to assert strongly that the inherent power of a federal court to award fees for bad faith conduct does not extend to the conduct upon which the suit is based.").

[4] All underlined emphasis herein is supplied, unless otherwise noted.

[5] Eleventh Circuit cases stating that bad faith may be found "not only in the actions that led to the lawsuit, but also in the conduct of the litigation," *see, e.g., Mar. Mgmt., Inc. v. United States*, 242 F.3d 1326, 1333 (11th Cir. 2001), are not inconsistent with *Woods*.  As noted by the Ninth Circuit in *Ass'n of Flight Attendants*, 976 F.2d at 549- 550, "actions that led to the lawsuit" does not refer to "conduct constituting the cause of action," but "bad faith conduct in filing a frivolous and vexatious lawsuit."  In *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980), the Supreme Court "equated 'actions that led to the lawsuit' in the *Hall v. Cole* dictum with 'cases where the action is filed in bad faith.'"  *Ass'n of Flight Attendants*, 976 F.2d at 550 n. 12.  Here, after the lawsuit was filed, INA paid approximately $9 million dollars on the claims (Exhibit A), demonstrating that the action was not frivolous, vexatious, or in bad faith.

Among the reasons given for the limitation is that a contrary rule would constitute a substantial abridgment of the American Rule …. Thus, it has been noted that "[a] defendant found liable for fraud, for instance, would automatically be guilty of bad faith with respect to the underlying cause of action, thus abrogating the American Rule in all successful fraud actions.  Such complete abrogation is not the purpose of the bad faith exception."

*Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301, 1318 (10th Cir. 2000), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011).  *See also Ass'n of Flight Attendants*, 976 F.2d at 550 ("no federal appellate authority in or out of the Ninth Circuit has clearly approved an order shifting attorney's fees based solely upon a finding of bad faith as an element of the cause of action presented in the underlying suit. We decline to do so."); *Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1233 (6th Cir. 1984) ("the bad faith exception to the American Rule does not allow an award of attorney fees based only on bad faith in the conduct giving rise to the underlying claim"); *Lamb Eng'g.*, 103 F.3d at 1435 ("A court's inherent power to award attorney fees pursuant to the bad faith exception "depends not on which party wins the lawsuit, but on how the parties conduct themselves *during the litigation.*").

As noted by the Seventh Circuit in *Zapata Hermanos Sucesores*:

The decision whether punitive damages shall be a sanction for a breach of contract is an issue of substantive law, and under the *Erie* doctrine a federal court is not authorized to apply a different substantive law of contracts in a diversity case from the law that a state court would apply were the case being litigated in a state court instead.  And obviously that rule must not be circumvented by renaming punitive damages "attorneys' fees."

313 F.3d at 390.  Observing that the inherent authority cannot be used to supplant state substantive law that would preclude an attorney's fees award in a matter, the court stated:

The inherent authority of federal courts to punish misconduct before them is not a grant of authority to do good, rectify shortcomings of the common law (as by using an award of attorneys' fees to make up for an absence that the judge may deem regrettable of punitive damages for certain breaches of contract), or

> undermine the American rule on the award of attorneys' fees to the prevailing party in the absence of statute.

*Id.* at 390-91.  Under substantive Florida law, "[p]unitive damages are not recoverable for breach of contract, irrespective of the motive of defendant."  *Nicholas v. Miami Burglar Alarm Co., Inc.*, 339 So. 2d 175, 178 (Fla. 1976).  Prevailing party attorney fees are also not permitted in the absence of a statute or contract providing for their recovery.  *Pepper's Steel & Alloys, Inc. v. U.S.*, 850 So. 2d 462, 465 (Fla. 2003).  There is no contractual provision in the policies providing for an award of attorney's fees to a prevailing insurance company and under Florida law attorney's fees in insurance disputes are only recoverable pursuant by section 627.428, Florida Statutes, by a prevailing insured.  *Id.*

INA misconstrues this Court's findings of fraud and concealment in the claim process as being the same as a fraud upon the court.  The Eleventh Circuit has defined fraud on the court as "only that species of fraud which does or attempts to defile the court itself, or is a fraud perpetrated by the officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct."  *S.E.C. v. ESM Group, Inc.*, 835 F.2d 270, 273 (11th Cir. 1988) (quoting *Traveler's Indem. Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir.1985)).  "Generally, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court."  *Patterson v. Lew*, 265 Fed. Appx. 767, 768 (11th Cir. 2008).  Following this general rule, the Eleventh Circuit has consistently held that "fraud between parties is not a fraud on the court," including failure to disclose information and acts of perjury.  *Id.* at 769; *see also id.* ("attorney's failure to disclose information that may have been helpful to the defense was not fraud on the court").

Thus, INA's request for "attorney's fees" as a sanction for Plaintiffs' alleged "bad faith" in breaching the insurance contracts, through Plaintiffs' alleged acts of fraud and misrepresentation in the claims process and at policy renewal, must be denied.

## B.    INA Waived Any Right To Seek Sanctions For Plaintiffs' Alleged Fraud

In the event this Court disagrees with point II. A., then fees should be denied as waived. INA's Answer and Affirmative Defenses to Plaintiffs' Fourth Amended Complaint asserts that the 2005 *Legacy* policy was void as a result of Plaintiffs' alleged misrepresentation, concealment, and/or fraud.  (D.E. 976: 37-38).  After INA filed this affirmative defense on August 13, 2010, INA continued to make payments on claims submitted under the allegedly void policy, making payments totaling approximately $9 million.  *See* Exhibit A.  By making these payments, INA waived its coverage defenses of fraud, misrepresentation, and/or concealment, and, by extension, waived its right to seek sanctions for this conduct.  *Plante v. USF & G Specialty Ins. Co.*, No. 03-23157CIVGOLD, 2004 WL 741382, *4 (S.D. Fla. Mar. 2, 2004) (holding that once an insurer has made payment on a claim, "it has waived its coverage defenses that would otherwise exist regardless [of] whether it pays the policy limits or an amount less than that"); S*teadfast Ins. Co. v. Sheridan Children's Healthcare  Services, Inc.*, 34 F. Supp. 2d 1364, 1366 (S.D. Fla. 1998), *citing Employers Mutual Liability Ins. Co. v. Sears, Roebuck and Co.*, 621 F.2d 746, 748 (5th Cir. 1980) ("[A]n insurance carrier may settle the underlying cause of action thereby waiving any defenses to coverage which it otherwise might have asserted."); *see also Ins. Co. of St. Louis, Mo. v. Yates*, 200 So. 2d 622 (Fla. 1st DCA 1967) (Where insurance company with knowledge of insured's misrepresentation on application settled claim against insured, it waived or was estopped from escaping the responsibilities it assumed.)[6]

---

[6]  Plaintiffs are aware that they have previously argued this issue to the Court.

**C.      Plaintiffs' Claims Were Neither Frivolous Nor Raised In Bad Faith.**

A finding of bad faith is only warranted in extreme situations, such as where "an attorney knowingly or recklessly raises a frivolous argument[.]" *In re Walker*, 532 F.3d 1304, 1309 (11th Cir. 2008).  In determining whether a claim is frivolous, a district court must focus on whether the claim "is so lacking in arguable merit as to be groundless or without foundation" rather than whether it is ultimately successful.  *Sullivan v. Sch. Bd. of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985) (internal citations omitted).  Thus, "[c]ases where findings of 'frivolity' have been sustained typically have been decided in the defendant's favor on a motion for summary judgment or a Fed.R.Civ.P. 41(b) motion for involuntary dismissal."  *Id*.  The factors to be considered in determining the frivolity of claims include: "(1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits."  *Id*.

Here, after extensive discovery and repeated depositions of Plaintiffs' representative(s), INA moved for summary judgment on Plaintiffs' breach of contract claims, Halmos' individual claims for unjust enrichment, and its affirmative defenses including fraud and implied warranties of seaworthiness.  (D.E. 1000).  On January 18, 2011, this Court entered its order on the parties' motions for summary judgment and found that genuine issues of material fact existed. (D.E. 1237).  The case then proceeded to trial on the merits.  During the litigation, INA made payments of approximately $9 million on Plaintiffs' claims (Exhibit A) which settled those claims to the extent of the payments made.  Because Plaintiffs' claims survived summary judgment and a "full-blown" trial was held on the merits, Plaintiffs' claims were not frivolous or in bad faith as a matter of law.

INA also argues that Plaintiffs' assertion of a RICO claim in its Second and Third Amended Complaints was so frivolous as to amount to bad faith.  Motion at 5.  But INA never sent Plaintiffs a Rule 11 demand on the RICO claim.  In any event, Plaintiffs withdrew this claim upon filing their Fourth Amended Complaint, in order to narrow the case, and INA has wholly failed to establish in its motion that the claim was frivolous and in bad faith.  INA cites no case law stating that a claim asserted and later withdrawn amounts to such egregious conduct as to allow a court to sanction a party under its inherent power.  Instead, INA cites to *Johnson Enter. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1331 (11th Cir. 1998) for the proposition that defendants are entitled to attorney's fees where civil RICO counts are "*dismissed with prejudice or a verdict was directed in defendant's favor.*"   Motion at 5 (emphasis added).  Plaintiffs' RICO claim was not dismissed with prejudice nor was a verdict directed in INA's favor on this claim; rather, Plaintiffs *voluntarily* withdrew this claim well before trial.  As such, Plaintiffs' acts do not constitute bad faith.

Lastly, INA argues that Plaintiffs' claim for remediation damages was barred by the releases entered into between Halmos, IYC and NOAA and that the claim was so frivolous that it amounts to bad faith.  Motion at 5.   This is incorrect.  INA's own trial exhibit, a letter from ACE's Vice President, demonstrates its acknowledgement that the agreements with NOAA required remediation as a condition of the release from liability:  "A settlement agreement with NOAA was obtained where you agreed to remediate damage to the 'extreme east hole where Legacy's hull ran aground and where she was rotated[.]'"  "This agreement ... limits the liability that NOAA may impose for claimed damage to the Sanctuary, <u>provided certain designated areas are remediated</u>.   We agree with you that this agreement was a condition precedent to

commencement of salvage operations on the vessel." (D. Ex. V-13, pp. 1 &4).  That there was a factual dispute at trial as to the extent of remediation required does not make the claim frivolous.

### D.       The Alleged Concealment And Failure To Preserve Computer Logs

INA argues that Plaintiffs concealed a $16,000 remediation estimate from Robert Nailon, while contemporaneously asserting a claim of $25,000,000 in remediation damages.  Motion at 7. This argument fails for multiple reasons.  First, there was no $25,000,000 claim for remediation damages and the pleading cited for INA in support of this assertion (D.E. 688: ¶¶72-73) does not support it.  To the contrary, Plaintiffs' NOAA Agreement <u>saved</u> INA $25,000,000.  Second, the four page excerpt of Mr. Nailon's deposition testimony cited by INA (Motion at Ex. 2) in no way establishes that $16,000 would cover all work necessary to meet the remediation obligations under the NOAA agreement, nor that the estimate was improperly "concealed" from INA.  To begin with, Mr. Nailon was an expert engaged by the Pillsbury law firm and there was no obligation to disclose his privileged report until he was designated as an expert in the litigation and expert discovery was taken.  Moreover, the $16,000 estimate was a limited scope of work, comprising only part of the effort needed to meet the remediation obligations under the NOAA agreement, as demonstrated by other evidence at trial.  *See, e.g.*, Defense Exhibit O-17; Plaintiff's Exhibits 321 & 324.  Third, INA raised this issue in its previous motion for sanctions regarding the 2006 Perini Navi partial estimate, arguing it showed that Plaintiffs' conduct was part of a "larger pattern."  (D.E. 1238:10).  Although INA did not specifically request sanctions based on this action, the Court was free to consider it in deciding the motion, which was ultimately denied. (D.E. 1284).

INA also argues that Plaintiffs failed to preserve the *Legacy*'s computer logs.  Motion at 7.  Under Florida law, in order to show entitlement to sanctions for spoliation of evidence the

moving party must demonstrate "first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense." *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1322 (S.D. Fla. 2010). INA has not alleged any of these elements. Rather, it cites to an affidavit filed by Mr. Halmos explaining that a storage facility, without his knowledge, destroyed the contents of a shipping container owned by IYC and stored at the facility at the direction of Stewart Hutcheson, INA's surveyor. Motion at Ex.1. This affidavit does not state that computer logs existed, were in Plaintiffs' possession or contained in the shipping container nor does it state that Mr. Halmos intentionally had logs destroyed. There is simply no support for INA's argument that Plaintiffs committed sanctionable conduct.

Finally, INA argues that Plaintiffs committed fraud by concealing the March 2005 letter and the Perini Navi partial estimate. Motion at 6-7. This Court has already sanctioned Plaintiffs for the alleged withholding of the letter (D.E. 1319) and determined that sanctions were not warranted for the alleged concealment of the survey (D.E. 1284). INA is merely seeking another bite at the apple, and additional sanctions are inappropriate. INA already received its attorney's fees as a sanction for the alleged withholding of the letter (which is denied) and, therefore, INA has not suffered any damages for which it has not already been compensated.

**III.    INA is not entitled to an attorney's fees award for any allegedly inappropriate attacks on the Court**

INA asserts that it is entitled to an award of attorney's fees based on a number of statements which INA characterizes as "attacks on the court." As a preliminary matter, Plaintiffs note that INA has cited no case law which would allow it standing to seek sanctions for alleged

attacks on the court, as opposed to attacks on counsel or INA itself.[7]  And a review of the record reveals that INA did not object to any of these alleged attacks on the Court at the time they were made.  INA has now, after the fact, gathered a number of isolated statements in an attempt to argue that Plaintiffs have acted in bad faith.  None of the statements cited were made for an improper purpose; rather, Plaintiffs were objecting to what they believed to be improprieties at the time.  The power to sanction cannot be used "to chill vigorous but legitimate advocacy." *United States v. Figueroa-Arenas*, 292 F.3d 276, 279 (1st Cir. 2002).  Nor can INA argue that passing remarks in open court and a pleading to which INA did not even file a response (D.E. 1111) could have caused INA harm.[8]

INA also argues that Plaintiffs' writ of mandamus to the Eleventh Circuit was an improper attack on the court.  This argument is totally without merit.  Any claim of impropriety regarding a writ of mandamus filed in the Eleventh Circuit should have been asserted there, but was not.  It is therefore waived.  In this matter, this Court struck Plaintiffs' jury trial demand after

---

[7]  Even the cases cited by INA do not support their argument, as they involve attacks on opposing counsel or adverse parties, and not the court.  *See Maus v. Ennis*, 6:10-CV-1904-ORL-31, 2011 WL 3919640 (M.D. Fla. 2011) *report and recommendation adopted,* 6:10-CV-1904-ORL-31, 2011 WL 3919665 (M.D. Fla. 2011) (sanction of admonishment imposed against attorney for attacks against opposing counsel and adverse party); *Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1316 (11th Cir. 2002) (court formally rebuked and censured counsel for conduct that "amount[ed] to little more than personal attacks on opposing counsel").  As these comments were directed to the Court, it is unclear why INA deems attorney's fees in its favor would be an appropriate sanction for such conduct, if, in fact, any sanction were warranted in the first place.

[8]  The one case cited by INA that involved the imposition of an attorney's fees award sanction for attacks on the court involved conduct that was far more egregious and pervasive in nature than that alleged by INA here.  *See Bettis v. Toys "R" Us*, 06-80334-CIV, 2009 WL 5206192 (S.D. Fla. Dec. 30, 2009) *aff'd sub nom. Spolter v. Suntrust Bank*, 403 Fed. Appx. 387 (11th Cir. 2010) (court imposed monetary sanctions, suspension from practice in the Southern District, and referral to Florida Bar for attorney who repeatedly moved for judge's recusal and alleged a pattern of impropriety by the judge, even after the Eleventh Circuit deemed his allegations baseless).

the matter had been set for jury trial for nearly the entire duration of the case and after the Court had served as mediator in the matter, creating a situation in which a prior mediator would be serving as the trier of fact. Plaintiffs were well within their legal rights to seek relief. Plaintiffs first requested the Court to permit them to amend their complaint to remove the admiralty allegation. (D.E. 1172). When that request was denied, Plaintiffs sought to vacate their consent of referral to the magistrate judge based on the impropriety they perceived in the Court serving as both the mediator and trier of fact in the matter. (D.E. 1343). Finally, Plaintiffs exercised their right to petition the Eleventh Circuit for relief from these decisions. Motion at Ex. 4. None of these actions was inappropriate, and certainly do not constitute sanctionable conduct. INA's argument that Plaintiffs agreed to mediate the matter before the Court, at a point when all parties were under the impression that the matter would ultimately be tried to a jury, does not refute the fact that Plaintiffs filed these pleadings in good faith.

**IV. None Of The Actions Alleged By INA Constituted An Attempt By Plaintiffs To "Unnecessarily Prolong Litigation"**

INA attempts to characterize a number of actions by Plaintiffs as having created "unnecessary delays in every aspect of this litigation." Motion at 11. INA asserts that Plaintiffs' behavior during discovery constituted "discovery abuses." Motion at 12. However, INA has filed numerous motions to compel and for sanctions at every turn in this case and many of Plaintiffs' objections were valid and upheld. For example, INA requested and was awarded sanctions, including attorney's fees, with respect to the March 16, 2005 letter. (D.E. 1319). INA also sought sanctions with respect to the 2006 Perini Navi survey, which the court denied. (D.E. 1284). Plaintiffs have also been sanctioned for failing to comply with an order of the Special Master and for failing to timely provide amended answers to interrogatories. (D.E. 685 and 751). The Court considered, and denied, sanctions with regard to Plaintiffs' election to not participate

16

in the evidentiary hearing referenced in the Motion.  Motion at 12; (D.E 1183).  The election not

to participate resulted in settlement discussions which resolved approximately 6,000 items,

saving the Court's time and shortening the litigation.  Additionally, by continuing the claims

process after suit was filed, resulting in payments of approximately $9,000,000 by INA (Exhibit

A), Plaintiffs shortened the litigation.  Stated simply, INA should not be awarded attorney's fees

for conduct for which it has already received that award, and Plaintiffs should not now be

sanctioned for circumstances that the Court previously held not to warrant sanctions.

INA also contends that Plaintiffs refused to abide by a deadline to provide expert reports.

Motion at 11-12.  It is true that Plaintiffs requested an extension of time to file their experts'

reports.  (D.E. 620).  After issuing an order to show cause, the Court concluded that Plaintiffs'

position had merit and granted the motion for enlargement of time.  (D.E. 629, 644, and 651).

Plaintiffs cannot be sanctioned for filing a meritorious motion that was granted by the Court.

Finally, despite INA's characterization of several of Plaintiffs' pleadings as "delay

tactics," Plaintiffs' filings of meritorious pleadings in good faith cannot serve as the basis of an

attorney's fees award in INA's favor.  As explained above, Plaintiffs' motion to vacate (D.E.

1343) and petition for writ of mandamus to the Eleventh Circuit (Motion at Ex. 4) were both

filed in good faith, based on the changed circumstances that Plaintiffs faced after the Court struck

their jury trial demand very late in the proceedings.  And Plaintiffs' Emergency Motion to

Continue Trial (D.E. 1297) was filed based on Plaintiff Peter Halmos' health problems, which

are well documented on the record. (D.E. 1292-1:4) ("THE COURT:  Well, I know at one point

[Mr. Halmos'] health deteriorated to the point where there was some concern about his continued

existence."); (D.E. 1302:7) ("THE COURT:  Now, in all fairness, the one saving grace, if there is

only one for Mr. Halmos, is we know, we do know that he has got a medical condition. We have

known that for a long time.").  None of these pleadings warrant the imposition of sanctions.

**V.      Should The Court Believe Any Grounds May Exist To Entertain The Imposition Of An Award Of Attorney's Fees, An Evidentiary Hearing Is Required To Address Factual Disputes Arising From The Allegation In The Motion For Sanctions**

Although Plaintiffs submit that sanctions are inappropriate in this case and that INA's motion should be denied, if this Court believes that any grounds may exist for imposing sanctions, Plaintiffs request, pursuant to Local Rule 7.1(b)(2), that an evidentiary hearing be held. A hearing is necessary to resolve the factual disputes that are raised in the motion and this response, including but not limited to the issues of bad faith and intent.  Plaintiffs are entitled to notice and hearing before sanctions can be imposed and, because of the magnitude of sanctions sought by INA, a hearing is appropriate and necessary to afford Plaintiffs due process. *Donaldson v. Clark*, 819 F.2d 1551, 1561 (11th Cir. 1987) ("the type and severity of the sanction are necessary elements in the calculus [of due process].  The more serious the possible sanction both in absolute size and in relation to actual expenditures, the more process that will be due."). Moreover, the Eleventh Circuit has held that "we consider it prudent for a district judge to hold a hearing before imposing sanctions."  *Didie v. Howes*, 988 F.2d 1097, 1105 n.8 (11th Cir. 1993).

Additionally, should this Court find entitlement, Plaintiffs request that an evidentiary hearing be held to determine the reasonable amount of attorney's fees that INA expended because of specific allegedly sanctionable conduct.  *See Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1334 (11th Cir. 1992) (upholding fee award where it was reasonably "related to Aetna's relevant litigation expenses"); *see also* 10 *Moore's Federal Practice* § 54.171(2)(c)(iv) ("any fee award under the bad faith exception should be narrowly tailored to punish only the offending conduct, and should compensate only those attorney's fees incurred in response to that conduct.").  A hearing would be necessary to resolve factual issues as to the amount of fees to be awarded.

*Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (finding that it was an abuse of discretion to make an award without holding an evidentiary hearing "where an evidentiary hearing was requested, where there were disputes of fact, and where the written record was not sufficiently clear to allow the trial court to resolve the disputes of fact").

### CONCLUSION

For the foregoing reasons, this Court should deny INA's motion for sanctions (D.E. 1434).  In the alternative, should this Court believe any grounds may exist to entertain the imposition of sanctions, Plaintiffs request an evidentiary hearing.

Respectfully submitted,

VER PLOEG & LUMPKIN, P.A.
100 S.E. 2nd Street, 30th Floor
Miami, FL 33131
Tel.:  (305) 577-3996
Fax:  (305) 577-3558
Email: bverploeg@vpl-law.com
Email: smarino@vpl-law.com
*Counsel for Plaintiffs Peter Halmos,*
*International Yachting Charters, Inc.,*
*and High Plains Capital Corporation*

By:      s/Stephen A. Marino
BRENTON N. VER PLOEG
Florida Bar No. 171470
STEPHEN A. MARINO
Florida Bar No. 79170

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **19th** day of **March, 2012**, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system.  I further also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

BY:    s/Stephen A. Marino

CASE NO. 08-10084-CIV-MARTINEZ/BROWN

**SERVICE LIST**
**Peter Halmos, et al. v. Insurance Company of North America, et al.**
**United States District Court, Southern District of Florida**
**Case No. 08-10084-CIV-MARTINEZ/BROWN**

Frank J. Sioli
Zascha B. Abbott
Brown Sims P.C.
Suite 1609
9130 S. Dadeland Blvd.
Miami, FL 33156
Tel.:  (305) 274-5507
Fax:  (305) 274-5517
fsioli@brownsims.com

Scott A. Bassman
Valerie M. Jackson
Cole, Scott & Kissane, P.A.
Dadeland Centre II
9150 S. Dadeland Blvd., Suite 1400
Miami, FL 33156
Tel.:  (305) 350-5300
Fax:  (305) 373-2294
Scott.bassman@csklegal.com

David P. Horan
Horan Wallace & Higgins LLP
608 Whitehead Street
Key West, FL 33040
Tel.:  (305) 294-4585
Fax:  (305) 294-7822
dph@horan-wallace.com

Kenneth G. Engerrand
Michael A. Varner
P. Michael Bowdoin
Brown Sims P.C
1177 W. Loop South, Tenth Floor
Houston, TX 77027-9007
Tel.:  (713) 629-1580
Fax:  (713) 629-5027
kengerrand@brownsims.com
mvarner@brownsims.com

Clinton Sawyer Payne
Pedro Louis DeMahy
DeMahy Labrador Drake Payne & Cabeza
Alhambra Circle – Penthouse
150 Alhambra Circle
Coral Gables, FL 33134
Tel.:  (305) 443-4850
Fax:  (305) 443-5960
cpayne@dldlawyers.com
pdemahy@dldlawyers.com