UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION
**Case Number: 08-10084-CIV-MARTINEZ-BROWN**

PETER HALMOS, *et al.*
                                *Plaintiffs*,

vs.

INSURANCE COMPANY OF NORTH AMERICA, *et al.*
                                *Defendants*.
_____/

**INSURANCE COMPANY OF NORTH AMERICA'S
REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SANCTIONS**

      COMES NOW Insurance Company of North America ("INA"), and files this Reply to Plaintiffs' Opposition to its Motion for Sanctions and, in support thereof, hereby avers as follows:

### I. INTRODUCTION

      While Plaintiffs' fraudulent and bad faith conduct began before this lawsuit was instituted, it continued throughout every stage of this litigation. Prior to and during the litigation, Plaintiffs submitted countless fraudulent claims for reimbursement under their insurance contracts with INA. To further this fraud, Plaintiffs filed several frivolous and fraudulent claims against INA in this Court, which INA was forced to spend over three years defending. Moreover, during the course of litigation, in hopes of driving INA to exhausted submission, Plaintiffs filed numerous frivolous and unmeritorious pleadings and motions for no purpose other than to delay these proceedings and increase INA's litigation costs. These tactics plagued every stage of litigation—including discovery, mediation, and trial. Furthermore, throughout this litigation, Plaintiffs fraudulently concealed and fabricated crucial documents and information, which served to prevent INA from uncovering many of Plaintiffs' fraudulent acts until the eve of trial.

      As a result of Plaintiffs' actions, sanctions are appropriate. INA is entitled to recover the millions of dollars in attorneys' fees and costs it incurred to defend against Plaintiffs' frivolous and fraudulent pleadings and motions, to secure responses to its reasonable discovery requests, to uncover Plaintiffs' fraud, and to prepare the case for hearings and trial settings that Plaintiffs repeatedly sought to avoid.

## II. ARGUMENT AND AUTHORITIES

A.  **INA Did Not Waive Its Right to Seek Sanctions for Plaintiffs' Bad Faith Conduct**

Plaintiffs again argue that INA waived its policy defenses by making payments upon Plaintiffs' fraudulently submitted claims. (D.E. 1479, p. 10). This Court has already concluded that Plaintiffs' arguments are without merit and that INA is entitled to assert policy defenses. (D.E. 1431-1, ¶¶ 122-123). Therefore, this argument fails. Moreover, Plaintiffs' contention is not responsive to INA's request for sanctions based on Plaintiffs' bad faith conduct in the litigation.

B.  **Attorneys' Fees/Costs Should Be Awarded Pursuant to the Court's Inherent Power**

The Court should award INA attorneys' fees and costs pursuant to its inherent powers, as discussed in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Despite Plaintiffs' averments to the contrary, the record and findings of this Court establish that Plaintiffs engaged in a pattern of bad faith conduct through their repeated fraudulent behavior, delay and dilatory tactics, and regular disrespect and contempt for this Court. Plaintiffs' actions resulted in extensive damages to INA.

1.  Plaintiffs Engaged in Fraudulent/Bad Faith Conduct Throughout this Litigation

In their Response, Plaintiffs claim that all of the fraudulent conduct occurred *before* the current litigation was instituted and that the Court is, therefore, prohibited from awarding attorneys' fees under the inherent authority doctrine. (D.E. 1479, p. 5). Although it is acknowledged that Plaintiffs' initial attempts at defrauding INA began before the current proceedings were instituted, Plaintiffs' fraudulent behavior continued *throughout the litigation*.

Throughout this litigation, Plaintiffs engaged in a continuous pattern of omission and deception, which permeated every claim they filed with the Court and every claim INA paid out on its insurance policies.[1] At the outset of litigation, Plaintiffs filed several frivolous claims in this Court to further perpetrate their fraudulent claims for reimbursement under the policies.[2] In doing so, Plaintiffs attempted to enlist the Court, and the judicial system, in their campaign to commit insurance fraud. The Court refused to join in this campaign, and instead found at trial

---

[1] It is also noted that throughout the litigation, Plaintiffs continued to submit fraudulent claims directly to INA.

[2] It was only after INA filed multiple motions to dismiss, over the course of more than a year, that a majority of Plaintiffs' frivolous claims were dropped, dismissed, or abated. Moreover, Plaintiffs' claim that they "withdrew" their RICO claim to "narrow the case" is completely without merit, given the impending sanctions that would have been levied had they refused to drop their bogus claim in light of INA's Motions to Dismiss. (D.E. 380, p. 15-20; D.E. 536, p. 10-19; *also compare* D.E. 339, ¶¶ 341-366 and D.E. 505, ¶¶ 307-332 *with* D.E. 688; *see also Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1330–31 (11th Cir. 1998) ("Florida courts consistently have held that 'defendants are entitled to fees under [Fla. Stat.] section 772.104 where civil RICO counts were dismissed with prejudice or a verdict was directed in the defendant's favor'") (quoting *Hartford Insurance Co. of the Midwest v. Miller*, 681 So.2d 301, 302 (Fla. 3d DCA 1996)).

that Plaintiffs' claims were wholly without merit. The Court also found that, as a result of Plaintiffs' concealment and misrepresentations, INA was fraudulently induced to pay millions of dollars in claims under the insurance policies. (D.E. 1431-1, ¶¶ 37-41, 52-60, 91-100). To defend against these frivolous, fraudulent, and bad faith claims, INA was required to bear significant costs; INA is entitled to reimbursement for those costs. *See Chambers*, 501 U.S. at 50–51 (the filing of false and frivolous pleadings throughout the litigation constituted bad faith and justified sanctions under the Court's inherent powers); *Maid of the Mist Corp. v. Alcatraz Media, LLC*, Nos. 10-11758, 10-11981, 10-12515, 10-12516, 2011 U.S. App. LEXIS 22250, *3–*6 (11th Cir. Oct. 31, 2011) (court upheld district court's award of attorney's fees pursuant to its inherent authority because it found that dozens of party's filed motions were "totally frivolous" and "filed in bad faith"); *White v. Brenner*, No. 6:10-cv-134-Orl-28GJK, 2011 U.S. Dist. LEXIS 114957 (M.D. Fla. Aug. 30, 2011) (court awarded attorney's fees and costs under its inherent authority because plaintiff made allegation in complaint that he knew to be false).[3]

> a. *Plaintiffs Perpetrated a Fraud Through Falsification and Concealment of Documents and Misrepresentation of Evidence*

In an attempt to conceal that their insurance claims were fraudulent, Plaintiffs engaged in a campaign to falsify records, conceal documents, and misrepresent evidence throughout the course of this litigation. These actions likewise constituted "bad faith" conduct and a fraud upon the Court sufficient to justify an award for attorneys' fees and costs under the Court's inherent authority. *See Wachovia Bank v. Tien*, 406 F. App'x. 378, 383 (11th Cir. 2010) (court upheld district court's decision to award $3.4 million in sanctions because the plaintiff "falsified

---

[3] Plaintiffs' statement that the denial of INA's Motion for Summary Judgment indicates a lack of frivolity is without merit. (D.E. 1479, p. 11). In their quotation from the *Sullivan v. School Board of Pinellas County* decision, Plaintiffs omitted the Court's immediately following statement that "[w]hile these general guidelines can be discerned from the case law, they are general guidelines only, not hard and fast rules. Determinations regarding frivolity are to be made on a case-by-case basis." *Sullivan v. Sch. Bd. of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985). The Court continued stating that it does "not hold, or suggest, that a finding of frivolity cannot be sustained if the case has gone to trial, this is, as noted above, a factor to be considered." *Id.* Therefore, Plaintiffs' selective quotation from *Sullivan* is misleading at best. Further, Plaintiffs only partially quote the *Walker* decision. (D.E. 1479, p. 11). Plaintiffs state a "finding of bad faith is only warranted in extreme situations, such as where 'an attorney knowingly or recklessly raises a frivolous argument.'" (D.E. 1479, p. 11). However the full text appearing in *Walker* states: "'A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order.'" *In re Walker*, 532 F.3d 1304, 1309 (11th Cir. 2008) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1121 (11th Cir. 2001)). Plaintiffs' omission of this material portion of the applicable standard is telling. Moreover, the denial of summary judgment demonstrates the continuing fraud during the litigation, as INA did not discover all of the concealed fraud until after the summary judgment was presented.

3

corporate documents" and because "plaintiff asserted a frivolous claim of joint ownership," which he pursued for four years).[4] Although the instances of Plaintiffs' conduct in this regard are quite numerous and well documented, a few of the more egregious examples are worth noting.

One of the most offensive examples of Plaintiffs' fraud upon INA and this Court involves Plaintiffs' submission of fabricated invoices from Merideth Law Firm, Intelligence Services Corporation ("ISC"), and Peter Halmos & Sons ("PHS"), whereby Plaintiffs sought to recover almost $10 million dollars based upon fraudulent insurance claims. These invoices were presented for reimbursement to INA and made part of Plaintiffs' claims in this Court until such time as INA discovered Plaintiffs' fraud. (D.E. 1431, ¶¶ 131-33, 148-153). Only then, after Plaintiffs' "hands were caught in the cookie jar," did Plaintiffs attempt to withdraw their reimbursement request and those claims in the litigation. (D.E. 1431, ¶ 153). Plaintiffs do not even attempt to address this fraud within their Response. (D.E. 1479, pp. 13-14).

Plaintiffs also do not even attempt to explain how the withholding of the material March 16, 2005 correspondence[5] and the 2006 Perini Navi survey[6] as well as the repeated misrepresentations involving the Pillsbury invoices and the Merritt estimate are not sanctionable. (D.E. 1479, pp. 13-14; D.E. 1431, ¶¶ 84 fn. 13, 109-111; D.E. 1431-1, ¶¶ 93-95). Plaintiffs' inability to fashion any explanation for their conduct demonstrates the propriety of INA's sanctions motion.

Instead, Plaintiffs chose to selectively respond to certain items. Regarding the Robert Nailon estimate, Plaintiffs' arguments are rebutted by their own pleadings and testimony. Contrary to Plaintiffs' arguments, they did make a claim for $25,000,000.00 for repairs to the

---

[4] *See also Vargas v. Peltz*, 901 F. Supp. 1572, 1573–1578 (S.D. Fla. 1995) (court awarded sanctions and dismissed plaintiff's case under its inherent authority because plaintiff manufactured physical evidence and offered false testimony to support their claim of sexual harassment); *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378 (S.D.N.Y. 2010) (party held to be in bad faith by failing to preserve critical computer logs); *Wolters Kluwer Fin. Servs. v. Scivantage*, 525 F. Supp. 2d 448, 542 (S.D.N.Y. 2007) (party found to have acted in bad faith because he created false employment records); *Wiginton v. CB Richard Ellis*, No. 02 C 6832, 2003 U.S. Dist. LEXIS 19128, at *24–25 (N.D. Ill. Oct. 24, 2003) (court found that party acted in bad faith by concealing/destroying relevant documents); *Pope v. Fed. Express Corp.*, 138 F.R.D. 675 (W.D. Mo. 1990), *aff'd in relevant part*, 974 F.2d 982 (8th Cir. 1992) (plaintiff found to be in bad faith in a sexual harassment case for manufacturing note, allegedly from her supervisor, containing improper remarks from supervisor).

[5] Regarding the March 16, 2005 letter, Plaintiffs are correct that they were sanctioned for their failure to disclose this letter. (D.E. 1479, p. 14). Plaintiffs are incorrect, however, that INA is prevented from asserting that Plaintiffs' actions are part of a larger course of conduct warranting additional sanctions. Interestingly, Plaintiffs cited no authority for its proposition that additional sanctions cannot be imposed. (D.E. 1479, p. 14).

[6] Regarding the 2006 Perini Navi estimate, Plaintiffs only state that this issue was raised and it was "ultimately denied." (D.E. 1479, p. 13). Plaintiffs did not disclose that the requested relief was denied without prejudice to refiling at the appropriate time. (*Compare* D.E. 1479, p. 13 *with* D.E. 1284, p. 2). Now is the appropriate time.

4

environment. *See* Plaintiffs' Findings of Fact and Conclusions of Law. (D.E. 1414, ¶ 330 ($25,000,000.00); *see also* D.E. 1414, ¶¶ 180, 228, 252 (requesting an addition $6,000,000.00 in NOAA Agreement remediation of the "Rotation Area."), ¶258, and ¶ 259). Also contrary to Plaintiffs' arguments, Mr. Nailon expressly stated that $16,000 would satisfy any alleged remediation obligations under the NOAA agreement. (D.E. 1434-2, p. 3-4). Further, though Plaintiffs contend that they had no obligation to disclose Mr. Nailon's report until the expert witness designation deadline, Plaintiffs fail to mention that, after they designated Mr. Nailon as their testifying expert, the report was still not disclosed.  (D.E. 620, p. 3 (designating Mr. Nailon as a testifying expert on March 29, 2010); D.E. 679, p. 2 (producing Mr. Nailon's "final report")). Further, Plaintiffs claim that this Court denied any relief related to this discovery abuse. (D.E. 1479, p. 13). Contrary to this allegation, the Court denied the relief "without prejudice" to reasserting this issue in the future. (D.E. 1284, p. 2). Therefore, all of Plaintiffs' arguments related to the Nailon report are without merit.

   Finally, Plaintiffs did not dispute the applicability of a single case cited by INA  that falsifying records, misrepresentations of evidence, and concealment of documents to commit and cover up fraud is sanctionable bad faith. (D.E. 1479, pp. 13–14).  The foregoing demonstrates that the factual and legal predicate for a sanctions award has been met and INA requests that such an order be entered.

      b.   *What Began With Claim Fraud, Became Litigation Fraud*

   In an attempt to curtail their egregious and repeated fraudulent conduct, Plaintiffs attempt to draw a distinction between the fraud they committed *prior* to the litigation and the fraud they committed *after* the commencement of litigation. (D.E. 1479, pp. 5-10). In particular, Plaintiffs argue that INA "misconstrues this Court's findings of fraud and concealment in the claim process as being the same as a fraud upon the Court." (D.E. 1479, p. 9). This argument is wholly without merit.

   While INA acknowledges that Plaintiffs committed fraud prior to filing their lawsuit, there were also several findings that Plaintiffs engaged in fraudulent conduct throughout the course of this lawsuit including through the trial. (*See* D.E. 1434 *generally*). Consequently, the

case law presented by Plaintiffs has no bearing on the power of this Court to award sanctions,[7] considering that their fraudulent conduct continued during and throughout the litigation process.

Finally, Plaintiffs' averments concerning Florida's prohibition of punitive damages awards for breach of contract actions is completely irrelevant under the circumstances. This Florida doctrine has no bearing on a federal court's ability to award attorney's fees for bad faith conduct under the Court's inherent authority. For these reasons, a sanctions award is proper.

2.  Plaintiffs' Attacks Upon the Court Constitute "Bad Faith"

Plaintiffs also argue that it is improper for the Court to award attorneys' fees to INA despite Plaintiffs' repeated bad faith attacks upon the integrity of the Court and its officers. (D.E. 1479, pp. 14-16). In support of their argument, Plaintiffs incorrectly assert that INA failed to cite case law demonstrating that a court may award attorneys' fees to a party in connection with another party's attacks upon the court.[8] (D.E. 1479, p. 14).

This Court need look no further than *Bettis v. Toys "R" Us* for authority concerning a court's power to award attorneys' fees and costs for another party's bad faith conduct in attacking a court and its officers. NO. 06-80334-CIV-ZLOC H, 2009 U.S. Dist. LEXIS 123664, at *83 (S.D. Fla. Dec. 30, 2009). In *Bettis*, plaintiff's counsel repeatedly called for the Federal District Judge to recuse himself, arguing that the judge's religious and political beliefs were evidence of bias. *Id.* at *2. Plaintiff's counsel filed numerous and duplicitous motions requesting relief that had already been denied, sometimes on more than one occasion. *Id.* at *8-*19.

---

[7] *Woods v. Barnett Bank of Fort Lauderdale*, 765 F.2d 1004, 1014 (11th Cir. 1985) (Plaintiff sought attorneys' fees resulting from bad faith act of aiding and abetting fraud prior to litigation only; there was no allegation of continued fraud during the litigation); *Weathertrol Maint. Corp. v. Nova Casualty Co.*, NO. 05-21345-CIV-TORRES, 2007 WL 566293 at *3-*5 (S.D. Fla. Feb. 20, 2007) (Plaintiff sought attorneys' fees resulting from the wrongful withholding of monies owed prior to litigation; there was no allegation of continued fraud during the litigation); *Centex Corp. v. United States*, 486 F.3d 1369, 1372 (Fed. Cir. 2007) (Plaintiff sought attorneys' fees from government defendant resulting specifically from pre-litigation contact only); *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co. Inc.*, 313 F.3d 385, 391 (7th Cir. 2002) (Plaintiff sought attorneys' fees under a non-applicable statutory authority; court further opined that bad faith exception could not be applied simply due to the Defendant's failure to acknowledge liability under a contract); *Ass'n of Flight Attendancts, AFL-CIO v. Horizon Air Indus.*, 976 F.2d 541, 548-549 (9th Cir. 1992) (Plaintiffs sought attorneys' fees for bad faith negotiations prior to litigation); *Sanchez v. Rowe*, 870 F.2d 291, 295 (5th Cir. 1989) (Plaintiff sought bad faith exception to American Rule for pre-litigation conduct and court ruled that aggressive/vicious defense of the claim without any further misconduct was not an act of bad faith during the litigation); *Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301, 1318 (10th Cir. 2000), *overruled on other grounds, Telecom Holdings, Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011) (appellate court reversed award for attorneys' fees to Plaintiff when underlying court specifically said the order was based on pre-litigation conduct alone); *Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1233 (6th Cir. 1984) (Plaintiff sought attorneys' fees when only bad faith alleged was that which was inherent in the act giving rise to the substantive claim).

[8] It is noted that Plaintiffs cite to no case law suggesting that a Court *may not* award attorney's fees under its inherent powers for attacks upon a court. (D.E. 1479, pp. 14-16).

6

Counsel's repugnant attacks against the court were such that the court declared "[Counsel's] allegations were a direct attack upon the integrity of the Southern District of Florida." *Id.* at *13. Among other penalties for counsel's egregious behavior, the court awarded attorneys' fees to the defendants pursuant to, *inter alia*, its inherent power. *Id.* at *80.

Similarly, in the case at bar, this Court may also award attorneys' fees and costs for Plaintiffs' reprehensible conduct towards this Court and the Special Master. Although fully set forth in INA's Motion for Sanctions, Plaintiffs' conduct included filing briefs for the sole purpose of deriding this Court's rulings, accusing the Court of favoritism, bias, and prejudice, and accusing the Special Master of impropriety, among other transgressions. Further, Docket Entry Numbers 1111 and 1343 (not to mention the mandamus filed with the Eleventh Circuit) alone are sufficient grounds to constitute bad faith, making an attorneys' fee award available pursuant to this Court's inherent power.

Within their brief, Plaintiffs make no effort to either explain or justify their repeated and unfounded assertions throughout the litigation attacking the impartiality of the Court and its officers. Consequently, the Court should award INA's attorneys' fees because it has been demonstrated that Plaintiffs engaged in bad faith conduct by directing improper and disrespectful attacks—which were aimed at securing an advantage in litigation—towards the Court and its officers.

       3.     <u>Plaintiffs' Bad Faith Conduct Unnecessarily Prolonged the Litigation</u>

Plaintiffs' arguments related to their efforts to delay this litigation are particularly puzzling. (D.E. 1479, pp. 16-18). After stating that many of Plaintiffs' objections "were valid and upheld," Plaintiffs cite a relatively lengthy list of motions where sanctions were awarded or denied without prejudice to refiling at an appropriate time–such as the conclusion of the litigation when Plaintiffs' entire course of dilatory conduct could be evaluated. (*See* D.E. 1319 (sanctions granted), D.E. 1284 (denying sanctions without prejudice), D.E. 685 (sanctions granted for contempt of a Court Order), D.E. 751 (imposing $23,000 in sanctions as a result of Plaintiffs' continued contempt of a Court Order)). Plaintiffs' reliance upon these sanctions and contempt Orders supports INA's argument that Plaintiffs' dilatory conduct permeated this litigation.

Further, Plaintiffs' unsupported assertion that their unilateral cancellation of the evidentiary hearing actually aided the resolution of approximately 6,000 claims submissions is

7

not true. (D.E. 1479, pp. 16-17). The settlement meetings between INA and Plaintiffs occurred in June 2010–months before Plaintiffs unilaterally cancelled the October 2010 evidentiary hearing. (D.E. 759, pp. 4-6 (documenting that the claims submission meetings occurred over two meetings in June 2010); D.E. 848, p.1 (filed on July 9, 2010 wherein the parties jointly reported that approximately 8,000 items were resolved during settlement meetings); D.E. 889 (filed on July 26, 2010 documenting that settlement meetings had reached an impasse); D.E. 1066 (scheduling the evidentiary hearing for October 18-20, 2010)). Since the settlement meetings occurred months prior to the scheduled evidentiary hearing, Plaintiffs' false claim that the cancellation aided in the resolution of these claims is simply another example of Plaintiffs' efforts to mislead this Court.

Plaintiffs' argument that INA paid $9,000,000 during the course of the litigation and that those payments support a finding that the Plaintiffs did not engage in dilatory conduct is simply a *non sequitur*. (D.E. 1479, p. 17). It also ignores the reality–supported by this Court's factual and legal findings–that Plaintiffs engaged in a continuing fraud and misrepresentations to obtain insurance funds to which they were not owed throughout the course of this litigation. (*See, e.g.,* Conclusions of Law, D.E. 1431-1, ¶¶ 37-41, 52-60, 91-100; Findings of Fact, D.E. 1431 ¶¶ 46-48, 80-81, 110-112, 129-153). The brazen nature of the Plaintiffs' false claim of propriety after pirating another $9,000,000.00 from INA during this litigation underscores the necessity for sanctions.

Finally, Plaintiffs' claim that the last minute attempts to delay the trial setting were proper have been thoroughly addressed within INA's Motion. (D.E. 1434, pp. 12-13). It is worth noting that the grounds asserted within Plaintiffs' mandamus to the Eleventh Circuit existed for almost five months (and prior to at least one earlier trial setting) before being asserted.

**B.     Rule 11 Sanctions Are Appropriate**

Plaintiffs complain that INA has not complied with Rule 11's notice requirements. (D.E. 1479, p. 3).  This requirement may be waived if it is clear that opposing counsel never had any intention of withdrawing the challenged claims or of availing themselves of the protection of the safe harbor provisions. *See In re Evergreen Security, Ltd.*, 2008 U.S. Dist. LEXIS 98955, at *9-*12 (M.D. Fla. June 17, 2008).  INA filed many sanctions motions–Plaintiffs vigorously fought every one of them.  Plaintiffs, therefore, were aware of the problems with their claims, but nevertheless, continued to pursue them.  Further, contrary to Plaintiffs' claim that INA never requested "that

Plaintiffs withdraw any allegedly offending pleading at any point throughout this litigation," INA attaches just a few examples where such requests were actually made.[9] (Exhibit "1"). Therefore, Plaintiffs' arguments are without merit and this Court should find that Plaintiffs waived the notice period requirement and that INA's Motion for Sanctions is procedurally sound.

Plaintiffs also complain that INA's Rule 11 Motion is untimely, as it was not filed prior to rendition of judgment. (D.E. 1479, p. 4). INA's Motion was filed on December 23, 2011 (D.E. 1434); the Final Judgment was entered on March 12, 2012. (D.E. 1478). Further, Courts have imposed sanctions post-judgment. For example, in *Aetna Insurance Co. v. Meeker*, the court *sua sponte* ordered appellants to show cause why Rule 11 sanctions should not be imposed after granting summary judgment on the matter. 953 F.2d 1328, 1330 (11th Cir. 1992). As in this case, the appellant in *Aetna* provided false information with respect to material facts in his claim. *See id.*

This Court should likewise impose Rule 11 sanctions on Plaintiffs. Plaintiffs have engaged in fraud and severe misconduct throughout this litigation. This ongoing fraud, through the trial, necessitates the imposition of sanctions post-judgment.

C.      **An Evidentiary Hearing is Not Required**

Plaintiffs contend that they are entitled to a hearing before sanctions may be imposed by the Court. (D.E. 1479, p. 18). The authorities cited by Plaintiffs for this proposition, however, do not support such a conclusion. For example, Plaintiffs cite *Donaldson v. Clark*, 819 F.2d 1551, 1561 (11th Cir. 1987) for the proposition that "because of the magnitude of the sanctions sought by INA, a hearing is appropriate and necessary to afford Plaintiff's due process." (D.E. 1479, p. 18). However, *Donaldson* does not stand for the proposition that a hearing is *necessary* to afford due process. In fact, the *Donaldson* court acknowledged that "due process does not mean, necessarily, that an evidentiary hearing must be held; where the judge's participation in the proceedings provided him with full knowledge of the relevant facts and therefore the procedures followed by the district court did not violate due process." *Donaldson*, 819 F.2d at 1560 n.12 (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir. 1986)). The *Donaldson* court further noted that "'[a] request for attorney's fees should not result in a second major litigation'" and "it would be counterproductive if the rule itself were to cause an increase in unnecessary litigation by mandating extensive collateral procedures and prerequisites to the imposition of sanctions."

---

[9] Plaintiffs lost each of these motions. (*See* D.E. 1283; D.E. 798; D.E. 811; D.E. 1283).

9

*Donaldson,* 819 F. 2d at 1559, 1560 n.12 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).[10]

Moreover, the authorities reflect that sanctions are often upheld despite a district court's choice to forego conducting an evidentiary hearing. *See, e.g., Aetna Ins. Co. v. Meeker*, 953 F.2d 1328 (11th Cir. 1992); *Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir. 1986); *Brown v. Nat'l Bd. of Med. Exam'r*, 800 F.2d 168 (7th Cir. 1986); *Davis v. Velsan Enterprises*, 765 F.2d 494 (5th Cir. 1985). Under the above standard, an evidentiary hearing would be unnecessary, given that the Court has firsthand knowledge of the issues raised within INA's Motion for Sanctions.

Finally, in the event the Court determines some form of evidentiary hearing is necessary, INA requests that an award for INA's reasonable and necessary attorney fees and costs be entered. Any evidentiary hearing that the Court believes is necessary should be limited to whether the amount INA requests is reasonable and necessary.

### III. CONCLUSION & PRAYER

Plaintiffs' well-documented conduct warrants punishment. The entire proceeding was marred by fraud, delay, Plaintiffs' wild and unfounded conspiracies, and Plaintiffs' scandalous allegations about the Court, the Special Master, and other reputable lawyers and law firms. This case presents the question: if sanctions are not proper in this case, then when would they ever be proper? INA requests that Plaintiffs be sanctioned in the amount of INA's attorneys' fees and costs for requiring INA to expend millions of dollars to defend itself during this unnecessary litigation.

WHEREFORE, PREMISES CONSIDERED, INA hereby prays that the Court grant Defendant's Motion for Sanctions and grant INA any and all other relief, whether general or special, at law, in equity, or in admiralty, to which it is justly entitled.

### CERTIFICATE OF SERVICE

The undersigned certify that on March 23, 2012, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. They also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner

---

[10] *Didie v. Howes,* 988 F.2d 1097 (11th Cir. 1993), also cited by Plaintiffs, is likewise inapplicable. In that case, the underlying district court had made no factual findings prior to an award of sanctions, as the case had been previously dismissed three times for procedural defects. Therefore, the necessity of a hearing was manifest because it presented "the peculiar posture of the facts and merits of the case being necessarily argued in the motions for Rule 11 sanctions." *Didie*, 988 F.2d at 1104. Furthermore, while the court advised that a hearing was prudent, it did not go as far as to require a hearing under all circumstances. *Id.* at 1105 (citing *Donaldson*, 819 F.2d at 1560).

specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        Respectfully submitted,

**DEMAHY LABRADOR DRAKE PAYNE & CABEZA**

By:   /s/ Pete L. Demahy
       Mr. Pete L. DeMahy
       Mr. Clinton Payne
       150 Alhambra Circle - Penthouse
       Coral Gables, Florida 33134
       Telephone: 305.443-4850
       Facsimile: 305.443-5960

*Attorneys for Defendant, Insurance Company of North America*

**BROWN SIMS, P.C.**

By: /s/ Frank J. Sioli
       Frank J. Sioli
       Florida Bar No. 009652
       Datran Two – Suite 1609
       9130 South Dadeland Boulevard
       Miami, Florida 33156-7851
       Telephone: 305.274-5507
       Facsimile: 305.274-5517

*Attorneys for Defendant
Insurance Company of North America*

OF COUNSEL:

Kenneth G. Engerrand
Robert M. Browning
Michael A. Varner
BROWN SIMS, P.C.
1177 West Loop South, Tenth Floor
Houston, Texas 77027
Telephone: 713.629-1580
Facsimile: 713.629-5027

**SERVICE LIST**

Mr. Hugh J. Morgan
Law Office of Hugh J. Morgan
317 Whitehead Street
Key West, Florida 33040
Telephone: 305.296-5676
Facsimile: 305.296-4331
hugh@hjmorganlaw.com
(via CM/ECF)

Peter Halmos, *Pro Se*
c/o Meyers & Associates, C.P.A.
4540 PGA Blvd., Suite 216
Palm Beach Gardens, FL 33418
(via Certified Mail, return receipt requested &
via U.S. Mail, postage pre-paid)

Brenton N. Ver Ploeg, Esq.
Stephen A. Marino, Jr., Esq.
Ver Ploeg & Lumpkin, P.A.
100 S.E. 2nd Street
30th Floor
Miami, FL 33131
Telephone: 305-577-3996
Facsimile: 305-577-3558
bverploeg@vpl-law.com
smarino@vpl-law.com
(via CM/ECF)

Mr. David Paul Horan
Horan, Wallace & Higgins, LLP
608 Whitehead Street
Key West, Florida 33040
Telephone: 305.294-4585
Facsimile: 305.294-7822
dph@horan-wallace.com
(via CM/ECF)

Irene Marie Porter
Mark Hicks
Hicks & Kneale
799 Brickell Plaza
9th Floor
Miami, FL 33131
305-374-8171
Fax: 305-372-8038
iporter@mhickslaw.com
pgonzalez@mhickslaw.com
(via CM/ECF)